OAA3COMC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   UNITED STATES OF AMERICA,

4              v.                        24 Cr. 542 (AS)

5   SEAN COMBS,

6      a/k/a "Puff Daddy,"
       a/k/a "P. Diddy,"
7      a/k/a "Diddy,"
       a/k/a "PD,"
8      a/k/a "Love,"

9              Defendant.
                                         Conference
10  ------------------------------x

11                                       New York, N.Y.
                                         October 10, 2024
12                                       2:00 p.m.

13  Before:

14                  HON. ARUN SUBRAMANIAN, JR.

15                                       District Judge

16                      APPEARANCES

17  DAMIAN WILLIAMS
         United States Attorney for the
18       Southern District of New York
    BY:  EMILY JOHNSON
19       CHRISTY SLAVIK
         MADISON SMYSER
20       MITZI STEINER
         Assistant United States Attorneys
21
    AGNIFILO INTRATER LLP
22       Attorneys for Defendant
    BY:  MARC AGNIFILO
23       TENY R. GERAGOS

24  SHAPIRO ARATO BACH LLP
         Attorneys for Defendant
25  BY:  ALEXANDRA SHAPIRO

OAA3COMC

1    Appearances (Continued)

2    SHER TREMONTE, LLP
          Attorneys for Defendant
3    BY:  ANNA ESTEVAO

4    ANTHONY RICCO
          Attorney for Defendant
5

6    ALSO PRESENT:
     Special Agent Sean Quinn, Homeland Security Investigations
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

OAA3COMC

| | |
|---|---|
| 1 | THE DEPUTY CLERK:  This is the matter of 24 Cr. 542, |
| 2 | United States of America v. Sean Combs. |
| 3 | Can the parties, starting with counsel for the |
| 4 | government, please state their appearances for the record. |
| 5 | MS. JOHNSON:  Good afternoon, your Honor.  Emily |
| 6 | Johnson, Mitzi Steiner, Christy Slavik, Madison Smyser for the |
| 7 | government. |
| 8 | We are also joined at counsel table by Special Agent |
| 9 | Sean Quinn of Homeland Security Investigations. |
| 10 | THE COURT:  Good afternoon. |
| 11 | MR. AGNIFILO:  Good afternoon, your Honor.  My name is |
| 12 | Marc Agnifilo, and with the Court's permission, I am going to |
| 13 | have my colleagues introduce themselves, if that's okay. |
| 14 | MS. GERAGOS:  Good afternoon, your Honor.  Teny |
| 15 | Geragos, Agnifilo Intrater for Mr. Combs. |
| 16 | THE COURT:  Good afternoon. |
| 17 | MR. RICCO:  Good afternoon, your Honor.  My name is |
| 18 | Anthony Ricco.  I am appearing for the defendant Sean Combs who |
| 19 | is to my right. |
| 20 | And because the family traveled great distance, in |
| 21 | particular his mom from Florida, the family is seated over my |
| 22 | shoulder and in the second and third row.  That would consist |
| 23 | of his mother and all of his children. |
| 24 | THE COURT:  All right.  Thank you for that, and thank |
| 25 | you, everyone, for making the trip here.  I really appreciate |

OAA3COMC

1  it.

2          MS. ESTEVAO:  Anna Estevao of Sher Tremonte, LLP, and

3  proud to represent Mr. Combs.

4          THE COURT:  Good afternoon.  And good afternoon to

5  you, Mr. Combs.

6          THE DEFENDANT:  Good afternoon to you.

7          THE COURT:  Let's get started.

8          MR. AGNIFILO:  I'm sorry to interrupt.  We have one

9  person who is at the table behind.

10          MS. SHAPIRO:  Alexandra Shapiro of Shapiro Arato Bach,

11  LLP, also on behalf of Mr. Combs.

12          THE COURT:  Good afternoon.  I'm sorry.  I didn't see

13  you there.

14          MR. AGNIFILO:  Thank you, your Honor.

15          THE COURT:  All right.

16          First, if anyone needs to have a conversation that

17  they don't want the entire world to hear, make sure to mute

18  your microphones as we have some press feeds going into the

19  next room.

20          In terms of disclosure, I would note that Ms. Smyser,

21  her spouse is an associate attorney at Susman Godfrey, LLP,

22  where I was previously a partner.  I've had no conversations

23  with Ms. Smyser or her spouse about this case, and will have no

24  communications with either of them during the pendency of this

25  case, but I wanted to make sure everyone was aware of that.

OAA3COMC

```
 1              With that, Ms. Johnson, how much time do we have left
 2     on the Speedy Trial Act clock?
 3              MS. JOHNSON:  Your Honor, Judge Carter had excluded
 4     time through yesterday, October 9.  But also yesterday on
 5     October 9, defense filed a motion, and it is the government's
 6     position that that motion would toll the speedy trial clock
 7     under 3161(h)(1)(D).
 8              THE COURT:  Mr. Agnifilo?
 9              MR. AGNIFILO:  Yes, your Honor.
10              THE COURT:  Any objections to that?
11              MR. AGNIFILO:  So, I agree with my colleague, with the
12     government that the motion would toll the speedy trial clock
13     running forward.
14              I do not respectfully agree that the speedy trial
15     waiver is effective because we objected to any speedy trial
16     waiver, and Judge Carter waived speedy trial over our
17     objection, so we'll leave that as on open issue.
18              But we do go agree, going forward, speedy trial has
19     been tolled until your Honor decides the motion.
20              THE COURT:  Judge Carter made a finding that the time
21     would be excluded under the Speedy Trial Act.
22              MR. AGNIFILO:  He did.
23              THE COURT:  You may not have the consented to that,
24     but there was a finding made, correct?
25              MR. AGNIFILO:  That's correct, your Honor.
```

OAA3COMC

```
1              THE COURT:  Let's proceed.

2              You've requested -- I am going to work backwards.  So,

3    the defense has requested a trial in April or May 2025, and I

4    can give you either of those months.  I think in terms of the

5    scope of discovery, which we'll talk about, and the anticipated

6    motions, it makes most sense to have trial start in May.  So

7    May 5.  But I'll hear you.  If you want April, I'll give you

8    April.

9              MR. AGNIFILO:  No, your Honor, we were very much

10   deferring to the Court's schedule, and it is a sizable case in

11   terms of discovery.  And I appreciate your Honor giving us a

12   May 5 trial date.

13             THE COURT:  All right.  So trial will commence on

14   May 5, 2025.

15             Ms. Johnson, what is the anticipated length of trial

16   from the government's perspective?

17             MS. JOHNSON:  At present, your Honor, given the

18   schedule for trial outlined in your Honor's individual rules,

19   with a trial date that ends by approximately 3 o'clock every

20   day, the government would estimate three weeks for the

21   government's case under the current charged indictment, with

22   all of the caveats that we typically give, that we can't

23   estimate the length of defense cross and the like.

24             I do want to note for the Court that our investigation

25   is very much ongoing, and there is a possibility that there
```

OAA3COMC

```
 1    will be a superseding indictment, which could affect the length
 2    of the trial.
 3              THE COURT:  Understood.
 4              And from the defense?
 5              MR. AGNIFILO:  Yes, your Honor.  There will be a
 6    defense case, I expect.  It is hard at this early stage to say
 7    what it would be.  I would imagine a week would probably be
 8    sufficient.  But as we move through the discovery and have
 9    conversations with the government, we can fine tune that.
10              THE COURT:  You'll have the time that you need.
11              And in addition, Ms. Johnson, you had raised the trial
12    day, and I found that that works.  But if the parties discuss
13    and they want to propose something different, I'm all ears, so
14    just let me know.
15              MS. JOHNSON:  Of course, your Honor.  Thank you.
16              THE COURT:  So let's turn to discovery.
17              Ms. Johnson, am I right that the government intends to
18    complete its discovery by the end of the year?
19              MS. JOHNSON:  Yes, your Honor.  The government
20    currently believes that it will complete the discovery in its
21    possession by the end of this year.
22              THE COURT:  Mr. Agnifilo, any issues with that timing?
23    I'm going to get to some of the specific issues you raise, but
24    just in terms of an overall completion date by the end of year,
25    does that sound reasonable from your side?
```

OAA3COMC

```
1          MR. AGNIFILO:  I think it's reasonable given the
2    volume of the discovery, and I also think it's reasonable for
3    our trial date.
4          THE COURT:  All discovery will be completed by
5    December 31, 2024.
6          Let's get to the specific issues, Mr. Agnifilo, that
7    you raised.  I want to make sure I'm not missing anything.  The
8    parties' letter from yesterday was very helpful, but it wasn't
9    clear to me that there are any current disputes.
10          So, Mr. Agnifilo, the floor is yours to raise any
11    disputes.  And I am happy to facilitate a dialogue to see if we
12    can resolve them here.
13          MR. AGNIFILO:  No, I'm going to try to keep disputes
14    to a minimum.  We have a fairly --
15          THE COURT:  Raise any disputes you want.
16          MR. AGNIFILO:  I know, your Honor.  I appreciate it.
17    We have a very active dialogue with the prosecutors, and we're
18    trying to resolve any of these discovery issues on our own.
19          There have been many, many individual things that have
20    come up.  I think we've really resolved all of them.
21    Obviously, from my perspective, and I understand the
22    government's perspective, and I think the end of the year is
23    certainly reasonable.  We will probably continue to encourage
24    the government to give us things as quickly as possible, and
25    try to work with them in doing that.
```

OAA3COMC

1          So I don't have any disputes at the moment, and we're

2     going to try to work things out collaboratively.  And if we

3     can't work something out, we'll come back to your Honor.

4          THE COURT:  That's fine.

5          Ms. Johnson, you've done this already, and I've read

6     the transcript from the prior hearings and I've read what's in

7     your letter, but if there is anything you wanted to add in

8     terms of the parameters of discovery, what we can anticipate

9     coming up next, I think it might be helpful while we are all

10    sitting here.

11         MS. JOHNSON:  Absolutely, your Honor.  And I'm of

12    course guided by the Court in how much detail the Court would

13    like about discovery, and I'm prepared to go into as much

14    detail as would be helpful to your Honor.

15         THE COURT:  Why don't we frame it in terms of the

16    issues that the defense has raised.  So one of the things they

17    raised was Mr. Comb's devices and any hard drives that derive

18    from him.

19         MS. JOHNSON:  Absolutely.  And as we said in our

20    letter and as we informed the defense, that is our first

21    priority for discovery.

22         Let me back up one moment, your Honor.  We have made a

23    production on Monday of this week of 1 terabyte of data.  That

24    data, that contained three of the defendant's electronic

25    devices, one of which was specifically requested to be produced

OAA3COMC

1    first by defense counsel.  And all of the search warrants,

2    search warrants and the accompanying affidavits, which set

3    forth the probable cause for the search warrants that were

4    issued, and will allow defense to begin reviewing and

5    contemplating motions.  And we produced that first for a

6    reason, so they would have that material and begin to

7    contemplate motion practice early.

8            As we've told them, we are prioritizing at present

9    wholesale copying of the defendant's electronic devices that

10   were seized in various searches that the government performed.

11           So, I want to go through those searches individually.

12   I think it could be helpful to defense and to the Court.

13           There are approximately 96 electronic devices seized

14   from the defendant on March 25, 2024, across three separate

15   searches.  The searches occurred at his residence in Los

16   Angeles, his residence in Miami, and his person at a private

17   airport in Florida.

18           And from those electronic devices we have been

19   diligently working to extract the material from those devices

20   so that it can be produced to the defense.  And for each of

21   those devices, the data has to first be extracted before we

22   have something to produce.

23           Top-level takeaway is that nearly all of the extracted

24   data belonging to the defendant will be produced to him in the

25   upcoming few productions, which we estimate at this time will

OAA3COMC

1    occur on a rolling basis over the next 30 days.  So within a

2    month he should have almost all of the data belonging to him

3    that was seized.

4         We have attempted to extract all of the devices that

5    we've seized.  We have not yet been able to extract every

6    device that we have seized, and there's many different reasons

7    for that, and I'll highlight a few for the Court.

8         Current technology doesn't always allow us to extract

9    particularly newer devices.  So the security and whatnot on

10   newer electronic devices is more sophisticated than the

11   government's decryption tools.

12        This most acutely affects laptops, current phones, and

13   some hard drives with encryption.  The government's ability to

14   decrypt and extract those devices is constantly evolving as

15   people try to catch up to the technology of the phone

16   companies.

17        We anticipate that we will be able to extract some of

18   the unextracted devices to date.  And if we do, we will of

19   course immediately produce those devices.

20        Another issue that we are having, and another reason

21   why we haven't been able to extract every device that was

22   seized so far, is that our current forensic tools also do not

23   always support older technology.  So, for example, particularly

24   with older tablets, we don't yet have forensic tools that are

25   able to extract those devices, and so we are continuing to look

OAA3COMC

1   for solutions to be able to get into those devices, extract

2   them, and produce them to the defense.

3       There is also a handful of devices that we seized that

4   were damaged in some way, that prohibit at present their

5   extraction.  So we are seeking to have those devices repaired

6   and then reattempt extraction.

7       So at a high level, that is sort of the main three

8   reasons why not every device has been yet extracted.

9       But on those three searches, just to give the Court a

10  quick summary, at the airport, nine devices were seized, seven

11  have been extracted, one was already produced, the remaining

12  six will be in our next production.

13      In Miami, 36 devices were seized, 29 were extracted,

14  19 are slated for the next production.  And there are eight

15  devices from Miami that are currently extracted that are large

16  in size, and we're going to need to engage in a dialogue with

17  defense counsel about how we can produce those, because the

18  size is extraordinary and totals over 90 terabytes.  So we will

19  engage in a dialogue with the defense about the production of

20  those devices.

21      Finally, the L.A. residence there were 51 devices

22  seized, 29 were able to be extracted, and 27 of those 29 are

23  slated for the next production.

24      We also seized the defendant's phone when he was

25  arrested in September.  That phone has been extracted, it is

OAA3COMC

1  being copied at present, and will be produced in our next

2  production.

3        And we also searched the hotel room of the defendant

4  after his arrest.  Three of his devices were seized, two have

5  been extracted, and both are slated to be produced in our next

6  production.

7        We have not yet been able to get into the last device

8  there, which is a laptop that we expect at some point we might

9  be able to get into, but it is a current technology problem.

10        So, all those devices, as I've just said, are slated

11  to be in our next production and are at present being copied.

12  We initiated that copying process on Tuesday.  We checked in

13  before coming to court today.  The current estimate is that

14  those devices that are being copied will be done hopefully at

15  some point next week.  It nears at least 8 terabytes of data.

16  And the reason I flag that for the Court is to show the volume,

17  but also that the size of the electronic devices does

18  actually -- the machine time it takes to just physically copy

19  them and produce them is actually quite extensive at times.

20  And so it will probably take up to two weeks to fully copy all

21  this material and make it available to the defense.

22        So I hope that addresses your Honor's question with

23  respect to the defendant's devices.

24        THE COURT:  Yes.

25        Mr. Agnifilo, do you have any questions or issues that

OAA3COMC

1    you wanted to raise as to that summary?

2              MR. AGNIFILO:  No, your Honor, no.  These are things

3    we can work out.  That sounds like a reasonable overview.

4              MS. JOHNSON:  Okay.  And just picking up from there,

5    we are also at the same time working on what I would consider

6    sort of another core Rule 16 production, the subpoena returns,

7    the remaining materials from the search warrants that are not

8    electronic devices.  That is underway.  We have initiated --

9    some of our subpoena returns are housed in a Relativity

10   database.  We've initiated the process of production with our

11   vendor, and should have that production available at the end of

12   this week or early next week, at which point we will make it

13   available to defense counsel.

14              And also estimated within the next 30 days, we'll make

15   rolling productions of the remainder of the subpoena returns in

16   our possession at the moment and the remainder of the search

17   warrant returns, which include things like cell phone location

18   information and the like.

19              THE COURT:  Okay.  Understood.

20              And there was a reference in the letter to the

21   requested *Brady* material.  It was unclear from the letter what

22   that was exactly.  I wanted to make sure there wasn't any

23   disagreement or people not being on the same page.

24              MS. JOHNSON:  Your Honor, the defense has sent a *Brady*

25   request to the government, which is fairly standard.  The

OAA3COMC

1    government's in receipt of that request.  The government

2    understands its obligations under *Brady* and its progeny.  It

3    also understands its obligations under Rule 5(f) and it will

4    comply with them.

5         THE COURT:  I'll preview for you at the next

6    conference I will ask the government how it has complied with

7    its *Brady* obligations.  I've asked that question before without

8    making that preview, and it has sometimes been surprising, so

9    I'm telling you right now that I am going to ask that question

10    at the next conference.

11         MS. JOHNSON:  Thank you, your Honor.

12         THE COURT:  Mr. Agnifilo, we can keep going through

13    this, but I am really doing this for the defense's benefit so I

14    can make sure that there aren't any current disputes or lack of

15    information that I can be helpful in resolving.

16         But it looks like the parties have been talking and

17    that there is a good dialogue between the parties, so I don't

18    want to belabor the subject of the contents of discovery,

19    unless there is an issue you'd like to raise.

20         MR. AGNIFILO:  No, no, thank you, I appreciate the

21    Court going through it.  It is helpful to us and we can

22    continue our dialogue and go that way.  Thank you.

23         THE COURT:  All right.  Ms. Johnson, anything else

24    that you felt that you needed to raise in terms of discovery?

25    Otherwise we can move on to the other matters here.

OAA3COMC

1          MS. JOHNSON:  Yes, your Honor.  Just three quick

2     things if you'll indulge me with respect to discovery.

3          THE COURT:  Of course.

4          MS. JOHNSON:  As I mentioned, our investigation is

5     continuing.  So I understand that the Court has set a

6     December 31 deadline for discovery, but we may receive

7     materials after that time, at which point we will promptly

8     produce them to the defense.

9          We also have issued in March 2024 a corporate subpoena

10    to the defendant's company.  And I mention this just to make

11    the Court aware of it.  Counsel, the same counsel who

12    represents Mr. Combs represents his company, Combs Global.

13    Counsel has been making rolling productions of documents in

14    response to that subpoena.  It is our understanding that the

15    productions are not yet complete, and we just wanted to apprise

16    the Court of the existence of that subpoena and Combs Global's

17    obligations under that subpoena, because that material is

18    important for our case.

19          THE COURT:  Understood.  And if there is any issues

20    along those lines, you'll bring that to my attention at the

21    appropriate juncture.

22          MS. JOHNSON:  Of course, your Honor.

23          And then the other thing I wanted to flag for the

24    Court, and we flagged this for defense counsel as well, is that

25    the vast majority of electronic material here has to be

OAA3COMC

1    reviewed for privilege.  And much of it has to be reviewed for

2    Mr. Combs' privilege.  So we will in short order begin making

3    productions of potentially privileged material that our filter

4    team has segregated to defense counsel for their review, so

5    that they may review the potentially privileged material, and

6    make privilege claims on it and log those privilege claims for

7    us.  So that we have an understanding of what documents are

8    being withheld for privilege, and the non-privileged material

9    can then be released back to the case team for review.

10          THE COURT:  Understood.  And that's separate and apart

11    from the production to the defense of the extracted

12    information, right?

13          MS. JOHNSON:  Precisely.  The extracted information

14    that the defense is getting is a full extraction.  It contains

15    all the data on the device.

16          Our filter review process, our filter team reviews the

17    full device, and removes, before the case team can see it, any

18    potentially privileged information.  That set of potentially

19    privileged information will go to the defense so they are able

20    to make privilege calls.

21          And I flag this for your Honor simply because we will

22    need some of the privilege calls made in order to evaluate if

23    the government has motions.

24          THE COURT:  Understood.  Thank you.  Anything else

25    with respect to discovery?

OAA3COMC

1        MS. JOHNSON:  No.

2        THE COURT:  Thank you.

3        So Mr. Agnifilo, in terms of motions, I'll give you

4   some time, so I was thinking February 17, 2025, as a motions

5   deadline.  You had inquired in the joint letter whether motions

6   could be made in advance of that deadline.  The answer is yes.

7   You can make any application that you want and we're here and

8   we'll field it.  But that's the deadline.

9        So opposition briefs by March 3, 2025, and replies by

10  March 10, 2025.

11       Let's have a next conference on December 18, 2024, at

12  2 p.m.

13       Obviously, if the parties discuss and there is either

14  not a need for that conference or you need one sooner or later,

15  you can just let the Court know and we'll have it set up.

16       So let's move to the defendant's motion for an

17  evidentiary hearing which was filed yesterday.  The government

18  proposes that they be allowed to respond by October 30, which

19  is appropriate.  And the defendant may submit a reply by

20  November 8, 2024.

21       I'll hear from you, Mr. Agnifilo, but my thinking is I

22  would get that briefing in, and the Court can determine at that

23  juncture whether an evidentiary hearing is warranted.  However,

24  there is some other relief you are asking for in the interim,

25  so I happy to hear from you as to that.

OAA3COMC

1          MR. AGNIFILO:  Yes, thank you, your Honor.  The only

2     relief I can ask for in the interim is the gag order that we

3     referenced.  And the concern is that the agents have been

4     leaking grand jury information and making other types of

5     prejudicial statements to the press.

6          And while this started on the day of the searches, on

7     March 25, 2024, it continued throughout the lifespan of the

8     investigation, and most recently, two days after the arrest,

9     there were more such statements.  And I don't need to get into

10    them, I put them in the papers.  And the concern is -- and let

11    me back up for a second.

12         Part of the dialogue we've had with the government has

13    been around some of these issues.  And we have contacted the

14    prosecutors, we contacted them early on, I think it was the

15    first week of April, if I remember correctly, and we said, in

16    essence, your agents are leaking information to the press.  I

17    believe that they probably did something about it, I don't know

18    what.  But I think they did something about it.

19         My concern is that it started again around the time of

20    the arrest.  And so, whatever my colleagues with the government

21    did, didn't have the effect that we wanted it to have, which is

22    why I'm raising it to the Court.

23         And so I think the only type of interim relief that I

24    can plausibly ask for at this point would be the gag order that

25    was one of the forms of relief we asked for in the papers that

OAA3COMC

1    we submitted.

2            THE COURT:  All right.  Ms. Johnson, I guess the

3    question is, what the defense is asking for maybe you really

4    don't have an objection to it, because you are going to follow

5    it in any event.  It's not that much different from what Local

6    Rule 23.1 requires anyway.

7            But I'll hear the government's position on that

8    proposed order.

9            MS. JOHNSON:  Your Honor, the government would

10   respectfully request that your Honor defer any ruling on a

11   proposed order until the Court has had a chance to review the

12   government's briefing in this case, the government's opposition

13   briefing with respect to the defendant's motion.

14           As previewed in our short letter last night, the

15   government believes that this motion is baseless, and it is

16   simply a means to try to exclude a damning piece of evidence

17   disguised with press statements.

18           I will note that one thing that is incredibly

19   significant about the press statements that are cited in that

20   motion is that not a single one of those alleged leaks are from

21   members of the prosecution team.  They are alleged to be other

22   members of the agency.  And that is significant in this

23   analysis.

24           So, the government would respectfully request that the

25   Court defer any ruling on this until after it's had a chance to

OAA3COMC

1    review our papers.

2            But, of course, the government would agree not to

3    speak to the press, that is our general practice, and we will

4    of course -- we will affirm our obligations under 23.1, and I

5    do, after we're done discussing the motion, have an additional

6    item to raise with the Court with respect to 23.1.

7            THE COURT:  Of course, and I am not imposing -- in

8    fact, I don't think the motion seeks any remedy at this point.

9    I think the motion was for an evidentiary hearing, and as I've

10   said, I'll hear the parties out on the briefing and then

11   determine whether a hearing is warranted.

12           But right now, the defense is just asking for an

13   order, counsel referred to it as a gag order.  Really it will

14   just be an order forbidding government attorneys and agents

15   involved in this case from leaking any further information to

16   the media, which would cover -- and that's really an

17   overstatement.  What the proposed order would be, would cover

18   all grand jury material as well as other non-public information

19   related to the investigation and prosecution of this case.

20           I hear you that you're going to do that anyway.  And

21   so, what's the issue in imposing that order?  Because at that

22   point, you would have an order that you could, for instance,

23   furnish to DHS agents, to the extent they're at all involved in

24   this, so they are aware of their obligations, which they might

25   not otherwise be aware of, given that the source of what the

OAA3COMC

| | |
|---|---|
| 1 | parties have been talking about is in a local rule for this |
| 2 | court.  And it makes your life easier because they'd have that |
| 3 | order.  I think that's really what counsel is saying. |
| 4 | Mr. Agnifilo, am I missing anything there? |
| 5 | MR. AGNIFILO:  That's exactly right, your Honor. |
| 6 | MS. JOHNSON:  Your Honor, the government has no |
| 7 | concern with affirming our obligations under 23.1, and our |
| 8 | obligations not to speak to the press.  We have an objection to |
| 9 | language about future or further leaks.  And we believe that if |
| 10 | any such order is entered, it should be a reciprocal order and |
| 11 | the defense should be bound by that order as well. |
| 12 | THE COURT:  Mr. Agnifilo, any issues with that? |
| 13 | MR. AGNIFILO:  None at all. |
| 14 | THE COURT:  All right.  So what I'm going to ask, |
| 15 | Mr. Agnifilo, maybe you can do it, is to submit a proposed |
| 16 | order for the Court to execute, it should be reciprocal, and it |
| 17 | should map on to the categories that are in your memorandum of |
| 18 | law.  So the grand jury material and other non-public |
| 19 | information related to the investigation and prosecution of |
| 20 | this case.  Make sure that Ms. Johnson and her team has an |
| 21 | opportunity to review that, and there may be no objection, but |
| 22 | I'll hear any objection, and then consider the order that you |
| 23 | submit. |
| 24 | MR. AGNIFILO:  Thank you, your Honor. |
| 25 | THE COURT:  Any other issues, Mr. Agnifilo, with |

OAA3COMC

1    respect to that motion at this juncture?

2            MR. AGNIFILO:  Give me one second, Judge.

3            THE COURT:  All right.

4            MR. AGNIFILO:  No other issue.  Thank you, Judge.

5            THE COURT:  Okay.  Ms. Johnson.

6            MS. JOHNSON:  Yes, your Honor.  I think what I wanted

7    to raise goes hand in hand with what we were just discussing.

8    But as your Honor knows, there are strict rules in the local

9    rules that limits the parties' abilities to make statements

10   that could interfere with a fair trial or the integrity of a

11   criminal proceeding.

12           We raised some concerns at the bail appeal with Judge

13   Carter with some of Mr. Agnifilo's press statements, and we'd

14   like to raise some additional concerns that we have today that

15   in our mind are even more serious than the ones that we raised

16   before.

17           Mr. Agnifilo recently sat down for an interview with

18   TMZ, where he baselessly accused the government of engaging in

19   a racist prosecution.  And the government would submit that

20   these statements plainly run afoul of Local Criminal

21   Rule 23.1(d)(7) which says that asserting an opinion as to the

22   merits of a pending criminal case presumptively involves a

23   substantial likelihood that it would interfere with the fair

24   trial or otherwise prejudice the due administration of justice.

25           And I'll read one quote to your Honor, but there are

OAA3COMC

1    several in the interview.  Mr. Agnifilo said, "Let's switch our

2    focus to the government.  In my opinion, I'm just going to say

3    it the way it is.  No, no friend historically of the successful

4    black man.  Okay.  None.  And they start making this case, in

5    my opinion, as a takedown of a successful black man.  This is

6    the government scrutinizing his business, scrutinizing his

7    taxes.  He does everything right."

8          So, we have serious concerns about these statements.

9    And they didn't stop just at this documentary.  They've been

10   picked up by at least 15 media outlets since this documentary.

11         We think statements of this sort seriously risk a fair

12   trial in this case and the integrity of this proceeding.  As

13   I've mentioned before, the government will affirm its

14   obligations under Local Rule 23.1, and we respectfully ask the

15   Court to direct all defense counsel to similarly affirm their

16   obligations.

17         THE COURT:  Mr. Agnifilo.

18         MR. AGNIFILO:  Yes, no, I absolutely affirm my

19   obligations under 23.1.

20         I was hoping that if issues would be raised today,

21   they would have been raised in the letter to your Honor

22   yesterday, so I can't say that I'm fully prepared to address

23   the merits of the issue.

24         But now that we have the gag order that's reciprocal

25   in nature, we'll absolutely abide by all local rules that

OAA3COMC

1    govern our conduct.  We take this seriously.  We certainly

2    can't impugn the government for doing something that we would

3    do ourselves.  We welcome that.

4        So, now that we have this rule in place, I think we'll

5    all be guided accordingly, and I don't think we'll have any

6    other issues.

7        THE COURT:  And Ms. Johnson, you understand that if

8    there is a violation of this rule and you have an application

9    to make, same thing goes both ways, so you can bring that

10   application to the Court and I will consider it.

11       MS. JOHNSON:  Thank you, Judge.

12       THE COURT:  Thank you very much.

13       Any further issues, Ms. Johnson, to address at this

14   time?

15       MS. JOHNSON:  No, your Honor.  Thank you.

16       THE COURT:  And Mr. Agnifilo, do you now consent to

17   the exclusion of time under the Speedy Trial Act?

18       MR. AGNIFILO:  I do, your Honor.  It's very clear that

19   the making of motions, the decision of motions is excludable

20   under speedy trial, and I very much consent.

21       THE COURT:  I wanted to make sure that there wasn't an

22   issue there.

23       Ms. Johnson, do you have an application under the

24   Speedy Trial Act?

25       MS. JOHNSON:  Yes, your Honor.  The government would

OAA3COMC

1    move to exclude time until our conference on December 18, 2024.

2    Such an exclusion would be in the interests of justice because

3    it would allow the government to continue to produce discovery,

4    allow the defense to review discovery and contemplate potential

5    motions, and in any event, much of that time will likely be

6    tolled by the filing of the defense motion through its briefing

7    and consideration by the Court.

8              THE COURT:  I will exclude time under the Speedy Trial

9    Act until December 18, 2024.  I find that the ends of justice

10   served by excluding such time outweigh the interests of the

11   public and the defendant in a speedy trial, because time is

12   needed for the production of discovery and review by the

13   defendant, and time for the defendant to consider and prepare

14   motions and to prepare for trial.

15             Mr. Agnifilo, any other issues that you'd like to

16   raise here today?

17             MR. AGNIFILO:  I'm taking a survey of my colleagues.

18             THE COURT:  Please take your time.

19             MR. AGNIFILO:  I see lots of negative head motions, so

20   nothing else, Judge.  Thank you so much.

21             THE COURT:  All right.  So I don't have any

22   application relating to bail before me, so the defendant will

23   remain in custody.  If the defense has any application they

24   would like to raise, then I'll certainly hear it.

25             Mr. Agnifilo, the one thing I did want to raise is

OAA3COMC

1    there was a mention in the prior hearing about the MDC versus

2    the facility in Essex, and you were going to raise that with

3    the Court.  There was a subsequent letter in which you

4    indicated to the Court there was no further issue to raise.  I

5    wanted to make sure that I had checked everything off, that

6    there wasn't something there.

7                MR. AGNIFILO:  Thank you, your Honor, for asking.

8    We're making a go of the MDC.  And I have to say, and I have

9    said this publicly and I'll say it because your Honor asked.

10   The MDC have been very responsive to us.

11               The only issue that I foresee, and I don't think it

12   will be an issue, is if there is an issue with reviewing the

13   discovery in the prison.  I think we have all of that ironed

14   out.  I don't think it will be an issue.  If it turns out to be

15   an issue, we'll come back to your Honor on notice to the

16   government.

17               THE COURT:  Come back, raise it with me.  If there is

18   a way that the Court can help, we will absolutely try to help.

19               MR. AGNIFILO:  Thank you, your Honor.

20               THE COURT:  All right.  If there is nothing else,

21   thank you very much, everyone, for joining.  I thank family

22   members who came.  I know you came a long way.

23               Thank you very much.  We are adjourned.

24               (Adjourned)

25