UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>-against-<br><br>SEAN COMBS,<br><br>                       Defendant. | 24-CR-542 (AS)<br><br><u>OPINION AND ORDER</u> |

ARUN SUBRAMANIAN, United States District Judge:

On October 20, 2024, defendant Sean Combs moved for an order prohibiting prospective witnesses and their attorneys from making extrajudicial statements that he argues will substantially interfere with his right to a fair trial. Dkt. 42. In terms of who those "prospective witnesses" are, Combs clarified that the category includes "all those who claim to be victims." Dkt. 59 at 1. The Government opposed this victim gag order as "extraordinary and beyond the purview" of Local Rule 23.1. Dkt. 53 at 37–39. For the reasons below, the motion is DENIED.

Combs's authorities don't support a gag order applicable not only to trial participants, but also to any alleged victim and their lawyer. Local Rule 23.1 doesn't authorize this kind of relief. The limitations of that rule don't even apply to witnesses, let alone prospective ones that haven't yet been identified. They certainly don't apply broadly to any alleged victims and their lawyers. Even Local Rule 23.1(h), which allows the Court to issue "special order[s]" related to extrajudicial statements, only applies to "parties and witnesses." And to impose a special order, the Court must consider whether it "will be necessary to ensure an impartial jury and must find that other, less extreme available remedies, singly or collectively, are not feasible or would not effectively mitigate the pretrial publicity and bring about a fair trial." Among the remedies that the Court is required to consider are "a searching voir dire, emphatic jury instructions, and sequestration of jurors," matters that Combs hasn't addressed. A "gag order" under Rule 23.1(h) is an extreme remedy "to be issued only as a last resort." *United States v. Gotti*, 2004 U.S. Dist. LEXIS 24192, at *11 (S.D.N.Y. Dec. 3, 2004). What Combs seeks goes even further.

Combs's Sixth Amendment authorities don't support his proposed order either. In *Sheppard v. Maxwell*, 384 U.S. 333 (1966), the Supreme Court observed that the "trial court might well have proscribed extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters," but it did not indicate that blanket restrictions on *potential* witnesses, or even more broadly, all alleged victims, would be appropriate. *Id.* at 361. In *Neb. Press. Ass'n v. Stuart*, 427 U.S. 539 (1976), the Court only suggested that "trial courts [could] in appropriate cases limit what the contending lawyers, the police, and witnesses may say to anyone." *Id.* at 564. Combs's other cited authorities are similarly unhelpful. Each allows some restriction on trial

participants or the press but says nothing about potential witnesses. *See Gentile v. State Bar of Nev.*, 501 U.S. 1030, 1075–76 (1991) (upholding restrictions on statements by attorneys); *In re Application of Dow Jones & Co.*, 842 F.2d 603, 611 (2d Cir. 1988) (holding that the "district court was justified in considering the imposition of a 'gag' order on trial participants"); *Skilling v. United States*, 561 U.S. 358, 379–81 (2010) (summarizing generally the conditions under which press coverage can interfere with the right to a fair trial).

The only decision Combs identifies that appears to involve a bar on speech by all potential witnesses is *United States v. Brown*, 218 F.3d 415 (5th Cir. 2000). In that case, the district court imposed a "gag order prohibiting parties, lawyers, and potential witnesses" from making extrajudicial statements. *Id.* at 418. While the Fifth Circuit upheld this order, it described the order as only affecting "attorneys, parties, [and] witnesses," *id.*, and its discussion of the constitutional considerations at stake characterized the order as a "restriction on the extrajudicial speech of all trial participants," *id.* at 428. The *Brown* court certainly did not address the sweeping First Amendment implications posed by a gag order applying to all alleged victims and their lawyers.

But the Fourth Circuit in *In re Murphy-Brown, LLC*, 907 F.3d 788 (4th Cir. 2018), did. That case dealt with an order very similar to what Combs seeks here. Given the "unclear yet extraordinary reach of the phrase 'potential witness,'" which "cannot help but impair legitimate news gathering activities that in and of themselves underlie the proper function of the First Amendment" and "assume[s] all covered individuals [are] identically situated vis-à-vis pending and future litigation," the court rejected the order as "exceed[ing] what would be 'essential to the preservation of a fair trial.'" *Id.* at 799–800 (citation omitted). The Fourth Circuit was also skeptical of how the order would impact "more than twenty cases that will be tried over a period of years," *id.* at 800, and how it "treated lawyers no differently from parties, who in turn were treated the same as potential witnesses," *id.* at 799. Just as in *Murphy-Brown*, the requested order here is incredibly broad, treats potential witnesses identically to their lawyers, and impacts a series of ongoing cases.

The Court has an "affirmative constitutional duty" to ensure that Combs receives a fair trial. *Gannett Co., Inc. v. DePasquale*, 443 U.S. 368, 378 (1979). But this essential Sixth Amendment requirement must be balanced with the protections the First Amendment affords to those claiming to be Combs's victims, especially because "prior restraints on speech…are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press. Ass'n*, 427 U.S. at 559. "The authors of the Bill of Rights did not undertake to assign priorities as between First Amendment and Sixth Amendment rights," but the caselaw gives clues as to how to mediate between them when they come into conflict. *Id*. at 561. For example, those who actively participate in a litigation may legitimately be subject to limitations on their speech, but the Supreme Court treats as significant the "distinction between participants in the litigation and strangers to it." *Gentile*, 501 U.S. at 1072–73. Not all alleged victims will be participants in this case, and a blanket restriction on their speech will silence individuals who may never have anything to do with the

2

proceedings here. And in any event, less restrictive alternatives must be considered and rejected before imposing a restraint on speech. *See Dow Jones*, 842 F.2d at 611 ("[B]efore entering an injunction against speech," "other available remedies" like "change of venue, trial postponement, a searching voir dire, emphatic jury instructions, and sequestration of jurors" must be considered). The sheer reach of Combs's requested order would also necessarily impact the numerous ongoing civil cases involving Combs. *See Bellamy v. McMickens*, 1988 WL 49058, at *1 (S.D.N.Y. May 9, 1988) (refusing to impose a gag order because "[t]he parties [the movant] wishes to silence are not parties to this [lawsuit]" and "[t]he proceedings discussed in the press are not those before this court," and directing the movant to "make a similar request before [the other] tribunal," as "this court [could] not grant him the relief he seeks").[1]

To the extent Combs has a particular concern regarding statements made by attorneys for grand jury witnesses, *see* Dkt. 57, the Court reminds counsel that the Local Rules clearly state: "With respect to a grand jury or other pending investigation of any criminal matter, a lawyer participating in or associated with the investigation (including…*lawyers for targets, subjects, and witnesses in the investigation*) shall refrain from making any extrajudicial statement" if "there is a substantial likelihood that the dissemination [of that statement] will interfere with a fair trial or otherwise prejudice the administration of justice." Local Crim. R. 23.1(b) (emphasis added). As to statements by grand jury witnesses themselves, under Fed. R. Crim. P. 6(e)(2) "any grand jury witness may disclose publicly anything that occurred therein, including the questions asked of the witness and the answers given." *In Re Am. Hist. Ass'n*, 49 F. Supp. 2d 274, 283 (S.D.N.Y. 1999) (citing *Butterworth v. Smith*, 494 U.S. 624, 634–35 (1990)). Courts do have discretion to "impos[e] a reasonable obligation of secrecy on grand jury witnesses in an appropriate case." *In re Grand Jury Subpoena Duces Tecum*, 797 F.2d 676, 680 (8th Cir. 1986). But Combs has only raised statements in the media from a single grand jury witness. He hasn't made an adequate showing why a blanket gag order on all grand jury witnesses is warranted.

"[W]hen [a] case is a 'sensational' one tensions develop between the right of the accused to trial by an impartial jury and the rights guaranteed others by the First Amendment." *Neb. Press. Ass'n*, 427 U.S. at 551. But "[p]rominence does not necessarily produce prejudice," *Skilling*, 561 U.S. at 381, and the Sixth Amendment "does not require *ignorance*," *United States v. Tsarnaev*, 595 U.S. 302, 312 (2022) (quoting *Skilling*, 561 U.S. at 381); *see also Reynolds v. United States*, 98 U.S. 145, 155–56 (1878) ("[E]very case of public interest is almost, as a matter of necessity, brought to the attention of all the intelligent people in the vicinity, and scarcely any one can be

---

[1] In addition, the motion requests that the Court "direct these potential witnesses and their counsel to remove all online postings under their control that would offend the Local Rule [23.1]." Dkt. 42 at 5. For the same reasons Combs's proposed gag order is rejected, this further request is denied. Combs also seeks an order "direct[ing] the [G]overnment to disclose" communications in which it allegedly "directed or authorized…extrajudicial statements." *Id*. The Court expects the Government to adhere to its *Brady* obligations. As forecasted at the last hearing, the Court will inquire into how the Government has done so at the next hearing. Further relief is unwarranted at this juncture.

found among those best fitted for jurors who has not read or heard of it, and who has not some impression or some opinion in respect to its merits.").

Balancing the interests at stake, the Court has already taken steps to limit what can be said publicly, including issuing an order underscoring the requirements of Fed. R. Crim. P. 6(e) and Local Rule 23.1 and further requiring the Government to make those requirements clear to anyone involved in this case. *See* Dkt. 50. As the Court stated in that order, it will take appropriate action for violations of the rules or this Court's order. The Court is open to other tailored proposals that will help ensure a fair trial. *See* Local Crim. R. 23.1(h). As to the mounting civil cases against Combs, there are further steps that *he* can take, including seeking relief in particular cases if the parties or their lawyers have made prejudicial statements to the press, or moving to stay those cases pending the resolution of this one, just to give two examples. However, the unprecedented relief that Combs seeks on this motion is unwarranted.

The Clerk of Court is respectfully directed to terminate the motion at Dkt. 42.

SO ORDERED.

Dated: November 8, 2024
New York, New York

ARUN SUBRAMANIAN
United States District Judge