UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

SEAN COMBS,

Defendant.

24-cr-542 (AS)

## Reply Memorandum In Further Support Of
## Mr. Combs' Motion For A Hearing

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................................ii

ARGUMENT ...............................................................................................................2

   I.   The Leaks Continue, Including Recent Leaks That Violate This Court's Order ............... 2

   II.   This Court Clearly Has Authority To Order A Hearing ...................................................... 3

   III.   The Government's Definition Of Grand Jury Material Under Rule 6(e) Is Unduly Restrictive And Inconsistent With Controlling Authority.................................................... 5

   IV.   The Pattern Of Leaks Emanated From Government Agents ............................................. 7

   V.   A Hearing Is Imperative Because Of The Government's Inaction .................................... 9

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Barry v. United States*,
    865 F.2d 1317 (D.C. Cir. 1989) ........................................................................ 3, 8, 9

*In re Dow Jones & Company*,
    842 F.2d 603 (2d Cir. 1988) .................................................................................... 3

*Gatson v. FBI*,
    2017 WL 3783696 (D.N.J. Aug. 31, 2017) .............................................................. 6

*In re Grand Jury Investigation (Lance)*,
    610 F.2d 202 (5th Cir. 1980) ............................................................................... 3, 5

*In re Grand Jury Investigation*,
    1987 WL 8073 (E.D.N.Y. Feb. 23, 1987) ................................................................ 3

*In re Grand Jury Proceedings*,
    2013 WL 2237531 (S.D.N.Y. May 21, 2013) ......................................................... 5

*In re Grand Jury Subpoena (Doe No. 4)*,
    103 F.3d 234 (2d Cir. 1996) .................................................................................... 5

*Hodge v. FBI*,
    703 F.3d 575 (D.C. Cir. 2013) ................................................................................ 6

*Lawyers' Comm. for 9/11 Inquiry, Inc. v. Garland*,
    43 F.4th 276 (2d Cir. 2022) ................................................................................. 5, 6

*In re Plumeri*,
    434 B.R. 315 (S.D.N.Y. 2010) ............................................................................... 3

*In re Sanchez*,
    2017 WL 2222922 (E.D.N.Y. May 19, 2017) ........................................................ 3

*In re Sealed Case*,
    151 F.3d 1059 (D.C. Cir. 1998) .............................................................................. 4

*Sheppard v. Maxwell*,
    384 U.S. 333 (1966) ................................................................................................ 3

*In re Special Grand Jury 89-2*,
    450 F.3d 1159 (10th Cir. 2006) ............................................................................... 6

*United States v. Blaszczak*,
    2018 WL 1322192 (S.D.N.Y. Mar. 12, 2018) ........................................................ 8

*United States v. Cuervelo,*
    949 F.2d 559 (2d Cir. 1991) ................................................................ 4, 7

*United States v. Eastern Air Lines, Inc.,*
    923 F.2d 241 (2d Cir. 1991) .................................................................... 5

*United States v. Flemmi,*
    233 F. Supp. 2d 75 (D. Mass. 2000) ..................................................... 4, 8

*United States v. He,*
    94 F.3d 782 (2d Cir. 1996) ...................................................................... 3

*United States v. Interstate Dress Carriers, Inc.,*
    280 F.2d 52 (2d Cir. 1960) ...................................................................... 5

*United States v. Skelos,*
    2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) .................................... 5, 6, 8

*United States v. Skelos,*
    988 F.3d 645 (2d Cir. 2021) .................................................................. 8, 9

*United States v. Walters,*
    910 F.3d 11 (2d Cir. 2018) .................................................................... 10

*United States v. Williams,*
    504 U.S. 36 (1992) ................................................................................... 3

## Rules

Fed. R. Crim. P. 6 ............................................................................... passim

Local Rule 23.1 ............................................................................... 2, 3, 7

Mr. Combs submits this reply in support of his motion for a hearing, Dkt. 30.

This case has been the subject of extraordinary media attention, including a deluge of false and prejudicial accusations against Defendant Sean Combs. As the defense has chronicled in multiple filings, much of the media coverage appears to be fueled by information sourced to law enforcement agents familiar with the case. Accordingly, the defense moved to prevent the government from continuing to leak false and prejudicial information to the media. Dkt. 30, 31, and the Court issued an order intended to prevent further leaks. Dkt. 50. The defense also moved for other relief, primarily an evidentiary hearing and discovery to determine the source(s) of the leaks, examine government misconduct and for other potential remedies.

The government vociferously opposes any hearing, but—remarkably—does not deny that government agents have leaked information to the press (other than as to the Intercontinental video). The government does not even give any indication that it has conducted *any investigation whatsoever* regarding the leaks. The Department of Justice has an obligation to ensure that Mr. Combs's trial proceeds in accordance with principles of due process and fundamental fairness—it should not be a media circus. Yet the United States Attorney's Office is apparently content to look the other way—see no evil, hear no evil, speak no evil—while agents involved in the case feed the frenzy. It instead offers platitudes and legalistic arguments based on excessively narrow interpretations of confidentiality rules, while ignoring the Court's ample inherent authority to ensure a fair trial.

The pattern of leaks continues—indeed, the leaks continued even after this Court issued its gag order, discussed below. It is clear nothing will change unless this Court takes further action. At a minimum, an evidentiary hearing is warranted.

## <u>ARGUMENT</u>

**I.     The Leaks Continue, Including Recent Leaks That Violate This Court's Order**

Mr. Combs sought an evidentiary hearing and other remedies, including a gag order prohibiting further leaks.  The government opposed all relief.  The leaks continued.  On October 25, for example, the New York Post quoted a "federal law enforcement source who is involved in the investigation" making various statements about the evidence and Mr. Combs's guilt—including calling his conduct "sick s—t," and calling him a "predator."  Dkt. 49 at 1.

Later that day, this Court issued a gag order.  Regarding the Post article, it stated: "Those remarks, if made by an agent involved in the investigation or prosecution of this case, are plainly improper."  Dkt. 50 at 1.  The order was directed not just at the United States Attorney's Office but also all investigators—whether from the DHS or any other agency.  It stated that "all local and federal law enforcement agents assigned to this case or the related investigation" must "strictly comply" with both Fed. R. Crim. P. 6(e) and the broader provisions of Local Rule 23.1.

This Court ordered the government to communicate the contents of the order to "all local and federal law enforcement agents" and all agencies involved in the investigation.  This Court also noted that Mr. Combs's request for an evidentiary hearing to examine government misconduct was "still pending."

Unfortunately, this Court's order was insufficient to deter further government misconduct.  It took less than a week for the government to continue its pattern of leaks.  A "federal law enforcement" agent "involved in the investigation" made further false and prejudicial statements to the New York Post.  This included suggesting—falsely—that Mr. Combs engaged in wrongdoing with "underage" victims (there are none).  Dkt. 57 at 4.

Those leaks clearly violated this Court's Oct. 25 order. This is yet another case where "mere admonishments" are "insufficient to deter what seems to be growing practice." *In re Grand Jury Investigation*, 1987 WL 8073, at *6 (E.D.N.Y. Feb. 23, 1987). Given the ongoing pattern of leaks, Mr. Combs "clearly is entitled to 'a hearing on whether to impose contempt sanctions upon [the] government.'" *Barry v. United States*, 865 F.2d 1317, 1325 (D.C. Cir. 1989) (quoting *In re Grand Jury Investigation (Lance)*, 610 F.2d 202, 219 (5th Cir. 1980)).

## II. This Court Clearly Has Authority To Order A Hearing

The government assumes this Court's authority derives only from Rule 6(e). That is false. Its authority derives not only from Rule 6(e) but also the broader provisions of Local Rule 23.1 and its inherent authority to regulate these proceedings in the interests of justice. *See United States v. Williams*, 504 U.S. 36, 46 (1992); *United States v. He*, 94 F.3d 782, 792 (2d Cir. 1996). Indeed, this Court has a duty to protect the defendant's Sixth Amendment rights and to prevent "bedlam … at the courthouse." *Sheppard v. Maxwell*, 384 U.S. 333, 335 (1966); *see In re Dow Jones & Company*, 842 F.2d 603, 610-11 (2d Cir. 1988). This is an extraordinary case with an extraordinary amount of publicity, and it may require extraordinary protective measures.

This Court also has inherent authority to order a hearing to investigate violations of its October 25 order. *See In re Sanchez*, 2017 WL 2222922, at *2 (E.D.N.Y. May 19, 2017) (federal courts have inherent authority to police and enforce their own orders). This authority "derives from the fact that courts are vested, by their very creation, with power to impose submission to their lawful mandates." *In re Plumeri*, 434 B.R. 315, 327-28 (S.D.N.Y. 2010). Even setting aside all the prior misconduct, the fact that government agents were willing to violate this Court's order only a few days after its issuance independently warrants an evidentiary hearing.

When requesting an evidentiary hearing, a defendant's initial prima facie burden is "relatively light." *In re Sealed Case*, 151 F.3d 1059, 1068 n.7 (D.C. Cir. 1998). The evidence need only raise a fair inference of a violation—it need only be "susceptible to an interpretation that the information reported was furnished by an attorney or agent of the government." *Id*.

That standard is easily met here.

To avoid a hearing, the government makes a variety of purported factual assertions, most of which are unsupported by any declaration or other evidence. It asserts, for example, that the Intercontinental Video was not leaked by any member of the prosecution team. Dkt. 53 at 12-13. But it gives no indication that it has conducted any investigation into that matter. The government also suggests that Mr. Combs has not demonstrated that the press leaks came from any member of the prosecution team. *Id*. at 18. But the government's carefully worded opposition also avoids denying that government agents have spoken to the press. And the government gives no indication, for example, that it even asked investigating agents whether they had spoken to the press about the case. *See United States v. Flemmi*, 233 F. Supp. 2d 75, 77 (D. Mass. 2000) (issuing an order to show cause because even after leaks came to light, "the Department of Justice initiated no investigation regarding the possible improper disclosure of information by government personnel"). The United States Attorney's office may be willing to put its head in the sand and countenance leaks by agents, but this Court should not do the same.

Where there are "disputed factual issues" regarding government misconduct, an evidentiary hearing is "the preferred course of action." *United States v. Cuervelo*, 949 F.2d 559, 567 (2d Cir. 1991). And in determining whether the relatively light burden to merit a hearing has been met, this Court should not ignore common-sense inferences. The pattern is plain enough.

**III.    The Government's Definition Of Grand Jury Material Under Rule 6(e) Is Unduly Restrictive And Inconsistent With Controlling Authority**

The government tacitly concedes that some federal agents impermissibly and illegally leaked confidential information about the case—after all, the numerous articles speak for themselves.  It nonetheless contends that this Court should do nothing.  Its primary argument is that the Court cannot address any leaks because they did not involve information about a "matter occurring before the grand jury," and thus are not covered by Rule 6(e).

The government's arguments are faulty because they rest on a cramped definition of what constitutes a "matter occurring before a grand jury."  Relying on a decades-old case, the government posits that Rule 6(e) only covers "what is said or what takes place in the grand jury room."  Dkt. 53 at 10 (quoting *United States v. Interstate Dress Carriers, Inc*., 280 F.2d 52, 54 (2d Cir. 1960)).  The government suggests, in other words, that Rule 6(e) only covers testimony and evidence presented to the grand jury.  That is no longer the law, if it ever was.

As the Second Circuit has held, "Rule [6(e)(2)] covers not only the evidence actually presented to [the grand jury] but also anything that may tend to reveal what transpired before it." *United States v. Eastern Air Lines, Inc*., 923 F.2d 241, 244 (2d Cir. 1991); *accord Lance,* 610 F.2d at 216.  The Rule does not merely prohibit disclosure of what has already transpired before the grand jury—it also prohibits disclosure of anything that would "reveal the nature or direction of grand jury proceedings."  *In re Grand Jury Proceedings*, 2013 WL 2237531, at *1 (S.D.N.Y. May 21, 2013) (quoting *In re Grand Jury Subpoena (Doe No. 4)*, 103 F.3d 234, 238 (2d Cir. 1996)); *accord United States v. Skelos*, 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015).  The rule also covers all records "*relating to* grand jury proceedings," and any "matters *affecting* a grand jury proceeding."  *Lawyers' Comm. for 9/11 Inquiry, Inc. v. Garland*, 43 F.4th 276, 286-87 (2d Cir. 2022) (emphasis in original).

In short, courts have taken a "broad view" of what constitutes a "matter occurring before [the] grand jury." *In re Special Grand Jury 89-2*, 450 F.3d 1159, 1177 (10th Cir. 2006). It includes "whom the grand jury is investigating," "the identities of witnesses," the "substance of [their] testimony," and "how likely is an indictment." *Id*. at 1176-77. It includes expected witnesses and their expected testimony, as well as the anticipated "strategy or direction" of an ongoing investigation. *Skelos*, 2015 WL 6159326, at *10. It includes the identities of individuals who are recipients or targets of grand jury subpoenas or records. *Hodge v. FBI*, 703 F.3d 575, 580 (D.C. Cir. 2013); *Gatson v. FBI*, 2017 WL 3783696, at *9 (D.N.J. Aug. 31, 2017). It also includes "[w]hether a grand jury is convened and, if so, what it has seen." *Lawyers' Comm. for 9/11*, 43 F.4th at 287.

There is little question the government's extensive leaks have included grand jury matters—including the target and nature of the investigation. In fact, in violation of this Court's order, agents have continued to leak stories about the continuing grand jury investigation. On October 31, a "federal law enforcement" source disclosed more material to the New York Post, including plans to interview more witnesses, the anticipated substance of witness testimony, the plan to obtain videos and identify persons in those videos, and so on.[1]

Last week's leaks to the New York Post *alone* warrant a hearing. That leak violated Rule 6(e) and this Court's order.

As for the other leaks that did not specifically mention grand jury proceedings, the government's core argument is that the information might have been obtained through

---

[1] *Diddy investigators have interviewed male escorts about his infamous 'Freak Off' parties – and they're 'happy to talk': source*, NY Post (Oct. 31, 2024), https://nypost.com/2024/10/31/us-news/diddy-investigators-have-interviewed-about-10-male-escorts-about-his-infamous-freak-off-parties-and-theyre-happy-to-talk-source/. Note that it is common practice in this district for the government to issue grand jury subpoenas and then allow the recipients to submit to an interview instead of actually being required to testify before the grand jury.

"independent" sources, such as search warrant, and that this was not grand jury information leaked in violation of Rule 6(e). Dkt. 53 at 16. Notably, once again, the government presents no evidence to support its hypothesis, nor any indication that it conducted any investigation. To be sure, it is possible that some of the leaking agents obtained their information from search warrants. It is also possible that they obtained their information through the grand jury investigation. Given that several of the leaks explicitly mentioned grand jury proceedings and the grand jury's ongoing investigation, the latter possibility is not mere speculation. The only way to resolve the question is to conduct an evidentiary hearing. Indeed, resolving "disputed factual issues" of this sort are precisely what such hearings are for. *Cuervelo*, 949 F.2d at 567.

In short, the leaks here clearly implicate Rule 6(e). But even if they didn't, Mr. Combs's request for an evidentiary hearing is not based solely on that rule. It is also based on Local Rule 23.1, and now, on this Court's October 25 order, as well as the Court's inherent authority to regulate the proceedings and ensure that Mr. Combs' Sixth Amendment rights are enforced. The latter are broader than Rule 6(e). Thus, a hearing would be warranted even if the government had not violated Rule 6(e).

## IV.     The Pattern Of Leaks Emanated From Government Agents

Finally, the government suggests that some of the leaks only came from "vaguely" identified "sources." Dkt 53 at 18-19. That is demonstrably false. As noted above, the October 31 New York Post article quoted a "federal law enforcement source who is involved in the investigation." The October 25 New York Post article also quoted a "federal law enforcement source who is involved in the investigation." Dkt. 49 at 1. Earlier leaks specifically quoted "Miami-based" DHS officers "who helped raid [Mr. Combs'] Florida abode." Dkt. 31 at 14. These articles do not simply cite "sources." They specifically identify their sources as federal

law informant agents *involved in the investigation*, and in some instances identify agents involved in particular searches. The Second Circuit in *United States v. Skelos* described the difference between leaks vaguely attributed to "government source[s]" or "law-enforcement source[s]" versus those attributed to "government investigators" and "agents involved in th[e] investigation." 988 F.3d 645, 662 (2d Cir. 2021). The leaks in this case are in the latter category.

Thus, this case is nothing like *Skelos*, where the leaks were indeed only vaguely defined in the relevant press articles, and only involved only three newspaper articles and a letter. *See Skelos*, 2015 WL 6159326, at *8, 11. Nor is this case similar to *United States v. Blaszczak*, which involved only two articles—one was published before the government's investigation commenced, and the other two years later. 2018 WL 1322192, at *3 (S.D.N.Y. Mar. 12, 2018).

This case is much more similar to *Barry*, which involved a larger pattern and "a whole spectrum of news articles." 865 F.2d at 1326. Here, as in *Barry*, some specifically identify sources as law enforcement agents working on the case, while others have more vaguely quoted "law enforcement sources" and "sources close to the case." Dkt. 31 at 6-7. As *Barry* held, "[t]he precise attribution of a source in one ... may give definition to a vague source reference in others because of their context in time or content." *Id*.; *see also Flemmi*, 233 F. Supp. 2d at 81 (finding prima facie case of improper leaks based on articles "susceptible to the interpretation that a government attorney and/or agent was at least one source of the [protected] information"). The agents here have demonstrated a propensity to leak, and that demonstrated propensity makes it more likely that even the more vaguely identified sources are also involved in the investigation.

Moreover, as i*n Barry*, the content of the articles adds weight to the inference. "It is not necessary for [an] article to expressly implicate the Justice Department as the source of the disclosures if the nature of the information disclosed furnishes the connection." *Barry*, 865 F.2d

at 1325 (cleaned up).  Here, the source attribution combined with the informational content of the articles raises an irrefutable inference that the leaks were government agents.  The weight of the evidentiary whole here is greater than the sum of the of the individual leaks.

The prima facie case here is demonstrated by the specific attributions combined with the broader pattern of leaks as well as the contents of the leaked information.  Assessing that record against similar cases like *Barry*—and with some amount of common sense—it is clear that Mr. Combs has, at a minimum, made a prima facie case.

## V.     A Hearing Is Imperative Because Of The Government's Inaction

Last week the government submitted the district court's ruling in *Adams* as supplemental authority supporting its arguments for inaction.  *See* Dkt. 56, 56-1.  Whatever the merits of that ruling—and they are dubious—the district court there determined based on the particular facts of that case, that the defendant "failed to make a prima facie showing that the Government was the source of these disclosures." Dkt. 56-1 at 15.  That was in part because the sources—unlike here—were vaguely described in the articles.  And that was partly because in *Adams*, the government submitted a declaration "affirming that none of the Assistant United States Attorneys, FBI Special Agents, or New York City Department of Investigation Deputy Investigators General assigned to Mayor Adams's case 'disclosed information they learned in the course of the Investigation to any member of the press.'"  Dkt. 56-1 at 16; *see also Skelos*, 988 F.3d at 662 (government "affirmed by affidavit that none of the Assistant United States Attorneys, investigators, and FBI agents involved in this investigation spoke to the press").

The government here submitted no such declaration.  The most it has said is that it is "prepared" to submit some affidavit if this Court so orders.  Dkt. 56 at 3 n.1.  That is ironic considering the government initially requested—and was granted—extended time to file its

opposition on the basis that it would facilitate "an opportunity to respond in full to [Mr. Combs's] motion." Dkt. 33 at 1. The government has responded, and its silence is telling.

Similarly curious is the government's reliance on *Walters*. *See* Dkt. 53 at 10, 22 (citing *United States v. Walters*, 910 F.3d 11 (2d Cir. 2018)). In *Walters*, the AUSA initially filed an affidavit stating: "At no time did I disclose any information presented in this case to the grand jury (or any information related to the investigation at all) to any member of the press." 16-cr-338-PKC, Dkt. 44 at 6 (S.D.N.Y.). He also affirmed that the lead case agent had not spoken to the press. The district court found the affidavit insufficient and ordered a hearing because "the newspaper articles in totality and in specifics are suggestive of a government leak." *Id*. Dkt. 46 at 1. Only then did the government conduct any meaningful investigation—at which point it discovered that a different agent involved in the case had leaked confidential information to the news media. *See* 910 F.3d at 19-20.

All of which simply underscores the obvious: The government will do *nothing* to stop the leaks unless and until the Court requires it to do something. The articles themselves raise a compelling inference that government agents involved in the investigation have engaged in a pattern of leaking confidential information to the press. That is enough to justify further investigation. Since the government won't investigate, this Court must.

Date: November 8, 2024

Respectfully Submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER

445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anthony Ricco
Law Office of Anthony L. Ricco
20 Vesey Street
New York, NY 10007
(212) 791-3919
tonyricco@aol.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com