# AGNIFILO
# INTRATER

January 14, 2025

**VIA ECF**

Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

    We write on behalf of our client, Sean Combs, to request a modification of the terms of the Protective Order, Dkt. 26, to require the government to electronically produce videos described in Paragraphs 12(a) and 12(c) of the Indictment.[1] The Protective Order includes a novel provision making this video evidence "available for inspection only and not electronically produced." Dkt. 26 at 5 n.3. Having reviewed these videos, it is now abundantly clear that they confirm Mr. Combs's innocence, and that their full exculpatory value cannot be investigated and used unless they are electronically produced. Rule 16(a)(1)(E) expressly requires production of copies of such materials to the defense, and there is no plausible "good cause" to restrict access to them under Rule 16(d)(1). Accordingly, they should be produced in the normal course so that the defense may evaluate and use them in the same manner as the other Rule 16 and *Brady* material.

    ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ that the government has repeatedly referenced, causing wild speculation in the media. Contrary to what the government has led this Court and the public to believe, the so-called "Freak Offs" were private sexual activity between *fully consenting* adults in a long-term relationship. Like many Americans in the privacy of their own bedrooms, they sometimes filmed their sexual activity. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

    These recordings corroborate what witnesses have told the government, namely that Victim-1 ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Dkt. 84, Exh. A at 3 (filed under seal). The recordings also directly refute the allegations that Mr. Combs kept these videos as "collateral." ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇

---

[1] The Protective Order requires the parties to meet and confer regarding any dispute over the government's designations, "after which the defense may seek de-designation by the Court." Dkt. 26 ¶ 10. We have conferred with the government counsel, who oppose this request.

Moreover, contrary to innumerable sensationalistic media reports, the videos do not depict sex parties. There are no secret cameras, no orgies, no other celebrities involved, no underground tunnels, no minors, and ███████████████████████████████████. Far from the government's lurid descriptions, ████████████████████████████████████████ ████████████. At bottom, this case is about whether Victim-1 was or was not a willing participant in her private sex life with Mr. Combs. ██████████████████████████ █

I.  Background

Soon after Mr. Combs was charged, the parties began negotiating the terms of a protective order. During those negotiations, the government insisted, over defense objection, that certain videos obtained from Victim-1 and depicting alleged "Freak Offs" would not be electronically produced and would instead only be made available for in-person viewing while monitored by law enforcement. The government explained that Victim-1, whose attorney gave these videos to the government, requested that they not be produced to protect her privacy and that the government would "honor that request." To ensure we would receive discovery without further delay, the defense agreed to receive the discovery under those conditions, while reserving the right in the proposed order to later seek modifications of designations from the Court. On October 7, 2024, the Court so-ordered the proposed Protective Order. Dkt. 26.

After spending four weeks attempting to schedule viewing of the evidence, the defense was finally able to watch the videos under the supervision of law enforcement on November 20, 2024 and December 13, 2024.[2] ███████████████████████████████
██████████████████████████████████████████████████████[3]
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
There is no evidence of any violence, coercion, threats, or manipulation whatsoever. There is no evidence that anyone is incapacitated or under the influence of drugs or excessive alcohol consumption. There is certainly no evidence of sex trafficking.

---

[2] ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████

[3] ████████████████████████████████████████████████████████

II. Rule 16 Requires Electronic Production of the Videos And There Is No Good Cause to Withhold Production

Rule 16 requires the electronic production of these videos. Specifically, Rule 16(a)(1)(E) provides that "the government must permit the defendant to inspect *and to copy* . . . data" that is "within the government's possession, custody, or control" and that is "material to preparing the defense." (emphasis added)). As direct evidence undermining the "core" of the government's case, *see* 9/18/24 Tr.13 ("Freak-off activity is the core of this case."), these videos are unquestionably material. *See United States v. Clarke*, 979 F.3d 82, 97 (2d Cir. 2020) ("Evidence is material if it could be used to counter the government's case or to bolster a defense.") (cleaned up); *United States v. Stevens*, 985 F.2d 1175, 1180-81 (2d Cir. 1993) (same); *see also United States v. Urena*, 989 F. Supp. 2d 253 (S.D.N.Y. 2013) (Rule 16 burden for materiality is "not heavy").

The Court's authority to enter or modify a protective order stems from Rule 16(d)(1), which provides that, "[a]t any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief." *See also In re Terrorist Bombings of U.S. Embassies in E. Afr.*, 552 F.3d 93, 122 (2d Cir. 2008) (explaining that Rule 16(d) grants district courts the discretion to establish conditions "under which the defense may obtain access to discoverable information"). Under Rule 16(d), the party seeking a protective order "has the burden of showing that good cause exists for issuance of that order," and "good cause remains the standard even where parties consent to a stipulated protective order." *See United States v. Smith*, 985 F. Supp. 2d 506, 522-23 (S.D.N.Y. 2013) (cleaned up). "A party can demonstrate good cause for the issuance of a protective order when a party shows that disclosure will result in a clearly defined, specific and serious injury—such as compromising the privacy interests of innocent third parties, causing a risk of harm to law enforcement or others, or impeding ongoing government investigations." *United States v. Jackson*, No. 21-CR-537-LTS, 2022 WL 582700, at *2 (S.D.N.Y. Feb. 25, 2022) (cleaned up).

The government cannot meet its burden. There is no good cause to prevent the electronic production of these highly exculpatory videos. Because this case does not involve classified information or child pornography, there is no authority to restrict defense counsel's possession, review, and analysis of the videos. *See* 18 U.S.C. § 3509(m) (Walsh Act restrictions on discovery of child pornography); 18 U.S.C. app 3 § 4 (Classified Information Procedures Act restrictions on discovery). Nothing in the Crime Victim's Rights Act provides similar discovery restrictions or an exception to Rule 16. *See* 18 U.S.C. § 3771(a)(8).

Moreover, any concerns regarding Victim-1's privacy interests are adequately protected by the remaining provisions of the Protective Order. "[T]here is no greater risk in granting defense counsel a copy of the files for the preparation of its defense under a suitable protective order than exists in the government's maintenance and use of the files in preparation of its own case." *United States v. Cadet*, 423 F. Supp. 2d 1, 3 (E.D.N.Y.

3

2006) (granting defense motion for copies of alleged child pornography in case pre-dating enactment of Walsh Act). The government is free to designate the material as "Attorney's Possession Only ('APO')," which would require that the material be "maintained in a safe and secure manner by defense counsel," "shall not be possessed by the defendant, except in the presence of the defendant's counsel," and "shall not be disclosed in any form," except pursuant to the terms of the Protective Order. Dkt. 26 ¶ 7. Indeed, the APO designation is for the precise purpose of addressing potential risk to the privacy or safety of victims or witnesses and sufficiently mitigates any risk of disclosure. *See id.* ¶ 3.

Even if there were some remaining privacy concern, any hypothetical risk that the videos would be disclosed in contravention of this Court's Protective Order is substantially outweighed by the real and substantial risk that Mr. Combs's defense will be hampered by limited access to the videos. Unless the Protective Order is modified to require the government to produce copies of the videos, the defense will not be able to effectively make use of this critical evidence at trial. ███████████████████████████████████████████████████████████████████ Mr. Combs needs to use defense experts, including, *inter alia*, experts who could enhance the quality of the audio and video and analyze the metadata associated with the videos, including when the videos were created or modified.

The government has offered to use a "neutral" expert to enhance the audio and visual quality of the videos. This novel proposal is inconsistent with Rule 16 and due process, as it would restrict Mr. Combs from retaining and directing experts of his choosing, and require him to unfairly preview his defense. It also does not account for the other ways Mr. Combs seeks to put the evidence to use. For example, Mr. Combs may need to show the recordings to other experts or witnesses (consistent with the terms of the Protective Order). Mr. Combs will also need to extract portions of the videos to create trial exhibits, stills, and transcripts. All of these tasks will be impossible without obtaining copies of the video evidence. In sum, "there is a much greater likelihood that the Defendant would be harmed in his ability to prepare a defense by limited access to the materials on the government's terms than there is that the materials will be further distributed by the defense in contravention of the Court's order." *Cadet*, 423 F. Supp. at 3-4. Mr. Combs is entitled to put this evidence to use for trial.

### III. The Videos Constitute Exculpatory *Brady* Material, And The Restrictions On Mr. Combs's Ability To Use Them In His Trial Preparation Violate Due Process

*Brady* also requires the government to produce copies of the videos. Under *Brady*, "the Government has a constitutional duty to disclose favorable evidence to the accused where such evidence is 'material' either to guilt or to punishment." *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003). It requires production of information such that a defendant can "take advantage" of exculpatory evidence in time for its "effective use" at

trial. *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001); *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001). An item is "material to preparing the defense" under Rule 16 "if it could be used to counter the Government's case or bolster a defense." *United States v. Stevens*, 985 F.2d 1175, 1180-81 (2d Cir. 1993).

It is troubling that the government has had this evidence since December 2023 and nonetheless brought these charges. The video evidence refutes the claim that Victim-1 was forced to participate and can only be squared with her account if one assumes, as the government apparently does, that certain women "cannot consent" despite all indications to the contrary. *See* Bail Appeal Hrg at 15 (arguing that when women are motivated by "the loss of their livelihood and housing" or experience abuse "outside freak offs," "they cannot consent" and that "[t]hat is sex trafficking").

The government's view also depends on the characterization of Freak Offs as dirty, disgusting, or inherently unsavory, and therefore must have involved some amount of coercion. *See* Indictment ¶12(a) (describing Freak Offs as "elaborate and produced sex performances" that were "arranged," "directed," and "sometimes lasted multiple days"); ¶12(b) (referring to various Freak Off "supplies," including "baby oil and lubricant"). The premise that "freak offs are inherently dangerous," Bail Appeal Hrg at 13, shows that the government seeks to police non-conforming sexual activity and that it assumes – despite all evidence to the contrary – that a woman's willing participation must have been coerced.

Any fair-minded viewer of the videos will quickly conclude that the prosecution of Mr. Combs is both sexist and puritanical. It is sexist because the government's theory perpetuates stereotypes of female victimhood and lack of agency. The prosecution reflects a paternalistic view that the government is here to protect women, who cannot be trusted to make their own decisions about sex, and are not capable of consenting to sex that the prosecutors view as outside the "norm."

These videos [REDACTED] and fundamentally undermine the government's case and Victim-1's claims. Indeed, they are entirely consistent with [REDACTED] They are unquestionably *Brady* material notwithstanding the government's outlandish theories, and we anticipate that the undisclosed audio portions and metadata will contain *Brady* material as well. At a minimum, they are certainly not ultra-sensitive materials that need to be subject to extreme restrictions outside the normal course of discovery in criminal cases.

Finally, preventing Mr. Combs's defense team from obtaining copies of the videos so he can prepare his defense at trial would violate the Due Process Clause and his right to present a meaningful defense. *See United States v. Fishenko*, No. 12 CV 626 SJ, 2014 WL 5587191, at *1-2 (E.D.N.Y. Nov. 3, 2014) ("Court[s] must ensure the[se] … constitutional rights" when fashioning discovery protections); *United States v. Lindh*, 198 F. Supp. 2d 739, 742 (E.D. Va. 2002) ("[I]n determining whether to accord protection … , and the

extent of such protection, courts should weigh the impact this might have on a defendant's due process right to prepare and present a full defense at trial."). Even interests as strong as the state-secrets privilege—a much greater interest than the purported interest here—"must," in certain cases, "give way ... to a criminal defendant's right to present a meaningful defense." *United States v. Abu-Jihaad*, 630 F.3d 102, 141 (2d Cir. 2010).

\*     \*     \*

Because there is no good cause to restrict defense counsel's access to the videos, and because the videos must be disclosed pursuant to *Brady* and Rule 16, we respectfully request that the Protective Order be modified to require the government to electronically produce the videos ███████████████ to Mr. Combs' counsel with the "Attorney's Possession Only" designation under the Protective Order.

Respectfully submitted,

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anthony Ricco
Law Office of Anthony L. Ricco
20 Vesey Street
New York, NY 10007
(212) 791-3919
tonyricco@aol.com

Alexandra Shapiro
Shapiro Arato Bach LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com

Anna Estevao

6

SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com

cc: All counsel (via ECF)