UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v.-

SEAN COMBS,
   a/k/a "Puff Daddy,"
   a/k/a "P. Diddy,"
   a/k/a "Diddy,"
   a/k/a "PD,"
   a/k/a "Love,"

                Defendant.

S1 24 Cr. 542 (AS)

# THE GOVERNMENT'S OPPOSITION TO THE DEFENDANT'S MOTION TO DISMISS COUNT THREE

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Maurene Comey
Meredith Foster
Emily A. Johnson
Christy Slavik
Madison Reddick Smyser
Mitzi Steiner
Assistant United States Attorneys
    *Of Counsel*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1
BACKGROUND ............................................................................................................................ 1
APPLICABLE LAW ..................................................................................................................... 3
ARGUMENT .................................................................................................................................. 5
    A. The Defendant Fails to Show That Similarly Situated Individuals Were Not Prosecuted  6
    B. The Defendant Fails to Show Discriminatory Purpose ..................................................... 11
CONCLUSION ............................................................................................................................. 15

## TABLE OF AUTHORITIES

Page(s)

Cases

*Muehler v. Mena*,
   544 U.S. 93 (2005) ............................................................................................................... 14
*United States v. Alameh*,
   341 F.3d 167 (2d Cir. 2003) .................................................................................................... 3
*United States v. Armstrong*,
   517 U.S. 456 (1996) ................................................................................................. 3, 4, 8, 10
*United States v. Avenatti*,
   433 F. Supp. 3d 552 (S.D.N.Y. 2020) ................................................................................ 8, 12
*United States v. Bass*,
   536 U.S. 862 (2002) ........................................................................................................ 5, 11
*United States v. Chem. Found., Inc.*,
   272 U.S. 1 (1926) .................................................................................................................... 3
*United States v. Ephron*,
   No. 24 Cr. 418 (MMG), 2025 WL 524027 (S.D.N.Y. Feb. 18, 2025) ................................. 14
*United States v. Fares*,
   978 F.2d 52 (2d Cir. 1992) ......................................................................................... 3, 4, 5, 11
*United States v. Garcia-Pena*,
   No. 17 Cr. 363 (GBD), 2018 WL 6985220 (S.D.N.Y. Dec. 19, 2018) ................................. 11
*United States v. Hommosany*,
   208 F.3d 204, 2000 WL 254050 (2d Cir. 2000) .................................................................... 10
*United States v. Lamar*,
   No. 14 Cr. 726 (PGG), 2015 WL 4720282 (S.D.N.Y. Aug. 7, 2015) ................................... 11
*United States v. Lewis*,
   517 F.3d 20 (1st Cir. 2008) ...................................................................................................... 6
*United States v. Moon*,
   718 F.2d 1210 (2d Cir. 1983) .................................................................................................. 4
*United States v. Olvis*,
   97 F.3d 739 (4th Cir. 1996) ..................................................................................................... 6
*United States v. Parnas*,
   No. 19 Cr. 725 (JPO), 2021 WL 2981567 (S.D.N.Y. July 14, 2021) ................................ 8, 14
*United States v. Smith*,
   231 F.3d 800 (11th Cir. 2000) ................................................................................................. 6
*United States v. Smith*,
   673 F. Supp. 3d 381 (S.D.N.Y. 2023) ................................................................................ 8, 14
*United States v. Viera*,
   No. 14 Cr. 83 (ER), 2015 WL 3833797 (S.D.N.Y. June 19, 2015) ....................................... 11
*United States v. Watson*,
   No. 23 Cr. 82 (EK), 2024 WL 1858199 (E.D.N.Y. Apr. 29, 2024) ................................... 8, 14
*Wayte v. United States*,
   470 U.S. 598 (1985) ................................................................................................. 3, 4, 5, 11

Statutes

18 U.S.C. § 1589 .................................................................................................................... 2
18 U.S.C. § 1591 .................................................................................................................... 2
18 U.S.C. § 1962(d) ............................................................................................................... 1
18 U.S.C. § 2421(a) ............................................................................................................... 2
18 U.S.C. § 2421 *et seq*. ........................................................................................................ 9

**PRELIMINARY STATEMENT**

The Government respectfully submits this memorandum of law in opposition to defendant Sean Combs' motion to dismiss Count Three of the Indictment in this case (the "Motion," *see* Dkt. No. 152, 153). Offering no more than his say-so, the defendant makes the outrageous and illogical claim that federal prosecutors brought one—and only one—of the three charges against him on account of his race. Tellingly, the Motion fails to mention that the other counts of the very same Indictment allege that the defendant engaged in horrific and repeated acts of violence and sexual coercion harming multiple victims over the course of multiple years. That context alone defeats the Motion. Count Three charges conduct overlapping and intertwined with the years of violence, abuse, and exploitation alleged in Counts One and Two.

The defendant's baseless accusations that he was singled out on account of his race are false and fall far short of the rigorous standard required to make out a *prima facie* case of selective prosecution. Race did not factor in any way into the defendant's charges. On the contrary, as set forth in the Indictment, the defendant was charged solely because of his own violent, abusive, and criminal conduct. The Motion should be denied.

**BACKGROUND**

On January 30, 2025, a grand jury in this District returned Indictment S1 24 Cr. 542 (the "Indictment") charging the defendant in three counts. (Dkt. No. 144). Count One charges the defendant with participating in a racketeering conspiracy between in or about 2004 and 2024, in violation of 18 U.S.C. § 1962(d). (Indictment ¶¶ 1-15). Among other things, Count One alleges that the defendant coerced three female victims, identified in the Indictment as Victim-1, Victim-2, and Victim-3, to engage in commercial sex acts. (Indictment ¶ 12a). The Indictment alleges that some of the victims were coerced to engage in commercial sex acts that "sometimes lasted multiple days, and often involved multiple male commercial sex workers." (Indictment ¶ 12b).

1

Count Two charges the defendant with sex trafficking Victim-1 by force, fraud, and coercion between in or about 2009 and 2018, in violation of 18 U.S.C. § 1591. (Indictment ¶ 16). Count Three charges the defendant with transporting multiple individuals, including the same sex trafficking victims identified in Count One (Victim-1, Victim-2, and Victim-3), and male commercial sex workers, interstate for purposes of engaging in prostitution between in or about 2009 and 2024, in violation of 18 U.S.C. § 2421(a). (Indictment ¶ 17).

The Indictment provides detailed factual allegations describing the defendant's yearslong pattern of criminal conduct involving the abuse and sexual exploitation of multiple victims. That conduct included "a persistent and pervasive pattern of abuse toward women," including "verbal, emotional, physical, and sexual" abuse that spanned years. (Indictment ¶ 3). The Indictment describes the transportation of both "women and commercial sex workers" as intertwined with the defendant's coercion of women to participate in "orchestrated performances of sexual activity" by "distributing narcotics to them, controlling their careers, leveraging his financial support and threatening to cut off the same, and using intimidation and violence." (*Id.*). The defendant's violence included "striking, punching, dragging, throwing objects at, and kicking" women on numerous occasions over multiple years. (Indictment ¶ 4). The defendant used his vast resources and business empire "to carry out, facilitate, and cover up his acts of violence, abuse, and commercial sex," enabling the defendant to continue this criminal conduct for years. (Indictment ¶ 5).

As alleged in the Indictment, this criminal activity included violations of multiple federal laws, including forced labor, in violation of 18 U.S.C. § 1589; sex trafficking, in violation of 18 U.S.C. § 1591; and transportation to engage in prostitution, in violation of 18 U.S.C. § 2421. (Indictment ¶ 13). These allegations are included both in the racketeering conspiracy charged in

2

Count One, as racketeering activity, and in the statutory offenses charged in Counts Two (sex trafficking) and Three (transportation to engage in prostitution). (Indictment ¶¶ 13, 16-17).

The Indictment thus makes clear that the transportation alleged in Count Three served the defendant's abuse of victims. That count alleges that the defendant transported the same victims identified in earlier paragraphs as victims of abuse. (*Compare* Indictment ¶ 12a *with* Indictment ¶ 17). That count also alleges that the defendant transported commercial sex workers, which corresponds to the allegations in earlier paragraphs that the defendant coerced female victims to engage in sexual activity with male commercial sex workers. (*Compare* Indictment ¶ 3 *with* Indictment ¶ 17). All three counts of the Indictment thus, on their face, charge a common course of conduct arising out of the defendant's abuse and sexual exploitation of multiple victims.

## APPLICABLE LAW

A defendant challenging the Government's decision to prosecute him bears a heavy burden. *United States v. Armstrong*, 517 U.S. 456, 463-64 (1996). Federal prosecutors "retain broad discretion to enforce the Nation's criminal laws." *Id.* at 464 (internal quotation marks omitted). "As a result, '[t]he presumption of regularity supports' their prosecutorial decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Id.* (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14-15 (1926)); *see also, e.g.*, *Wayte v. United States*, 470 U.S. 598, 607 (1985).

Importantly, "[a] selective prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Armstrong*, 517 U.S. at 463. To establish a claim of selective prosecution, a defendant must present "clear evidence" that the decision to prosecute not only (1) "had a discriminatory effect" but was also (2) "motivated by a discriminatory purpose." *Id.* at 465 (quoting *Chem. Found.*, 272 U.S. at 14-15; *Wayte*, 470 U.S. at 608); *see also United States v.*

3

*Alameh*, 341 F.3d 167, 173 (2d Cir. 2003); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992); *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983). When articulating this test, the Supreme Court has "taken great pains to explain that the standard [to establish selective prosecution] is a demanding one." *Armstrong*, 517 U.S. at 463.

With respect to the first of the two required prongs (*i.e.*, discriminatory effect), a defendant must establish that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [the defendant]" and that the defendant "has been singled out" in his case. *Fares*, 978 F.2d at 59 (quoting *Moon*, 718 F.2d at 1229) (brackets in original).

With respect to the second of the two required prongs (*i.e.*, discriminatory purpose), a defendant must establish that the Government's "selection of [the defendant] for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* (internal quotation marks omitted) (quoting *Moon*, 718 F.2d at 1229) (brackets in original). This means more than that the Government acted with an "awareness of consequences." *Wayte*, 470 U.S. at 610 (quoting *Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Rather, it must have "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (internal quotation marks omitted) (quoting *Personnel Adm'r of Mass.*, 422 U.S. at 279). Where a defendant "has not shown that the Government prosecuted him *because of*" his protected status or conduct, his claim fails. *Id.* (emphasis in original).

Consistent with the presumption of regularity, the Supreme Court has explained that "the showing necessary to obtain discovery" in support of a selective prosecution claim "should itself be a significant barrier." *Armstrong*, 517 U.S. at 464. A defendant must meet a "rigorous standard

4

for discovery in aid of such a claim," *id.* at 468, because "the decision to prosecute is particularly ill-suited to judicial review," and "[e]xamining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy," *Wayte*, 470 U.S. at 607. To obtain discovery, a defendant accordingly first "must show some evidence of both discriminatory effect and discriminatory intent." *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam); *see also Fares*, 978 F.2d at 59 (same). "Mere assertions and generalized proffers on information and belief are insufficient" to meet this burden. *Fares*, 978 F.2d at 59.

## ARGUMENT

The Motion fails to meet either prong of the required standard to support a claim of selective prosecution. The defendant spills much ink detailing the origins of the statute charged in Count Three, but he cites no law indicating that the legislative history of a statute has any bearing on either prong of a selective prosecution claim, and he makes no attempt to connect that history to the applicable test. (Dkt. No. 153 (hereinafter "Br.") at 3-4). Stripped of its overheated rhetoric, the Motion presents neither evidence that other similarly situated individuals were not prosecuted, nor evidence that the prosecution was undertaken in "bad faith." *Fares*, 978 F.2d at 60. That is because the defendant's theory of selective prosecution has no basis in reality. Race played no role whatsoever in the decision to seek the charges contained in the Indictment, which instead stemmed from the defendant's decades of criminal conduct. Because the defendant offers nothing more than conjecture to suggest otherwise, the Motion should be denied.

### A. The Defendant Fails to Show That Similarly Situated Individuals Were Not Prosecuted

With respect to the first required prong, the defendant must show evidence that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against" him. *Fares*, 978 F.2d at 59. "A similarly situated offender is one outside the protected class who has committed roughly the same crime under roughly the same circumstances but against whom the law has not been enforced." *United States v. Lewis*, 517 F.3d 20, 27 (1st Cir. 2008) (citing *Armstrong*, 517 U.S. at 465); *see also, e.g.*, *United States v. Smith*, 231 F.3d 800, 811 (11th Cir. 2000) (defendant "must establish that the government could prove beyond a reasonable doubt that someone else had engaged in the same type of conduct, committing the same crime in that or substantially the same manner"); *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996) ("[D]efendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them.").

Here, to allege discriminatory effect, the defendant relies on three examples taken from media articles: Elliot Spitzer, Jerry Falwell, and unnamed clients of the escort service the defendant used at times in connection with some of his charged conduct. (Br. at 5-7). As an initial matter, none of these individuals is similarly situated to the defendant. The Motion misleadingly suggests that anyone who has ever hired an escort is similarly situated to the defendant. (Br. at 7). But that characterization ignores the aggravating factors present in the defendant's case that are not present in the mere hiring of an escort.[1]

---

[1] For purposes of this opposition, the Government uses "escort" interchangeably with "commercial sex worker"—the term used in the Indictment—but notes that not all of the male individuals who were allegedly paid by the defendant to engage in commercial sex worked for the escort service specified in the defendant's Motion.

6

*First*, the defendant violated the Mann Act (18 U.S.C. § 2421 *et seq.*) in the course of sex trafficking multiple victims through force, fraud, and/or coercion. The Indictment's allegations that the defendant coerced multiple victims into commercial sex acts, including with the male escorts who are the subject of Count Three, set the defendant in stark contrast to the examples he cites in his Motion. (Indictment ¶¶ 3, 12, 17). There is not a hint of trafficking or coercion raised in any media coverage the defendant cites regarding Spitzer, Falwell, or the other clients of the escort service the defendant used. That absence of trafficking allegations similar to those against the defendant here defeats any suggestion that those three examples represent similarly situated individuals.

*Second*, the defendant carried out the transportation of victims, and the use of force, fraud, and coercion to cause those victims to engage in commercial sex acts, as part of a broader pattern of racketeering activity. The Mann Act allegations stand together with other racketeering predicates, including not only sex trafficking, but also arson, narcotics distribution, bribery, and obstruction. (Indictment ¶ 13). All of this conduct, which was overlapping and pervasive, furthered the twin goals of feeding the defendant's personal desires while also protecting and even building his reputation. (Indictment ¶¶ 11-13). The defendant used his wealth and power to build an enterprise characterized by violence against victims, employees, and rivals alike. (Indictment ¶¶ 3-5). And he used that same enterprise to fund the transportation of victims and escorts in violation of the Mann Act. (Indictment ¶ 12). Nothing in the Motion suggests that Spitzer, Falwell, or the other clients of the escort service transported escorts as part of a pattern of racketeering activity or that they committed any other crimes whatsoever during the same period when they engaged in commercial sex. That distinction further widens the already vast distance between the defendant's conduct and the examples he raises in his Motion.

*Third*, the Motion conveniently ignores the allegations that the defendant violated the Mann Act not only by transporting male escorts, but also by transporting three victims of trafficking. Examples of other individuals who may have paid escorts but were not involved in the transportation of victims of trafficking are thus inapt. Count Three charges the defendant with transporting Victim-1, Victim-2, and Victim-3, as well as male escorts, for purposes of commercial sex acts. (Indictment ¶ 17). None of the examples cited in the Motion involved the transportation of victims of coerced commercial sex in addition to the transportation of escorts, revealing the absence of yet another aggravating factor from the defendant's proposed comparators.

*Fourth*, the defendant points to nothing establishing that his proposed comparators even satisfy the elements of the Mann Act. The defendant fails to cite any evidence demonstrating that Spitzer, Falwell, or the other clients of the escort service transported anyone across state lines for purposes of commercial sex. And there is no indication that Falwell even paid anyone to engage in sex acts; rather, the article cited in the Motion simply suggests that a third person consensually participated in sex acts with Falwell and his spouse. (Br. at 5).

Far afield from the examples cited by the defendant, a similarly situated individual to the defendant would be someone who engaged in violence and coercion as part of a pattern of racketeering activity and who transported not only escorts but also victims of that violence and coercion. Because the defendant's alleged criminal conduct is considerably more serious than anything he accuses these individuals of, he has failed to identify any similarly situated individuals who were not charged. This is fatal to his claim. *United States v. Parnas*, No. 19 Cr. 725 (JPO), 2021 WL 2981567, at *7 (S.D.N.Y. July 14, 2021) (defendant raising selective prosecution claim must show "that individuals outside the protected class committed roughly the same crime in roughly the same circumstances but were not prosecuted"); *United States v. Avenatti*, 433 F. Supp. 3d 552, 573 (S.D.N.Y. 2020) (denying selective prosecution motion where uncharged individual

8

cited in defendant's motion was not similarly situated); *United States v. Smith*, 673 F. Supp. 3d 381, 405 (S.D.N.Y. 2023) (same).

Moreover, the defendant's allegations against the identified individuals lack evidentiary support, as they are based entirely on his interpretations of public reporting. Such "hearsay" and "anecdotal evidence" are insufficient to meet a defendant's burden even to obtain discovery on a selective prosecution claim. *Armstrong*, 517 U.S. at 470; *see also United States v. Watson*, No. 23 Cr. 82 (EK), 2024 WL 1858199, at *6 (E.D.N.Y. Apr. 29, 2024) ("The anecdotal selection of these individuals, among the millions in the Eastern District of New York, is not sufficient to demonstrate a discriminatory effect."). The defendant cannot meet his burden on a selective prosecution claim merely by making unsupported allegations about a handful of individuals and claiming that they should have been prosecuted too.

Those shortcomings defeat the Motion, but it also bears noting that the Motion does not argue that the entire Indictment is selective, only that the inclusion of Count Three is so. (Br. at 2). A similarly situated individual would thus be one who is also charged with racketeering conspiracy and sex trafficking, but for whom prosecutors declined to charge the Mann Act. The defendant can cite to none. Indeed, there are several recent cases from this District alone in which the Government charged defendants of varying races with the Mann Act in addition to sex trafficking, including the prosecution of wealthy fashion executive Peter Nygard, a white defendant, who was charged in this District with racketeering conspiracy, sex trafficking, and Mann Act violations. *See United States v. Nygard*, 20 Cr. 624 (PGG); *see also United States v. Maxwell*, 20 Cr. 330 (AJN) (charging white defendant with sex trafficking and Mann act violations); *United States v. Romero Granados, et al.*, 16 Cr. 324 (ALC) (charging multiple Hispanic defendants with sex trafficking and Mann Act violations).

This is consistent with numerous other indictments returned in this District charging Mann Act violations together with sex trafficking charges, *see, e.g.*, *United States v. Rivera, et al.*, 19 Cr. 131 (PAE) (charging multiple defendants with sex trafficking and Mann Act violations); *United States v. Purcell*, 18 Cr. 81 (DLC) (charging one defendant with sex trafficking and Mann Act violations); *United States v. Pierre-Louis*, 16 Cr. 541 (CM) (charging one defendant with sex trafficking and Mann Act violations), and with the frequent use of the Mann Act to prosecute defendants accused of sexual abuse, *see, e.g.*, *United States v. Ramos*, 23 Cr. 380 (JGK); *United States v. Paduch*, 23 Cr. 181 (RA); *United States v. Hadden*, 20 Cr. 468 (RMB). These examples demonstrate that prosecutors in this District routinely charge the Mann Act when aggravating factors, including trafficking and other exploitation, are present. If anything, the defendant's case presents uniquely serious aggravating factors given the extensive violence and abuse alleged in the Indictment that violated federal racketeering, trafficking, and forced labor statutes, among others.

At bottom, contentions that a handful of individuals were not criminally charged out of the millions of individuals who reside in or are otherwise subject to potential prosecution in the Southern District of New York are plainly inadequate to meet the requisite threshold to demonstrate discriminatory effect. *United States v. Hommosany*, 208 F.3d 204, 2000 WL 254050, at *2 (2d Cir. 2000) (unpublished table decision) ("In the absence of evidence demonstrating how many individuals the Southern District of New York prosecutor knowingly failed to prosecute, we cannot say that the District Court exceeded its allowable discretion in finding that [the defendant] did not present 'some evidence' of having been singled out."). The defendant fails to cite even a single case in which a court has ordered discovery on selective prosecution claims based on such tenuous allegations, and the Government is aware of none. The lack of precedent supporting the defendant's position is not surprising, as any such finding would defy the strong presumption that prosecutorial decisions are proper by allowing the exception to swallow the rule. *See Armstrong*,

10

517 U.S. at 465. The defendant has failed to offer any evidence whatsoever of a similarly situated individual to demonstrate discriminatory effect, and his Motion should be denied on that basis alone.

### B. The Defendant Fails to Show Discriminatory Purpose

Because the defendant fails to make an evidentiary showing in support of the first required prong, his Motion must be denied. *See, e.g.*, *Bass*, 536 U.S. at 863. But even if the Court were to assume *arguendo* that the defendant had made such a showing, his Motion still fails on the second prong, because the defendant cannot present any credible evidence that would suggest, let alone establish, that the charge in Count Three resulted from any discriminatory purpose.

As discussed above, the second required prong is discriminatory purpose, meaning the defendant must have been selected for prosecution based on "such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Fares*, 978 F.2d at 59 (quoting *Moon*, 718 F.2d at 1229). To prevail on his claim, the defendant must show more than "discriminatory conduct" generally; he must demonstrate that the Government "in *his* case acted with discriminatory purpose." *United States v. Garcia-Pena*, No. 17 Cr. 363 (GBD), 2018 WL 6985220, at *6 (S.D.N.Y. Dec. 19, 2018) (emphasis in original) (quoting *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987)); *see also United States v. Lamar*, No. 14 Cr. 726 (PGG), 2015 WL 4720282, at *6 (S.D.N.Y. Aug. 7, 2015); *United States v. Viera*, No. 14 Cr. 83 (ER), 2015 WL 3833797, at *4 (S.D.N.Y. June 19, 2015).

While the defendant slings accusations of racism throughout his Motion, he identifies no actual "evidence," *Bass*, 536, U.S. at 863, as opposed to "[m]ere assertions," *Fares*, 978 F.2d at 59, that he was prosecuted "because of" his race, *Wayte*, 470 U.S. at 610. Indeed, apart from speculation and conclusory assertions, the defendant cites *no* evidence to make that showing. Nor could he, because race played absolutely no role in the decision to charge the defendant.

11

The Motion claims, without citing any specific examples or evidence, that the Government "has gone out of its way to humiliate" the defendant "and to prejudice the jury pool with pretrial publicity that plays on racist tropes." (Br. at 7). To the extent this refers to the press release and press conference held upon the defendant's arrest, the defendant does not explain what "racist tropes" the former U.S. Attorney Damian Williams supposedly used when announcing the charges. The September 2024 release and conference fully complied with Local Rule 23.1. *See Sean Combs Charged In Manhattan Federal Court With Sex Trafficking And Other Federal Offenses*, Press Release: https://www.justice.gov/usao-sdny/pr/sean-combs-charged-manhattan-federal-court-sex-trafficking-and-other-federal-offenses, Press Conference: https://www.youtube.com/live/lj0pwnDXsWE?si=FQbIOEfqvughfXzC (Sept. 17, 2024). Since then, the U.S. Attorney's Office has not made a single comment to the press, including when obtaining a superseding indictment.

The press release and conference in connection with this case were consistent with the former U.S. Attorney's approach to many other cases charged under his supervision, including the prosecution of white defendants. *See, e.g.*, *Alon Alexander, Oren Alexander, And Tal Alexander Charged In Manhattan Federal Court With Sex Trafficking Offenses*, Press Release: https://www.justice.gov/usao-sdny/pr/alon-alexander-oren-alexander-and-tal-alexander-charged-manhattan-federal-court-sex, Press Conference: https://www.youtube.com/watch?v=3Q77_xFuyN8 (Dec. 11, 2024); *U.S. Senator Robert Menendez, His Wife, And Three New Jersey Businessmen Charged With Bribery Offenses*, Press Release: https://www.justice.gov/usao-sdny/pr/us-senator-robert-menendez-his-wife-and-three-new-jersey-businessmen-charged-bribery, Press Conference: https://www.youtube.com/watch?v=9D_f7Ee0axk (Sept. 22, 2023); *United States Attorney Announces Charges Against FTX Founder Samuel Bankman-Fried*, Press Release: https://www.justice.gov/usao-sdny/pr/united-states-attorney-announces-charges-against-ftx-founder-samuel-bankman-fried, Press Conference:

12

https://www.facebook.com/usaosdny/videos/press-conference-12-13-2022/869604960839839/ (Dec. 13, 2022). Nothing about the announcement of charges in this case reflected racial bias, not to mention a discriminatory purpose in charging Count Three. *See Avenatti*, 433 F. Supp. 3d at 567 (rejecting selective prosecution claim and noting "there is nothing unusual about the U.S. Attorney issuing a press release announcing an arrest" and that press conferences "are conducted with regularity" in this District).

The defendant's remaining accusations fare no better. *First*, he offers nothing more than his say-so that the prosecutors have "leaked" anything at all to the press. (Br. at 7-8). The Motion fails to even identify the supposed leaks, provides no evidence that any such leaks came from prosecutors in this case, and offers no explanation of how any supposed leaks reflect discriminatory purpose in charging Count Three. Indeed, the defendant was previously denied relief in connection with such purported leaks by this very Court. (*See* Dkt. No. 113).

*Second*, the defendant complains that he was not permitted to surrender and was instead arrested by federal agents. But the decision not to permit a defendant charged with committing violent crimes, engaging in obstruction, and sexually exploiting victims is entirely consistent with the practice of the U.S. Attorney's Office in other cases, and again does not provide any basis to infer racial animus with respect to Count Three. *See, e.g.*, *United States v. Alexander, et al*, 24 Cr. 676 (VEC), *United States v. Paduch*, 23 Cr. 181 (RA); *United States v. Maxwell*, 20 Cr. 330 (AJN); *United States v. Ray*, 20 Cr. 110 (LJL). Indeed, that decision was tacitly approved by three different Judges in this District denying the defendant's repeated bail applications and finding that he poses a danger to the community. (*See* Dkt. No. 10, 19, 92).

*Third*, the defendant repeats his prior complaints about the manner in which search warrants were executed at his homes. That argument ignores that the warrants were executed not by the prosecutors in this case but by law enforcement agents, who are not the subject of selective

13

prosecution claims. Setting aside that the use of force to secure a premises, especially when the crimes under investigation include violence and the items to be seized include firearms, is entirely justified, *see, e.g.*, *Muehler v. Mena*, 544 U.S. 93, 95 (2005), it certainly does not demonstrate discriminatory purpose when electing to charge Count Three.

Unsurprisingly, the defendant cites not a single case to support his suggestion that the vague accusations he makes are sufficient to show discriminatory purpose. Further undercutting his position, courts routinely reject speculative selective prosecution claims like the one raised in the Motion. *See, e.g.*, *Watson*, 2024 WL 1858199, at *6-8; *Smith*, 673 F. Supp. 3d at 405; *Parnas*, 2021 WL 2981567, at *7-8; *United States v. Ephron*, No. 24 Cr. 418 (MMG), 2025 WL 524027, at *4-5 (S.D.N.Y. Feb. 18, 2025). The defendant's unsupported accusation of discriminatory purpose by the prosecutors handling this case is simply a desperate attempt to shift the focus away from his own criminal conduct. The defendant's own violent and abusive crimes resulted in his prosecution. Nothing more.

In sum, the defendant has failed to adequately allege that there was anything unusual, let alone improper, about the charging decisions in his case. Because his allegations fall far short of the rigorous showing necessary to make out a *prima facie* case warranting the disclosure of discovery, much less the clear and convincing standard required for dismissal of Count Three for selective prosecution, his Motion should be denied.

**CONCLUSION**

For the reasons set forth above, the defendant's Motion to dismiss Count Three should be denied.

Dated:      New York, New York
            March 4, 2025

                                    Respectfully submitted,

                                    MATTHEW PODOLSKY
                                    Acting United States Attorney

                           By:      _____/s_____
                                    Maurene Comey / Meredith Foster /
                                    Emily A. Johnson / Christy Slavik /
                                    Madison Reddick Smyser / Mitzi Steiner
                                    Assistant United States Attorneys
                                    (212) 637-2324/-2310/-2409/-1113/-2381/-2284