

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

March 13, 2025

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *United States v. Combs*, S2 24 Cr. 542 (AS)

Dear Judge Subramanian:

  The parties respectfully submit this joint letter in response to the Court's Order, dated March 12, 2025, directing the parties to outline the issues the parties believe should be addressed at the pretrial conference scheduled to proceed on March 14, 2025 at 2 p.m., in addition to the defendant's arraignment on the superseding indictment. (Dkt. No. 173).

## Voir Dire

*Government Position:*

  The Government respectfully requests that the Court commence voir dire prior to the scheduled trial date of May 5, 2025, with the intent to present preliminary instructions and opening statements to the jury on May 5, 2025. This schedule will decrease the risk of scheduling issues during trial and does not prejudice the defendant in any way. *First,* if the Court does not commence voir dire prior to May 5, 2025, the trial will likely last beyond the July 4th holiday, creating unnecessary additional challenges in seating a jury. This is based on an estimate (agreed upon by the parties) that voir dire may last up to two weeks, the Government's case-in-chief may last up to approximately six weeks, and the defense case may last up to approximately two weeks. *Second*, conducting voir dire prior to May 5, 2025 will ensure both witness availability and efficient scheduling. Indeed, many of the Government's witnesses must travel from out of state to testify, and a date certain to begin testimony will enable the Government to more efficiently schedule witness travel and avoid unnecessary trial delays. Further, this schedule does not prejudice the defendant. In fact, the defense initially requested a trial date in April or May 2025. (*See* Dkt. No. 29 at 6). Accordingly, the Government respectfully requests that the Court order voir dire to begin on Monday, April 21, 2025 with preliminary instructions and opening statements to be delivered on May 5, 2025.

*Defense Position:*

  The defense proposes that jury selection begin on May 5 and May 6, 2025, with two written questionnaire days. We propose that the Jury Clerk summon 300 jurors on May 5, 2025, to

complete written questionnaires administered and supervised by the Jury Clerk on site at the courthouse. We propose that the Jury Clerk summon an additional 300 jurors on May 6, 2025, to similarly complete the written questionnaires. The parties would then collect and review the completed questionnaires, and lodge for-cause challenges between May 6 and May 8, 2025, with agreed-on challenges reported to the Court on May 9, 2025. On May 12, 2025, we propose proceeding with jury selection from the pool of remaining jurors—to be completed that day, with preliminary instructions and opening statements scheduled to follow or start on May 13, 2025. Commencing voir dire on an earlier schedule would substantially prejudice the defense, as we have been planning to proceed with trial no earlier than May 5, 2025. Among other reasons, we have a tremendous amount of discovery to review and prepare in advance of trial, as the Court is aware. We request a sequestered jury selection process in which the jurors are questioned individually outside the presence of the other jurors. This is consistent with the practice in other high-profile cases of this nature. *See United States v. Raniere*, 18-cr-204 (NGG) (E.D.N.Y.); *United States v. Maxwell*, 22-cr-1426 (AJN) (S.D.N.Y.).

### Jury Questionnaire

*Government Position:*

The Government respectfully requests that the Court refrain from using a juror questionnaire, or in the alternative, use a juror questionnaire limited to only logistical issues (*i.e.* whether any conflicts would prevent a juror from being seated for an 8-week trial), rather than substantive questions.

The Court has set a deadline of April 11, 2025 for the parties to submit proposed jury questionnaire forms. Due to the publicity surrounding the case, however, a juror questionnaire containing substantive questions would likely prolong jury selection and lead to an undue waste of judicial resources that is neither in the interest of the public nor of the prospective jurors. If a juror questionnaire was administered in this case, the Government understands that the process would entail: (1) summoning prospective jurors to the courthouse to read through and complete the juror questionnaire; (2) a review of the juror questionnaires by the Court, the defendant and his counsel, and the Government to determine which jurors, if any, should be removed from the venire for cause; and (3) oral *voir dire* (which would likely involve follow-up questions to clarify the answers provided on the questionnaires). This three-step process would likely take at least several days, if not longer. An oral *voir dire* would eliminate the first two steps while still appropriately disposing of for-cause challenges. Jury selection would begin with the oral questioning of prospective jurors and the parties would propose juror strikes the same day. In-person questioning would also allow the Court and the parties to directly assess the jurors and their responses—and to ask follow-up questions on the spot. Such a process would be more expeditious and less cumbersome, and would lead to the same outcome: the selection of a fair and impartial jury.

In the alternative, a questionnaire limited to scheduling conflicts is most appropriate in this case. *See, e.g., United States v. Nadine Menendez*, S4 23 Cr. 490 (SHS), Dkt. 705 (S.D.N.Y. January 21, 2025) (imposing juror questionnaire for the limited purpose of assessing juror availability for an 8-week trial); *United States v. Parnas*, No. 19 Cr. 725 (JPO), Dkt. 275 (S.D.N.Y. Nov. 4, 2021) (denying defense request for written questionnaire, finding that "questioning the

potential jurors in person is more reliable and efficient."); *United States v. Lawrence Ray*, 10 Cr. 110 (LJL) (S.D.N.Y. January 5, 2022) (denying the defendant's request for a juror questionnaire in high-profile sex trafficking case holding that a juror questionnaire would not be "appropriate" and that "the way to ensure a fair and impartial jury for every party is to conduct oral *voir dire* and not to use a jury questionnaire."); *United States v. Laurence Doud*, 19 Cr. 285 (GBD) (S.D.N.Y. January 10, 2022) (denying the defendant's request for a juror questionnaire in high-profile case involving top executive of a pharmaceutical distributor).

*Defense Position:*

The defense requests the use of a written questionnaire, which we understood the Court had already ordered, based on its January 8, 2025 Order (Dkt. 125) setting a deadline for submitting proposed questions. We will propose a questionnaire on the date set by the Court.

"District courts routinely employ questionnaires to facilitate voir dire in a number of circumstances," and the "use of such a procedure as a preliminary screening tool falls well within the district court's broad discretion." *United States v. Quinones*, 511 F.3d 289, 299-300 (2d Cir. 2007). A questionnaire is especially appropriate where, as here, "there has been extensive pre-trial publicity." *Id*. at 299; *see also United States v. Sattar*, 395 F. Supp. 2d 66, 70 (S.D.N.Y. 2005) (using a juror questionnaire "[d]ue to the extensive publicity surrounding this case"); *United States v. Stewart*, 317 F. Supp. 2d 432, 435 (S.D.N.Y. 2004) (using a juror questionnaire "[b]ecause the extraordinary publicity surrounding the case presaged difficulty in finding an unopinionated jury pool"), *aff'd,* 433 F.3d 273 (2d Cir. 2006). The pretrial publicity in this case has been nothing short of extraordinary. It has been incredibly one-sided in favor of the government's view of the evidence (and often worse, in light of the many false and unfounded claims being filed by civil plaintiffs) and against Mr. Combs. Potential juror bias must be rigorously ferreted out in the jury selection process so the parties can proceed with an impartial jury and receive a fair trial. Indeed, the Second Circuit has not hesitated to reverse District Courts when juror bias in not adequately addressed during the jury selection process. *See United States v. Nieves*, 58 F.4th 623 (2d Cir. 2023).

This, too, is a widely used practice in other high-profile cases of this nature. *See United States v. Raniere*, 18-cr-204 (NGG) (E.D.N.Y.); *United States v. Maxwell*, 22-cr-1426 (AJN) (S.D.N.Y.). Contrary to the government's view, a wisely administered questionnaire will make jury selection quicker and smoother. Finally, issues of potential juror bias are of paramount concern in this case due to repeated government leaks and other prejudicial issues that we have already brought to the Court's attention.

**Defense Discovery**

*Government Position:*

To date, the Government has made twenty-five discovery productions to the defense. However, the Government has yet to receive any discovery from the defense pursuant to its obligations under Rule 16(b)(1). On October 7, 2024, at the time of the Government's first discovery production in this matter, the Government requested, in writing, reciprocal disclosures

from the defendant pursuant to Rule 16(b). Since then, the Government has repeatedly renewed its request, in connection with subsequent discovery productions. However, as of March 13, 2025 at 12 p.m., the Government has yet to receive any discovery from the defense pursuant to its obligations under Rule 16. The Government is aware that the defense obtained Rule 17(c) subpoenas which were so-ordered by the Court and has requested the production of those records from the defense. However, the defense has informed the Government that it does not intend to make *any* disclosures unless and until it has determined that such material is certain to be part of its case-in-chief at trial—a determination that it has not yet made with respect to any of the records it has received.

The Court should order the defense to promptly produce any Rule 16(b) materials in its possession, including Rule 17(c) subpoena returns. Pursuant to Rule 16(b), when a defendant requests disclosure under Rule 16(a)(1)(E) and the Government complies, the defendant must make reciprocal disclosures. *See* Fed. R. Crim. P. 16(b). *See also United States v. Ryan*, 448 F. Supp. 810, 811 (S.D.N.Y. 1978), *aff'd*, 594 F. 2d 853 (2d Cir. 1978) ("Since the defendant has availed himself of the strategy to obtain discovery of the government, he must comply with the requirement for reciprocal discovery."). Consequently, courts in this District and elsewhere routinely require defendants to produce Rule 16(b) materials before defendants have made decisions about the scope of any defense case, let alone whether a particular piece of evidence will be offered at trial. *See, e.g.*, *United States v. Javice*, 23 Cr. 251 (AKH), Dkt. No. 222 (S.D.N.Y. Jan. 23, 2025) (ordering production of Rule 16(b) materials, including Rule 17(c) subpoena returns, approximately one month prior to trial); *United States v. Avenatti*, No. 19 Cr. 374 (JMF), Dkt. 213 (S.D.N.Y. Jan. 7, 2022) (requiring defense production under Rule 16 to begin approximately two weeks before trial, over the defendant's objection); *United States v. Maxwell*, No. 20 Cr. 330 (AJN), Dkt. 297 (S.D.N.Y. June 2, 2021) (setting a defense Rule 16 deadline of three weeks before trial, over the defendant's objection).[1]

With respect to Rule 17(c)(1) material, the rule makes no reference to *ex parte* subpoena returns and instead states that materials will be returned directly to the Court, which may permit "the parties and their attorneys to inspect all or part of them." Because the Court's authority should not be invoked to permit trial by ambush, "[i]t is the majority view of the courts that the structure of Rule 17 requires the court to allow both parties to view the documents returned under the subpoena." *United States v. Litos*, No. 12 Cr. 175, 2014 WL 806022, at *5 (N.D. Ind. Feb. 24, 2014); *accord United States v. Jenkins*, 895 F. Supp. 1389, 1394 (D. Haw. 1995) ("Rule 17(c) makes no provision for allowing only one party access to the documents"); *United States v. Hart*, 826 F. Supp. 380, 381 (D. Colo. 1993) (the plain language of Rule 17(c) "negates any assumption" that materials should be returned *ex parte*). Moreover, "Rule 17(c) was not intended to provide an additional means of discovery." *Bowman Dairy Co. v. United States*, 341 U.S. 214, 220 (1951). Indeed, "courts must be careful that rule 17(c) is not turned into a broad discovery device, thereby undercutting the strict limitation of discovery in criminal cases found in [Rule] 16." *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. Feb. 17, 1995) (internal quotation marks omitted)). Rule 17(c) subpoenas, including those issued by criminal defendants, must meet

---

[1] The obligation to produce reciprocal discovery is separate and distinct from a request for the defendant to identify witnesses and trial exhibits, and to produce Rule 26.2 material, in advance of trial. The obligation to produce reciprocal discovery is also a continuing one.

the tests of "(1) relevancy; (2) admissibility; [and] (3) specificity." *United States v. Nixon*, 418 U.S. 683, 700 (1974); *see also United States v. Conway*, 615 F. App'x 46, 48 (2d Cir. 2015). Further, "because Rule 17(c) subpoenas are intended to obtain specific materials that the party expects to offer into evidence, Rule 16 would oblige the party to make the materials available to the other side anyway." *United States v. St. Lawrence*, No. 16 Cr. 259 (CS), Dkt. 66 (S.D.N.Y. Dec. 22, 2016); *see also United States v. Londonio*, No. 17 Cr. 89 (CS) (S.D.N.Y. Jan. 3, 2019), Tr., at 77-78 (similar). In other words, assuming that the Rule 17(c) subpoenas here were properly issued, the responsive materials are necessarily subject to disclosure under Rule 16.

An order requiring the defendant to promptly produce Rule 16 material (including responses to Rule 17(c) subpoenas) is also necessary for fairness. The defendant appears to be taking the position that he need not produce any materials until an unidentified future date, if ever. That position does not comport with the defendant's reciprocal discovery obligations, and is not in the interest of justice. *See, e.g.*, *United States v. Crowder*, 325 F. Supp. 3d 131, 136 (D.D.C. 2018) (Rule 16 is designed "to avoid unfair surprise and unwarranted delay by providing both the government and the defense with a broad, reciprocal, right to discovery."); *United States v. Rajaratnam*, No. S2 09 Cr. 1184 (RJH), 2011 WL 723530, at *5 (S.D.N.Y. Feb. 25, 2011) ("A defendant would always like more information about the government's case before revealing anything about his or her own, but Rule 16 conditions a defendant's disclosure obligations on the government's having made certain specified disclosures, not on the government's laying open its entire case or the defendant's satisfaction.").

Accordingly, the Government respectfully requests that the Court order the defense to promptly produce any Rule 16(b) materials in its possession, including Rule 17(c) subpoena returns, in accordance with the Federal Rules of Criminal Procedure, and to produce reciprocal discovery on a continuing basis thereafter. Such productions will serve to prevent the defendant from reaping unfair tactical advantage by violating the Rules, and avoid any unnecessary trial delays. *See* Fed. R. Crim P. 16(d)(2) (granting district courts broad discretion to fashion remedies if the defendant fails to comply with Rule 16); Fed. R. Crim. P. 2 ("These rules are to be interpreted to provide for the just determination of every criminal proceeding" and "to secure simplicity in procedure and fairness in administration"). Should the defendant not comply with the deadline set by the Court, the Court should bar the defendant from using at trial any materials not produced. *See United States v. Weiss*, 930 F.2d 185, 199 (2d Cir. 1991) (affirming preclusion of evidence defendant had failed to produce and explaining that permitting defendant to use documents the prosecution had not timely seen "would have given the defense an unfair advantage"); *United States v. Ortega*, No. 22 Cr. 91 (RA), Dkt. 93 at 2 (S.D.N.Y. Jan. 10, 2023) ("Should Defendant fail to produce material subject to his disclosure obligations under Rule 16, he will be precluded from using such evidence during his case-in-chief.").

*Defense Position:*

The defense is aware of its obligations under Rule 16, fully intends to comply with them, and never suggested otherwise. In fact, during a recent meet-and-confer, the defense explicitly informed the prosecutors that we would be complying without our Rule 16 obligations. To the extent the Court is inclined to impose a deadline for additional disclosures, we would suggest a deadline closer to trial, and after the government has produced its exhibit list, as been done in other

cases in this district.  *See*, *e.g.*, *United States v. Shvartsman et al.*, 23-cr-307 (LJL), Dkt. 85 (S.D.N.Y. 2024) (ordering defense Rule 16 productions due four days after government exhibit and witness list, and five days before defense exhibit and witness list); *United States v. Bankman-Fried*, 22-cr-673 (LAK), Dkt. 173 (S.D.N.Y.) (ordering defense Rule 16 productions due ten days after government exhibit and witness list).  Such a deadline is more appropriate to ensure that we have time to determine, in response to the government's case, what materials we plan to use in our case-in-chief.  Because the government has the burden of proof, the defense has not made any decisions about what evidence it might introduce should it put on a case-in-chief, and thus should not be compelled to disclose materials to be admitted as part of the defendant's case-in-chief at this stage.  Indeed, until the defense is aware of the government's witnesses and proposed exhibits, we are not in a position to know what, if any, materials will be used as part of our case-in-chief.  That is why courts often set deadlines for defense Rule 16 productions at a date after the government discloses its witness and exhibit lists, as in the above examples.  In addition, if the defense obtains any evidence it plans to introduce in its case-in-chief after any such deadline, such evidence would be produced promptly.

Moreover, to the extent the government is seeking preclusion of any evidence disclosed after any such deadline (*see supra* at 5), we note that the government itself has repeatedly violated the December 31, 2024 deadline for producing all of its discovery, *see* 10/10/24 Minute Entry.  It has produced an enormous volume of discovery (approximately 46.36GB) after that deadline and continues to do so, despite the trial preparation challenges the defense team already faces due to the unprecedented amount of discovery the government had already produced by the deadline.  We do not know whether there is any excuse for that, or when the government obtained the materials it has produced since that deadline, but obviously any remedies for violations of disclosure deadlines must be applied in an even-handed manner to both parties.

Finally, the government's argument regarding *ex parte* returns of Rule 17(c) materials is inconsistent with the practice of courts in this District, and unsurprisingly, unsupported by any controlling authority.

Nevertheless, the defense will produce the material it has obtained through Rule 17 subpoena tomorrow, even though we do not presently intend to introduce this material as part of the defense case-in-chief.

Specifically, this production will include a subpoena response by CNN with copies of surveillance footage from the March 2016 Intercontinental Hotel incident.  The defense has confirmed, through a forensic video analysis of the CNN footage that the government provided to this Court and of the footage provided by CNN in response to the defense subpoena, that all CNN video footage was substantially altered in significant respects.  This includes covering the time stamp and then changing the video sequence.  It also includes speeding up the video to make it falsely appear that the actions in the video are taking place faster than they are.  As a result, the CNN videos do not fairly and accurately depict the events in question.

Finally, the defense has confirmed that CNN purchased the only known copy of the Hotel's surveillance footage, uploaded that footage into a free editing software, altered the video; and then destroyed the original footage even though it knew about and repeatedly reported about the federal

Page 7

investigation.² This will all be the subject of an upcoming motion in limine regarding the CNN derived footage. We will be disclosing the subpoenaed materials to the government so it will be prepared to respond to the defense motion on this subject.



---

² https://www.cnn.com/2024/03/25/entertainment/sean-combs-home-search/index.html; https://www.cnn.com/videos/entertainment/2024/03/25/diddy-house-raided-sean-combs-los-angeles-miami-vpx.cnn.



## Motions

The parties will be ready to answer any inquiries from the Court about pending motions.

## Final Pretrial Conference

*Government Position:*

Pursuant to the Court's January 8, 2025 order, *see* Dkt. No. 125, the parties' motions in *limine* will be fully briefed by April 11, 2025. The Government therefore respectfully requests that the Court schedule a final pretrial conference for the week of April 14, 2025. Such a schedule will permit the parties to incorporate the Court's rulings sufficiently in advance of trial.

*Defense Position:*

The defense requests that the final pretrial conference be scheduled for the week of April 28, 2025. Such a date would fall after the parties' final pretrial filing deadline (April 25, 2025) and will permit a more productive final pretrial conference.

        Respectfully submitted,

        MATTHEW PODOLSKY
        Acting United States Attorney

By:   /s                 
     Maurene Comey / Meredith Foster /
     Emily A. Johnson / Christy Slavik /
     Madison Reddick Smyser / Mitzi Steiner
     Assistant United States Attorneys
     (212) 637-2324/-2310/-2409/-1113/-2381/-2284

By:   /s                 
     Marc Agnifilo
     Teny Geragos
     (646) 205-4350