P3E5comC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v.                                24 Cr. 542 (AS)

SEAN COMBS,

    a/k/a "Puff Daddy,"
    a/k/a "P. Diddy,"
    a/k/a "Diddy,"
    a/k/a "PD,"
    a/k/a "Love,"

                Defendant.

------------------------------x

                                        New York, N.Y.
                                        March 14, 2025
                                        2:   p.m.

Before:

                    HON. ARUN SUBRAMANIAN,

                                        U.S. District Judge

                        APPEARANCES

MATTHEW PODOLSKY
      United States Attorney for the
      Southern District of New York
BY:   EMILY JOHNSON
      MADISON SMYSER
      MITZI STEINER
      MEREDITH FOSTER
      MAURENE COMEY
      Assistant United States Attorneys

P3E5comC

APPEARANCES
(continued)


AGNIFILO INTRATER LLP
     Attorneys for Defendant
BY:  MARC AGNIFILO
     TENY GERAGOS
     ALEXANDRA SHAPIRO
     ANNA ESTEVAO
     JASON DRISCOLL


ALSO PRESENT: Sean Quinn, Homeland Security Investigations

P3E5comC

(Case called)

THE DEPUTY CLERK:  Will the parties, starting with counsel for the government, please state their appearances for the record?

MS. STEINER:  Good afternoon, your Honor.  Mitzi Steiner for the government, and joined with me at counsel's table is AUSA Maurene Comey, AUSA Emily Johnson, AUSA Madison Smysser, AUSA Meredith Foster and Special Agent Sean Quinn.

THE COURT:  Good afternoon.

MR. AGNIFILO:  Yes.  Good afternoon, your Honor.  Mark Agnifilo, you have Teny Geragos, you have Sean Love Combs, you have Alexandra Shapiro, you have Anna Estevao, and you have Jason Driscoll, all for Mr. Combs.

Good afternoon, your Honor.

THE COURT:  Good afternoon.

Good afternoon to you, Mr. Combs.

THE DEFENDANT:  Good afternoon.

THE COURT:  So I think the first order of business is arraignment on the superseding indictment.  Is that correct, Ms. Steiner?

MS. STEINER:  That is, your Honor.

THE COURT:  Mr. Combs, I am going to ask you a few questions.  If you want to stand up, you can.

THE DEFENDANT:  Yes.

THE COURT:  If you would like to remain seated, that's

P3E5comC

up to you.

THE DEFENDANT:  Yes.

THE COURT:  Have you seen a copy of the March 6, 2025 superseding indictment?

THE DEFENDANT:  Yes, I have, sir.

THE COURT:  Have you discussed it with your lawyers?

THE DEFENDANT:  Yes, I have, sir.

THE COURT:  Would you like me to read it or summarize it for you?

THE DEFENDANT:  I'm fine.

THE COURT:  The way we talk as lawyers is that you waive the public reading of the indictment.  Is that true?

THE DEFENDANT:  Yes, sir.  I waive the public reading of the indictment.

THE COURT:  Do you understand the charges in the indictment?

THE DEFENDANT:  Yes, I do.

THE COURT:  How do you plead to the charges in the superseding indictment?

THE DEFENDANT:  Not guilty.

THE COURT:  All right.  The plea of not guilty will be accepted and entered into the court record.  You may be seated.

THE DEFENDANT:  Thank you.

THE COURT:  So now let's get to the question of trial logistics.

Thank you to both sides for the very helpful joint letter.  Let me tell you what I am thinking, and then I will let each side tell me what I have gotten totally wrong and we can try to come up with a good solution here.

So, what I am thinking is that we will use jury questionnaires which will be submitted by April 11, and the parties should meet and confer to eliminate any disputes as to the content of those questionnaires and they will be administered by the jury office on April 28 and April 29, and if necessary, April 30th.

Mr. Agnifilo, you indicated that you wanted to get in 300 jurors per day?  I don't know if we can hit that number and that's why I have the third day, because I think we may need the third day, but the goal is to get it done on April 28 and April 29.  The completed questionnaires will be copied and distributed to defense counsel by the government.  We will come back for voir dire on May 5, with an eye to starting trial on May 12.

So, we are moving the opening statements a week later.  I think that's what the defense had suggested.  We are going to use jury questionnaires but I think the only adjustment is I don't think we are going to be able to do all of that if we were to start on May 5, so in light of some of the concerns the government had raised, we will move that up and so effectively we will be starting with opening statements a week later than

P3E5comC

we had thought.  I think that should accommodate the concerns on both sides.

With that, Ms. Steiner, anything you wanted to address?  And I will have an order that will have the specific timelines for all of the things.  I didn't want to get into it here, you will see it in the order, and of course if there is any issue with that, you can let me know?

MS. STEINER:  Thank you, your Honor.

That schedule should work for the government barring, again, the scheduling issues with witnesses that we flagged for the Court.  Of course, that is our primary focus.  Certainly, moving the start date to May 12 I think is helpful, but just again to make that clear for your Honor, that the additional week there, may end up making it some degree of difference.

THE COURT:  I see your point and it is a week and I think given that we have a firm date when we will be starting, if you see trouble on the horizon, you can make adjustments to accommodate that.

MS. STEINER:  Understood.  Thank you, your Honor.

THE COURT:  Mr. Agnifilo, anything to add?

MR. AGNIFILO:  Your Honor, can I speak with my colleagues and Mr. Combs for a second?

THE COURT:  You may.

MR. AGNIFILO:  Thank you.

(Defendant and counsel conferring)

P3E5comC

MR. AGNIFILO:  I think that is a very workable solution and we thank the Court.

Would we have the opportunity -- does your Honor have a view on what we call sort of sequestered voir dire, meaning like rather than -- when we speak to the jurors rather than doing it in a group, that we do it individually?  I think that might be helpful, given some of the issues that we are all going to be contending with at the trial.

THE COURT:  Yes.  We will do a sequestered voir dire.

MR. AGNIFILO:  Thank you, Judge.  I appreciate that.

THE COURT:  And some of the other details will be in the order that we issue, and as with everything, if you see something in the order and you have a dispute about it, just bring it back to the Court and we will work this out.  But I do appreciate the parties bringing this up in advance so that we can try to eliminate any logistical hurdles well in advance of the start of trial.

So the next issue is defense discovery.  As I understand, the defense's position is why don't we do something such as what was done in the Eisenberg case, and given the deadlines here, which I understand is the government's witness and exhibit lists are currently due on April 14, you would say 10 days later would be a reasonable time frame for the defendant's discovery.  Is that fair?

MR. AGNIFILO:  Yes, Judge.

So, let me address it and in somewhat of a specific way.  So, there are certain items that we are going to give to the government sooner rather than later -- probably today -- because I think they might be ripe for a motion and the motion is going to be related to the CNN tape.  And so, the government is right, we do have something that we have subpoenaed.  We have it.  I don't know that we are going to use it in our case-in-chief but we are going to put that part of Rule 16 aside for a second and we are going to provide it to the government because we are going to preview with the government certain issues we have that probably are going to end up in a motion to your Honor.

So, in terms of that, we are going to give that to the government sooner rather than later.  And then, in terms of other things, certainly when we get the 3500 we will have a much better idea of what, if any, materials we want to use in the defense case-in-chief.

THE COURT:  And so you are getting the 3500 material on March 21st; right?

MR. AGNIFILO:  Yes.

THE COURT:  You will have the witness and exhibit lists by April 14.

MR. AGNIFILO:  Right.

And I didn't want to ignore the last part of your Honor's question.  Yes, we are suggesting the same procedure.

P3E5comC

What we had in our letters was essentially from the Eisenberg case.

THE COURT:  I will hear Ms. Steiner, but my idea was to impose that.  It looks like you are going to get some of the materials in advance, but 10 days after you put in the witness and exhibit list, then I will require the defense to provide its reciprocal discovery.  If you want to provide the witness and exhibit lists earlier, and you might be in a position do to do that, given that you are turning over the 3500 material on March 21st, then you can accelerate the defense's reciprocal discovery obligation.  So, I am going to key it off when you turn over the exhibit and witness lists.  If you want to do it sooner then they'll have to turn their material over sooner.

MS. STEINER:  Thank you, your Honor.

THE COURT:  So then let me ask, Ms. Steiner, on the CNN video, is there an issue or is there not an issue, meaning what are you going to do with this video?  Maybe you can help me with some of the background because Mr. Agnifilo says there is a motion that is incoming, sooner than later, and I want to get an understanding of what we are going to be dealing with.

MS. STEINER:  Thank you, your Honor.

To be clear, we haven't seen what the defense has which is why we have been requesting that the defense produce to us their Rule 17(c) subpoena returns, and it sounds like from what defense is representing, we should be receiving that

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

later today and I think we will be in a much better position to have an understanding of what their potential motion may include after we review those materials.

Certainly the CNN video is something that, in the government's view, is going to be direct evidence of its case, it is something that multiple witnesses are expected to testify regarding at trial. And so, to whatever extent the defense is seeking to keep that evidence excluded, the government will certainly have a very strong argument as to why that evidence is critical to its case and as to why it could be authenticated by several witnesses.

THE COURT: So you are planning to put in as an exhibit and not merely use it as an illustrative aid during testimony?

MS. STEINER: That is correct, your Honor.

THE COURT: We don't have the original of the surveillance footage; is that correct?

MS. STEINER: That is partly correct, your Honor. We have, as your Honor is very aware, the CNN video, which is made up of whatever video CNN received and then publicized. We, in addition, have video that is produced to us from one witness who took a copy on a device of the video surveillance footage so it is not the original footage, but it depicts the original footage. So, that is also something the government intends to seek to admit in its case at trial.

P3E5comC

THE COURT:  I take it that the government is willing, once it receives what the defense might turn over today, to meet and confer with them to see if there is a way to come to an agreement on the video that would be used during trial.  You are not trying to use any kind of video that would be in any way deceptive or not have an accurate view of the events and the date in question.

MS. STEINER:  Of course not, your Honor.  I think we are more than happy to meet and confer on this issue.  I think it has been fairly clear from the defense briefing that this is a key piece of evidence that they are trying to keep out and so it is not clear to me that the parties will be able to reach agreement, but we can certainly attempt to do so.

THE COURT:  Fair enough.

Mr. Agnifilo?

MR. AGNIFILO:  Yes, your Honor.

I quarrel with the way the government puts it.  It is a piece of evidence that is deceptive, that is not in accordance with the actions that took place.  And just so your Honor understands the whole playing field and I think this has probably been briefed, there was CNN footage that was broadcast.  There was CNN footage that was given to your Honor and other courts as part of the bail application.  And, your Honor, what we gave to your Honor was quite some time ago now, was about a 20-minute initial presentation from a forensic

P3E5comC

visual examiner that showed all the inaccuracies, in other words things taken out of order, it was re-sequenced, certain action was sped up.

What seems to have happened is that a source -- and I won't get into who, we both know who it is -- a source gave CNN footage -- hotel footage to CNN.  CNN ran that footage through a free editing software and what our visual expert is saying is that the editing software changed the nature of the action, it made it much quicker in certain instances, up to double-speed or 50 percent quicker, changing that part.

The other part of the CNN video that was broadcast took things out of sequence.  And then, for certain of the broadcasts covered up -- intentionally, not intentionally, I'm not here to say -- covered up the time stamp.  So until you can actually do a visual comparison, you couldn't tell it was taken out of sequence.

At some point both parties will have all of the footage, we will have the iPhone footage, we will have the original CNN footage, what we call the original.  CNN seems to have deleted the footage that it got from the source and as a result there is no information that we can glean about when it was created, how long it was created, where it was created, things like that, which you typically get with visual evidence. That has all been stripped from it.  At a certain point we will all have all of the footage and we will either agree or

P3E5comC

disagree.  From what I am hearing from the government, they're not going to agree because they think it is an important piece of evidence.  From the defense standpoint, it is a misleading piece of evidence, it is a deceptive piece of evidence, it is a piece of evidence that's been changed.  So, it might be that we are never able to agree and then we will bring the issue to your Honor.

THE COURT:  I think the key there is what the "it" is.  Because if, for instance, you were able to show and convince the government that the video had been sped up, or that it was out of sequence, then a possible solution would be to slow it down and put it in the right sequence, or provide any other context based on the materials that you have uncovered or your expert's analysis, such that what went in and before the jury would be, in your view, an accurate portrayal of what the video was.  And so, that is what I am suggesting.

Now, you may have a fundamental issue with the admission of the video, meaning even if it was totally accurate we don't think it is admissible for whatever reason so obviously you will raise those issues if you have them, but I am hearing openness to come to a compromise to avoid some of the issues you have raised.  We will see if you are able to reach that.  If not, then you will file an appropriate motion.

MR. AGNIFILO:  Yes, Judge.  Thank you.

THE COURT:  So then that takes us to Rule 413

briefing.  And please let me know if I am missing something.  I think we are at Rule 413 briefing at this point.

Mr. Agnifilo, why do you need two sets of motions that was my question.

MS. SHAPIRO:  Your Honor, if I can address this?

THE COURT:  Of course.

MS. SHAPIRO:  We have actually, since the letter, had discussions with the government and I think we have reached agreement that there will be one set of motions, the defendant will be the movant, and we would propose, jointly, a schedule in which we file our motion on March 19, the government responds on March 26, and we file our reply on March 28, if that is acceptable to the Court.

THE COURT:  So ordered.  Great.  We will include that in our order.

Anything else to address on the Rule 413 issue?

MS. STEINER:  Not from the government, your Honor.

MR. AGNIFILO:  We do have one issue, your Honor.

Your Honor ordered that the government should provide the identities of the people in the enterprise letter and the government did that, in large part.  Since then we got the 404(b) letter and we went back to the government and our view was that the spirit of your Honor's order wasn't limited -- the order was limited to the enterprise letter because that is the only thing that had been filed yet.  I think it was the day

P3E5comC

after your Honor's order, which if I remember correctly was March 6, on March 7 we got this 404(b) letter.  We went to the government and we said, well, it seems to be consistent with the spirit of the Court's order, they should tell us the folks who are anonymized in the 404(b) letter, and the government's position was that we would wait until the 3500 material which is a week from today.

So, your Honor made the observation -- that we wholeheartedly agree with -- every day means something.  It would be very helpful to get that information now rather than combing through the 3500 for it.  I don't see a difference as to why we should know the identities of the people in the enterprise letter but not in the 404(b) letter, especially if we are going to be briefing that in short order, which we will.

So, I just wanted your Honor possibly to consider extending the order to go from just the enterprise letter to also the 404(b).  And I would point out that our briefing would at least start before the 3500 material was due.

THE COURT:  So just to be clear, what you are looking for is the disclosure of the individuals' identities on an attorneys eyes only basis of the approximately 20 other individuals identified in the March 7 letter; right?

MR. AGNIFILO:  That's correct, your Honor.  Thank you.

THE COURT:  Ms. Steiner, is there any issue with that?

MS. STEINER:  There is, your Honor, and I just want to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P3E5comC

take a step back.

We certainly agree with Mr. Agnifilo that every day matters not just for the defense but also for the government and, frankly, for these witnesses.  The victims that are outlined in the government's 413 letter are very distinct from the identities that were disclosed in its enterprise letter.  The enterprise letter was conduct that the government intends to prove up at trial, whereas the 413 notice was specifically to put the defense on notice that it intended to seek --

MS. SHAPIRO:  I'm sorry, your Honor.  I normally would not interrupt but I thought this part of the letter was under seal.  So I just wanted to remind the Court of that and maybe --

THE COURT:  What is the basis for sealing?  What is the basis for sealing this discussion at this level?

Ms. Steiner, is there any basis?

MS. STEINER:  I don't have any other -- I used it, the Court referred to the letter, and I think it is entirely appropriate to refer to the letter.

MS. SHAPIRO:  I would just ask if counsel could be a little vaguer.  We had a discussion before court started about this and it is a little bit, seems to have gone beyond the scope of --

THE COURT:  We are pretty vague.  So why don't we proceed.  We are not getting into the nuts and bolts.  I

P3E5comC

appreciate the heads up, Ms. Shapiro.  I did see that in the parties' letter.  I did have a question what was the basis for sealing in the first place because it wasn't explained in the letter.  However, for present purposes, I think we are speaking at a very high level so there shouldn't be any concern that would require any kind of sealing.

So, at that very high level?

MS. STEINER:  Of course, your Honor.  Thank you.

I was explaining the distinction here between the enterprise letter and the notice.  The notice here is just teeing us up for motion practice, essentially for the Court to decide whether or not any of these individuals will be permitted to testify at trial and the Court is going to adjudicate that in fairly short order, we have now a briefing schedule.

The reason that I think it is important to not have these identities disclosed sooner than is absolutely required is because many of these individuals, it is not an overstatement to say are incredibly frightened by the prospect of not just becoming known publicly but having their names disclosed to the defense.  So, there is additional privacy interests that come into play for these individuals who may never get their day in court that doesn't come into play with respect to the enterprise letter.

As Mr. Agnifilo was talking I was trying to think

through a potential compromise here, and given that the 3500 deadline is in just a week's time, I think what might be an appropriate compromise would be for the government to produce a list disclosing the identities of the individuals listed in its notice so that no one has to go through, sifting through 3500 to try to find these names.  The government will produce it on an attorneys eyes only basis as it is producing the rest of 3500 on that date.  Hopefully, that will aid the defense in its briefing and any additional issues that the parties need to confer on.

THE COURT:  Mr. Agnifilo or Ms. Shapiro?

MR. AGNIFILO:  Yes.

THE COURT:  As to the motion, now the parties have done some good work working on a motion schedule.  Do you need to know the identities for the motion?

MR. AGNIFILO:  I believe we do.  I believe we do, only because one of the relevant issues that I think the Court is going to have to consider is what would be the universe of contrary evidence as to all of these events and people.  So, in other words, it is not enough to say -- the attacks don't usually relate to purely legal means.  In other words so if you know who the people are, we would know there is contrary evidence that could be in the form of these other witnesses or this other evidence.  That would be relevant to your Honor's decision because if this were to come in, it would involve such

P3E5comC

and such amount of time.

So I do think the identities are important.  I think otherwise we are sort of -- we are left to sort of have one hand behind our back because we can't engage the facts the way we need to engage the facts because we are not sure who the people are.

Now let me just step back one more second.  For some of them we think we know but for some of them we don't, and for the ones that we don't, we really don't have anything, enough of value to share with the Court as to why this evidence is not relevant or should be precluded under 403, or would take too long to develop in terms of witnesses and evidence.  And so, we are really hamstrung in what we are able to argue if you don't know who the people are.

THE COURT:  All right.  I'm going to order the government to provide that notice that, Ms. Steiner, you referred to, by Monday.  The reason is at this juncture -- now, these individuals have not been identified previously, but we are at the point where they will be identified on an attorneys eyes only basis this coming Friday and the parties have agreed to motion practice that is going to commence starting on Wednesday.  Under those circumstances, it seems like we should have disclosure of the identities so that the briefing and the motions can be adjudicated fairly and with all the facts on the table without any kind of guesswork that would perhaps hold

P3E5comC

things up.  So, we will put that, and make that, part of our order.

MS. STEINER:  Your Honor, if I can just make one additional proposal --

THE COURT:  Of course.

MS. STEINER:  -- so your Honor has all options available in making this decision?

I think another option that could obviate potentially the need for having to have this early disclosure is if the government were to move first, for the government to move on March 19, in which case the defense would only be responding in opposition on March 26, which would be five days after the government's 3500 deadline, would be a sufficient amount of time for them to take into account the identities of those individuals.

THE COURT:  I hear you, but given the parties have worked out an arrangement on the briefing schedule, I am going to leave that to the parties' agreement and I think this makes sense.  Again, we are talking about four days.  That is what we are talking about here.  And I think under the circumstances, with everything that is happening in this case, it is worth it to have that disclosure so that all of the briefs that are going to be submitted can be keyed in on the issues that matter.  But I appreciate what you said, Ms. Steiner.

So that takes us to the final pretrial conference is

P3E5comC

the only other issue I have.  I do have one question on the crime fraud motion, the privilege motion.

So as to the privilege motion, and we can talk about it at a very high level, am I correct, Ms. Steiner, or whoever wants to speak to this, that the only documents at issue now are the Group A documents?

MS. STEINER:  Yes, your Honor.

THE COURT:  How many documents are we talking about?

MS. STEINER:  One moment, your Honor?

(Counsel conferring)

MS. STEINER:  I don't have the exact number, your Honor, but I think a good approximation would be under 30.

THE COURT:  Under 30.

Could you provide those to chambers for in camera review?

MS. STEINER:  Our filter team certainly can, your Honor.

THE COURT:  All right.

MS. STEINER:  And, your Honor, I flagged this for the deputy before we started, but just so your Honor is aware, the government does plan to put in a very short reply next week.

THE COURT:  No, I understand that.

MS. STEINER:  Thank you.

THE COURT:  I am just trying to get ahead of things.

So, final pretrial conference.  Given what we have

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P3E5comC

talked about in terms of the schedule, I think it makes sense to have our next pretrial conference on April 25, which will be before we get into the jury questionnaires.  I am sure we will have a lot to address.  If we need to have a subsequent conference before we begin with opening statements, then we can do that and we can have as many as we need to, to get through the issues that we have on the table.

I will leave it open to the parties.  Ms. Steiner, anything that I have missed or anything that you think we need to handle at this time?

MS. STEINER:  Yes, your Honor.

The one thing that I did want to raise with the Court is the schedule for briefing on Rule 412.  As the government noted in our joint letter, we don't currently have a schedule for whether we are going to receive notice and when the defense intends to brief that issue.  It is important, I think, for the parties to discuss that issue and reach agreement now because, as I am sure your Honor is aware, it can be a very time-intensive procedural process to have a hearing on an issue.  Such a hearing, if we were to get to one, would require a closed courtroom, it would require the victim and their counsel to have the opportunity to be heard, and the government isn't currently aware of how many victims the defendant intends to seek to introduce Rule 412 evidence regarding.  So, there could be potentially a need for multiple such hearings.  As a

result, the government thought it most appropriate to have this briefed on the same motion *in limine* schedule to permit sufficient time for us to work through any issues that may need to be adjudicated by your Honor.

THE COURT:  Mr. Agnifilo?

MR. AGNIFILO:  Yes, Judge.

Since this came up more recently with some other things we haven't had as much time to talk about this as some other things.

What we were thinking is we would get the 3500.  We would see if there is any evidence that we would be seeking to elicit that would be under Rule 412.  There may be some, there may be none.  But before we create a motion schedule when we might not need one, I think what makes the most sense is we will get the 3500, we will look at it quickly, we will come back to the government in short order after that and we will have a 412 discussion.  And if we need to, we will bring it to your Honor's attention.  We won't sit on the issue, we will bring it to the Court's attention as soon as we can.  I know that the rule talks about 15 days before trial.  It would be well in advance of that.

THE COURT:  So we have the 3500 material being turned over on March 21, so how much time do you need to make a decision as to whether motion practice would be necessary?

MR. AGNIFILO:  Right.

P3E5comC

THE COURT:  Why don't we put in a date right now.

MR. AGNIFILO:  Yes, that sounds good.

(Counsel conferring)

MR. AGNIFILO:  We think a week is sufficient, if that is OK with the Court.

THE COURT:  So March 28?

MR. AGNIFILO:  Yes, Judge.

THE COURT:  Ms. Steiner, does that seem sufficient?

MS. STEINER:  Yes, your Honor.  Thank you very much.

THE COURT:  Any other issues, Ms. Steiner?

MS. STEINER:  I just wanted to put a couple issues on the record for your Honor but nothing that I think needs to be worked out between the parties.  One is with regard to the production of 3500.  We haven't discussed a schedule for which the schedule is set to produce 3500 and the government has a proposal for the Court.

Leading up to trial, given the volume of witnesses in this case and the pace at which the government is preparing witnesses, the government thought it most appropriate to produce 3500 to the defense bi-weekly so the 3500 would go out in a production every Wednesday, so anything that is prepped on Monday, Tuesday, Wednesday, they would receive on Wednesday evening, and then another production on Friday so anything that is, comes into the government's possession from witness statements Thursday or Friday would be produced before the

weekend. And then the government intends, as is routine in most trials, to produce 3500 on a daily basis once we are closer to trial. I would suggest a couple of weeks out from trial, at which point, of course, there is a reason to have productions occurring on a more frequent basis.

THE COURT: Mr. Agnifilo? I saw some nods from the back.

MR. AGNIFILO: There is lots of nods.

I guess my only question is -- I think my colleague answered it -- everything that they have we are going to get on the day, and it is only things that are 3500 because there is ongoing interviews or whatever source, we are going to get after that according to the schedule that the government has outlined. If that is the case, that is fine.

MS. STEINER: That was my assumption, your Honor, that of course the current 3500 production that is scheduled for March 21 will go out on that date, and then subsequent productions will go out on the schedule that I have proposed of newly created 3500.

THE COURT: With that confirmation, Mr. Agnifilo, does that make sense?

MR. AGNIFILO: Sounds good to me.

THE COURT: Was there anything else, Ms. Steiner?

MS. STEINER: Then, just one other thing to put on the record, your Honor.

The government did confer with the defense prior to producing its enterprise letter, which was very detailed, and specifically before producing the names of the individuals that are outlined in that letter on March 10, that the defense is not seeking a trial adjournment. That was very important for the government for obvious reasons. We want to protect the identities of these witnesses and victims and wanted confirmation from the defense that that was their intention.

So, that I just wanted to put on the record. I would also note that similarly, with respect to 3500, to the extent the defense were to seek any sort of adjournment following the production of 3500, the government would request that the government would then claw-back that production, that they would destroy any copies, again, for the same sensitivities that have arisen in this case.

THE COURT: Understood. I don't think there is -- I haven't heard any application to adjourn the trial date.

MR. AGNIFILO: No, Judge, there is no application in terms of the trial date.

One issue, just because it is part of the Court's order. We recently came into possession of a great deal of medical records and it seems prudent to have someone as an expert certainly explain the records and what they mean in terms of prescription medications and the like to us. So, what the application is, and I think the government is OK with it,

is if we need another 10 days or so to give our expert notice, which is due today as to a pharmacology expert, we would do that. And if the government wants to -- I know that we have a week built in for rebuttal experts. It would certainly be fine with the defense to give the government whatever time they needed if they wanted to rebut that pharmacology expert, they could have that time.

THE COURT: I don't have an issue with that.

Ms. Steiner?

MS. STEINER: Your Honor, the government has no issue with that with respect to this expert, this pharmacology expert alone.

THE COURT: That's what I understood.

MS. STEINER: Yes.

THE COURT: So, Mr. Agnifilo, could you put in a letter that confirms this understood arrangement so that we have it on the docket and people aren't going to be confused if they look at the schedule that is in there now?

MR. AGNIFILO: Yes. Absolutely, Judge. Thank you.

THE COURT: Anything further Mr. Agnifilo?

MR. AGNIFILO: Let me just check with my colleagues?

THE COURT: Of course.

(Counsel conferring)

MR. AGNIFILO: No. Thank you, your Honor. I appreciate it.

P3E5comC

THE COURT:  Good.  Well, thank you, everyone, for coming out today.  I really appreciate it.

Ms. Steiner, you are standing up.  Do you have an application?

MS. STEINER:  Yes, your Honor.  I have an application and wanted to make sure that I did not forget.

Under the Speedy Trial Act and the interest of justice, the government would move for the exclusion of time from now until the date of trial, which is May 5, in order for the parties to continue to engage in motion practice, to prepare for trial, and continue to engage and confirm any issues that may arise in advance of that trial.

THE COURT:  Mr. Agnifilo?

MR. AGNIFILO:  We agree with that.  There are many pending motions and certainly we agree to that application.

THE COURT:  The motion is granted.  Time will be excluded from today's date until May 5, 2025, for the parties to engage in motion practice and to review discovery and prepare for trial.  We will put an order on the docket reflecting the exclusion of time.

Anything further, Ms. Steiner?

MS. STEINER:  No.  Thank you, your Honor.

THE COURT:  Anything further, Mr. Agnifilo?

MR. AGNIFILO:  No.  Thank you, your Honor.

THE COURT:  Thank you everyone for coming in and we

P3E5comC

are adjourned.  Thank you very much.

o0o