UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 24-cr-542 (AS) |
| v. | |
| SEAN COMBS, | |
| Defendant. | |

## **DEFENDANT SEAN COMBS'S MOTION TO EXCLUDE**
## **RULE 413 AND 404(b) EVIDENCE**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 2

ARGUMENT ...................................................................................................................... 4

I.     THE PROFFERED EVIDENCE IS NOT ADMISSIBLE UNDER RULE 413 ............... 4

    A.    Rule 413's Text And Threshold Requirements ......................................... 4

    B.    Rule 413 Applies Only Where The Indictment Charges A Sexual Assault ............. 7

        1.    The Plain Text Of The Rule Requires A Sexual Assault Charge ...................... 7

        2.    The Legislative History Further Confirms That Rule 413 Requires A Formal Charge Of Sexual Assault ..................... 8

        3.    Canons Of Construction Counsel Against Any Broader Reading ..................... 9

    C.    The Indictment Does Not Charge A Sexual Assault ............................... 11

II.    THE PROFFERED EVIDENCE IS NOT ADMISSIBLE UNDER RULE 404(B) ......... 13

    A.    The Government's Notice Is Deficient Under Rule 404(b) ..................... 13

    B.    The Relevance Of The Proffered Evidence Depends On Impermissible Propensity Inferences ............................... 16

III.   RULE 403 SEPARATELY PRECLUDES THE PROFFERED EVIDENCE ................ 18

    A.    The Evidence Has Low Probative Value ............................... 19

        1.    There is little reason to believe the alleged sexual assaults ever occurred ........ 19

        2.    The alleged sexual assaults are not similar to the crimes charged .................... 20

        3.    The alleged sexual assaults are remote in time ................................. 22

    B.    The Evidence Raises A Substantial Danger Of Unfair Prejudice ........................... 22

        1.    The potential for unfair prejudice is great ........................................ 22

        2.    The uncharged acts are more inflammatory than the charges .......................... 23

3.  Admitting uncharged acts will involve extensive mini-trials ........................... 24

4.  If admitted solely under Rule 404(b), the jury would engage in propensity reasoning ........................................................................................................ 27

IV.  AT A MINIMUM, A PRELIMINARY HEARING IS NECESSARY BECAUSE NO REASONABLE JURY COULD FIND THE PROFFERED EVIDENCE RELIABLE ........................................................................................................ 27

CONCLUSION ........................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                  **Page(s)**

*Attorney General of Canada v. RJR Tobacco Holdings, Inc.*,
    268 F.3d 103 (2d Cir. 2001) ................................................................ 11

*Beech Aircraft Corp. v. Rainey*,
    488 U.S. 153 (1988) ...................................................................... 7

*Bradbury v. Phillips Petroleum Co.*,
    815 F.2d 1356 (10th Cir. 1987) ........................................................ 17

*Carroll v. Trump*,
    124 F.4th 140 (2d Cir. 2024) ...................................................... 12, 28

*Castro v. City of New York*,
    2010 WL 11586591 (S.D.N.Y. Aug. 11, 2010) ................................ 17

*Huddleston v. United States*,
    485 U.S. 681 (1988) ................................................................ 28, 29

*INS v. Cardoza–Fonseca*,
    480 U.S. 421 (1987) ...................................................................... 7

*Johnson v. Elk Lake School Dist.*,
    283 F.3d 138 (3d Cir. 2002) ................................................ 19, 21, 28

*Michelson v. United States*,
    335 U.S. 469 (1948) .................................................................... 22

*Old Chief v. United States*,
    519 U.S. 172 (1997) ................................................................ 22, 23

*People v. Weinstein*,
    42 N.Y.3d 439 (2024)............................................................... 16, 17

*State v. Cox*,
    781 N.W.2d 757 (Iowa 2010) ...................................................... 10

*State v. Ellison*,
    239 S.W.3d 603 (Mo. 2007)........................................................ 10

*State v. Gresham*,
    269 P.3d 207 (Wash. 2012) ........................................................ 10

*United States v. Abou-Khatwa*,
    40 F.4th 666 (D.C. Cir. 2022) ............................................................. 14

*United States v. Abuhamra*,
    389 F.3d 309 (2d Cir. 2004) ............................................................... 15

*United States v. Ahmed*,
    119 F.4th 564 (8th Cir. 2024) ............................................................... 5

*United States v. Angelilli*,
    660 F.2d 23 (2d Cir. 1981) ................................................................. 17

*United States v. Benally*,
    500 F.3d 1085 (10th Cir. 2007) ........................................................... 30

*United States v. Boyajian*,
    2012 WL 4094977 (C.D. Cal. 2012) ..................................................... 30

*United States v. Brown*,
    765 F.3d 278 (3d Cir. 2014) ........................................................... 14, 18

*United States v. Commanche*,
    577 F.3d 1261 (10th Cir. 2009) ........................................................... 17

*United States v. Courtright*,
    632 F.3d 363 (7th Cir. 2011) ............................................................. 5, 7

*United States v. Crow Eagle*,
    705 F.3d 325 (8th Cir. 2013) ............................................................. 21

*United States v. Daugerdas*,
    2011 WL 573587 (S.D.N.Y. Feb. 16, 2011) ........................................... 15

*United States v. Davis*,
    961 F.3d 181 (2d Cir. 2020) ................................................................. 7

*United States v. Franco*,
    2025 WL 501843 (D. Conn. Feb. 14, 2025) ........................................... 14

*United States v. Frank*,
    2006 WL 8434880 (S.D. Fla. Nov. 16, 2006) ...................................... 6, 12

*United States v. Green*,
    2006 WL 3761989 (D. Neb. Dec. 20, 2006) ....................................... 6, 12

*United States v. Guardia*,
    135 F.3d 1326 (10th Cir. 1998) ............................................................ 7, 22

*United States v. Guidry*,
    456 F.3d 493 (5th Cir. 2006) .................................................................. 30

*United States v. Hardwell*,
    80 F.3d 1471 (10th Cir. 1996) ............................................................... 14

*United States v. Himelwright*,
    42 F.3d 777 (3d Cir. 1994) ..................................................................... 17

*United States v. Julian*,
    427 F.3d 471 (7th Cir. 2005) .................................................................. 22

*United States v. McPartland*,
    81 F.4th 101 (2d Cir. 2023) .................................................................... 14

*United States v. Miller*,
    673 F.3d 688 (7th Cir. 2012) .................................................................. 15

*United States v. Moccia*,
    681 F.2d 61 (1st Cir. 1982) ..................................................................... 23

*United States v. Morris*,
    2009 WL 10674857 (E.D. Tenn. Jan. 29, 2009) .................................... 30

*United States v. Mound*,
    157 F.3d 1153 (8th Cir. 1998) ............................................................... 10

*United States v. Nektalov*,
    325 F. Supp. 2d 367 (S.D.N.Y. 2004) ................................................... 28

*United States v. Ogden*,
    2021 WL 789861 (E.D. Okla. Mar. 1, 2021) ........................................ 30

*United States v. Schaffer*,
    851 F.3d 166 (2d Cir. 2017) ................................................... 6, 10, 18, 21

*United States v. Swinton*,
    480 F. Supp. 385 (D. Conn. 2020) ........................................................ 29

*United States v. Varoudakis*,
    233 F.3d 113 (1st Cir. 2000) ................................................................... 17

*United States v. Wardlow*,
   2014 WL 12693076 (W.D. Mo. Dec. 9, 2014) ................................................ 6, 12

*United States v. Willis*,
   826 F.3d 1265 (10th Cir. 2016) ...................................................................... 30

*United States v. Zhong*,
   26 F.4th 536 (2d Cir. 2022) ................................................................. 16, 24, 29

*Zunzurovski v. Fisher*,
   2024 WL 1434076 (S.D.N.Y. Apr. 3, 2024) .................................................... 20

**Rules**

Fed. R. Evid. 103 ................................................................................................. 29

Fed. R. Evid. 104 ................................................................................. 2, 28, 29, 30

Fed. R. Evid. 403 ........................................................................................... passim

Fed. R. Evid. 404 ........................................................................................... passim

Fed. R. Evid. 413 ........................................................................................... passim

Fed. R. Evid. 414 .............................................................................................. 8, 9

**Statutes**

18 U.S.C. § 1591 ................................................................................................. 12

18 U.S.C. § 2421 ................................................................................................. 12

**Other Authorities**

137 Cong. Rec. 5,915 (Mar. 13, 1991) ........................................................... 8, 20

140 Cong. Rec. 15,089 (June 29, 1994) ............................................................ 8, 9

140 Cong. Rec. 18,885 (Aug. 2, 1994) ............................................................ 8, 11

140 Cong. Rec. 23,375 (Aug. 21, 1994) ............................................................ 8, 9

140 Cong. Rec. 24,788 (Sept. 20, 1994) ............................................................... 9

Black's Law Dictionary (12th ed. 2024) ............................................................... 7

David J. Karp,
  *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*,
  70 Chi. Kent L. Rev. 15 (1994) ............................................................................ 9, 21

Judicial Conference,
  *Report Of The Judicial Conference On The Admission Of Character Evidence In
  Certain Sexual Misconduct Cases*, 159 F.R.D. 51 (Feb. 1995) ........................................ 10, 11

Mueller & Kirkpatrick,
  1 *Federal Evidence* §4:28 (4th ed.) ........................................................................ 18

Mueller & Kirkpatrick,
  2 *Federal Evidence* §4:84 (4th ed.) ............................................................... 6, 11, 22

Wright & Miller,
  23 Fed. Prac. & Proc. Evid. §5383 (2d ed.) ........................................................ 6, 7

Wright & Miller,
  23 Fed. Prac. & Proc. Evid. §5384 (2d ed.) ........................................................ 12

## **INTRODUCTION**

After months of refusing to disclose the identity of alleged victims and just sixty days before trial, the government suddenly announced that it intended to shore up its case with evidence of ██ uncharged and uncorroborated crimes, including ██ purported instances of "sexual assault," all but one of which supposedly occurred *decades* ago. These incendiary allegations are substantially more serious than the charged offenses and, if admitted, would make it impossible for Mr. Combs to receive a fair trial.

For example, the indictment does not allege ████████████████████████. Instead, the charges focus on allegations about domestic abuse or supposed economic coercion of longtime girlfriends. That is the case Mr. Combs has been defending for months. Yet now, on the eve of trial and after two superseding indictments, the government has surfaced a new plan to taint his trial with evidence about purported heinous acts ████████████████, including an allegation that ██████████████████. These are entirely new, untested, uncorroborated, and uninvestigated allegations. All but one of the alleged incidents happened over twenty years ago, with the oldest dating to the 1980s. Some of the allegations are demonstrably false but would nonetheless require an enormous amount of trial time to disprove. Some are truly unknown to the defense, and the government's disclosure has been utterly threadbare so far. The allegations implicate dozens of unidentified witnesses and alleged coconspirators around the world—and some of the key witnesses to the supposed incidents are dead. The defense is not even permitted to share the identities of the individuals described in the disclosure letter with Mr. Combs until April 18, further hampering defense counsel's ability to investigate. Collectively, these new allegations require many months if not years to investigate, and if admitted, would require a series of mini-trials certain to double the length of a trial the government originally said would last "three weeks." 10/10/24 Tr. at 6.

The Court should require the government to try the case it charged and prove that case to the jury beyond a reasonable doubt. The government should not be permitted to pollute the trial with decades of dirt and invite a conviction based on propensity evidence with no proper purpose by painting Mr. Combs as a bad guy who must have committed the charged crimes.

The evidence of alleged uncharged "sexual assaults" must be excluded under the Federal Rules of Evidence for multiple reasons. The evidence is not admissible under Rule 413, because Mr. Combs is not formally charged with crimes of "sexual assault," as required by the rule—the RICO, sex trafficking, and Mann Act charges are not "sexual assault" crimes within the meaning of Rule 413. The evidence is not admissible under Rule 404(b), because the only possible inferences go to Mr. Combs's character and propensity, and not to any proper purpose under that Rule. The notice is also patently deficient, as the government fails to "articulate" the proffered evidence's permitted purpose "and the reasoning that supports that purpose," as required by Rule 404(b)(3)(B). The evidence is also inadmissible under Rule 403—indeed, it is hard to imagine any evidence that could be more unfairly prejudicial, or more likely to confuse the issues, mislead the jury, cause undue delay, and waste time. Finally, the government has failed to make the foundational showing required by Rule 104(b).

This tactic cannot be allowed to succeed. Mr. Combs must be tried only for the charged offenses, and his guilt or innocence must be determined based on evidence that is actually relevant to those charged offenses. If the government's evidence were allowed, it would mark one of the worst abuses of the character evidence rule in the history of American law.

## BACKGROUND

██████████████████████████████████████████

██████████████████████████████████████████

████ [1] *See* Ex. A. ████████████████████████████████████████

█████████████ *Id.* at n.1. It does not describe what evidence (if any), or what forms of evidence (if there are different kinds), the government might offer to prove the alleged assaults.

Nor does the notice indicate there is any evidence corroborating these ████ stories. For example, the notice does not describe any investigation the government might (or might not) have conducted into the alleged assaults. Nor has the government produced any meaningful discovery related to the noticed acts. The scant discovery the defense has received regarding any of these incidents came long after the government's December 31, 2024 deadline. The government apparently—and troublingly—plans to rely at trial on the alleged victim's uncorroborated allegations alone.

The allegations in the notice are themselves suspect and largely track allegations drafted by plaintiff's lawyers seeking to shake down Mr. Combs in multiple other forums. Importantly, not one of the alleged assaults resulted in any criminal complaint or criminal charges, ████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████. The majority of the ████ purported victims ███████████████████████████████████████████. ████ ████████████████████████████████████████████████████████ ████████████████████████████████████████████████████

---

[1] This motion primarily addresses the ████ alleged sexual assaults noticed in the government's letter. The last two acts noticed in the letter do not implicate Rule 413, ████████████████ ████████████████████████████████████ Although Mr. Combs argues herein that the government has failed to provide adequate Rule 404(b) notice as to all the noticed acts, he will separately move *in limine* on other grounds to exclude evidence of these other two acts.

███████████    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████

In sum, nothing in the notice or in discovery to date lends any credence to these stories, and there is no basis in the record to believe the noticed evidence is at all reliable or true.

## ARGUMENT

### I.    THE PROFFERED EVIDENCE IS NOT ADMISSIBLE UNDER RULE 413

The government proffers the evidence under Rule 413, which is a limited exception to Rule 404's general ban on character and propensity evidence. In cases alleging sexual assault, Rule 413 allows evidence of the defendant's prior instances of sexual assault to prove his propensity for sexual violence. However, Rule 413 only applies when a defendant is charged with a sexual assault offense. That means the indictment must formally charge the defendant with a "sexual assault" offense as defined in the rule. Because the S2 indictment contains no such charge, the government's proffered evidence is not admissible under the rule.

#### A.    Rule 413's Text And Threshold Requirements

Rule 413 is titled "similar crimes in sexual-assault cases" and states in relevant part:

> (a) Permitted Uses. In a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant.
> …
> (d) Definition of "Sexual Assault." In this rule and Rule 415, "sexual assault" means a crime under federal law or under state law … involving:
>
> (1) any conduct prohibited by 18 U.S.C. chapter 109A;

---

[2] ████████████████████████████████████████████████████████

████████████████████████████████████████████

(2) contact, without consent, between any part of the defendant's body—
or an object—and another person's genitals or anus;

(3) contact, without consent, between the defendant's genitals or anus and
any part of another person's body;

(4) deriving sexual pleasure or gratification from inflicting death, bodily
injury, or physical pain on another person; or

(5) an attempt or conspiracy to engage in conduct described in
subparagraphs (1)-(4).

The rule by its plain terms only applies when the defendant is "accused of a sexual assault," and

defines "sexual assault" with reference to crimes involving specified conduct.

Courts have rendered competing interpretations of these threshold requirements.  In

*United States v. Courtright*, for example, the Seventh Circuit held that a district court

erroneously admitted Rule 413 evidence because it interpreted the "accused of" language in Rule

413 too broadly.  632 F.3d 363, 368 (7th Cir. 2011).  The court held that Rule 413 "applies only

when a party has been charged with an 'offense of sexual assault' in the indictment," and that a

verbal accusation during the investigation into the offense was insufficient.  *Id.*[3]  In contrast, in

*United States v. Ahmed*, the Eighth Circuit held that a defendant need not be "charged" with a

sexual assault offense to trigger the rule, and "[w]hat matters is whether the offense he was

charged with involved conduct that Rule 413(d) deems to be sexual assault."  119 F.4th 564, 568

(8th Cir. 2024).  There, the defendant was charged only with kidnapping, but the allegations

included a sexual assault, which *Ahmed* deemed sufficient to trigger the Rule.  The decision is

currently the subject of a petition for a writ of certiorari.  *See* Petition for Certiorari, *Ahmed v.*

*United States* (No. 24-6690).

---

[3] The Seventh Circuit later rejected application of the categorical approach to the question of
whether a charged offense was a "sexual assault."  *United States v. Foley*, 740 F.3d 1079, 1087
(7th Cir. 2014).  In so doing, it did not overrule *Courtright*.

Multiple commentators have emphasized that the Rule's threshold requirements must be interpreted narrowly. They have rejected the Eighth Circuit's approach, observing that Rule 413 would "*not* apply in trials for kidnapping, for example, even if the evidence shows that the defendant commit a sexual assault during the course of the crime." Mueller & Kirkpatrick, 2 *Federal Evidence* §4:84 (4th ed.). Nor would it apply "if the defendant is charged with murdering the victim of his sexual assault but is not also charged with sexual assault." Wright & Miller, 23 Fed. Prac. & Proc. Evid. §5383 (2d ed.).

Various district courts have similarly interpreted the rule narrowly. *See United States v. Frank*, 2006 WL 8434880, at \*5 (S.D. Fla. Nov. 16, 2006) ("plain language of Rule 413 requires a sexual assault charge); *United States v. Wardlow*, 2014 WL 12693076, at \*2 (W.D. Mo. Dec. 9, 2014) ("Defendant is not charged with having non-consensual sexual contact with another person."); *United States v. Green*, 2006 WL 3761989, at \*1 (D. Neb. Dec. 20, 2006) (declining to apply rule in kidnapping case involving sexual assault, because the "nexus between the kidnapping offense and the offense of sexual assault, to which Rule 413 would apply, is too tenuous to support application of the rule").

The Second Circuit has not had occasion to decide this issue. In *United States v. Schaffer*, for example, the defendant "d[id] not dispute that … he was charged with offenses qualifying as 'sexual assaults' within the meaning of Rule 413." 851 F.3d 166, 181 n.84 (2d Cir. 2017). The issue in *Schaffer* was simply whether Rule 413 could survive a due process challenge. *Id.* at 179. The Circuit upheld the rule, but held that district courts must rigorously apply Rule 403 to proffered Rule 413 evidence to ensure fair trials. *Id.* at 180.

For reasons set forth below, the approach endorsed by *Courtright* and leading commentators is the correct approach.

6

### B.  Rule 413 Applies Only Where The Indictment Charges A Sexual Assault

Like all rules of evidence, Rule 413 must be construed according to "traditional tools of statutory construction."  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 163 (1988) (quoting *INS v. Cardoza–Fonseca*, 480 U.S. 421, 446 (1987)).  This means starting with plain language of the rule, including the "ordinary or natural meaning" of its terms, and if there is ambiguity, resorting to "canons, statutory structure, and legislative history."  *United States v. Davis*, 961 F.3d 181, 187 (2d Cir. 2020).  Applying ordinary methods of statutory interpretation, "accused of a sexual assault" means formally charged with a sexual assault offense as defined in the rule.

#### 1.  The Plain Text Of The Rule Requires A Sexual Assault Charge

The plain meaning of "accused" is "charged with a crime."  *Courtright*, 632 F.3d at 368 (quoting Black's Law Dictionary 22-23 (6th ed. 1990) (defining "accuse" as "to bring a formal charge against a person"); Webster's Third New International Dictionary 14 (1986) (defining "accuse" as, inter alia, "to charge with an offense judicially or by public process")); *see also* Black's Law Dictionary (12th ed. 2024) (defining "accuse" as, among other things, "[t]o charge (a person) judicially or publicly with an offense").  Rule 413 uses "accused of" in the "narrow, technical sense," *Courtright*, 632 F.3d at 368, and is satisfied "only if one of the crimes charged is sexual assault," Wright & Miller, *supra*, §5383.  Thus, "the defendant must be on trial for 'an offense of sexual assault.'"  *United States v. Guardia*, 135 F.3d 1326, 1332 (10th Cir. 1998).

The original language of the rule confirms the point.  Prior to the 2011 restyling of Rule 413, the original iteration of the rule required that the defendant be "accused of an offense of sexual assault."  The Advisory Committee's 2011 restyling—which eliminated the "offense" language, was "stylistic only" and evidenced "no intent to change" the rule's substance.  *See* Fed. R. Evid. 413, Committee Notes on Rules—2011 Amendment.  But the original language further demonstrates that the rule requires that the indictment include a formal sexual assault charge.

7

2.   *The Legislative History Further Confirms That Rule 413 Requires A Formal Charge Of Sexual Assault*

The plain meaning of "accused" is sufficient to resolve the question.  The rule's legislative history confirms the same point: The rule was intended to have a limited application and does not apply in the absence of a formal charge of sexual assault.

When the rule was initially introduced, the Analysis Statement said Rule 413 and corresponding Rule 414 (applicable in child molestation cases) only applied "in prosecutions for sexual assault and child molestations."  137 Cong. Rec. 6,031 (Mar. 13, 1991).  It stated that the proffered "evidence must relate to other crimes by the defendant that are of the same type— sexual assault or child molestation—as the crime with which [the defendant] is *formally charged*."  *Id.* at 6,032 (emphasis added).  "[T]heir application is confined to sexual assault and child molestation cases, and only evidence of crimes of the same type as the *charged offense* may be shown."  *Id.* at 6,034 (emphasis added).

The principal House and Senate sponsor statements confirm the same point.  Senate sponsor Robert Dole stated the rules "amended the Federal rules of evidence to allow the introduction of evidence of prior offenses of rape and child molestation in *prosecutions for these same offenses*." 140 Cong. Rec. 18,929 (Aug. 2, 1994) (emphasis added).  House sponsor Susan Molinari observed that Rule 413 and Rule 414 "let prosecutors *in two cases*, sexual assault and child molestation, [] introduce evidence that the defendant has committed similar crimes in the past." 140 Cong. Rec. 15,208 (June 29, 1994) (emphasis added).  The rules apply "in only those two instances."  *Id.*; *see also* 140 Cong. Rec. 23,602 (Aug. 21, 1994) (Rep. Molinari) (describing Rules 413 and 414 as "rules of admissibility in *sexual assault* and child molestation cases," respectively) (emphasis added).  The sponsors described Rule 413 as applying in this "limited

situation"—i.e., "only in a very limited circumstance" where the defendant is charged with a sexual assault offense.  140 Cong. Rec. 15,209 (June 29, 1994) (Rep. Kyl).

The corresponding DOJ statement supporting the new rules further observed that Rule 413 "do[es] not indiscriminately admit evidence of all the bad things the defendant may have done in the course of his life, but only admit[s] evidence of criminal offenses of the same type as those with which he is *formally charged*," thus limiting "the number of incidents for which evidence may be offered."  David J. Karp, *Evidence of Propensity and Probability in Sex Offense Cases and Other Cases*, 70 Chi. Kent L. Rev. 15, 21-22 (1994) (emphasis added).  Congress recognized that Karp's address provided "a detailed account of the views of the legislative sponsors and the administration concerning the ... reform, and should ... be considered an authoritative part of its legislative history."  140 Cong. Rec. 23,602 (Aug. 21, 1994) (Rep. Molinari); *see also* 140 Cong. Rec. 24,799 (Sept. 20, 1994) (Sen. Dole).

The legislative history confirms that Congress conceived of Rules 413 and 414 to address specific crimes including rape and child molestation, not all offenses that might involve sex.  *See* 140 Cong. Rec. 15,210 (June 29, 1994) (Rep. Kyl) (referencing "rape and molestation cases"); *id.* at 15,210 (Rep. Schumer) (referencing "these two crimes"); 140 Cong. Rec. 23,602 (Aug. 21, 1994) (Rep. Molinari) (describing rules as "admission of prior evidence in rape and child molestation cases").  Rule 413 was thus not designed to have broader application beyond cases in which the defendant is formally charged with a sexual assault akin to, for example, rape.

### 3.  *Canons Of Construction Counsel Against Any Broader Reading*

Interpretive canons also militate in favor of a narrow reading.

*First*, the constitutional avoidance canon counsels a narrow interpretation.  The constitutionality of Rule 413 is doubtful.  When the rule was proposed, the Judicial Conference's

opposition noted that the protections of the character evidence rule "form a fundamental part of American jurisprudence and have evolved under long-standing rules and case law." Judicial Conference, *Report Of The Judicial Conference On The Admission Of Character Evidence In Certain Sexual Misconduct Cases*, 159 F.R.D. 51, 53 (Feb. 1995); *see United States v. Mound*, 157 F.3d 1153, 1153-54 (8th Cir. 1998) (M. Arnold, J., dissenting from denial of reh'g en banc) ("We might well conclude that the common-law rule against propensity evidence has as distinguished a legal pedigree as, say, the rule that guilt must be proved beyond a reasonable doubt."). Several state courts have held that their state law analogues of Rule 413 are unconstitutional because they violate due process rights. *State v. Cox*, 781 N.W.2d 757, 761-69 (Iowa 2010); *State v. Ellison*, 239 S.W.3d 603, 607-08 (Mo. 2007), *superseded by constitutional amendment*; *see also State v. Gresham*, 269 P.3d 207, 217-18 (Wash. 2012) (striking down sex-crimes propensity statute on separation of powers grounds).

The Second Circuit has held that Rule 413 does not violate the Due Process Clause—but in so doing, it noted that the narrowing effect of Rule 403 was critical to salvaging Rule 413's constitutionality. *Schaffer*, 851 F.3d at 180.[4] Along the same lines, in order to avoid aggravating the constitutional problems, Rule 413 should be limited to those cases where the defendant is formally charged with sexual assault.

*Second*, the interpretive presumption in favor of common-law doctrines also requires a narrow construction. There is no doubt Rule 413 marked a sharp departure from prior practice and the common law. As the Judicial Conference noted, the character evidence rule is "a fundamental part of American jurisprudence … evolved under long-standing rules and case law."

---

[4] This Court is bound by *Schaffer*, but to preserve the issue for possible Supreme Court review, Combs submits that *Schaffer* was wrongly decided and that Rule 413 is facially unconstitutional.

159 F.R.D. at 53.  But Rule 413 "stand[s] on its head … 800 years of English jurisprudential thinking on admissible evidence."  140 Cong. Rec. 18,930 (Aug. 2, 1994) (Sen. Biden).

Statutes in derogation of the common law must be strictly construed.  *Attorney General of Canada v. RJR Tobacco Holdings, Inc.*, 268 F.3d 103, 127-28 (2d Cir. 2001); *see also* 2 *Federal Evidence*, *supra*, §4:84 ("Since Rule 413 represents a marked departure from tradition, we believe that this more restrained reading is correct.").  If Congress wants Rule 413 to apply not just to cases where sexual assault is formally charged but also to cases more broadly involving any related facts of assault, it must speak more clearly.

A narrow reading is particularly necessary considering the way Rule 413 was drafted and enacted.  The Justice Department proposed the rule and bypassed the normal rulemaking function of the advisory committee and went directly to Congress.  The "overwhelming majority of judges, lawyers, law professors, and legal organizations" opposed the proposed rule, and the advisory committee unanimously voted against it, save a lone vote from the DOJ representative.  159 F.R.D. at 52.  The committee also noted "drafting ambiguities" and "possible constitutional infirmities," and urged re-drafting at a minimum, further noting the rule was "not supported by empirical evidence" and "could diminish significantly the protections that have safeguarded persons accused in criminal cases … against undue prejudice."  *Id*. at 52-53.  Congress enacted Rule 413 anyway.  The result is a rule that is arguably ill-considered and certainly ill-drafted.

### C.  The Indictment Does Not Charge A Sexual Assault

The S2 indictment does not charge a crime of sexual assault as that term is defined in Rule 413, rendering the government's proffered evidence inadmissible under the rule.

Rule 413(d) defines "sexual assault" as "a crime under federal law or under state law … involving" specified conduct.  The first subsection includes "conduct prohibited by 18 U.S.C. chapter 109A," Fed. R. Evid. 413(d)(1), which "[c]learly … refer[s] to the nature or types of

conduct covered in chapter 109A—such as aggravated sexual abuse, sexual abuse, sexual abuse of a minor, and abusive sexual contact, 18 U.S.C. §§ 2241, 2242, 2243, 2244," *Carroll v. Trump*, 124 F.4th 140, 164 (2d Cir. 2024).  None of those crimes is charged here.

The remaining subsections of Rule 413(d) refer to crimes involving specified forms of sexual contact "without consent," "deriving sexual pleasure or gratification from inflicting death, bodily injury, or physical pain on another person," and attempts and conspiracies to engage in this conduct.  In this context, the word "'involving' must mean as an element of the crime, not merely as a circumstance of its commission," Wright & Miller, *supra*, §5384, meaning the crime charged must require such conduct.

But again, the charges here do not require any such conduct.  The RICO conspiracy—and the alleged racketeering acts—do not require proof of a sexual assault.  The same is true of Count Two, 18 U.S.C. §1591(a)(1).  That statute requires knowledge that force, fraud, or coercion will be used to cause the victim to engage in a commercial sex act, but it similarly does not require any nonconsensual sexual contact between the defendant and the victim.  Similarly, the Mann Act violation charged as Count Three requires "an intent that [the victim] engage in prostitution," 18 U.S.C. § 2421(a), but that does not in turn require any nonconsensual sexual contact between the defendant and the victim.  For these same reasons, courts routinely find evidence inadmissible under Rule 413 where the defendant is not charged with either a Chapter 109A offense or a crime that requires a sexual assault as defined in the rule.  *See Frank*, 2006 WL 8434880, at *5; *Wardlow*, 2014 WL 12693076, at *2; *Green*, 2006 WL 3761989, at *1.

In sum, the proffered evidence does not satisfy Rule 413's requirements because Mr. Combs is not "accused of a sexual assault."  Put simply, whatever one thinks of Congress's wisdom (or lack thereof) in enacting Rule 413, it does not apply to this case.

## II.    THE PROFFERED EVIDENCE IS NOT ADMISSIBLE UNDER RULE 404(B)

The government suggests in the alternative that if the evidence doesn't qualify as Rule 413 evidence, it can be admitted under Rule 404(b)(2) instead.  That doesn't work either.

Start by calling a spade a spade: What the proffered evidence tends to demonstrate is a propensity for sexual violence and a dangerous, depraved character.  That is what the government *wants* to establish, and it is the real purpose of this evidence.  But unlike Rule 413, Rule 404 does not allow the admission of evidence to prove character and propensity—the "other purposes" in Rule 404(b)(2) are non-propensity purposes.  There is no conceivable non-propensity purpose here, and merely repeating the words of Rule 404(b)(2) is not sufficient.

### A.  The Government's Notice Is Deficient Under Rule 404(b)

As an initial matter, the government's notice is patently deficient.  The government provides no explanation of what the supposed proper purpose is as to any of the alleged incidents other than to state that it "may seek to introduce at trial evidence of the following acts in order to prove the defendant's intent, knowledge, preparation, plan, motive, modus operandi, and absence of mistake or accident."  Ex. A at 1.  Such a lazy "laundry list" of proposed purposes quoting the Rule's text does not comply with the requirement that the government "articulate in [its] notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose."  Fed. R. Evid. 404(b)(3)(B).

The rule formerly required only a more generalized sort of notice, but the old rule was frequently abused by prosecutors, who merely provided boilerplate notice that they planned to admit a defendant's other bad acts.  Such boilerplate made it impossible for district judges to assess admissibility.  Thus, even before the amendment, courts around the country had ridiculed the so-called "laundry list" approach to determining admissibility under Rule 404(b), because "a mere recitation of the purposes in Rule 404(b)(2) is insufficient" and "supplies the defendant

with little notice of the non-propensity purpose for which the evidence against him is being admitted, and it says nothing of how the evidence is probative of that purpose." *United States v. Brown*, 765 F.3d 278, 294 (3d Cir. 2014); *see also United States v. Abou-Khatwa*, 40 F.4th 666, 683-84 (D.C. Cir. 2022) (criticizing the "laundry list" approach to Rule 404(b) instructions); *United States v. Hardwell*, 80 F.3d 1471, 1491 (10th Cir. 1996) (same).

Consequently, to discourage that sloppy and unhelpful practice, the rule was amended in 2020 to impose more stringent requirements. *See United States v. McPartland*, 81 F.4th 101, 114 n.4 (2d Cir. 2023) (discussing the amendment). In general, the rule requires "reasonable notice of any such evidence … so that the defendant has a fair opportunity to meet it." Fed. R. Evid. 404(b)(3)(A). As the advisory committee explained, such notice "is important so that the parties and the court have adequate opportunity to assess the evidence." *Id.*, adv. comm. notes to 2020 amendment. And as discussed, the amended rule also requires the government to "articulate in the notice the permitted purpose for which the prosecutor intends to offer the evidence and the reasoning that supports the purpose." Fed. R. Evid. 404(b)(3)(B). As the advisory committee explained, "[t]he prosecution must not only identify the evidence that it intends to offer pursuant to the rule but also articulate a non-propensity purpose for which the evidence is offered and the basis for concluding that the evidence is relevant in light of this purpose." *Id.*, adv. comm. notes to 2020 amendment.

The government apparently didn't get the memo. It still provided only the sort of very general notice that was allowed under the old rule but not the amended rule. *See United States v. Franco*, 2025 WL 501843, at *14 (D. Conn. Feb. 14, 2025) (finding notice "plainly insufficient" under the amended rule). The notice is insufficient to allow the defense to investigate these incidents and "meet" the evidence, as the rule requires. And the notice does not specify the non-

propensity purpose or explain how the evidence proves that purpose. The government thus continues to employ a worst-practices approach to the rule.

The government must explain "exactly how the proffered evidence should work in the mind of a juror to establish the fact the government claims to be trying to prove." *United States v. Miller*, 673 F.3d 688, 699 (7th Cir. 2012). Only then can the court determine whether the prosecution is overtly or covertly relying on forbidden propensity reasoning.

* * * *

The notice provisions of Rule 404 are not mere formalities. "Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *United States v. Abuhamra*, 389 F.3d 309, 322 (2d Cir. 2004). It is obvious the government either intentionally withheld notice for the purpose of unfair surprise or was dilatory and negligent in its investigation. The government knows it is impossible to investigate these allegations in sixty days, especially while simultaneously preparing for trial, receiving and reviewing Jencks Act material and expert disclosures, and preparing motions *in limine*. Indeed, since the beginning of the case, the defense has been asking the government to identify alleged victims, precisely so that Mr. Combs can investigate and prepare his defense. The government did not identify any of the individuals in its notice until 10:31 p.m. on March 17, 2025, after the Court ordered such disclosure.

This Court has authority to exclude the evidence solely based on deficient notice. *See United States v. Daugerdas*, 2011 WL 573587, at *2 (S.D.N.Y. Feb. 16, 2011) (precluding 404(b) evidence where government failed to provide sufficient advance disclosure and defendants "cannot adequately prepare to rebut [the evidence] with approximately one month

15

remaining before trial"). It should do so here based on the government's failure to comply with the amended rule's notice requirement and the impossibility of preparing to meet so many additional allegations at such a late date.

### B. The Relevance Of The Proffered Evidence Depends On Impermissible Propensity Inferences

Notice aside, what the government's laundry list approach reveals is that it cannot articulate a non-propensity inference—*because there is none*. These acts do not demonstrate anything other than propensity, and simply reciting the words in Rule 404(b)(2) changes nothing. The acts are mere "propensity evidence in sheep's clothing." *United States v. Zhong*, 26 F.4th 536, 551 (2d Cir. 2022) (reversing convictions based on improper admission of Rule 404(b) evidence). On their face, the proffered purposes do not even make sense. For example, the government suggests that all the prior acts show "plan" and "preparation" for the charged offenses. ██████████████████████████████. How does ██████████ show that the defendant was planning and preparing to commit a sex trafficking or Mann Act violation ██ ████ ██████████████████████? That doesn't even make sense, as the proffered acts are not "sufficiently similar to the conduct at issue" to permit "a reasonable inference of" knowledge, intent, or plan. *Id.* at 553 (reversing admission under Rule 404(b)); *People v. Weinstein*, 42 N.Y.3d 439, 463 (2024) (describing "significant differences between complainants and the *Molineux* Witnesses," including that "[a]ll three complainants had long-term relationships with defendant, whereas the *Molineux* Witnesses each interacted with defendant for brief periods").

The government may argue that the prior alleged acts of violence against women show Mr. Combs's intent to commit the charged acts, which involve violence against women. But the jury could reach the conclusion of guilt based on the prior acts "only if it first concluded that he

had a propensity for violence against his" girlfriends and partners. *United States v. Commanche*, 577 F.3d 1261, 1267 (10th Cir. 2009). That is not permissible 404(b)(2) reasoning to intent—it is impermissible propensity reasoning. *See Weinstein*, 42 N.Y.3d at (describing comparable evidence as "pure propensity evidence").

In other words, it is not enough to simply state that the evidence is offered to show "intent," or any of the other listed purposes. What is required is demonstrating that the evidence proves intent without relying on propensity as a necessary link in the inferential chain. Put simply, it doesn't matter what label is attached—what matters is the chain of inferences. No matter how it's labeled, if the "use of the other act evidence would require an inference that the other act showed the defendant's propensity to perform acts of that type, and a further inference, from that propensity, that the defendant therefore performed the act charged," then evidence is barred by Rule 404. *United States v. Angelilli*, 660 F.2d 23, 40 (2d Cir. 1981).

This is hornbook law. To be admissible under Rule 404(b)(2), "the evidence must have special relevance to an issue in the case such as intent or knowledge, *and must not include bad character or propensity as a necessary link in the inferential chain*." *United States v. Varoudakis*, 233 F.3d 113, 118 (1st Cir. 2000) (emphasis added); *see also United States v. Himelwright*, 42 F.3d 777, 782 (3d Cir. 1994) ("[W]hen evidence of prior bad acts is offered, the proponent must clearly articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged."); *Bradbury v. Phillips Petroleum Co*., 815 F.2d 1356, 1365 (10th Cir. 1987) ("The proper approach is not simply to find a 'pigeon hole' in which the proof might fit, but to determine whether the evidence proves something other than propensity ...."); *Castro v. City of New York*, 2010 WL 11586591 at *5 (S.D.N.Y. Aug. 11, 2010) ("[T]he proponent must clearly

articulate how that evidence fits into a chain of logical inferences, no link of which may be the inference that the defendant has the propensity to commit the crime charged.").

Stated differently, "such proof offered is not saved from the principle of exclusion by the mere fact that it supports a specific inference to a point like intent if the necessary logical steps include an inference of general character or propensity, or if it seems likely that the proof will be *used* to support such an inference." 1 *Federal Evidence*, *supra*, §4:28. The government may *say* that the evidence is offered to prove intent or motive or whatever. But this Court must look beneath those words to see if propensity is what gives the evidence its persuasive force.

Admissibility under Rule 404(b) is not determined by attaching simple labels to evidence. Nor is it determined by repeating, in conclusory fashion, the laundry list of permissible purposes in the rule. Rather, it is determined by examining the chain of inferences that makes the evidence relevant. There is no permissible chain here. "Quite simply, the Government's chain of inferences is indubitably forged with an impermissible propensity link." *Brown*, 765 F.3d at 278. Consequently, the other acts cannot be admitted under Rule 404(b).

## III.    RULE 403 SEPARATELY PRECLUDES THE PROFFERED EVIDENCE

Even if the evidence fits within Rule 413 or 404(b)(2)—which it doesn't—Rule 403 would still require its exclusion. As the Second Circuit held: "Where in a particular instance the admission of evidence of prior sexual assaults would create 'undue prejudice' and threaten due process, district courts can and should, by operation of Rule 403, exclude that evidence and ensure the defendant's right to a fair trial." *Schaffer*, 851 F.3d at 180. This is precisely such a case. This Court can and should exclude the government's extraordinarily inflammatory evidence to ensure Mr. Combs's right to a fair trial.

18

## A. The Evidence Has Low Probative Value

If the evidence is powerful, it is powerful for all the wrong reasons. The legitimate probative value of the evidence is exceedingly low for multiple reasons.

### 1. There is little reason to believe the alleged sexual assaults ever occurred

The purported evidence supporting the alleged past acts is incredibly weak, which substantially lowers the probative value. "Where a past act cannot be shown with reasonable certainty, its probative value is reduced," justifying exclusion under Rule 403. *Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 156 (3d Cir. 2002). In general, alleged prior acts that did not result in a conviction should be more cautiously admitted than those that did. The evidentiary foundation of the alleged prior incidents is based █████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████. And, as discussed in more detail below, there are ample reasons to doubt the veracity of these complainants. Some are so lacking in evidentiary foundation that they have not even resulted in civil claims—*or even demands*. That underscores their minimal probative value. Indeed, the government has provided virtually no discovery in relation to the alleged sexual assaults, and certainly none that provides any corroboration that Mr. Combs committed a sexual assault.[5] Nor has it attempted to investigate these allegations

---

[5] █████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████

(purportedly out of fear that they will be resoundingly disproven through investigation)—it apparently will rely at trial on the alleged victims' uncorroborated allegations alone.

Moreover, Congress recognized that the probative value of a claim of prior sexual assault is particularly low where, as here, "there is reason to believe that the formal charge and the accusation of an uncharged offense were not generated independently of each other." 137 Cong. Rec. 6,033 (Mar. 13, 1991) (Analysis Statement). That is precisely the case with respect to these allegations. None of the sexual assault claims in the government's notice ███████████████

███████████████████████████████████████.

███████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████

███████████████████. The claims are, to put it lightly, at the weakest end of the spectrum.[6]

### 2. *The alleged sexual assaults are not similar to the crimes charged*

The lack of similarity also reduces the probative value. The theory of Rule 413 admissibility is predicated on similarity, and similarity is thus a critical factor in weighing

---

[6] ████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████████████████████

████████████

admissibility.  In *Schaffer*, for example, the Second Circuit agreed that the probative value of the uncharged acts was "particularly" probative due to the "similarities between" the prior conduct and the charged conduct—it showed a distinctive "pattern" of behavior.  851 F.3d at 182 (quoting district court order).  For evidence proffered under Rule 413, "where the past act is not substantially similar to the act for which the defendant is being tried … the propensity inference provided by the past act is weaker, and no presumption in favor of admissibility is warranted." *Johnson*, 283 F.3d at 156.

Indeed, the Justice Department's own policy brief advocating for the enactment of Rule 413 noted that similarity is *required* under the rule.  "In addition, the requirement of similarity in kind to the charged offense tends to ensure that the uncharged acts will have a high degree of probative value, and will not be mere distractions from the main issues."  Karp, *supra*, at 21-22; *see also United States v. Crow Eagle*, 705 F.3d 325, 328 (8th Cir. 2013) (noting that, in a case involving charges of child molestation, district court properly excluded testimony from alleged adult victims "due to dissimilarity from the charges").

Here, similarity is distinctly lacking.  The formal charges in this case are based on allegations that ███████████████████████████████████████████████████████ ███████████████████████████████████████████████ ███████████████████████████████████████████████████ ██████████████████████████████████.  By contrast, the other acts proffered by the government are a mishmash of other purported sexual misbehavior, ███████████████████ ██████████████████████████████████████████████████ █████████████████████████████████████████████ █████████████████████████████████████████ while the charges involve

██████████████████████████████████████.  The stories play on fictional

narratives spread by the media, ████████████████████████████████, that

have nothing to do with the indictment's allegations.  These distinctions lessen the probative

value, particularly considering "the nature of the relationship between the victims and the

defendant in the two settings," which courts must consider.  2 *Federal Evidence*, *supra*, §4:84.

Here, unlike in *Schaffer* for example, the nature of the relationship between the defendant and

the alleged victims is not at all the same for the actual charges as it is for the other acts.  These

differences reduce probative value and militate in favor of exclusion.

### 3. *The alleged sexual assaults are remote in time*

While the text of Rules 413 and 404 have no particular time limit on other acts, "the date

of the prior offense remains a factor for a court to consider in" conducting the Rule 403

balancing.  *United States v. Julian*, 427 F.3d 471, 487 (7th Cir. 2005); *see Guardia*, 135 F.3d at

1331 (considering "closeness in time").  ████████████████████████████████████

██████████████████   That substantially reduces the probative value, not least because it will be

very difficult for the jury to determine whether these incidents actually took place.

## B.  The Evidence Raises A Substantial Danger Of Unfair Prejudice

### 1. *The potential for unfair prejudice is great*

The dangers of admitting a defendant's prior bad acts are well known.  As the Supreme

Court has explained, one risk is that the evidence will "weigh too much with the jury" and thus

"overpersuade them as to prejudge" the defendant.  *Michelson v. United States*, 335 U.S. 469,

476 (1948).  Worse yet, the jury may view the uncharged acts as "calling for preventive

conviction even if he should happen to be innocent" of the charged offenses.  *Old Chief v. United*

*States*, 519 U.S. 172, 180-81 (1997).  The risk, in other words, is that a jury "uncertain of guilt

… will convict anyway because a bad person deserves punishment." *Id*. at 181 (quoting *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir. 1982) (Breyer, J.)).

Those risks remain even where evidence is offered under Rule 413. That rule allows propensity reasoning, but there is still a risk that the jury will give the propensity inference more weight than it deserves. Far worse is the risk that the jury will convict based on guilt for the other offenses. That is especially true here, where the charges require proof of technical elements of a racketeering conspiracy, about which the jury may well be confused and uncertain. If the prior acts come in, however, the jury will be left with little doubt that Combs is a bad person deserving punishment. The risk of illegal preventive detention is acute.

### 2. The uncharged acts are more inflammatory than the charges

One feature that makes the risks particularly acute here is that the other acts are *worse* than the charges. Evidence of other acts should be excluded where they are "more inflammatory than the conduct for which [the defendant is] being tried." *Schaffer*, 851 F.3d at 183. "When the wrongfulness of sexual assaults comes simply from the fact that the behavior is overbearing, selfish, or exploitive, prejudicial effect is relatively less." 2 *Federal Evidence*, *supra*, §4:84. By contrast, "[w]hen wrongfulness is more egregious because the act involves violence, humiliation, or serious psychological injuries of other kinds, breach of a trusted relationship, or physical injuries, or involved other forms of serious transgression, the offense is more likely also to be shocking and explosive." *Id.* In the latter case—which is precisely what we have here— "prejudicial effect is likely to be higher and to weigh more heavily in the calculus." *Id.*

The charged offenses involve allegations that Combs sometimes used domestic violence or economic support to coerce ███████ into sexual activity. But this came in the context of long-term relationships, and the evidence will show that the alleged victims willingly and eagerly

participated in the activity on many occasions.  The proffered other acts, in stark contrast,

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████

Indeed, beyond the summaries provided in the government's notice, the corresponding

██████████████  preview the horror show the government seeks to put on for the jury.  ███████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

██████████████████████████████████████████

The proffered acts are far worse and far more inflammatory than the charges, and "Rule

403 require[s]" their exclusion.  *Zhong*, 26 F.4th at 553.  Indeed, the Second Circuit has reversed

convictions because a district court admitted "significantly more sensational" past acts.  *Id.*

### 3.  *Admitting uncharged acts will involve extensive mini-trials*

Further militating against admission is the fact that the noticed acts will "wast[e] time" at

trial and lead to time-consuming mini-trials.  Fed. R. Evid. 403.

███████████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████

█████████████████████████████████████████████████

███████████████████████████████████████████

█████████████████████████████████████████

███████████████████████████████████████████

██████████████████████████████████████████

████████████████████████████████████████████████

███████████████████████████████████████████████

█████████████████████████████████████

      Even beyond her shifting allegations, the underlying claim is dubious for other reasons as well. ████████████████████████████████████, it would be nearly impossible to prove or disprove the allegations. ██████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████ It would be outlandish to

sidetrack Mr. Combs's federal trial with such inflammatory nonsense.

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████████

She is not a credible witness at all.  Nonetheless, disproving her invented allegations

would involve presenting a substantial amount of additional evidence. ███████████

████████████████████████. It would require at least an additional day of trial time—all

for the purpose of disproving a salacious and inflammatory lie.

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████ Admitting these acts would

necessitate collateral weeks-long mini-trials.

       *4.  If admitted solely under Rule 404(b), the jury would engage in propensity reasoning*

The arguments above demonstrate that the evidence should be excluded under Rule 403

even if it fits within the parameters of Rule 413. But if this Court determines that Rule 413

doesn't apply, and the evidence can only be admitted pursuant to Rule 404(b)(2), then the

probative value is even lower and the potential for unfair prejudice is even greater. In that case,

the risk that the jury will engage in propensity reasoning is itself a form of unfair prejudice.

No limiting instruction could cure such prejudice. Suppose the government is able to

identify some gossamer thread of non-propensity relevance under Rule 404(b)(2). What would a

limiting instruction say? "Members of the jury, you're about to hear evidence that the defendant

████████████████████████████████████. You may use this evidence only to show

[fill in the blank]. You may not use it as evidence that he's a bad person or that he has engaged

in a pattern of sexual violence." No jury could follow such an instruction—in part because it

makes no sense (even to those schooled in evidence law, much less to lay jurors). If the evidence

is not admitted pursuant to Rule 413, then the Rule 403 balancing is not even close.

## IV.  AT A MINIMUM, A PRELIMINARY HEARING IS NECESSARY BECAUSE NO REASONABLE JURY COULD FIND THE PROFFERED EVIDENCE RELIABLE

Even aside from the questions of admissibility under Rule 404, Rule 413, and Rule 403,

the government's proffered evidence lacks the foundation for admissibility required by Rule

104(b).  Simply put, the alleged prior incidents are only relevant and admissible *if they in fact happened* as the government describes.  Such questions of conditional relevance are governed by Rule 104(b), which states: "When the relevance of evidence depends on whether a fact exists, proof must be introduced sufficient to support a finding that the fact does exist."

The rule itself does not state the quantum of evidence necessary to support such a finding.  In *Huddleston v. United States*, the Supreme Court interpreted Rule 104(b) as requiring that "the jury could reasonably find the conditional fact … by a preponderance of evidence."  485 U.S. 681, 690 (1988).  The *Huddleston* standard applies regardless of whether the evidence is offered under Rule 404(b) or Rule 413.  *See Carroll*, 124 F.4th at 155-56.  Thus, this Court must "examine[] all the evidence" and "decide[] whether the jury could reasonably find the conditional fact—whether the defendant committed the prior act—by a preponderance of the evidence."  *Id*. at 155 (quoting *Johnson*, 283 F.3d at 152).  The government, as proponent, bears the burden of presenting sufficient evidence to support the standard of Rule 104(b) and *Huddleston*.  *United States v. Nektalov*, 325 F. Supp. 2d 367, 372 (S.D.N.Y. 2004).

The government's notice letter does not remotely carry that burden.  It contains only vague and general descriptions of prior incidents—it does not even name certain of the alleged witnesses to these incidents.  As the government's own letter admits, the summaries in the letter do not "reflect all the different kinds of evidence that the Government may offer at trial."  Ex. A at 1, n.1.  But the letter does not state, or even hint, what evidence it may offer.  At this point, there is no way of knowing whether the government possesses sufficient evidence such that a reasonable jury could find by a preponderance that each act happened.  And Mr. Combs expects to be able to establish beyond any doubt that at least some of the incidents *never happened* at all.  These are, quite simply, fabrications.

For that reason, a hearing is necessary to determine the question of preliminary admissibility. Rule 104(c) states: "The court must conduct any hearing on a preliminary question so that the jury cannot hear it if … justice so requires." In many cases, no hearing is required, because a district court can simply provisionally admit the evidence and then strike it later of the necessary foundation fails to materialize. The Supreme Court endorsed that procedure in *Huddleston*: "Often the trial court may decide to allow the proponent to introduce evidence concerning a similar act, and at a later point in the trial assess whether sufficient evidence has been offered to permit the jury to make the requisite finding." 485 U.S. at 690. If not, "the trial court must instruct the jury to disregard the evidence." *Id*.

In this case, however, provisional admissibility subject to striking will not be sufficient. The proffered prior acts, as noted above, are individually and collectively far more inflammatory than the actual charges themselves. If the jury hears, for example, that Mr. Combs ███████

███ , it will do no good to strike the evidence later if the foundation is insufficient. There is no way to unring that bell, and a mistrial would be required. This is precisely the kind of case where a Rule 104(c) hearing is necessary to avoid tainting the jury with exposure to inadmissible and highly prejudicial evidence. *See* Fed. R. Evid. 103(d) ("To the extent practicable, the court must conduct a jury trial so that inadmissible evidence is not suggested to the jury by any means."); *United States v. Swinton*, 480 F. Supp. 385, 393-94 (D. Conn. 2020) (granting an evidentiary hearing under Rule 104(c) to determine whether defendant was involved in prior incident). *Zhong* provides a cautionary tale—the evidence was admitted because the government "promised the district court" it would be able to connect the proffered bad acts to the defendant at trial—but that never happened, the evidence was admitted, and the resulting conviction had to

29

be reversed on appeal.  26 F.4th at 553.  Had the district court held a preliminary hearing, it would have avoided that problem.  This Court should do so here.

Indeed, courts around the country have recognized that a hearing is particularly necessary in cases like this, where the prosecution seeks to admit highly prejudicial acts under Rule 413 and 404(b).  *See United States v. Guidry*, 456 F.3d 493, 499 (5th Cir. 2006) (district court held preliminary hearing); *United States v. Benally*, 500 F.3d 1085, 1088 (10th Cir. 2007) (same); *United States v. Morris*, 2009 WL 10674857, at *2 (E.D. Tenn. Jan. 29, 2009); *United States v. Ogden*, 2021 WL 789861, at *4 (E.D. Okla. Mar. 1, 2021) ("[A]n evidentiary hearing is preferred").  Such hearings are necessary both to determine whether the conditional relevance standard is met and also whether the alleged prior acts count as "sexual assaults" under Rule 413. *See United States v. Willis*, 826 F.3d 1265, 1271 (10th Cir. 2016) (noting district court conducted a "pretrial evidentiary hearing," where claimed victims testified, "before ruling on the admissibility of the prior-acts evidence"); *United States v. Boyajian*, 2012 WL 4094977, at *4 (C.D. Cal. 2012) (concluding "evidentiary hearing is necessary to determine whether … prior conduct amounts to forcible sexual assault").

Thus, while the evidence can and should be excluded without any pretrial hearing, it should not be admitted without a hearing.

## CONCLUSION

For the foregoing reasons, the government's proffered Rule 413 and 404(b) evidence should be excluded.  In the alternative, the Court should hold a preliminary hearing pursuant to Rule 104.

Date:  March 19, 2025
      New York, NY

Respectfully Submitted,

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
Shapiro Arato Bach LLP
1140 Ave of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com