UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| UNITED STATES OF AMERICA, | 24-cr-542 (AS) |
| v. | |
| SEAN COMBS, | |
| Defendant. | |

## DEFENDANT SEAN COMBS'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION TO EXCLUDE RULE 413 AND 404(b) EVIDENCE

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................. ii

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.     THE GOVERNMENT'S LATE-BREAKING ATTEMPT TO RECAST ITS
413/404(b) EVIDENCE AS "ENTERPRISE" EVIDENCE IS DISENGENUOUS,
AND THE EVIDENCE REMAINS INADMISSIBLE ...................................................... 3

     A.    The Government's Late Notice Is Inexcusable, And Admission Of The
Evidence Will Prejudice The Defense ......................................................... 3

     B.    The Alleged Acts Are Not Admissible As "Direct" Evidence ................................. 4

II.    THE EVIDENCE IS NOT ADMISSIBLE UNDER RULE 413 ...................................... 7

III.   THE EVIDENCE IS NOT ADMISSIBLE UNDER RULE 404(b) ................................. 9

IV.   RULE 403 SEPARATELY REQUIRES PRECLUSION ................................................ 11

V.    THE COURT SHOULD HOLD A PRELIMINARY HEARING................................... 12

CONCLUSION.................................................................................................................. 13

## **TABLE OF AUTHORITIES**

**Cases**                                                                  **Page(s)**

*Boyce v. Weber*,
  2021 WL 2821154 (S.D.N.Y. July 7, 2021)................................................................ 9

*Carroll v. Trump*,
  124 F.4th 140 (2d Cir. 2024).................................................................................. 9

*Jones v. Combs, et al.*,
  24-cv-01457-JPO (S.D.N.Y.) ................................................................................ 13

*United States v. Blazek*,
  431 F.3d 1104 (8th Cir. 2005)................................................................................ 9

*United States v. Coppola*,
  671 F.3d 220 (2d Cir. 2012) .................................................................................. 6

*United States v. Daugerdas*,
  2011 WL 573587 (S.D.N.Y. Feb. 16, 2011) ......................................................... 4

*United States v. Davidoff*,
  845 F.2d 1151 (2d Cir. 1988) ................................................................................ 4

*United States v. Garcia*,
  291 F.3d 127 (2d Cir.2002)................................................................................... 10

*United States v. Gotti*,
  399 F. Supp. 2d 417 (S.D.N.Y. 2005)................................................................... 12

*United States v. Graham*,
  2015 WL 6161292 (S.D.N.Y. Oct. 20, 2015) ....................................................... 10

*United States v. Hamilton*,
  334 F.3d 170 (2d Cir. 2003).................................................................................. 6

*United States v. James*,
  607 F. Supp. 3d 246 (E.D.N.Y. 2022)................................................................... 6

*United States v. Johnson*,
  469 F. Supp. 3d 193 (S.D.N.Y. 2019)............................................................... 5, 6

*United States v. Martoma*,
  2014 WL 31191 (S.D.N.Y. Jan. 6, 2014)...................................................... 6, 7, 12

*United States v. Mejia*,
  545 F.3d 179 (2d Cir. 2008).................................................................................. 6

*United States v. Mergen,*
    2010 WL 1423245 (E.D.N.Y. Apr. 9, 2010)..............................................................12

*United States v. Rivera,*
    2015 WL 1875658 (E.D.N.Y. Apr. 22, 2015)..............................................................5

*United States v. Schaffer,*
    851 F.3d 166 (2d Cir. 2017)..............................................................9

*United States v. Sierra,*
    2012 WL 2866417 (S.D.N.Y. July 11, 2012)..............................................................4

*United States v. Wager,*
    651 F. Supp. 3d 594 (N.D.N.Y. 2023)..............................................................9

*United States v. Wallach,*
    935 F.2d 445 (2d Cir. 1991)..............................................................12

*United States v. White,*
    692 F.3d 235 (2d Cir. 2012)..............................................................9

*United States v. Zhong,*
    26 F.4th 536 (2d Cir. 2022)..............................................................10, 11

*United States v. Zingaro,*
    858 F.2d 94 (2d Cir. 1988)..............................................................5

**Rules**

Fed. R. Evid. 104..............................................................12

Fed. R. Evid. 403..............................................................11, 12

Fed. R. Evid. 404..............................................................passim

Fed. R. Evid. 413..............................................................passim

Fed. R. Evid. 415..............................................................9

Fed. R. Evid. 609..............................................................8

**Other Authorities**

137 Cong. Rec. 5,915 (Mar. 13, 1991)..............................................................12

## INTRODUCTION

This Court ordered the government to disclose its enterprise evidence on February 1st. Five weeks after providing that disclosure, the government identified ███████████████ ███████, most dating back decades, and said they were admissible under Rule 413 or 404(b). The government told the Court this evidence was "very distinct" from the charged offenses and that its admissibility needed to be litigated as quickly as possible. Accordingly, the defense moved to exclude, explaining why this evidence is not admissible under either 413 or 404(b) and violates Rule 403.

Apparently unable to defend admissibility under Rule 413 or 404(b), the government then completely switched tacks. In a classic bait-and-switch, the government now claims for the first time that most of what it told this Court was 413/404(b) evidence "is not 'other' crime evidence" at all, but "direct" evidence of the charged racketeering conspiracy.

The government's original view was correct—the evidence in question is not direct evidence of the charged enterprise. It is "other act" evidence vastly different from (and worse than) the charged sex offenses. It is inadmissible under Rule 413 and Rule 404(b). The government's new theory is a subterfuge that would substantially prejudice the defense, which has been preparing for trial based on the February 1 disclosure.

The 413/404(b) evidence is impermissible propensity evidence of the most inflammatory variety. It is designed only to smear Mr. Combs and direct a guilty verdict and would unfairly prejudice him and require a series of distracting mini-trials. It should be excluded.

## BACKGROUND

The actual charges against Mr. Combs do not involve rape or sexual assaults. Instead, the indictment alleges "commercial sex acts" premised on the idea that Combs "control[led]" certain girlfriends through "violence, promises of career and financial opportunities,…financial

support," and "other coercive means."  S2 Indictment ¶12(e).  The government's February 1
Enterprise Letter detailed enterprise evidence to be offered at trial related to Victim-1, Victim-2,
and Victim-3.  Opp.Ex.A.  Neither the indictment nor the Enterprise Letter described any
additional victims or any rape or sexual assault.  The same is true of the subsequent S2
indictment, which contained no new charged offenses and merely added allegations of forced
labor.  Dkt.170.

 The first indication that the government was alleging sexual assault or any additional
victims came on March 7, 2025.   At that time, the government disclosed its plan to offer ████
████████████.  It claimed this evidence was admissible under Rule 413 or 404(b)—not
as direct evidence of the charged enterprise.  *See* Mot.Ex.A.  On March 10, 2025, the
government supplemented the Enterprise Letter and for the first time added an allegation that
Mr. Combs ███████████████—one of the alleged victims from the Rule 413 notice.
Opp.Ex.A.  At the same time, the government persisted in its position that the evidence
pertaining to the other alleged victims in the 413 notice was admissible only under Rules 413 or
404(b) and not as direct evidence:  For instance, it disclosed the names of the individuals
discussed in both enterprise letters, but the government refused to identify the individuals in the
413/404b letter, precisely because they were *not* mentioned in the Enterprise Letter.  *See* Ex.H.

 Likewise, the government represented to the Court on March 14, 2025, that the purported
413/404(b) acts were entirely separate from enterprise allegations and were *not* direct evidence
of racketeering.  The government told the Court that early briefing on Rule 413 evidence was
needed because "[t]he victims that are outlined in the government's 413 letter are *very distinct*
from the identities that were disclosed in its enterprise letter.  The enterprise letter was conduct
that the government *intends to prove* up at trial, whereas the 413 notice" was different, "just

teeing us up for motion practice" on alleged other acts and sexual assaults.  03/14/25 Tr.16-17 (emphasis added).

Combs subsequently moved to exclude the 413/404(b) evidence.  On March 26, 2025, concurrently with its opposition, the government served yet another enterprise letter.  In this one, it claimed—for the first time—that ▮ of the previously noticed 413/404(b) acts were not prior bad acts at all but direct evidence admissible to prove Count One.  Thus, since the February 1 Enterprise Letter deadline, and just weeks before trial, the government has recast entirely the purpose for which it seeks to offer ▮▮▮▮ 413/404(b)-noticed acts.

## ARGUMENT

I.   **THE GOVERNMENT'S LATE-BREAKING ATTEMPT TO RECAST ITS 413/404(b) EVIDENCE AS "ENTERPRISE" EVIDENCE IS DISENGENUOUS, AND THE EVIDENCE REMAINS INADMISSIBLE**

### A.  The Government's Late Notice Is Inexcusable, And Admission Of The Evidence Will Prejudice The Defense

There is no excuse for the government's gamesmanship.  It is clear from the 3500 material that the government has known about these alleged victims for months and months—in some cases over a year.  It made a deliberate and informed decision to seek the admission of this evidence under Rules 413 and 404(b) because it knew this evidence was different in kind from evidence of the charged conduct.  The only reason the government is now claiming this highly inflammatory, prejudicial evidence proves the charged enterprise is that the government is now worried it doesn't satisfy the criteria for admissibility in Rules 413 or 404(b).

Given the complexity of the subject matter at issue, the volume of materials involved, and the defense investigation and strategy formulated over the past seven months, the time for the government to choose why the evidence is relevant or admissible has long passed.  The defense has spent months preparing for a trial focused on the charged offenses as defined in the

indictment and Enterprise Letter.  It is simply impossible to competently investigate and prepare

for a trial that purportedly now rests on ███████████████████████████████████

Indeed, the *government's own* proposed Enterprise Letter deadline was March 7, 2025—prior to

both addendums to the original Enterprise Letter. Dkt.124 at 2.  "The Court's goal" in setting the

pretrial schedule was "to avoid any kind of surprise at the last minute." 12/18/24 Tr.14.  But that

is precisely what the government has introduced now.

A RICO charge imposes "an obligation to particularize the nature of the charge to a

degree that might not be necessary in the prosecution of crimes of more limited scope." *United

States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).  In such cases, it is "imperative that [the]

defendant receive[s] meaningful and concrete pretrial notice as to the particular[s]" of the

government's anticipated proof. *United States v. Sierra*, 2012 WL 2866417, at \*2 (S.D.N.Y.

July 11, 2012).  The government's attempt to relabel its 413/404(b) evidence as direct

"enterprise" evidence is simply too late and will prejudice the defense.  It should be excluded.

*See United States v. Daugerdas*, 2011 WL 573587, at \*2 (S.D.N.Y. Feb. 16, 2011) (precluding

late-disclosed evidence because defendants "cannot adequately prepare to rebut [it] with

approximately one month remaining").

### B.  The Alleged Acts Are Not Admissible As "Direct" Evidence

If these allegations were truly probative of Count One, the government would have said

so earlier.  It didn't, because the new allegations are different in kind from its original enterprise

allegations.  The ██████████████████████████ are not direct evidence of the alleged

enterprise, its purposes, or means and methods, or the charged pattern of racketeering activity.

Nor is this evidence necessary to complete the story of the crimes charged or prove the context in

which the charged crimes were committed.

4

Although uncharged acts can be introduced to prove a RICO enterprise or pattern in certain circumstances, the allegations about ████████████████████████████████ are not probative of either element here. They largely involve unknown or "unidentified individuals," *United States v. Rivera*, 2015 WL 1875658, at *6 (E.D.N.Y. Apr. 22, 2015), precede the charged conspiracy, or differ in kind from the "commercial sex acts" charged in Count One—which does not allege rape. Regarding the ████████████████ for example, the government alleges Combs was assisted by ████████████████████ but specifies only one person it only calls ██████ Opp.Ex.A.; Mot.Ex.B. Many other purported enterprise "members and associates" are left unidentified. The allegations involving ████ ██████████████████ predate the conspiracy entirely. And the government claims certain acts are related to the enterprise only because they took place in a ████████████████ "Other than [mere] reference[s] to the [charged enterprise], there appears to be no connection between th[ese] incident[s] and the charged conspirac[y]." *United States v. Johnson*, 469 F. Supp. 3d 193, 205 (S.D.N.Y. 2019). That explains why the proffered acts were never presented to the grand jury or included in the Enterprise Letter—and why they cannot possibly constitute direct evidence of the conduct that was.

The government does not have free reign to introduce any uncharged conduct it desires in RICO cases. *See, e.g.*, *Johnson*, 469 F. Supp. 3d at 205-06 (evidence was "not admissible as direct evidence of the charged racketeering enterprise"); *Rivera*, 2015 WL 1875658, at *6, 14-15, 20 (evidence inadmissible when it "d[id] not appear to provide any relevant background regarding the…alleged enterprise"). The government's evidence must be limited to the particular conduct charged. *Cf. United States v. Zingaro*, 858 F.2d 94, 103 (2d Cir. 1988) (government may not attempt to prove additional "racketeering acts" not charged in the

indictment).  Moreover, because the indictment alleges an "enterprise" largely made up of

legitimate entities—the Combs Businesses—the government has "no need" to resort to this

uncharged conduct to further "establish the existence of" the alleged entities that form the

enterprise.  *United States v. Hamilton*, 334 F.3d 170, 184-85 (2d Cir. 2003).  That is especially

true where it cannot identify the individuals it alleges are affiliated with Combs.

Even the government's cases acknowledge that evidence offered to prove a RICO pattern

or enterprise, its purposes, or means or methods must be probative on those issues.  *See United*

*States v. Coppola*, 671 F.3d 220, 244-45 (2d Cir. 2012) (evidence showed enterprise's very

"existence" and "the proved predicates' part in a broad pattern of racketeering"); *United States v.*

*Mejia*, 545 F.3d 179, 206-07 (2d Cir. 2008) (undisputed that offered evidence was direct proof of

enterprise).  The facts of those cases are "not comparable," *Johnson*, 469 F. Supp. 3d at 206,

because here the government seeks at the last minute to offer inflammatory evidence clearly

distinct from the "freak-off activity" it previously pronounced as "the core of this case."

09/18/24 Tr.13.

Nor are these acts admissible to "complete the story."  Acts of ██████ are not part of the

story to begin with—they are plainly different from the charged commercial sex acts and are not

"necessary to understand" them.  *United States v. Martoma*, 2014 WL 31191, at *3 (S.D.N.Y.

Jan. 6, 2014).  The government's theory of narrative admissibility is particularly untenable

because courts "employ a narrow construction in determining whether uncharged crimes are

direct evidence of charged offenses."  *Johnson*, 469 F. Supp. 3d at 204.  Uncharged conduct is

not admissible "simply because it provides context or is relevant to charged conduct," *id.*, and

the proper course is "to conduct a Rule 404(b) analysis," *United States v. James*, 607 F. Supp. 3d

246, 253-54 (E.D.N.Y. 2022).

There is no reason for the Court to depart from that approach here. Indeed, the "indictment itself refutes" the government's claim that the proffered uncharged acts are necessary to prove the acts charged in Count One, since it purports to tell a "detailed story" about Mr. Combs's alleged unlawful conduct without any mention of these newly disclosed uncharged acts. *Martoma*, 2014 WL 31191, at *3. The February 1, 2025 Letter does the same.

## II.    THE EVIDENCE IS NOT ADMISSIBLE UNDER RULE 413

The government's "fact-specific" approach is not what Congress intended when limiting the rule to "criminal case[s] in which a defendant is accused of a sexual assault." Fed. R. Evid. 413. That is why the Seventh Circuit held in *Courtright* that Rule 413 only applies to cases in which a sexual assault is charged in the indictment.[1]

Indeed, the government does not even attempt to address Rule 413's text or argue that RICO, sex trafficking, and Mann Act violations are "sexual assault" crimes under the rule. For the reasons argued in the Motion, they are not. Mot.11-12. Nor does the government argue that Mr. Combs sexually assaulted Victim-1 or Victim-2—it concedes the allegations concerning these victims *do not* amount to "sexual assault." Opp.20n.12. Instead, it contends Mr. Combs is "accused of a sexual assault" under Rule 413 because of anticipated *testimony* from Victim-3 and Victim-4. That proposed interpretation of Rule 413's language is illogical and unworkable.

1.    The government argues Mr. Combs is "accused of a sexual assault" because "Victim-3 and Victim-4 *will both testify* that" Mr. Combs "raped them and coerced them to engage in oral sex with him." Opp.20, 23 (emphasis added). But those allegations of rape and sexual assault appear nowhere in the indictment—not even in the "speaking allegations" the

---

[1] The government dismisses *Courtright* because the minor victim there "had initially reported" a sexual assault "but did not testify about the sexual assault at trial." Opp.22. That was one reason the 413 error was harmless, but not the reason for the Court's holding that 413 only applies in cases in which sexual assaults are actually *charged*.

government emphasizes. Opp.19. Indeed, despite two superseders, the defense did not learn the government's case involved such allegations until the March 10 letter and subsequently-produced 3500 material.

Mere testimony cannot provide the basis for Rule 413 admissibility. If the government's approach were correct, it could invoke Rule 413 in any random case—tax evasion, aggravated assault, terrorism—where a witness said "oh, and he sexually assaulted me also." Reliance on ancillary facts as a basis of admissibility is a recipe for confusion, as the Advisory Committee made clear in the analogous context of Rule 609(a)(2), which was amended to clarify prior offenses are admissible only if the "elements of the crime required proving … a dishonest act or false statement." Fed. R. Evid. 609(a)(2); *see id*. advisory committee notes to 2006 amendment ("[E]vidence that a witness was convicted for a crime of violence, such as murder, is not admissible … even if the witness acted deceitfully in the course of committing the crime."). Similarly, Rule 413 cannot be invoked simply because a witness will testify that the defendant committed an act of sexual assault "in the course of committing" the charged offense.

The government's reading of the rule is also impracticable, because it would mean that the Court could not assess whether evidence was admissible under Rule 413 until after it has heard the trial testimony. Yet this type of evidence is so incendiary that its admissibility should be determined before trial, so that defendants know what they are facing and can plan accordingly. If the evidence is allowed on the fly, and the Court makes a mistake, it will be impossible to unring the bell.

2.      The government's remaining arguments are unavailing. It cites cases charging sex crimes involving minors (Opp.21-22), but minors cannot consent to sexual activity, meaning such crimes necessarily involve conduct "proscribed by chapter 109A." *United States v. Blazek*,

431 F.3d 1104, 1109 (8th Cir. 2005); *accord United States v. Wager*, 651 F. Supp. 3d 594, 601

(N.D.N.Y. 2023).  And *Boyce v. Weber*, 2021 WL 2821154 (S.D.N.Y. July 7, 2021), interprets

Rule 415, which is phrased in notably broader terms—it permits prior sexual assault evidence in

"civil case[s] involving a claim for relief *based on* a party's alleged sexual assault."  (emphasis

added).  That is a far broader than the "accused of" formulation in Rule 413.  *See Carroll v.*

*Trump*, 124 F.4th 140, 158-59 (2d Cir. 2024) (describing Rule 415's breadth).

      The government claims its interpretation of Rule 413 is consistent with Congress's intent,

but the legislative history overwhelmingly supports Mr. Combs's argument.  The government

does not address Mr. Combs's other statutory interpretation arguments, or the persuasive

comments from academics counseling a narrow reading.  And while *United States v. Schaffer*,

851 F.3d 166 (2d Cir. 2017), rejected a due process challenge to Rule 413, it did not decide the

instant question.  It stands to reason, however, that a rule as broad and unworkable as the one the

government proposes would be even more susceptible to a due process challenge.[2]

      Contrary to the government's argument, Opp.23, to conduct a proper Rule 403 inquiry,

the Court must first resolve Rule 413.  If this Court does not correctly determine the legal

relevance of the proffered acts, and for what purpose (if any) they are probative, "the Rule 403

inquiry [would be] tainted."  *United States v. White*, 692 F.3d 235, 247 (2d Cir. 2012).

Regardless, Rule 413 is not satisfied.

## III.     THE EVIDENCE IS NOT ADMISSIBLE UNDER RULE 404(b)

      The opposition makes clear the government wants to use the proffered evidence to show

Mr. Combs is "practiced … in sexual assault."  Opp.26.  This is propensity evidence—exactly

---

[2] The government incorrectly claims Combs concedes "that the Non-Statutory Victims' proffered testimony describes conduct that falls within Rule 413's definition of 'sexual assault.'"  Opp.19. In fact, his Motion argued that a preliminary hearing was necessary because the notice lacks necessary detail as to whether the proffered evidence qualifies.  *See* Mot.30.

what Rule 404(b) forbids.  The government offers only vague assertions that the evidence will prove Combs's knowledge, intent, or lack of mistake—but it never explains how the evidence will prove those facts *without relying on a propensity inference*.  That failure is fatal.

For instance, the government contends Combs must have coerced the statutory victims because he ████████████████████.  It argues he must have intended to traffic the victims because he ████████████████████████.  Its absence of mistake argument takes the same form.  *See* Opp.25-26.  The logic rests on an obvious propensity inference.  *See* Mot.16-18.  Tellingly, the government does not even address the well-reasoned *Weinstein* decision on this very issue.  *See* Mot.16.  Its logic stands in stark contrast to proper use of Rule 404(b)(2).  The *single* case the government cites in opposition is a perfect example.  In *United States v. Graham*, a sex trafficking case, the defendant had a specific defense—that "he was a paying prostitution customer and … had no intent to kidnap the Victim and force her to engage in prostitution."  2015 WL 6161292, at *3 (S.D.N.Y. Oct. 20, 2015).  His defense turned on his explanation "for the Victim's presence in his apartment," and the court admitted evidence of his prior sex trafficking because it "call[ed] into question [that] 'innocent explanation'."  *Id.*  Here, by contrast, the evidence isn't being offered to rebut an argument like that.  It is only being offered so the government can claim Combs is a serial sex trafficker.

The government's proffer also fails to "identify a similarity or connection between the … acts that makes the prior act relevant to establishing knowledge [or intent]."  *United States v. Garcia*, 291 F.3d 127, 137 (2d Cir.2002).  If they are "not sufficiently similar" to the charged acts, they are inadmissible under Rule 404(b).  *United States v. Zhong*, 26 F.4th 536, 553 (2d Cir. 2022).  The government says ████████████████████ proves knowledge or intent with respect to the statutory victims, but the contexts for the acts and the individuals involved are

entirely different. The ███████████ the government proffers are unlike the "commercial sex acts" with long term girlfriends. The government's argument simply does not bear the weight the government places on it.[3]

If it looks like a duck, walks like a duck, and quacks like a duck, then it should be treated as a duck, regardless of what the government calls it. The proffered evidence is mere "propensity evidence in sheep's clothing." *Zhong*, 26 F.4th at 551. It should be excluded.

## IV.    RULE 403 SEPARATELY REQUIRES PRECLUSION

The government concedes the proffered acts are still subject to Rule 403, Opp.15, which overwhelmingly counsels in favor of excluding all seven of the proffered acts.

For the reasons discussed, the acts are minimally probative. In writing off the potential for unfair prejudice, the government simply ignores that ███████████ — ███████████ ██████—are far more inflammatory than the "commercial sex acts" charged in the indictment. Indeed, as noted, the government concedes Victim-1 and Victim-2 were *not* sexually assaulted. Opp.20 n.12. Yet it still hopes to parade before the jury ███████████████████ ███████████ to "flood the zone" with testimony it admits will be "powerful."

In balancing Rule 403, the Court must also consider "undue delay," "wasting time," and the needless cumulative impact of the proffered evidence. The government offers no response to the point that injecting these incidents into the trial would necessitate █████ separate mini-trials and add weeks to a trial that is already shaping up to exceed the government's original estimate of three weeks. The defense would need to allocate substantial trial time "to defend [against] these other [acts]" which would "necessarily result in delay, [and] confusion of the issues."

---

[3] The government does not defend the adequacy of its notice but instead points to its briefing and the 3500, inviting the Court to order further disclosure if necessary. But Rule 404(b)(3)(A) requires adequate notice "so that the defendant has a fair opportunity to meet it." Ordering additional notice after the fact on the eve of trial does not cure the problem.

*Martoma*, 2014 WL 31191, at *5; *United States v. Mergen*, 2010 WL 1423245, at *3 (E.D.N.Y. Apr. 9, 2010) (excluding under 403 evidence requiring "mini-trial"). The evidence is also needlessly cumulative of other, far less prejudicial evidence the government will no doubt use— such as the testimony of the statutory victims and other witnesses. This is true whether the acts are deemed probative under 413, 404(b)(2), or as direct evidence. *See United States v. Gotti*, 399 F. Supp. 2d 417, 420 (S.D.N.Y. 2005) (uncharged murder "cumulative" if offered to prove the enterprise, since witnesses would testify to membership, and defendant was "already charged" with committing crimes "in connection with his participation"). And even if the acts are probative (they are not) there is no reason to admit them all, as the "cumulative impact" cannot satisfy Rule 403. *United States v. Wallach*, 935 F.2d 445, 472 (2d Cir. 1991).

## V.    THE COURT SHOULD HOLD A PRELIMINARY HEARING

If these acts are admitted, there will be no way to unring the bell. That is why the Court must exercise a gatekeeping function now by holding a preliminary hearing. *See* Mot.27-30.

The government argues Combs has not proffered any evidence disproving the acts, but the *government* bears the burden of satisfying Rule 104(b) as proponent of the evidence. And, far from offering any "corroboration" or "detail[]," the government has not even been able to identify many of the individuals purportedly involved in the acts. It has offered no witnesses to corroborate the alleged victims' stories. It argues the stories corroborate each other, ignoring the likelihood that they do so precisely because they are fabrications "not generated independently." 137 Cong. Rec. 6,033 (Mar. 13, 1991) (Analysis Statement). And certain of its proffers hide exculpatory evidence. For example, ████████████████████████████████████████████ ████████████████████████████████████████████ Ex.K. What other details has the government withheld?

There remain other serious issues undermining the reliability of this evidence. Although we have not yet had time to completely investigate each alleged victim, ███████████ ████████████████████████████████████████████████████████████ ████████████████████████. Moreover, since the motion was filed, Tyrone Blackburn— ███████████████████████████—was scolded by yet another judge for "conduct" deemed "unsettling," including filings "replete with…conclusory accusations, and… misstatements and exaggerations." *Jones v. Combs, et al.*, 24-cv-01457-JPO (S.D.N.Y.), ECF 86 at 7. Indeed, Blackburn suggested "Defendant Sean Combs…[is] *presumed guilty*." *Id.* (emphasis added). That presumption of guilt is what Blackburn has repeatedly attempted to inject into these proceedings, including through unreliable proffers of clients' purported stories.

## **CONCLUSION**

The government's proffered evidence should be excluded, or a preliminary hearing held.

Date:  April 1, 2025                                     Respectfully Submitted,
       New York, NY

                                                         /s/ Alexandra A.E. Shapiro
                                                         Alexandra A.E. Shapiro
                                                         Jason A. Driscoll
                                                         Shapiro Arato Bach LLP
                                                         1140 Ave of the Americas, 17th Fl.
                                                         New York, NY 10036
                                                         (212) 257-4881
                                                         ashapiro@shapiroarato.com
                                                         jdriscoll@shapiroarato.com

                                                         Marc Agnifilo
                                                         Teny Geragos
                                                         AGNIFILO INTRATER
                                                         445 Park Ave., 7th Fl.
                                                         New York, NY 10022
                                                         646-205-4350
                                                         marc@agilawgroup.com
                                                         teny@agilawgroup.com

                                                         Anna Estevao
                                                         SHER TREMONTE LLP

90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com