UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                             :
UNITED STATES OF AMERICA                                     :   Case No. 24-cr-542 (AS)
                                                             :
       v.                                                    :
                                                             :
SEAN COMBS,                                                  :
                                                             :
                           Defendant.                        :
                                                             :
                                                             :
                                                             :
                                                             :
-------------------------------------------------------------X

## NON-PARTY WARNER BROS. DISCOVERY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO QUASH

Non-Party Warner Bros. Discovery, Inc. ("WBD") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure, to quash the subpoena *duces tecum* served on it by defendant Sean Combs (the "Subpoena"). The Subpoena, a copy of which is attached to the accompanying Declaration of Thomas B. Sullivan ("Sullivan Decl.") as Exhibit A, seeks material relating to the documentary series "The Fall of Diddy," which was recently aired by a WBD subsidiary. Mr. Combs seeks outtakes from interviews with two persons featured in the docuseries.

The Subpoena should be quashed on two separate and independent grounds. First, the Subpoena, even as modified through the parties' "meet and confer" discussions, exceeds the limited scope of Rule 17(c), amounting to the kind of "general fishing expedition" that the Federal Rules of Criminal Procedure forbid. *U.S. v. Nixon*, 418 U.S. 683, 698-99 (1974). Second, even if the subpoena were proper under Rule 17(c), the interview outtakes it seeks are protected by the reporter's privilege that applies to unpublished newsgathering materials, and

Mr. Combs has not met, and cannot meet, his burden to overcome that privilege. WBD's motion to quash should be granted.

## BACKGROUND

Mr. Combs currently faces multiple charges relating to sexual trafficking and other offenses. *See generally* Dkt. 169. Earlier this year, the streaming serving Max, which is owned and operated by a WBD subsidiary, began airing a documentary series entitled "The Fall of Diddy" that examined the arc of Mr. Combs' career, as well as some of the recent allegations against him.

The documentary series[1] was the product of extensive reporting, and included on-camera interviews with, among others, Individual A and Individual B.[2] Individual A is Mr. Combs' former personal chef. She is featured in the docuseries speaking about how Mr. Combs treated her when she was employed by him, as well as about various rumors she heard about his behavior during her time in his orbit. Individual B is a former romantic partner of Mr. Combs. She is featured in the docuseries discussing the origins and path of her relationship with him, including one alleged incident of sexual assault.

As served, Mr. Combs' subpoena sought three categories of documents:

- **Request No. 1** – All recordings of interviews with Individual A or Individual B created in connection with the documentary series, including all unaired outtakes;

- **Request No. 2** – All "diary entries, journals, narratives, or notes" provided by either Individual A or Individual B in connection with the documentary series; and

---

[1] At the Court's request, WBD would be happy to provide a complete copy of the docuseries, along with time codes identifying the relevant interviews.
[2] Individual A and Individual B are identified in the unredacted copy of the Subpoena, which WBD will separately provide to the Court.

2

- **Request No. 3** – Records of any financial payments made to either Individual A or Individual B in connection with the documentary series.

Sullivan Decl. Ex. A.

The Subpoena was served on March 24, 2024, with a return date of the next day. *Id.* Counsel for Mr. Combs subsequently extended the return date to April 8, 2025, as part of the parties' efforts to resolve, or narrow, their disputes regarding the Subpoena. *See* Sullivan Decl. Ex. B (true and correct copy of email correspondence regarding extension of the return date). During those discussions, Mr. Combs agreed to drop the second and third requests in the Subpoena and WBD agreed to produce a copy of the as-aired documentary. At present, the only remaining area of dispute is Mr. Combs' request for the interview outtakes.

WBD now moves to quash the Subpoena. Even as limited, the Subpoena's open-ended request for interview outtakes exceeds the limited scope of Rule 17(c). And, the unpublished newsgathering material it seeks is protected from disclosure by the reporter's privilege, which cannot be overcome under the circumstances of this case.

## ARGUMENT

**I.   THE SUBPOENA SHOULD BE QUASHED BECAUSE IT EXCEEDS THE LIMITED SCOPE OF RULE 17(c).**

The Subpoena should be quashed because it exceeds the limited scope of Rule 17(c). "The purpose of Rule 17(c) is to facilitate the trial by designating a time and place prior to trial to obtain and inspect evidentiary material." *United States v. Maxwell*, 2021 WL 1625392, at *1 (S.D.N.Y. Apr. 27, 2021). It is well settled that a Rule 17(c) subpoena "[is] not intended to provide a means of discovery for criminal cases," and may not be used for purposes of conducting a "general fishing expedition." *Nixon*, 418 U.S. at 698-99. Thus, "courts must be careful that [R]ule 17(c) is not turned into a broad discovery device, thereby undercutting the

strict limitation of discovery in criminal cases found in Fed. R. Crim. P. 16." *United States v. Cherry*, 876 F. Supp. 547, 552 (S.D.N.Y. 1995) (quoting *United States v. Cuthbertson*, 630 F.2d 139, 146 (3d Cir. 1980)).

Faced with a motion to quash a Rule 17(c) subpoena, "the party seeking compliance must make a preponderance showing that the materials requested are relevant, specifically identified, admissible, and not otherwise procurable by the exercise of due diligence." *United States v. Barnes*, 560 F. App'x 36, 39-40 (2d Cir. 2014) (citing *Nixon*, 418 U.S. at 699-700). Mr. Combs cannot make that showing here.

**First**, the Subpoena does not identify the materials sought with sufficient specificity. "To defeat the notion that the subpoena is designed to evade the discovery requirements of the Federal Rules of Criminal Procedure, the party who served the subpoena 'must be able to reasonably specify the information contained in or believed to be contained in the documents sought' rather than 'merely hop[e] that something useful will turn up.'" *United States v. Menendez*, 2024 WL 2801960, at *1 (S.D.N.Y. May 31, 2024) (quoting *United States v. Louis*, 2005 WL 180885, at *5 (S.D.N.Y. Jan. 27, 2005)); *see also United States v. Tagliaferro*, 2021 WL 980004, at *2 (S.D.N.Y. Mar. 16, 2021) ("a broadly drawn and unspecific subpoena *duces tecum* must be quashed under Rule 17(c)"). That requirement is not met here.

Courts have consistently held that broad requests for interview outtakes, without any specific reasons to believe the outtakes contain any relevant, non-cumulative, statements, are inconsistent with Rule 17(c). *See, e.g.*, *United States v. Shah*, 2022 WL 1422252, at *3 (S.D.N.Y. May 5, 2022) (broad hope that interview outtakes from documentary might "unearth 'prior inconsistent statements' by potential witnesses and 'exculpatory evidence'" was insufficient to meet requirement of Rule 17(c)); *United States v. Fitzsimons*, 342 F.R.D. 18, 21

(D.D.C. 2022) (rejecting request for interview outtakes and noting that requirements of Rule 17(c) are not "satisfied merely because a defendant can articulate what they *hope* to find in the subpoenaed evidence" (emphasis added)); *see also United States v. Drakopoulos*, 2003 WL 21143080, at *1-2 (E.D.N.Y. Jan. 13, 2003) (subpoena for recordings of jailhouse telephone conversations did not comply with Rule 17(c) where defendant argued generally that recordings "will contain some the information that is relevant and useful for his defense" without anything more specific than that). The same applies here. Mr. Combs has not meet his burden to demonstrate that the Subpoena is anything but a prohibited fishing expedition.

**Second**, the Subpoena also fails the relevance and admissibility requirements of Rule 17(c). Though the purpose of the subpoena is far from clear on its face, presumably, Mr. Combs is seeking potential impeachment material against Individual A or Individual B should either testify at trial. But, Mr. Combs cannot know if the material is even potentially relevant because the Government's witness list is not due until April 14 and, therefore, he does not know if either Individual A or Individual B will testify at trial. *See* Order, Dkt. No. 181. Nor does he know whether any of the materials sought would actually impeach either witness. *See United States v. Avenatti*, 2020 WL 86768, at *7 (S.D.N.Y. Jan. 6, 2020) (denying request for recording because argument that it would impeach a witness in some respect "relies on rank speculation"); *cf. United States v. Johnson*, 2013 WL 3948454, at *1 (S.D.N.Y. July 24, 2013) ("A general assertion that certain material 'might contain exculpatory information' is insufficient to prevail against a motion to quash under Rule 17(c).").

In addition, recordings of interviews with Individual A and Individual B would be hearsay, and, therefore, not directly admissible. *See United States v. Pena*, 2016 WL 8735699, at *2 (S.D.N.Y. Feb. 12, 2016) (quashing subpoena seeking telephone recordings and emails from

cooperating witnesses because "[s]uch materials are of their nature hearsay" (cleaned up)); *United States v. Jackson*, 2006 WL 1993251, at *2 (S.D.N.Y. July 14, 2006) ("It is clear that the subpoenas must be quashed. The defendant has not shown how the subpoenaed telephone records, of their nature hearsay, could be admissible, as required by *Nixon*."). To the extent the materials could be potentially admissible as impeachment evidence, "[c]ourts have consistently interpreted the admissibility standard of Rule 17(c) to preclude production of materials whose evidentiary value is limited to impeachment." *Cherry*, 876 F. Supp. at 553; *see also Avenatti*, 2020 WL 86768, at *6 (denying request for audio recordings "in order to demonstrate witnesses' bias or self-interest" because "the admissibility standard under Rule 17(c) does not extend to impeachment material"); *Pena*, 2016 WL 8735699, at *2 ("Although hearsay may be admissible for impeachment purposes, Rule 17(c) subpoenas may not issue prior to trial to obtain materials usable only to impeach.").

The Subpoena should be quashed for exceeding the permissible scope of Rule 17(c).

## II. THE SUBPOENA SHOULD ALSO BE QUASHED BECAUSE MR. COMB'S CANNOT OVERCOME WBD'S REPORTER'S PRIVILEGE.

The Subpoena should also be quashed because the materials sought are protected from disclosure by the reporter's privilege, which Mr. Combs cannot overcome.

The Second Circuit has long recognized a qualified reporter's privilege, which applies in both civil and criminal proceedings, and to both nonconfidential and confidential newsgathering and source material. *See United States v. Treacy*, 639 F.3d 32, 43 (2d Cir. 2011); *Gonzales v. NBC*, 194 F.3d 29, 35-36 (2d Cir. 1998). The privilege applies to, among others, documentary filmmakers. *See, e.g.*, *United States v. Grant*, 2004 U.S. Dist. LEXIS 28176, at *5-9 (S.D.N.Y. Nov. 17, 2004) (applying privilege to criminal subpoena seeking outtakes from MTV series

6

"True Life");[3] *Shah*, 2022 WL 1422252, at *1-4 (applying privilege to criminal subpoena seeking outtakes from ABC documentary about criminal charges against reality television star).

As applied specifically to nonconfidential newsgathering materials such as those at issue here, the privilege rests on a recognition that:

> If the parties to any lawsuit were free to subpoena the press at will, it would likely become standard operating procedure for those litigating against an entity that had been the subject of press attention to sift through press files in search of information supporting their claims. The resulting wholesale exposure of press files to litigant scrutiny would burden the press with heavy costs of subpoena compliance, and could otherwise impair its ability to perform its duties—particularly if potential sources were deterred from speaking to the press, or insisted on remaining anonymous, because of the likelihood that they would be sucked into litigation. Incentives would also arise for press entities to clean out files containing potentially valuable information lest they incur substantial costs in the event of future subpoenas. And permitting litigants unrestricted, court-enforced access to journalistic resources would risk the symbolic harm of making journalists appear to be an investigative arm of the judicial system, the government, or private parties.

*Gonzales*, 194 F.3d at 35. To overcome the privilege, the party seeking to compel the production of nonconfidential newsgathering material is required to show "that the materials at issue are of likely relevance to a significant issue in the case, and are not reasonably obtainable from other available sources." *Id.* at 36. Mr. Combs cannot make that showing with respect to the interview outtakes.

Courts have consistently held that broad subpoenas for journalistic outtakes based on the hope that the unpublished material *might* prove relevant in some way are insufficient to overcome the reporter's privilege. *See, e.g.*, *In re McCray, Richardson, Santana, Wise & Salaam Litig.* ("*McCray*"), 991 F. Supp. 2d 464, 470 (S.D.N.Y. 2013) (quashing subpoena seeking interview outtakes where "Defendants only ma[de] general claims that the outtakes are likely to

---

[3] A copy of this opinion, which does not appear to be available on Westlaw, is attached to the Sullivan Declaration as Exhibit C.

contain relevant material");[4] *Grant*, 2004 U.S. Dist. LEXIS 28176, at *5-9 (quashing subpoena for outtakes from MTV television documentary series where, "[w]hile the video outtakes here are of some relevance to the Government, their need for them is simply not great enough to outweigh the public interest in a free press"); *Shah*, 2022 WL 1422252, at *7 (quashing subpoena for interview outtakes from documentary where criminal defendant failed to identify any particular "outtake that would provide the evidence" she sought, and, instead, sought "wholesale exposure of press files to litigant scrutiny"); *Sikelianos v. City of New York*, 2008 WL 2465120, at *1 (S.D.N.Y. June 18, 2008) (quashing subpoena for unpublished photographs of plaintiff's arrest where possibility that photographs might prove relevant to civil rights case was insufficient to overcome reporter's privilege); *United States v. Marcos*, 1990 WL 74521, at *4 (S.D.N.Y. June 1, 1990) (quashing subpoena for interview outtakes with criminal defendant where any possible evidentiary value of outtakes would be cumulative of evidence already available).

This applies especially here where the only possible relevance of the interview outtakes to Mr. Combs' case is this speculative hope that they might contain some unpublished statements from either Individual A or Individual B that *might* be useful for impeachment. Under well-established law, such a remote and speculative possibility is insufficient to overcome the privilege. *See, e.g.*, *United States v. Burke*, 700 F.2d 70, 77-78 (2d Cir. 1983) (criminal defendant could not overcome reporter's privilege with respect to unpublished interviews with government's key witness where "the principal evidentiary purpose served by the . . . materials

---

[4] Although *McCray* was a civil, not criminal, case, the burden necessary to overcome the reporter's privilege is the same in civil and criminal cases. *See Treacy*, 639 F.3d at 43 ("We now hold that, in instances where a reporter is not protecting a confidential source or confidential materials, the showing required to overcome the journalist's privilege is the same in a criminal case as it is in a civil case—namely, the showing required by *Gonzales*—and that this is true whether the party seeking to overcome the privilege is the prosecution or the defense.").

would be to impeach the credibility of" government's witness, and any additional impeachment evidence would have been cumulative); *McCray*, 928 F. Supp. 2d at 758 (possibility that interview outtakes from documentary film might contain impeachment material not contained in edited version of film was insufficient to overcome reporter's privilege); *United States v. Hendron*, 820 F. Supp. 715, 718 (E.D.N.Y. 1993) (quashing subpoena seeking interview outtakes with critical witness where possible impeachment value was purely speculative).

Mr. Combs cannot overcome the reporter's privilege with respect to the interview outtakes.

## CONCLUSION

For the reasons set forth above, non-party WBD respectfully requests that the Court quash the subpoena *duces tecum* served on it by Mr. Combs.

Dated:  April 8, 2025                             Respectfully submitted,

 *Of Counsel:*                                    BALLARD SPAHR LLP

Paul J. Safier                                    By:  */s/ Thomas B. Sullivan*
BALLARD SPAHR LLP                                      Thomas B. Sullivan
1735 Market St., 51st Fl.
Philadelphia, PA 19103                            1675 Broadway, 19th Floor
Phone:  (215) 665-8500                            New York, NY 10019-5820
Fax:  (215) 864-8999                              Phone: (212) 850-6139
safierp@ballardspahr.com                          Fax: (212) 223-1942
                                                  sullivant@ballardspahr.com

                                                  *Counsel for Non-Party Warner Bros. Discovery, Inc.*