UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

  -v.-

SEAN COMBS,
  a/k/a "Puff Daddy,"
  a/k/a "P. Diddy,"
  a/k/a "Diddy,"
  a/k/a "PD,"
  a/k/a "Love,"
             Defendant.

S3 24 Cr. 542 (AS)

**THE GOVERNMENT'S MOTION *IN LIMINE* TO PRECLUDE
EXPERT TESTIMONY OF DR. ELIE AOUN**

MATTHEW PODOLSKY
Acting United States Attorney
Southern District of New York
26 Federal Plaza
New York, New York 10278

Maurene Comey
Meredith Foster
Emily A. Johnson
Christy Slavik
Madison Reddick Smyser
Mitzi Steiner
Assistant United States Attorneys
  *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................................. 1

BACKGROUND.............................................................................................. 1

APPLICABLE LAW ........................................................................................ 3

    A.  The Insanity Defense Reform Act of 1984.................................................. 3

    B.  Federal Rule of Criminal Procedure 12.2.................................................. 4

    C.  Federal Rules of Evidence ..................................................................... 5

        1.  Rule 702................................................................................... 5

        2.  Rule 703................................................................................... 7

        3.  Rule 704................................................................................... 8

        4.  Rules 401 and 403..................................................................... 8

DISCUSSION .................................................................................................. 9

    A.  The Court Should Preclude the Proposed Testimony for Failure to Comply with Rule 12.2.......................................................................................................... 9

    B.  The Proposed Testimony is Inadmissible Under the IDRA.................................... 11

    C.  The Proposed Testimony is Inadmissible Under the Rules of Evidence.................. 13

        1.  The Proposed Testimony Invades the Province of the Jury and Violates Rules 703 and 704 ............................................................................................. 13

        2.  The Proposed Testimony is Not Based on Reliable Methods or Sufficient Facts or Data and Must be Excluded Under Rule 702 .............................................. 15

CONCLUSION ................................................................................................ 18

# <u>TABLE OF AUTHORITIES</u>

PAGE(S)

**Cases**

*Amorgianos v. Nat'l R.R. Pass. Corp.*,
  303 F.3d 256 (2d Cir. 2002) ....................................................................................... 6, 7, 15

*Bourjaily v. United States*,
  483 U.S. 171 (1987) ............................................................................................................ 6

*Daubert v. Merrell Dow Pharm., Inc.*,
  509 U.S. 579 (1993) ........................................................................................................ 6, 9

*E.E.O.C. v. Bloomberg*,
  No. 07 Civ. 8383 (LAP), 2010 WL 3466370 (S.D.N.Y. Aug. 31, 2010) .............................. 17

*Gen. Elec. Co. v. Joiner*,
  522 U.S. 136 (1997) ............................................................................................................ 6

*Highland Capital Mgmt., L.P. v. Schneider*,
  551 F. Supp. 2d 173 (S.D.N.Y. 2008) .................................................................................. 7

*Highland Capital Mgmt., L.P. v. Schneider*,
  379 F. Supp. 2d 461 (S.D.N.Y. 2005)…………………………………………………………7

*Hygh v. Jacobs*,
  961 F.2d 359 (2d Cir. 1992) ............................................................................................... 8

*Kumho Tire Co. v. Carmichael*,
  526 U.S. 137 (1999) ............................................................................................................ 6

*LaSalle Bank Nat'l Ass'n v. CIBC Inc.*,
  No. 08 Civ. 8426 (WHP) (HBP), 2012 WL 466785 (S.D.N.Y. Feb. 14, 2012) ..................... 7

*Nimely v. City of New York*,
  414 F.3d 381 (2d Cir. 2005) ............................................................................................... 6

*United States v. Brown*,
  326 F. 3d 1143 (10th Cir. 2003) ......................................................................................... 4

*United States v. Cameron*,
  907 F.2d 1051 (11th Cir. 1990) .................................................................................... 3, 4, 11

*United States v. Cervone*,
  907 F.2d 332 (2d Cir. 1990) ....................................................................................... 5, 9, 10

*United States v. Childress*,
  58 F.3d 693 (D.C. Cir. 1995) .......................................................................... 4, 12

*United States v. Dill*,
  693 F.2d 1012 (10th Cir. 1982) ........................................................................ 10

*United States v. Duggan*,
  743 F.2d 59 (2d Cir. 1984) ............................................................................... 10

*United States v. Dupre*,
  339 F. Supp. 2d 534 (S.D.N.Y. 2004) ....................................................... 4, 12, 13

*United States v. Dupre*,
  462 F.3d 131 (2d Cir. 2006) ............................................................................ 3, 14

*United States v. Jones*,
  2018 WL 1115778 .............................................................................................. 15

*United States v. Katzin*,
  707 F. App'x 116 (3d Cir. 2017) .......................................................................... 5

*United States v. Mejia*,
  545 F.3d 179 (2d. Cir. 2008) ......................................................................... 7, 14

*United States v. Nersesian*,
  824 F.2d 1294 (2d Cir. 1987) .............................................................................. 8

*United States v. Olson*,
  576 F.2d 1267 (8th Cir. 1978) ............................................................................. 5

*United States v. Pirro*,
  76 F. Supp. 2d 478 (S.D.N.Y. 1999) ............................................................... 3, 11

*United States v. Pohlot*,
  827 F.2d 889 (3d Cir. 1987) ............................................................................. 3, 4

*United States v. Puerto*,
  392 F. App'x 692 (11th Cir. 2010) ..................................................................... 12

*United States v. Rahman*,
  189 F.3d 88 (2d Cir. 1999) ................................................................................ 15

*United States v. Ray*,
  583 F. Supp. 3d 518 (S.D.N.Y. 2022) ........................................................... 11, 12

*United States v. Sabir*,
  No. 05 Cr. 673 (LAP), 2007 WL 1373184 (S.D.N.Y. May 10, 2007) .............. 4, 11

*United States v. Washington, et al.*,
   21 Cr. 603 (VEC), Dkt. No. 1038 ........................................................................3, 12, 16, 17

*United States v. Wescott*,
   83 F.3d 1354 (11th Cir. 1996) .................................................................................3, 11, 15

*United States v. Young*,
   213 F.3d 627, 2000 WL 687750 (2d Cir. 2000) ................................................................ 10

**Statutes**

18 U.S.C. § 17 ....................................................................................................................... 3, 15

**Rules**

Fed. R. Crim. P. 12.2 ......................................................................................................... *passim*
Fed. R. Evid. 401 ....................................................................................................................... 8
Fed. R. Evid. 403 ..................................................................................................................... 13
Fed. R. Evid. 702 ....................................................................................................................... 5
Fed. R. Evid. 703 ................................................................................................................. 7, 14
Fed. R. Evid. 704 ................................................................................................................. 8, 13

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in support of its motion to preclude the opinion testimony of Dr. Elie Aoun.  The noticed testimony relates to the defendant's diminished capacity to form the *mens rea* required to commit the charged offenses—in other words, a "mental condition bearing on the issue of guilt." Fed. R. Crim. P. 12.2(b).  Testimony of this nature is narrowly circumscribed by the Federal Rules of Criminal Procedure and Evidence. The expert must be noticed pursuant to the procedures set forth in Rule 12.2 and because he was not, the Court should exclude the expert testimony.  But even if the expert was properly noticed under Rule 12.2, his testimony should be excluded as running afoul of the Insanity Defense Reform Act of 1985 and irrelevant, prejudicial, and impermissible under the Rules of Evidence.  The Court should not permit the jury to hear it.

## BACKGROUND

On October 7, 2024, within a month of the defendant's arrest, the Government first requested written notice pursuant to Rule 12.2 of whether the defendant intended to introduce expert testimony relating to a mental disease, defect, or other condition bearing on the issue of whether the defendant had the mental state required for the offenses charged.  The Government requested such notice within the time allowed by the Court for the filing of pretrial motions (*i.e.*, by February 17, 2025) as required by Rule 12.2.  The defendant provided no such notice.

On March 14, 2025, the day the defendant's expert notices were due, the defendant sought permission from the Court to provide late expert notice for a purported pharmacology expert who could "explain the [medical] records and what they mean in terms of prescription medications and the like."  (Mar. 14, 2025 Tr. at 26-27).  The Government—relying on the defendant's representations concerning the scope of the expert—did not object to the request.  The defendant,

1

without providing additional information regarding the substance of the notice, later requested a second extension to provide the notice, to which the Government agreed. Finally, on March 31, 2024, the defense provided the notice (the "Expert Notice," attached hereto as Exhibit A).

As set forth in the Expert Notice, the defendant intends to offer the testimony of Dr. Elie G. Aoun, M.D., an assistant professor of clinical psychiatry at Columbia University and forensic psychiatrist in New York City. According to the Expert Notice, Dr. Aoun reviewed ████████ ████████████████████████████ He did not examine the defendant. On the basis of the records he reviewed, as well as his training and experience, Dr. Aoun is expected to testify ██████████████████████████████████████████████ ████, and offer several opinions, including the following:

- ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████

- ████████████████████████████████████████████████ ████████████████████████████████████████

- ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████

The day after it received the Expert Notice, the Government asked defense counsel if they planned to provide notice under Rule 12.2, given the content of the Expert Notice. Defense counsel disputed that Dr. Aoun's proffered opinions implicated Rule 12.2 and noted that the ████████

██████ could also be used by a Government rebuttal expert, as opposed to an examination of the defendant.

## APPLICABLE LAW

Several provisions of the law and federal rules are relevant to testimony that concerns the ████████████████████████████████████, as set forth below:

### A.    The Insanity Defense Reform Act of 1984

Mental defect defenses are subject to the limitations of the Insanity Defense Reform Act of 1984 (the "IDRA," codified at 18 U.S.C. § 17) and the cases interpreting that Act.  The IDRA makes clear that unless a defendant puts forth an insanity defense (and proves it by clear and convincing evidence), "[m]ental disease or defect does not otherwise constitute a defense."  18 U.S.C. § 17; *United States v. Pirro*, 76 F. Supp. 2d 478, 485 (S.D.N.Y. 1999) ("While insanity, as defined by statute, may still be a viable affirmative defense, the statute has eliminated all other affirmative defense or mitigation evidence predicated on the existence of a mental defect.").  A narrow exception to this rule exists, however, where a defendant submits "mental health evidence for the purpose of rebutting the prosecution's proof of the *mens rea* element of a specific intent crime."  *United States v. Dupre*, 462 F.3d 131, 137 (2d Cir. 2006) (affirming preclusion of psychological expert).  But courts have cautioned that under the IDRA, the admission of such evidence should be permitted only in rare and narrowly defined circumstances. *See United States v. Pohlot*, 827 F.2d 889, 900 (3d Cir. 1987); *United States v. Cameron*, 907 F.2d 1051, 1066 (11th Cir. 1990).

Expert testimony may not be used to shoehorn into evidence the types of arguments precluded by IDRA.  *United States v. Washington, et al.*, 21 Cr. 603 (VEC), Dkt. No. 1038 at 3 (S.D.N.Y. Sept. 15. 2023) *citing United States v. Wescott*, 83 F.3d 1354, 1358 (11th Cir. 1996). Accordingly, when confronted with an effort to introduce mental condition evidence to negate

intent, courts should be extremely cautious. *See Pohlot*, 827 F.2d at 905 (directing district courts to carefully examine psychiatric testimony offered to negate intent because of the "strong danger of misuse" in this area). This caution is warranted due to the high likelihood that such evidence—even if characterized as strictly relevant to negate intent—will resurrect precisely the kinds of defenses (such as "diminished capacity," "diminished responsibility," "mitigation," and "justification") that the IDRA was enacted to prohibit. *See, e.g.*, *Cameron*, 907 F.2d at 1066; *Pohlot*, 827 F.2d at 905; *United States v. Childress*, 58 F.3d 693, 730 (D.C. Cir. 1995).

In determining whether evidence of a mental impairment is admissible under the IDRA, courts have strictly required the defendant to "demonstrate clearly, in advance of trial, that there is a direct link between such evidence and the specific *mens rea* that the Government must prove." *United States v. Sabir*, No. 05 Cr. 673 (LAP), 2007 WL 1373184, at *5 (S.D.N.Y. May 10, 2007); *United States v. Dupre*, 339 F. Supp. 2d 534, 539 (S.D.N.Y. 2004) (Cote, J.) ("Given that defendants are not foreclosed from presenting mental disease evidence towards the *mens rea* element of a charged offense, it is necessary to identify whether any elements of the charged offenses require the Government to prove intent in a way that could be meaningfully refuted by the type of mental disease evidence [the defendant] seeks to present."); *see also United States v. Brown*, 326 F. 3d 1143, 1147 (10th Cir. 2003) (the admissibility of psychological or psychiatric evidence that negates the essential element of specific intent "will depend upon whether the defendant clearly demonstrates how such evidence would negate intent rather than 'merely present a dangerously confusing theory of defense more akin to justification and excuse.'") (quoting *Cameron*, 907 F.2d at 1067).

### B.    Federal Rule of Criminal Procedure 12.2

While the IDRA does not completely preclude defendants from presenting mental disease evidence for the purposes of negating the intent element of a specific intent crime, Federal Rule of

4

Criminal Procedure 12.2 places strict requirements on a defendant seeking to use it. Under Rule 12.2, if a defendant intends to introduce expert evidence relating to "a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt," he must provide notice to the Government "within the time provided for filing a pretrial motion or at any later time the court sets." Fed. R. Crim. P. 12.2(b). "The court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders." *Id.* After the defendant provides notice under Rule 12.2(b), the court "may, upon the government's motion, order the defendant to be examined under procedures ordered by the court." Fed. R. Crim. P. 12.2(c). If the defendant fails to give notice under this rule or refuses to submit to an examination, the court may exclude any expert evidence on the issue of the defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt. Fed. R. Crim. P. 12.2(d).

Consistent with other circuits, the Second Circuit has held that evidence of the effects of drugs and alcohol on a defendant's memory or cognitive function must be noticed under Rule 12.2(b). *See United States v. Cervone*, 907 F.2d 332, 345-46 (2d Cir. 1990); *see also United States v. Katzin*, 707 F. App'x 116, 122 (3d Cir. 2017) ("[I]ntoxication would appear to be a 'mental condition' pursuant to the plain text of [Rule 12.2]."); *United States v. Olson*, 576 F.2d 1267, 1273 (8th Cir. 1978) (applying Rule 12.2 to testimony about the effect of alcohol on the defendant's mental capacity).

### C.    Federal Rules of Evidence

Setting aside the requirements of the IDRA and Rule 12.2, the Federal Rules of Evidence, including Rules 702, 703, and 704, also apply here.

#### 1.  Rule 702

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a)  the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b)  the testimony is based on sufficient facts or data;

(c)  the testimony is the product of reliable principles and methods; and

(d)  the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The party that proffers the testimony bears the burden of showing that it is admissible by a preponderance of the evidence.  *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 & n.10 (1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)). A district court's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 141-42 (1997).

A threshold issue is whether the witness "is qualified to be an 'expert'" in the subject matter at issue. *See Nimely v. City of New York*, 414 F.3d 381, 396 n.11 (2d Cir. 2005). Testimony from a qualified expert is admissible only if the trial court determines that it is both relevant and reliable. *Daubert*, 509 U.S. at 589-90; *see Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999). Specifically, in *Daubert*, the Supreme Court held that the Federal Rules of Evidence "assign to the trial judge the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597.

Applying Rule 702, the Court must determine whether the expert's reasoning and methodology underlying his testimony is valid, and whether that reasoning or methodology was applied reliably to the facts, so as to be relevant and helpful to the jury. *See Kumho Tire*, 526 U.S. 137. The reliability inquiry is flexible and "must be tied to the facts of a particular case." *Id.* at 150 (citations and internal quotation marks omitted). The Second Circuit has emphasized that "it is critical that an expert's analysis be reliable at every step." *Amorgianos v. Nat'l R.R. Pass. Corp.*,

303 F.3d 256, 267 (2d Cir. 2002). "In deciding whether a step in an expert's analysis is unreliable, the district court should undertake a rigorous examination of the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Id.* Minor flaws with an otherwise reliable expert opinion will not bar admission of that evidence; however, the Court should exclude the expert evidence "if the flaw is large enough that the expert lacks 'good grounds' for his or her conclusions." *Id.* (quotation marks omitted).

## 2. Rule 703

Though an expert may base an opinion on facts or data upon which other "experts in the particular field would reasonably rely," Rule 703 of the Federal Rules of Evidence precludes an expert from disclosing to the jury "facts or data [that] would otherwise be inadmissible" unless the court determines that their probative value "substantially outweighs their prejudicial effect." Fed. R. Evid. 703. Thus, experts cannot be used as a substitute to calling witnesses to the events or facts at issue. Any testimony along these lines would constitute impermissible hearsay. *See, e.g.,* *United States v. Mejia*, 545 F.3d 179, 197 (2d. Cir. 2008) ("The expert may not, however, simply transmit hearsay to the jury. . . . Otherwise, the expert is 'simply repeating hearsay evidence without applying any expertise whatsoever.'") (citations and quotations omitted); *see Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 180 (S.D.N.Y. 2008) ("[The expert] has no personal knowledge of these facts and they are lay matters that the jury is capable of understanding and deciding without [the expert's] testimony.").

For the same reason, an expert cannot speculate as to the credibility, state of mind, or the motivations of others. *See, e.g.*, *Highland Capital Mgmt., LP v. Schneider*, 379 F. Supp. 2d 461, 469-70 (S.D.N.Y. 2005) (rejecting expert's attempt to speculate "regarding the state of mind and

motivations of certain parties" and as to the "knowledge possessed by defendants and non-parties"); *LaSalle Bank Nat'l Ass'n v. CIBC Inc.*, No. 08 Civ. 8426 (WHP) (HBP), 2012 WL 466785, at \*7 (S.D.N.Y. Feb. 14, 2012) ("Additionally, an expert may not testify as to facts not within his personal knowledge, and may not opine as to a party's state of mind, whether a party acted in bad faith, or as to the credibility of witnesses.").

### 3.  Rule 704

Rule 704(b) places an additional limitation on expert testimony.  The rule states:

> In a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the offense or of a defense.  Those matters are for the trier of fact alone.

Fed. R. Evid. 704(b).

Moreover, a district court must exclude expert testimony that "expresses a legal conclusion." *Hygh v. Jacobs*, 961 F.2d 359, 363 (2d Cir. 1992) (collecting cases).  As the Second Circuit explained, "[e]ven if a jury were not misled into adopting outright a legal conclusion proffered by an expert witness, the testimony would remain objectionable by communicating a legal standard—explicit or implicit—to the jury." *Id.* at 364.  Further, an expert "is not qualified to compete with the judge in the function of instructing the jury." *Id.*; *see United States v. Nersesian*, 824 F.2d 1294, 1308 (2d Cir. 1987) (recognizing the risk "that an expert may come dangerously close to usurping the jury's function").

### 4.  Rules 401 and 403

Rules 401 through 403 provide that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury.  "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.

Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citation and quotations omitted).

## DISCUSSION

The Expert Notice is untimely and insufficient under Rule 12.2, and Dr. Aoun's testimony should be excluded on that basis alone. Notwithstanding the procedural insufficiency of the Expert Notice, however, Dr. Aoun's testimony must also be excluded under the IDRA and the Federal Rules of Evidence because it improperly seeks to put a justification defense before the jury, and is otherwise irrelevant and unreliable, and invades the province of the jury.

### A. The Court Should Preclude the Proposed Testimony for Failure to Comply with Rule 12.2

The content of the Expert Notice implicates Rule 12.2, and therefore, must have been noticed in accordance with the requirements set forth in that Rule. The defendant tries to skirt the requirements of Rule 12.2 by emphasizing that Dr. Aoun's anticipated testimony is based on the defendant's ███████████ and not an examination of the defendant. This effort should fail. For one, the defendant's purported distinction does not change the fact that Dr. Aoun's testimony ████████████████████████████████████████████████." Fed. R. Crim. P. 12.2(b); *see also Cervone*, 907 F.2d at 345-46. Neither does the fact that Dr. Aoun offers ████████████ ███████████████████████████████████████████. Indeed, the only possible relevance of Dr. Aoun's opinions ████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ██████████████████████████████████████████████████ ███ is related to the defendant's capacity to commit the charged offenses. In short, the defendant

is attempting to elicit the type of testimony restricted by Rule 12.2 without following the Rule's requirements.

While courts permit late notice under Rule 12.2 in limited circumstances, there is no basis to do so here, on the eve of trial.  To offer this testimony, the defendant was required to provide notice no later than February 17, 2025, the motions deadline in this case.  And because all information relied upon by Dr. Aoun—including the charging instrument ██████████████ ████████████████████████████████████ and ████████████████—was available to the defendant since the time of his arrest, there is no "good cause" to excuse the late notice.  *See* Fed. R. Crim. P. 12.2(b).[1]  Courts considering late notice under Rule 12.2 in similar circumstances have precluded such expert testimony. *See Cervone*, 907 F.2d at 345-46 (affirming district court's preclusion of expert testimony on the grounds that the defendant had failed to supply timely notice under Rule 12.2(b)); *United States v. Duggan*, 743 F.2d 59, 68, 80 (2d Cir. 1984) (noting affirmance of preclusion of testimony under Rule 12.2 when notice was untimely and designed primarily to obtain an adjournment of the trial date) (*superseded by statute on other grounds*); *United States v. Dill*, 693 F.2d 1012, 1015 (10th Cir. 1982) (affirming exclusion of defense of intoxication where no timely notice under Rule 12.2 and no good cause shown); *see also United States v. Young*, 213 F.3d 627, 2000 WL 687750, at *3 (2d Cir. 2000) (affirming exclusion of expert testimony where expert testimony diverged from analysis presented in Rule 12.2 notice and "thus could have been excluded for failing to comply with Rule 12.2").  Here, the Court can and should preclude Dr. Aoun's expert testimony on these procedural grounds alone.

---

[1] Providing timely notice would have, for instance, provided the Government with sufficient time to seek an examination of the defendant and for the Court to order the same.  *See* Fed. R. Crim. P. 12.2(c).

**B.      The Proposed Testimony is Inadmissible Under the IDRA**

Dr. Aoun's testimony is also inadmissible under the IDRA.  While the defendant is not precluded under the IDRA from presenting evidence related to mental disease or defect, "evidence that a defendant lacks the capacity to form *mens rea* is to be distinguished from evidence that the defendant actually lacked *mens rea*.  'While the two may be logically related, only the latter is admissible to negate the *mens rea* element of an offense.'" *Pirro*, 76 F. Supp. 2d at 485 (quoting *Westcott*, 83 F.3d at 1358).  Courts must not allow the insanity defense to be "improperly resurrected in the guise of showing some other affirmative defense, such as that the defendant had a diminished responsibility or some similarly asserted state of mind which would serve to excuse the offense." *Cameron*, 907 F.2d at 1066 (citation omitted).

The inquiry under the IDRA is whether there is a "direct link" between Dr. Aoun's testimony and the elements of the offense that the Government must prove—this inquiry is also relevant, of course, to assessing the helpfulness of the opinion to the factfinder under Federal Rule of Evidence 702, as well as to the balancing of the evidence's relative relevance against its risk of confusing the jury required by Federal Rule of Evidence 403.  *United States v. Ray*, 583 F. Supp. 3d 518, 537 (S.D.N.Y. 2022).  The "burden of showing that" mental health evidence "is offered to negate the *mens rea* element of a crime and not in support of some improper defense theory falls squarely on the defendant," and he must "demonstrate clearly, in advance of trial, that there is a direct link between such evidence and the specific *mens rea* that the Government must prove." *Sabir*, 2007 WL 1373184, at *6 (citations omitted) (collecting cases).  Here, the defendant has not even attempted to do so.

In any event, Dr. Aoun's proposed expert testimony fails completely to meet the "direct link" test.  The proposed ██████████████████████████████████████

████████████████████████████████████████████████████████████████

11

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████████—is so generalized that it

cannot be relied upon to explain the effect a mental condition could have on the defendant's ability

to form criminal intent as to any of the charged offenses. *See Dupre*, 339 F. Supp. 2d at 541 ("The

defendant must also demonstrate a genuine link between the proffered expert testimony and the

issue of intent."). Put differently, because Dr. Aoun's proposed testimony ████████████████

████████████████████████████, such testimony provides no direct link between

the testimony and the elements that the Government must prove. *See Washington*, 21 Cr. 603

(VEC), Dkt. No. 1038 at 4 ("[E]xpert testimony must be limited to discussion of a defendant's

diagnosis at the time of the commission of the crime, without directly opining on the ultimate issue

of the defendant's formation of *mens rea*."); *United States v. Puerto*, 392 F. App'x 692, 706-07

(11th Cir. 2010) (upholding exclusion of expert testimony under IDRA when psychiatrists

examined defendant only after the charged conduct and thus "did not know what his mental state

was during the relevant time, [and] could not opine with any degree of medical certainty with

respect to his mens rea during the relevant time period"); *Childress*, 58 F.3d at 729-30 (observing

that there is no categorical bar to evidence of medical history but noting "concern that evidence of

general mental capacity not be used to persuade a jury that a defendant is not responsible for his

deliberate and purposeful activity").

    For the same reasons, the testimony is confusing and not helpful to the jury. And even if

Dr. Aoun's testimony ████████████████████████, the testimony is "strongly suggestive of

'volitional' evidence that is foreclosed by the IDRA, as evidence of the defendant's inability to

control [his] behavior." *Dupre*, 339 F. Supp. 2d at 544; *see also Ray*, 583 F. Supp. 3d at 540

(excluding expert testimony when it looked "strikingly like evidence of the sort of 'justification' or 'diminished capacity' defenses foreclosed by the IDRA").

### C.    The Proposed Testimony is Inadmissible Under the Rules of Evidence

Dr. Aoun's testimony is inadmissible under the Federal Rules of Evidence as well.  As an initial matter, the proposed testimony is far more prejudicial and confusing than it is probative and thus barred by Federal Rule of Evidence 403.  *See* Fed. R. Evid. 403.  For example, Dr. Aoun's opinion ███████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████.  However, Dr. Aoun has not examined the defendant and ██████████████████████████████████████████ ████████████████████████████████████████████████████████████ █████████████████████████████████████.  Thus, "the usefulness of the expert testimony in determining whether [the defendant] was lucid *during the course* of [his] participation in a complex, multi-year scheme is substantially reduced."  *Dupre*, 339 F. Supp. 2d at 544 (emphasis in original).[2]

#### 1.  The Proposed Testimony Invades the Province of the Jury and Violates Rules 703 and 704

Dr. Aoun's testimony would also run afoul of Rule 704, which specifies that, "an expert witness *must not* state an opinion about whether the defendant did or did not have the mental state or condition that constitutes an element of the crime charged or a defense."  Fed. R. Evid. 704(b) (emphasis added).  Dr. Aoun's testimony threatens to breach this firm boundary, by offering an

---

[2] Even if testimony about ████████████████████████████████ was appropriate—which it is not—other opinions in the Expert Notice have no relevance to the issues in this case.  For instance, █████████████████████████████████████████████████████████ ███████████████████████████████████████████████████.  There is no reason to introduce such testimony to the jury.

impermissible opinion ███████████████████████████████████████████████

*See Dupre*, 462 F.3d at 138 (affirming preclusion of the defendant's psychological expert on Rule 403 grounds and noting the "concern that the proffered evidence might have constituted an impermissible opinion about the 'ultimate issue' of whether [the defendant] possessed the mental state constituting an element of wire fraud, in violation of Rule 704(b)").

Moreover, it appears that the defendant is attempting to offer this testimony as an end-run around the hearsay rules and for the impermissible purpose of garnering juror admiration or sympathy. Although "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of," even if otherwise inadmissible, this is only true where the "probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect." Fed. R. Evid. 703. That is not the case here. Dr. Aoun's opinions relate ████████████████ ███████████████████████████████████████████████████. As a result, there is substantial risk that Dr. Aoun's testimony will mislead the jury into believing that Dr. Aoun is ████████████████████████████████████████.

Additionally, the defense provided Dr. Aoun with numerous records with no apparent connection to Dr. Aoun's analysis, such as ████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████ Rather than serving a purpose with respect to Dr. Aoun's analysis, any of Dr. Aoun's testimony relating to these documents would only serve to pretextually present hearsay testimony to elicit sympathy from jurors and invite improper considerations. An "expert may not, however, simply transmit hearsay to the jury," particularly where, as here, it has no apparent connection to his expert qualifications or expert opinion. *Mejia*, 545 F.3d at 197. It would only confuse and mislead the jury and prey on their sympathies to present the defendant's medical

history and life story under the guise of expert testimony without subjecting the defendant to cross-examination. *See, e.g., United States v. Rahman*, 189 F.3d 88, 136 (2d Cir. 1999) (affirming exclusion of expert testimony that "constituted an effort to tell the jury the defendant's intentions through the mouths of witnesses other than himself").[3]

### 2. The Proposed Testimony is Not Based on Reliable Methods or Sufficient Facts or Data and Must be Excluded Under Rule 702

Dr. Aoun's opinion should also be excluded under Rule 702 because it is not based on reliable methods or sufficient facts or data.  Dr. Aoun only examined ███████████████ ████████████████████████████████████████████████████████████████ ████████████████████████ —and did not examine the defendant.  As a result, Dr. Aoun's opinions are not only too generalized to be helpful, as discussed above, but are based on a methodology that cannot support the conclusions he reaches.  "[W]hen an expert opinion is based on data, a methodology, or studies that are simply inadequate to support the conclusions reached, *Daubert* and Rule 702 mandate the exclusion of that unreliable opinion testimony."  *Amorgianos*, 303 F.3d at 266 (citations omitted).  On this basis as well, Dr. Aoun's opinion must be excluded.

As discussed above, the medical records upon which Dr. Aoun bases his opinion are insufficient to support his proposed testimony.  The ██████████████████████████



---

[3] Because of the substantial concern that "psychiatric evidence to negate *mens rea* may easily slide into wider usage that opens up the jury to theories of defenses more akin to justification," *Westcott*, 83 F.3d at 1358 (internal quotation marks omitted), some courts have determined that, even where a defendant introduces evidence for the purpose of negating *mens rea*, rather than establishing that he did not understand the wrongfulness of his actions pursuant to 18 U.S.C. § 17(a), it is nevertheless appropriate to instruct the jury as to the defendant's burden with respect to an affirmative defense of insanity.  The Eleventh Circuit approved this approach because "admitting [the expert's] testimony solely as *mens rea* evidence would allow defendant to present insanity defense evidence while avoiding the burden of proof mandated by" the IDRA, as well as the consequences of a not guilty by reason of insanity verdict. *Id.* at 1359; *see also Jones*, 2018 WL 1115778, at *10-11 (adopting *Westcott* procedure).

████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ .

Similarly, ███████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████ So Dr. Aoun's opinion that ███████████████████████████

██████████████████ may be correct, but it has no applicability here where there is no

evidence that ████████████████████████████████████████ . (Expert

Notice, pg. 5 at ¶ 11).  The same is true of Dr. Aoun's opinions ██████████████

██████████████████████ .  Because he had no additional information about ██████████

████████████████████████████████████████████████████ .

(Expert Notice, pgs. 5-6 at ¶¶ 12, 15, 16).  *See Washington*, No. 21 Cr. 603 (VEC), Dkt. No. 1038

at 6 (observing that when proposed expert referred to news article of the defendant's head injury,

the expert had not "explain[ed] her methodology so that the Court could determine its reliability

and whether she reliably applied the methodology to the facts to reach her conclusion that [the

defendant] did not act with a culpable *mens rea*").

Additionally, there are multiple instances in which ████████████████████████

contradict the conclusions reached by Dr. Aoun ██████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████ . (Expert Notice, pg. 5 at ¶

12).  For example:

- ████████████████████████████████████████████████████████
████████████████████████████████████████████████████████
████████████████████████████████████████



These comments— ████████████████████████████████████

████████ —directly contradict the opinions presented by Dr. Aoun.  Additionally, throughout

████████████████████████████ are inconsistent, incomplete, and do not present

an accurate picture upon which Dr. Aoun can base his opinions.  Given the contradictory

information in the ████████████, it is impossible to "discern any reliable method; rather the

opinions . . . are supported by what appears to be a 'because I said so' explanation." *E.E.O.C. v.*

*Bloomberg*, No. 07 Civ. 8383 (LAP), 2010 WL 3466370, at * 15 (S.D.N.Y. Aug. 31, 2010); *see*

*also Washington*, 21 Cr. 603 (VEC), Dkt. No. 1038 at 7 (precluding expert testimony on

defendant's *mens rea* when expert "report does not connect her data to her opinion except by way

of *ipse dixit*, does not 'focus[] on the defendant's specific state of mind at the time the offense was

committed,' and does not otherwise comply with Federal Rule of Evidence 702").

Finally, the fact that Dr. Aoun caveats his conclusions with generalized qualifiers such as ███████████████ does not save his opinions. Instead, it demonstrates why the opinions are both unreliable and irrelevant. Rule 702 and *Daubert* cannot be satisfied here.

## **CONCLUSION**

For the foregoing reasons, the Court should preclude the testimony of Dr. Aoun, or in the alternative hold a *Daubert* hearing as to the admissibility of his testimony.

MATTHEW PODOLSKY
Acting United States Attorney

By:      /s/_____
Maurene Comey / Meredith Foster
Emily A. Johnson / Christy Slavik
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284

18