P51BCOMC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

            v.                        24 Cr. 542 (AS)

SEAN COMBS,
    a/k/a "Puff Daddy,"
    a/k/a "P. Diddy,"
    a/k/a "Diddy,"
    a/k/a "PD,"
    a/k/a "Love,"

                Defendant.            Conference
------------------------------x
                                      New York, N.Y.
                                      May 1, 2025
                                      1:00 p.m.
Before:

                    HON. ARUN SUBRAMANIAN,

                                      District Judge

                        APPEARANCES

JAY CLAYTON
    United States Attorney for the
    Southern District of New York
BY:  MADISON R. SMYSER
    MAURENE R. COMEY
    MEREDITH FOSTER
    MITZI STEINER
    MARY C. SLAVIK
    Assistant United States Attorneys

AGNIFILO INTRATER LLP
    Attorneys for Defendant
BY:  MARC A. AGNIFILO
    TENY R. GERAGOS
    -and-
THE STEEL LAW FIRM
BY:  BRIAN STEEL
    -and-
SHAPIRO ARATO BACH LLP
BY:  ALEXANDRA A.E. SHAPIRO
    JASON A. DRISCOLL

P51BCOMC

(Case called)

THE DEPUTY CLERK:  Counsel, please state your appearance, starting with the government.

MS. COMEY:  Good afternoon, your Honor.  Maurene Comey Mitzi Steiner, Meredith Foster, Madison Smyser and Christy Slavik for the government.

THE COURT:  Good afternoon.

MR. AGNIFILO:  Good afternoon, your Honor.  You have Mark Agnifilo, Teny Geragos, Brian Steel, Alexandra Shapiro and Jason Driscoll, and we're joined by Mr. Combs here today.  Good afternoon.

THE COURT:  Good afternoon.  Good afternoon to you, Mr. Combs.

THE DEFENDANT:  Good afternoon.

THE COURT:  First let's handle the allocution regarding the plea offer from the government.  So I'm going to inquire regarding the government's offer of a plea and the communication of that offer to Mr. Combs.

So, Mr. Combs, if you just listen to the questions that I'm going to ask to the government and to your attorney. You can remain seated if it's more comfortable or you can stand.  Just listen carefully to the questions that I ask to the government and to your counsel, and then I'm going have a couple of questions for you.

To the government, did the government extend a plea

P51BCOMC

offer to Mr. Combs?

MS. COMEY:  Yes, your Honor.

THE COURT:  Was it in writing?

MS. COMEY:  It was, your Honor.

THE COURT:  In the government's view, is Mr. Combs' sentencing exposure if he proceeds to trial and is convicted on every count greater than the exposure he would face if he had accepted the plea offer?

MS. COMEY:  It is, your Honor.

THE COURT:  Now let me turn to Mr. Agnifilo.  Did defense counsel give Mr. Combs a copy of the plea offer and discuss it with him?

MR. AGNIFILO:  Yes, we did, your Honor.

THE COURT:  Did defense counsel discuss Mr. Combs' sentencing exposure if he went to trial and were convicted on all counts?

MR. AGNIFILO:  Yes, your Honor.

THE COURT:  Did defense counsel make a recommendation to Mr. Combs as to whether he should accept or reject the plea offer?

MR. AGNIFILO:  We discussed it with him and together came to a decision.

THE COURT:  Mr. Combs, have you taken any drugs, medicine or pills or had any alcohol in the last 24 hours?

THE DEFENDANT:  No, your Honor.

P51BCOMC

THE COURT:  Is your mind clear today?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  Have you heard the questions I ask the government attorney and your counsel and their answers?

THE DEFENDANT:  Yes, I have, your Honor.

THE COURT:  Was your attorney's account of his discussions with you accurate?

THE DEFENDANT:  Yes, they were.

THE COURT:  Did you see the government's plea offer and discuss it with your counsel?

THE DEFENDANT:  Yes, I did, your Honor.

THE COURT:  And have you rejected the government's plea offer?

THE DEFENDANT:  Yes, I do, your Honor.

THE COURT:  Thank you very much.

THE DEFENDANT:  Thank you.

THE COURT:  Now let's proceed to the voir dire for next week.  So let me give you an understanding.  My understanding of how we're planning to proceed, and then I'll hear from the parties.  So it appears that the list of jurors that both sides agree we should call back at this time is sufficient or looks to be sufficient for our purposes.  So we will bring in those jurors and need not at this time address the parties' disputes concerning the other list.  We have the questionnaires.  Thank you for those.

P51BCOMC

Now the jury office will call jurors in to make sure that we have at least 50 jurors each day that we can question. Here's the plan of action.  The plan will be to provide preliminary instructions to the venire in the morning here in 26A.  Then the jurors will be escorted to 26B.  The Court, one lawyer from each side, and the court reporter will proceed to the jury room in 26B.  There I will ask the sequestered questions I've identified for the parties.  The jurors will either be excused for cause or ask to return to 26B.

Once we've reached an appropriate point in the day, say 3 p.m., we'll assemble the remaining jurors in 26A and we will ask the individual questions of the jurors here in this courtroom.  Our goal will be to finish the process with 40 jurors that have not been excused for cause.  There is some suggestion that we should have more than 40 jurors.  I didn't exactly understand the reason why, so I'm happy to hear from the parties on that.  But that in broad strokes is the Court's plan.  So, Ms. Comey, if you have issues, then we'll turn to the defense.

MS. COMEY:  Thank you, your Honor.  Taking your last point first.  The reason we proposed slightly more than 40 is in case between the first day of the in-person voir dire and the final day of the week when we're doing peremptory strikes, any juror comes up with a reason suddenly that they need to be excuse, it's helpful to have a buffer.  That was why we

P51BCOMC

proposed a little more than 40.

THE COURT:  That sounds like a great reason.

MS. COMEY:  Thank you, your Honor.

THE COURT:  Any issue from the defense?

MR. AGNIFILO:  No, your Honor.

MS. COMEY:  Your Honor, I wanted to propose and see if your Honor would accommodate two attorneys from each side. That was what Judge Stein did in the *Menendez* case.

THE COURT:  That's fine.  Let's say 45 jurors.  Does that sound right?

MS. COMEY:  Yes, your Honor.  I also wanted to confirm my understanding of the process.  So the sequestered portion will address questions that I understand go to for cause strikes.  Is the Court's intention also to ask any follow up questions that are raised by the written questionnaires at that point?

THE COURT:  Yes.  I think one of the questions is whether anything has changed.  And if in questioning a juror it arises that there's a need for further questioning, we'll of course do that.

MS. COMEY:  There was some questionnaires that I think the parties agree to bring back, but there needs to be some follow-up about the substance of some of the answers in the questions.  So, for example, there was some conflicts that were vague or unclear or some remarks about potential biases that

P51BCOMC

needed some inquiry.  And so we wanted to ask whether the Court would be willing to ask those follow-up questions during the sequestered part?

THE COURT:  I'm willing to see what questions the parties have for those jurors.  Now what's the best way to get me that information?  We can do it on a juror by juror basis, but time is of the essence here. So if there's a way for the parties to just give me a sheet with the juror numbers and the issues with the questionnaires, which I'm going to be reviewing over the next couple of days, then I can certainly add questioning along those lines.  And if I miss the issue or the parties believe that further questions are required, they can certainly raise that with the Court.  We'll ask the juror to step outside.  We can handle that.

MS. COMEY:  Yes, your Honor.  We can provide a list of the question numbers on each questionnaire, if any, that we think merit follow-up.

THE COURT:  And I'll know from that what questions to ask.

MS. COMEY:  Exactly, your Honor.  And then my other question was, for efficiency sake, we were wondering whether when each juror is excused from the sequestered portion, whether the Court might then hear motion for cause strikes.  So that way, any juror who can be struck for cause at that juncture, doesn't have to stay around till the end to have the

P51BCOMC

peremptory questions ask.  Then the peremptory questions will go more quickly if we've struck anyone who can be excused for cause earlier.

THE COURT:  Let me just make sure I understand.  So when we do the one-on-one questioning, you're saying that if there is a motion to strike for cause, make it right then?

MS. COMEY:  Exactly, your Honor, because that will be fresh in our mind.

THE COURT:  I was vague about that, but that's what I had intended would happen.

MS. COMEY:  Thank you, your Honor.

THE COURT:  Mr. Agnifilo.

MR. AGNIFILO:  Yes, a couple of things.  First I want to express my gratitude to your Honor's giving this jury questioning period a lot of thought.  Here are my concerns as the way I understand the procedure.  I understand that the sequestered questions would be asked to jurors not in the defendant's presence?

THE COURT:  Yes.  So I guess a threshold issue is whether the defense is on board with that?

MR. AGNIFILO:  We most respectfully are not.  And the reason is because I think the sequestered questions are traditional voir dire questions that go to the qualifications of the juror in a general sense, and not in the limited realm of things that are purely logistics.  I know the Court's

P51BCOMC

probably familiar with a lot of these cases, but there's a great deal of Second Circuit law on this issue, separating what are traditional voir dire questions that go to a juror's qualification from things that are more a matter of logistics where the defendant would not have to be physically present.

And I think these sequestered questions are all very good questions, and I appreciate the Court asking them. I think that they are traditional voir dire questions that go to the juror's qualifications. So it would be our position that Mr. Combs would have to be present under Rule 43 of the Constitution and the Second Circuit case law in this area. And we're not trying to make things more difficult for the Court by any means, but we would not be waiving his presence for that.

THE COURT: Okay. So I understand that issue. Let me take that a step back because I was going to ask you this any way. For the purpose of sidebars during either jury selection or for trial. As to that, you're not raising an objection to Mr. Combs' non-involvement in those sidebars as is typical?

MR. AGNIFILO: Yes. Let me put a finer point on it. If a juror wanted to discuss something in private because it's a private medical issue, I believe we're going to be getting real-time transcript, so we would not need Mr. Combs present for something like that.

THE COURT: This is just a general issue that I would have to ask you about any way so I might as well ask you now.

P51BCOMC

Put that to side.  You have a specific issue that with respect to the questioning of the sequestered questions, that those go to juror qualifications, and so you could waive the objection, in which case we'd proceed as I envisioned.  But you are objecting.  And so your position is under those circumstances, we're not permitted to proceed unless Mr. Combs has access to that questioning?

MR. AGNIFILO:  That is my position most respectfully. And so I'm trying to think of the way that we can accomplish I think what your Honor is looking to accomplish.  But Mr. Combs would have to be physically present for the sequestered questions part of the questioning.

THE COURT:  Okay.  Ms. Comey, do you have a response?

MS. COMEY:  Your Honor, I think if the defendant is not willing to waive his presence, our view is that it would be prudent to have him present for those questions.

THE COURT:  Okay.  That's fine.  We can work this out. So what I'd like the parties to do is think about a logistical way.  We've got two courtrooms.  We've got two jury rooms.  We just need to have this ready to go for Monday.  So if the parties could confer and see if based on the parameters that I've described, if they can think of a way to do this while respecting Mr. Combs' right to be there, I'm on board.  I'm happy to do it.

MS. COMEY:  May I propose, your Honor.  If the plan is

P51BCOMC

already to have 50 jurors for each day go into 26B, that everyone just stay in 26A and have jurors one by one come into 26A.  I'm not sure that the marshals would be able to take Mr. Combs to a jury room, so I think we might need to do it in a courtroom.  Would that work?

THE COURT:  It will work.  And from the government's perspective, they'd be on board with that?

MS. COMEY:  Yes, your Honor.  Assuming that the Court and the defense would be all right with having, to the extent necessary, sealed portions of the transcript at sidebar where sensitive issues to come up; so medical issues, sensitive issues about a juror's background.  Those might need to be held at a sidebar as your Honor just inquired about with defense.

THE COURT:  All right. Mr. Agnifilo.

MR. AGNIFILO:  I think that's a workable solution. This is similar to something that we did in the *Ranieri* case. What we did there was we brought the jurors in one by one.  The parties, all the parties remained in their seats, and we brought the jurors in one by one for the individual questioning.  Whenever there was a question that was especially sensitive in nature, whether that be a medical issue or some of the questions that the Court is going to be posing to the jurors could bring up sort of personal experience issues that are sensitive in nature, the juror would have been told by then, if you want to come to the sidebar and answer that

P51BCOMC

question at the sidebar, that Mr. Combs would not be physically present at the sidebar; but we would have the live feed so we would know what was being said.

And what I think is advantageous to that procedure, I think it solves a logistical issue of shuttling people around. This is where we will be when the jurors come one by one to us, so it solves that problem. It also solves the problem -- and I think is a very important part of the process -- we want the jurors to be able to speak candidly about important issues in their life, some of which might be private in nature. And we could do that if your Honor agreed away from sort of the public portion of the trial. Now, the way that I've always understood this in the past -- and I'm sure your Honor has some ideas about this -- is we had this situation in the *Martin Shkreli* case before Judge Matsumoto many years ago. And there I can tell your Honor what the Court did there. What the court did there was allow one press person to come to the sidebar.

I think this case is different. And I wanted to bring up the Matsumoto case because it was a case I was involved in and I know of that procedure. The difference in this case is the *Shkreli* case was a fraud case. There was nothing about the allegations and nothing about sort of individual experiences of jurors that would be sort of relevant to the decision of the fraud case. So what we were really protecting from, we were protecting people from saying things about *Martin Shkreli* who

P51BCOMC

was somewhat of a controversial figure at the time of his trial, and we have that same dynamic here.

What's different with our dynamic here is I'm expecting more personal information from the jurors. And my understanding is under the First Amendment, there's a series of Supreme Court cases *Press Enterprise v. Superior Court*. There are actually two of those. I have both cites. It's 464 U.S. 501 from 1984. That's Press Enterprise I. And then there was a second Supreme Court decision from two years later, Press Enterprise II; 478 U.S. at page one. And not surprisingly there's a weighing. On the one side we have First Amendment right to public access to the courts, which is a weighty right. And what these Supreme Court decisions teach us is that right can only give weigh to a contrary goal of the court if provisions that the court establishes are narrowly tailored and if they serve a sufficiently compelling interest.

And the sufficiently compelling interest that we are asking the Court to consider are fundamental issues of juror privacy; fundamental issues of trying to have a juror say things as candidly as possible so that the voir dire is helpful, both for the government and for the defense. And we think that given the circumstances here and the likelihood that jurors will want to be able to say things confidentially to the Court and the parties, that the only way to foster that kind of candor is to have it so that -- most respectfully to my friends

P51BCOMC

in the press -- that someone from the press do not come to the sidebar, but I think that would have to be a finding.  I don't impose this on the Court without trying to come up with a solution for the Court.  I think the Court would have to engage in that fact finding, and we think that we can do that in this case.

So we have two weighty Constitutional issues that we're dealing with.  We're dealing obviously with Mr. Combs right to participate in his own trial, and I think we've found a way of doing that with a procedure that AUSA Comey propose, which is agreeable to us.  And then we have the First Amendment issue, which is a weighty issue, but which can be overcome and I think should be overcome given the particular facts of this case, and some of the questions that the jurors might be asked in your Honor's sequestered -- what your Honor called the sequestered questions in your Honor's proposed questioning.  Some of which -- and I don't want to read them -- some of which could impact on juror's past experiences in certain areas.  Thing that would be private and confidential.  And certainly things that we would want to understand under the most careful and indiscrete of circumstances.

So I'm trying to give the Court some solutions to what are somewhat tricky problems in and of themselves, but I think the facts here make it so that we can solve all these problems and give the government the voir dire process that I think they

P51BCOMC

want and certainly the one that we want.

THE COURT:  All right.  Ms. Comey, do you have any response or do you agree with Mr. Agnifilo?

MS. COMEY:  I agree with Mr. Agnifilo, and I think Judge Nathan actually dealt with this problem exactly the way Mr. Agnifilo is proposing during voir dire in the *Maxwell* case. She had a courtroom with one juror coming in at a time.  The press was present in the gallery.  And then whenever a juror indicated that they had a yes answer or an answer that required followup on a sensitive issue, there would be a sidebar.  Judge Nathan would make a finding weighing the issues that Mr. Agnifilo just set out, would seal that part of the transcript, and then would conduct the inquiry in private.  And then we would resume in open court afterwards.  I think that is appropriate here for the reasons that Mr. Agnifilo just set forth.

THE COURT:  What the proposal is, is that when a juror indicates that they would prefer to answer a question at sidebar, at that point I would make a finding that given the circumstances it warranted a sealed transcript, and the parties without the involvement of press to be at sidebar?

MS. COMEY:  Precisely, your Honor.  And I wonder your Honor whether you might want to do what I think your Honor has did in some way in the questionnaire and suggest that at the top of the instructions, if a juror would like to be heard in

P51BCOMC

private, or would like to have a smaller group discuss the answer to any of these questions, the juror can indicate so that a juror can be aware of that option.

THE COURT:  Okay.  All right.  Well, that's fine with me.  The question I have is one of timing.  Because if we proceed in court and we proceed on the basis of making findings and having sidebars, then this process is going to take a lot longer than I had envisioned.  Because the reason why I had made the proposal that I did is to see if we could get this done effectively in three days.  Maybe that was wishful thinking.  But if we have let's say a 150 jurors come in and each juror takes 20 minutes or 30 minutes, then you could do the math.  We're going to be here for a while.

MS. COMEY:  Yes, your Honor.  I'm hopeful we can still do it in three days.  Judge Nathan did it in three days using this process, and I would think that we would just stop once we have qualified 45 jurors.  So hopefully we don't have to get through all 150.

THE COURT:  All right.  Good.  So we'll proceed on that basis.  Now I do have to check with the jury office and make sure there's nothing that I'm missing.  If I am missing something, I'll advise the parties.  Otherwise, we'll proceed on the basis that we discussed here.  All right.  What else can we productively address today?

MS. COMEY:  Your Honor, the only other issue we wanted

P51BCOMC

to flag for the Court is the parties are conferring about the list of people and places that might come up at the trial.  We plan to get that to the Court hopefully by the end of the day.  But one issue we wanted to put on the record is, we understand that there may be additional defense counsel who will be participating in this trial.  We obviously need to know the names of those people to put them on this list so that we can know whether any of the prospective jurors have any dealing with those people.  We would just ask that the defense confirm that they will have finalized their defense team by the time we send this list to the Court.

THE COURT:  When are we going to get the list?

MS. COMEY:  Tonight.

THE COURT:  Mr. Agnifilo.

MR. AGNIFILO:  Yes.  This is something that we've been talking about with the government, and we are expecting to add two people to the defense team.  We know who they are.  They're here in court.  And I think we'll finalize this by this evening, but I did give the names, just so it's clear, I gave the names to the prosecutor already.

THE COURT:  Very good.  What we're going to do, just to make sure we're all on the same page.  The jurors will have the questions, the sequestered questions and the individual questions so they can review them so we don't have to ask the questions to each juror.  The places and people list will be

P51BCOMC

here on the witness stand, maybe laminated, and then the jurors can look at them.  That will be the first thing we ask.  Does everyone agree.

MS. COMEY:  Yes, your Honor.

MR. AGNIFILO:  Yes, your Honor.

THE COURT:  Good.  Anything else, Ms. Comey?

MS. COMEY:  Not from the government.  Thank you, your Honor.

MR. AGNIFILO:  One slight addition, and your Honor might be capturing this in the first sequestered question in terms of, If anything's change.  But with the trial quickly approaching, my colleagues and the press have been very active in writing a great many stories about the case.  And so I think it might be a useful question to ask the jurors on Monday if they've read anything sense completing the questionnaires.  Your Honor comes close to capturing that concept in your first question, but not as directly as my proposal.

THE COURT:  We'll add that question in.

MR. AGNIFILO:  Thank you, Judge.

THE COURT:  All right.  While we're on that subject, there was an application for an order pursuant to local Rule 23 that was submitted, and there was a response from victim-1.  So I guess my question is, one of the arguments made is that the local rule does not apply to attorneys.  It solely applies to parties and witnesses.  My question is, now that we're on the

P51BCOMC

eve of trial, are there cases or authorities that the defense can furnish to the Court. You don't need to do it right now, but are there cases and authorities to provide to the Court that would justify the relief that you're seeking?

MS. GERAGOS: Thank you, your Honor. We will look and provide this to your Honor. I think we were relying in large part on 23.1(h). And our main concern -- I know you got a response from victim-1's counsel. Our main counsel really was targeted towards Ms. Bloom. We have done everything we can over the past five months frankly to ask her to simply request our client's right to a fair trial. We have reached out to her several times. The government has reached out to her several times. And now on the eve of trial, she is going on a BBC documentary to bolster her client's credibility, and we just find it very disturbing. And so we will look for additional sources to provide to your Honor, but we really we are concerned with her behavior here. She's doing it in a way that is prejudicing our client by not having her client speak and to bolster her client's credibility in advance of anticipated testimony. And so that was really the aim of our application.

We understood we received the response from victim-1's counsel, which says that we don't rely on any authority, although we do believe that local Rule 23.1(h) does allow this Court to issue a special order. But we will look for anything else. Since we put in our application, Ms. Bloom's interview

P51BCOMC

has aired.  It is deeply disturbing to us given what she says to bolster a witness's credibility.  Something that nobody else has really done here, so that's really why we put this in.

THE COURT:  Is it your view that Ms. Bloom's conduct violates the rules of professional conduct and/or local Rule 23.1?

MS. GERAGOS:  I don't want to go so far to say it violates the rules of professional conduct, but I think they definitely could.

THE COURT:  All right.  Well, then I will remind all counsel that will be participating in this case on behalf of the parties or any witnesses that they are required to adhere to their obligations under the rules of professional conduct and Rule 23.1, a local rule that we've been discussing.  They should review those rules prior to making any further public statements relating to this case.

And if the Court becomes aware of anyone who has disregarded that advice, then I'll take a tailored application relating to any instances of threatened or actual violations that are identified, and I'll take appropriate action.  So those lawyers and the witnesses and the parties should be mindful of their obligations because we're now at the eve of trial and the Court is not going to tolerate anything that would disrupt or impair the defendant's right to a fair jury trial

P51BCOMC

MS. GERAGOS:  Thank you, your Honor.  We really appreciate it.

THE COURT:  All right.  So we'll pick that up. Ms. Comey, anything from the government side other than that?

MS. COMEY:  No.  Thank you, your Honor.

THE COURT:  Mr. Agnifilo?

MR. AGNIFILO:  Nothing from us.  Thank you, your Honor.

THE COURT:  All right.  So we will see everyone here early.  Now start time, I didn't address that.  So I have asked for the jurors to be here early on Monday, and I've been told I believe from the jury office they can be here by 8:30.  So I'll ask the parties to be here at 8:00.  We'll confirm this in a message to the parties to just make sure I have the timing right.  But unless there's an objection or an issue that the parties can see, I think it makes sense to try to start early and make use of the time that we have next week.  Hopefully my goal is to give the parties a couple of days at the end of the week to really focus on trial preparation.

MR. AGNIFILO:  Fine with us.  Thank you.

MS. COMEY:  That's fine with the government, your Honor.

THE COURT:  We'll send a message out just to confirm the times.  Thank you very much.  We are adjourned.

(Adjourned)