UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

SEAN COMBS,

Defendant.

24-CR-542 (AS)

OPINION AND ORDER

ARUN SUBRAMANIAN, United States District Judge:

Defendant Sean Combs has moved to dismiss counts three and five of the superseding indictment, which charge him with violating 18 U.S.C. § 2421(a) by transporting Victim-1, Victim-2, and commercial sex workers in interstate and foreign commerce with the intent that they engage in prostitution.[1] Combs argues that these counts should be dismissed because they reflect "a clear case of selective prosecution," and that § 2421 "has been invidiously deployed against a prominent black man." Dkt. 153 at 2, 8. Combs's motion is DENIED.

The standard to make out a selective-prosecution claim is "a demanding one." *United States v. Armstrong*, 517 U.S. 456, 463 (1996). Federal prosecutors "retain broad discretion to enforce the Nation's criminal laws." *Id.* at 464 (internal quotations omitted). "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. . . . Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy." *Wayte v. United States*, 470 U.S. 598, 607 (1985).

"As a result, '[t]he presumption of regularity supports' [federal prosecutors' charging] decisions and, 'in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties.'" *Armstrong*, 517 U.S. at 464 (first alteration in original) (quoting *United States v. Chem. Found., Inc.*, 272 U.S. 1, 14–15 (1926)). Importantly, "[a] selective-prosecution claim is not a defense on the merits to the criminal charge itself, but an independent assertion that the prosecutor has brought the charge for reasons forbidden by the Constitution." *Id.* at 463.

To establish a selective-prosecution claim, a defendant must demonstrate that the decision to prosecute "had a discriminatory effect" and was "motivated by a discriminatory purpose." *Id.* at

---

[1] The motion is directed to count three of the January 30, 2025 superseding indictment (S1), but the Court understands it to apply to both counts three and five of the April 3, 2025 superseding indictment (S3).

465 (quoting *Wayte*, 470 U.S. at 608); *see also United States v. Alameh*, 341 F.3d 167, 173 (2d Cir. 2003); *United States v. Fares*, 978 F.2d 52, 59 (2d Cir. 1992); *United States v. Moon*, 718 F.2d 1210, 1229 (2d Cir. 1983). With respect to the first prong (*i.e.*, discriminatory effect), a defendant must establish that "others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against [the defendant]" and that the defendant "has been singled out" in his case. *Fares*, 978 F.2d at 59 (alteration in original) (quoting *Moon*, 718 F.2d at 1229). On the second prong (*i.e.*, discriminatory purpose), a defendant must establish that the Government's "selection of [the defendant] for prosecution has been invidious or in bad faith, i.e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights." *Id.* (alteration in original) (quoting *Moon*, 718 F.2d at 1229). So possessing a discriminatory purpose means more than just that the Government acted with an "awareness of consequences." *Wayte*, 470 U.S. at 610 (quoting *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)). Rather, the Government must have "selected or reaffirmed a particular course of action at least in part because of, not merely in spite of, its adverse effects upon an identifiable group." *Id.* (internal quotation marks omitted) (quoting *Pers. Adm'r of Mass.*, 422 U.S. at 279). Where a defendant "has not shown that the Government prosecuted him *because of*" his protected status or conduct, his claim fails. *Id.*

Consistent with the presumption of regularity, the Supreme Court has explained that "the showing necessary to obtain discovery" in support of a selective-prosecution claim "should itself be a significant barrier to the litigation of insubstantial claims." *Armstrong*, 517 U.S. at 464. A defendant must meet a "rigorous standard for discovery in aid of such a claim" because discovery "imposes many of the costs present when the Government must respond to a prima facie case of selective prosecution." *Id.* at 468. To obtain discovery, a defendant accordingly first "must show some evidence of both discriminatory effect and discriminatory intent." *United States v. Bass*, 536 U.S. 862, 863 (2002) (per curiam); *see also Fares*, 978 F.2d at 59 (same). "Mere assertions and generalized proffers on information and belief are insufficient" to meet this burden. *Fares*, 978 F.2d at 59.

Combs doesn't have evidence of either discriminatory effect or discriminatory intent based on his race. On discriminatory effect: Combs offers up several examples of prominent individuals whom Combs believes may have violated § 2421 and were not prosecuted. Combs says race is the reason he was prosecuted, and they were not. The Government responds by pointing out that these individuals aren't similarly situated to Combs given the sex-trafficking allegations against him; the broader pattern of alleged racketeering activity by Combs; that Combs allegedly transported victims, and not just commercial sex workers, across state lines; and the lack of proof that Combs's exemplars committed acts meeting all the elements of the statute. *See United States v. Smith*, 231 F.3d 800, 810 (11th Cir. 2000) ("[A] 'similarly situated' person for selective prosecution purposes" must have "committed the same basic crime in substantially the same manner as the defendant— so that any prosecution of that individual would have the same deterrence value and would be related in the same way to the Government's enforcement priorities and enforcement plan."). The Government also points to numerous cases in the Southern District of New York where individuals

of other races (and genders) were prosecuted for § 2421 violations where there were also allegations of sex-trafficking or other aggravating conduct, including Peter Nygard, Ghislaine Maxwell, Efrain Granados-Corona, Isaac Lomeli-Rivera, and Juan Romero-Granados. *See* Dkt. 166 at 9–10.

On reply, Combs accuses the Government of whipsawing him. He points to the Government's opposition to his motion to suppress, which insists that violence isn't a necessary aspect of a § 2421 violation. But this misses the point. For purposes of a selective-prosecution claim, the *way* a defendant and a proposed comparator committed their respective crimes plays a role in whether they're similarly situated. *See Smith*, 231 F.3d at 811–13; *see also United States v. Sutcliffe*, 505 F.3d 944, 954 (9th Cir. 2007). Simply committing the same basic offense isn't enough. *See United States v. Lewis*, 517 F.3d 20, 26–27 (1st Cir. 2008). In short, the Government says that when taking a full view of what is alleged in the indictment and the nature of the alleged conduct, there is no basis to say that Combs was singled out "because of" his race. *Wayte*, 470 U.S. at 610. It's the severity of what Combs allegedly did—not his race—that mattered.

That would be sufficient to deny the motion, but Combs also doesn't have any evidence of discriminatory intent. Instead, what he marshals is an assortment of "mere assertions" that race played a role in this case. *Fares*, 978 F.2d at 59. Combs gestures to the Government's press releases, the way search warrants of his homes were executed, that he wasn't allowed to self-surrender, and alleged press leaks. He says these establish that the Government "has gone out of its way to humiliate [him]." Dkt. 153 at 7. However, Combs doesn't point to any evidence that racial bias played a role in the Government's actions, that the prosecution team was responsible for any leaks to the press, or that the way Combs's homes were searched bespeaks a discriminatory purpose. For its part, the Government argues that its press releases and refusal to allow Combs to self-surrender were in keeping with how it has handled cases involving non-Black defendants. *See* Dkt. 166 at 12–13.

Combs devotes the bulk of his attention to the origins of § 2421, which he says was enacted in 1910 to "target … black male sexuality." Dkt. 153 at 3–4, 8. But whatever the troubling history of § 2421, its present-day enforcement appears on its face race-neutral in this district, reaching across race and gender. As far as selective prosecution is concerned, § 2421's current application is what is at issue; any argument concerning the statute's roots must make a sufficiently strong connection to what is happening in prosecutors' offices today. Combs's history lesson ignores what *Armstrong* requires: evidence about the Government's motives in his own prosecution.

Having failed to "show some evidence of both discriminatory effect and discriminatory intent," *see Bass*, 536 U.S. at 863, further discovery on these issues is unwarranted. The motion to dismiss is denied.

SO ORDERED.

Dated: May 9, 2025
    New York, New York

_____
ARUN SUBRAMANIAN
United States District Judge

4