

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

May 20, 2025

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

    The Government respectfully writes in response to the defendant's letter earlier this evening regarding the upcoming testimony of Dr. Dawn Hughes. ("Def. Ltr."). In its letter, the defendant raises concerns stemming from certain statements contained in Dr. Hughes' 3500 material. To be clear, the 3500 material contains Dr. Hughes' statements on the topics of her anticipated testimony, as well as other related matters that were discussed during her meetings with the Government. The Government, however, has narrowly tailored the testimony to be elicited from Dr. Hughes in accordance with the Court's April 25, 2025 Order, and Dr. Hughes will not testify to any topics not covered by the Order. As the Government already intends to abide with the Court's Order, no further relief is warranted.

    Specifically, as the Court ruled, Dr. Hughes will be permitted to testify to the following:

> Dr. Hughes can testify as to coping strategies, delayed disclosure and memory, and the testimony, as articulated in those sections of her disclosure . . . I am including in this category testimony concerning the reasons why victims stay in relationships, which we addressed at the last hearing.[1] As for interpersonal violence, which is mentioned in the government's posthearing letter, if Dr. Hughes is asked why victims either stay in relationships or have delayed disclosure or engage in coping strategies or have fragmented memories, then she can, of course, answer those

---

[1] At the prior hearing on April 18, 2025, the Court indicated that it was inclined to admit testimony from Dr. Hughes regarding why victims remain in relationships, as well as why periods of positivity or neutrality in a relationship serve to prevent victims from leaving a relationship. (*See* Apr. 18, 2025 Tr. at 23:7-15:20, 48:7-49:11 (noting that the Court was inclined to admit testimony regarding the last two sentences of the second full paragraph of Dr. Hughes' disclosure, regarding why victims remain in relationships, as well as the following paragraph, regarding trauma bonds). To the extent the defense objects to Dr. Hughes testimony regarding the effect of periods of abuse being interspersed with periods of normalcy, Ltr. at 4-5, that testimony is squarely within the Court's ruling.

> questions with the reasons for that behavior, as set forth in the disclosure. But the jury can understand what abuse and violence is, and it doesn't need Dr. Hughes to explain an umbrella term of "interpersonal violence" or to expound at length about different types of abusive conduct as a precursor to offering opinions that the Court has permitted.

(Apr. 25, 2025 Tr. at 5-6). Consistent with this ruling, the Government will elicit testimony regarding why victims remain in relationships, how victims cope in such relationships, why they engage in delayed disclosure, and the effect of trauma on memory.

As the Government has informed the defense, it does not intend to elicit testimony regarding the term "interpersonal violence," by that or any other name. Likewise, Dr. Hughes will neither define nor use the term "coercive control," nor the term "psychological aggression" in its place.[2] Rather, the Government intends to elicit testimony squarely within the bounds of the Court's ruling. Specifically, as contemplated by the Order, when "Dr. Hughes is asked why victims . . . stay in relationships," she will "answer those questions with the reasons for that behavior, as set forth in the disclosure." (Apr. 25, 2025 Tr. at 5-6). As part of this testimony, the Government will elicit brief testimony regarding how specific types of abuse cause a victim to remain in a relationship, during which the Government expects that Dr. Hughes will provide concise definitions of the relevant forms of abuse. This testimony is limited and necessary context for the portion of her testimony related to why victims of domestic violence may stay with or return to, rather than leave their abusers—a topic included in the portion of Dr. Hughes' expert notice expressly covered by the Court's Order. (*See* Def. Ltr., Ex. A at 3, ¶ 2).

Relatedly, the Government does not intend to elicit the term "post-separation assault" in Dr. Hughes' testimony, which, as the defense notes, refers to abuse that continues after the termination of a relationship. (Def. Ltr. at 3). However, in connection with Dr. Hughes' testimony about why victims stay with or return to, rather than leave their abusers, the Government does expect Dr. Hughes to testify that leaving a relationship is a process for most victims and that victims will, at times, return to an abusive relationship due to abuse which continues after an attempt to terminate the relationship. Because this testimony is part and parcel as to why victims remain in relationships, it too is squarely within the permitted scope of her testimony.

In sum, Dr. Hughes' anticipated testimony is narrowly tailored to comport with the Court's Order and there is no basis to revisit the Court's determinations. The Government remains available to answer any further questions of the Court.

---

[2] The defendant appears to conflate the term "psychological aggression" with the concept of psychological abuse—a conclusion unsupported by the 3500 material or Dr. Hughes' anticipated testimony.

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

By:   /s  
        Maurene Comey / Meredith Foster /
        Emily A. Johnson / Christy Slavik /
        Madison Reddick Smyser / Mitzi Steiner
        Assistant United States Attorneys
        (212) 637-2324/-2310/-2409/-1113/-2381/-2284

cc:     Counsel of record (by ECF)