

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 16, 2025

**By ECF**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:  *United States v. Combs*, **S3 24 Cr. 542 (AS)**

Dear Judge Subramanian:

  The Government respectfully writes in response to the defense's letter filed earlier this evening. Despite the Court's clear ruling on the necessity of removing Juror ▮▮▮ the defense again attempts to cast the Government's motion to remove the juror as racially motivated. As the Court recognized on Friday after the defense first lobbed this baseless accusation, nothing could be further from the truth. Instead, as the Court laid out in detail after a careful review of the record, inconsistent statements made by Juror ▮▮▮ during voir dire and in later colloquies relating to basic biographical information indicated a lack of candor. This caused the Government to raise its concern regarding the lack of candor with the Court, and the Court to conclude that the juror should be removed. Nothing in the defendant's letter undermines this conclusion. With respect to Juror ▮▮▮ the Government has no opposition to further factfinding. The remainder of the defendant's letter—pages' worth of baseless *ad hominem* attacks on the prosecutors in this case—should be disregarded and rebuked.

  **I.**  **The Court Should Not Reconsider Its Ruling to Dismiss Juror ▮▮▮ For Reasonable Cause**

  On June 13, 2025, after hearing from the parties on the record and in written submissions, the District Court properly concluded after extensive factual finding that it was necessary to remove Juror ▮▮▮ from the jury. (Tr. 6218:3-6225:16). Based on the Court's careful review of the record, the Court concluded that the juror's inconsistent statements regarding his most basic biographical information (*i.e.* who he lived with and where he lived) was cause for serious concern. (*See* Tr. 6223:7-10; Tr. 6225:2-5 (noting that even if the "juror is, as a technical matter qualified, omissions or inconsistencies as to such a basic question as to where you live raise serious questions concerning the propriety of maintaining this juror")). In particular, the Court noted that these repeated inconsistencies raised concerns regarding the juror's candor, ability to follow instructions, and possible deception that potentially undermined the trustworthiness of the juror's answers to other questions in voir dire. (*See* Tr. 6233:23-25 (noting juror's conduct "suggest[s] an effort to, in the juror's mind, try to get onto the jury"); Tr. 6223:25-6224:7 (noting juror's conduct reflects "serious questions about the juror's candor and the juror's ability to follow the Court's instructions"); Tr. 6224:16-20 (noting that the juror's "changing answers and inconsistency give

the Court worry about deception and lying, which further implicates the veracity of the answers that the juror answered during the voir dire process, including about the myriad questions that go to the heart of the case")). On this basis and as supported by the transcript of Juror ▮'s statements during voir dire and on June 9, 2025, the Court properly concluded that Juror ▮ should be removed to ensure the integrity of the proceedings. (*See* Tr. 6225:16; 6218:25-6219:3).

The Court's exercise of its broad discretion to remove Juror ▮ due to his lack of candor with the Court was entirely proper. As noted in the Government's June 11, 2025 Letter and in the Court's remarks on June 13, the Court has broad discretion to replace a juror prior to deliberations for reasonable cause, and such removal does not require the consent of either party nor any additional inquiry. *See* Tr. 6218:7-14; *United States v. Arline*, 660 F. App'x 35, 39-40 (2d Cir. 2016); *United States v. Fazio*, 770 F.3d 160, 169 (2d Cir. 2014); Fed. R. Evid. 24(c). Where, as here, the Court has ample "factual support" to remove a juror, there is clearly no prejudice to the defendant. *See Fazio*, 770 F.3d at 170. Further, the defense's argument that the defendant would be prejudiced due to Juror ▮'s race finds no support in the law. Indeed, similar arguments have been rejected by the Circuit. *See United States v. Iverson*, 897 F.3d 450, 466-67 (2d Cir. 2018) (affirming dismissal of juror mid-trial for failure to satisfy JSSA literacy requirement and rejecting defendant's argument that he was prejudiced by dismissal since the juror was black). Nothing in the defense's submission has provided cause for the Court to reconsider its careful ruling.

II. **The Government Does Not Oppose Further Factfinding Regarding Juror ▮**

The defense argues that if the Court removes Juror ▮, Juror ▮ should also be removed. While the Government disagrees with linking the issues involving Juror ▮ with those involving Juror ▮, the Government's review of the transcript and the Court's instructions to the jury suggests that further fact-finding may be appropriate. ▮



(*See* Tr. 6251-6260). ▮ (Tr. 98:4-7; 281:22-282:1). ▮

(*See* Tr. 96:18-99:1; 280:24-282:15). For these reasons, the Government does not oppose additional factfinding regarding Juror ▮'s communications with his former colleague, or anyone else, regarding his jury service.

III. **The Court Should Disregard the Defendant's Baseless Attacks on the Government**

Finally, the Government must respond briefly to the defense's reiterated attacks on the motives for the Government's motion regarding Juror ▮, which the Court has already rightly rejected for the artifice it is. (Tr. 6029:2-6030:14, 6220:1-6). There is a difference between creating a record to maintain a party's objections and devolving into *ad hominem* attacks on one's opponent. The second half of the defense's letter, in contravention of the Court's individual rules,

unfortunately falls into the latter category.[1] The Government will not dignify yet another collection of baseless attacks—all of which have zero connection to the juror issues pending—by addressing each misstatement and inaccuracy in the defendant's letter. Suffice it to say, the defense is wrong. In lieu of a point-by-point rebuke, however, the Government offers the following:

*First*, in straining to make out a supposed pattern of misconduct, the defense does nothing more than repackage specious accusations already squarely rejected by this Court. Take the argument that there were material misrepresentations or omissions in the search warrants in this case as just one example. The Court, in a thorough and detailed opinion, flatly rejected the defendant's claims. (Apr. 18, 2025 Order). The same is true of other issues the defendant attempts to relitigate, including the Government's exercise of peremptory strikes, for which the Court found there was zero evidence of racial motive (*see* Tr. 781:9-14; 6220:1-4); the defendant's allegations of leaks, which the Court similarly found were unsupported (*see* Dkt. 113); the defendant's motions for mistrials, which the Court has repeatedly denied (*see* Tr. 2903:7-2904:18; 5257:13-5259:13); and even the defendant's motion for bail, which was rejected by three separate federal judges after lengthy hearings (*see* Dkt. 17 at 54-55; Dkt. 19 at 56-57; Dkt. 92). The Court should take the defendant's recycled arguments for what they are: a refusal to accept the well-supported decisions of this Court and an insistence on casting aspersions without cause.

*Second*, none of the particulars of this Office's handling of this case approach "a pattern of overreach, suggesting a discriminatory motive." The defense suggests, for instance, that there is something nefarious about staffing a case with six prosecutors or using a filter team despite the entirely neutral, case-specific reasons for doing so. Indeed, the defense has similarly enlisted a large team, no doubt because of the vast discovery and speedy schedule of the case. Likewise, the defendant impugns the Government's review of the defendant's non-privileged communications from jail. But defendants are repeatedly warned that their calls in jail are recorded, and there is no legal authority to support the idea that the review of those calls—a common investigative tactic in a broad range of cases—is improper.

*Third*, the defendant's letter contains allegations that are demonstrably false. Most notably, the defendant falsely claims that the Government "refused to engage with defense counsel during the investigation," including claiming that the Government repeatedly refused to meet with defense counsel. (Dkt. 404 at 8). As the defense well knows, from the time search warrants in this case were executed and throughout this case, the Government regularly conferred with defense counsel.[2]

---

[1] *See* Arun Subramanian, United States District Judge, Individual Practices in Criminal Cases, Rule 2 ("Civility in All Proceedings: Parties must act with the highest degree of professionalism and courtesy in their dealings with other parties, the Court and Court staff, and anyone else involved in the litigation.").

[2] These conferrals included, at defense counsel's request, a meeting prior to the return of an indictment in this case.

In sum, there is now—as ever—no basis for the defendant's attacks on the Government's conduct during the investigation and prosecution of this case, including its motives in raising the concerns regarding Juror ▓▓▓ to the Court. The Court's well-reasoned conclusion regarding Juror ▓▓▓ should be affirmed and any additional inquiry regarding Juror ▓▓▓ should be approached in the same even-handed, fact-specific manner.

        Respectfully submitted,

        JAY CLAYTON
        United States Attorney

By:   /s                       
     Maurene Comey / Meredith Foster /
     Emily A. Johnson / Christy Slavik /
     Madison Reddick Smyser / Mitzi Steiner
     Assistant United States Attorneys
     (212) 637-2324/-2310/-2409/-1113/-2381/-2284