

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 1, 2025

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

      Re:    *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

      The Government respectfully writes to identify disputed evidentiary issues regarding Mia's continued testimony, Frank Piazza's testimony, and text messages the Government intends to admit related to the summary charts.

**I.   Mia's Testimony**

      The Government objects to DX 1748, 1750, 1794, and 1799.

      **DX 1750:** DX 1750 is a 2013 birthday video filmed by Mia to the defendant, which was disclosed to the Government at 1:07 p.m. on Friday during Mia's cross-examination. The Government understands that the defense intends to admit this video for impeachment regarding Mia's demeanor. The Government objects on Rule 401 and 403 grounds, in addition to improper impeachment grounds. As the Court already ruled on Friday, the "relevance and probative value of this video is minimal," and the video is cumulative, as it is akin to the numerous social media posts that the defense entered into evidence on Friday and the extensive cross-examination, totaling more than 30 pages of Friday's transcript, conducted on this topic. In addition, to the extent a video could be used to impeach a witness's demeanor, this video does not. The context and subject matter of the video is a far cry from Mia's in-court testimony about highly sensitive topics including violence and sexual abuse. Indeed, to the extent Mia's in-court demeanor is at all relevant to the admissibility of this exhibit, it's notable that her tone was more upbeat and forceful when speaking about less sensitive topics, like the birthday social media posts.

      **DX 1748 and 1794:** DX 1748 and 1784 appear to be text messages between Mia and Kristina Khorram in December 2017. The defense intends to admit these messages to show Mia's state of mind, and the Government objects on Rule 403 grounds. These text messages are cumulative and prejudicial, as both exhibits address Mia's feelings of sadness and betrayal in December 2016 after being told the defendant was not continuing with Revolt Films. The defense accomplished this point using DX 1728 on Friday, in which Mia stated that she wanted "to kill herself" and that her "life [was] over"—points with which Mia did not disagree in her testimony.

1

(*See* Tr. 3589 ("Q. But isn't this great? I mean, you're away from your abuser? A. No, because at the time I didn't realize that. This is absolutely the time not great. In hindsight, fantastic. But at the time, the worst thing ever.").  In addition, DX 1748 is particularly prejudicial, as Khorram states that Mia is "attacking" her when Mia is merely expressing her feelings.  The Court should exclude these messages.

**DX 1799:**  At 10:15 p.m. tonight, the defense disclosed an Instagram video of Mia taking what appear to be multiple shots of alcohol.  The post is dated August 16, 2017, which is after she left the defendant's companies.  The Government objects on Rule 401 and 403 grounds, as it wholly irrelevant given both the content and the fact that Mia no longer worked for the defendant at the time of the social media post.  Rather, the admission of the post would only serve to needlessly prejudice and embarrass the witness.  Further, the post is not relevant whatsoever to Mia's character for truthfulness and even if relevant, which it is decidedly not, would be improper character evidence barred by Rule 404 and 608(b).[1]

## II. Frank Piazza's Testimony

The defense objects to a variety of Government exhibits on Rule 403 grounds.  Many of these videos were created to address the defense's concerns with the Intercontinental videos and should be admitted pursuant to the Court's motion *in limine* decision allowing admission of such videos and requesting that the Government address the defendant's concerns where possible. (Final Pretrial Conf. Tr. 6-9).

**GX 10C-101 and 10C-102:**  These two exhibits are corrected versions of the cellphone videos already in evidence, GX 3B-101 and 3B-102.  In these videos, Mr. Piazza addressed issues in the videos, including the aspect ratio that made the defendant appear wider than he was, the shakiness of the video, and the lighting.  The defense states that the videos are unduly prejudicial under Rule 403 but does not articulate why, and the Government should be able to admit these videos to address these issues, many of which were raised by the defense and Mr. Conor McCourt. If these videos are excluded, the defense should be precluded from raising issues with GX 3B-101 or 3B-102 on cross-examination of Mr. Piazza or in closing arguments.

**GX 10C-106 through 10C-111:**  These exhibits show the process by which Mr. Piazza slowed down the surveillance videos that had been produced by CNN to make the videos more accurate.  The defense requested that the Government call Mr. Piazza in order to show the jury "how we got here" with the videos.  These exhibits do just that.  The Government presently intends to show just two of the videos as examples.

**GX 10C-112:**  This is a compilation video that strings together the corrected surveillance videos already in evidence—10C-103 through 10C-105—with a corrected cellphone video, 10C-

---

[1] The defense has also disclosed an additional DX 1799-R, which is a redacted chat thread with Mia and an unidentified person from July 2015.  The Government understands that the defense does not presently intend to use this text thread.  If the defense does attempt to introduce it, the Government will object on multiple grounds, including on authentication, hearsay, and Rule 401 and 403 grounds.

102, in order to show the jury the full string of events in the sequence they occurred. The defense objects on Rule 403 grounds but again fails to point to anything prejudicial about the exhibit. Far from unduly prejudicial, putting these events in chronological order makes them easier for the jury to understand and reference. Given that these the corrected surveillance videos are already in evidence, and for the reasons described above, the corrected cellphone videos should also be admitted, there is no prejudice to putting these videos in chronological order. If the Court excludes the corrected cellphone videos, Mr. Piazza is prepared to create a new compilation that uses 3B-102, the original cellphone video, rather than 10C-102, the corrected cellphone video.

**GX 10C-113:** This is a second compilation video that combines the same videos used in GX 10C-112 in chronological order, but also includes highlighting of certain events on the videos, through use of zoom and red circles. This includes, for example, the defendant's assault of Ms. Ventura, as well as certain details that may be difficult to see on the original video, including the defendant's taking of Ms. Ventura's phone and the defendant throwing items from a vase at Ms. Ventura. By zooming in and slowing down the video, the jury will be able to better perceive the events depicted in the video from on March 5, 2016. The Government presently intends to only use this as a demonstrative with Mr. Piazza on the stand and not to admit it as substantive evidence.

### III. Eddy Garcia's Testimony

The defense advised the Government that it expects to raise a hearsay objection to certain statements made to Eddy Garcia by his then supervisor, Bill Medrano, during his employment. These statements should be admitted as non-hearsay since they constitute directives from Mr. Medrano to Mr. Garcia and are admissible to show the direct effect on the listener, here, Mr. Garcia.

Mr. Garcia worked as a security officer at the Intercontinental Hotel in Century City in March 2016. Mr. Medrano was the director of security at the Intercontinental hotel at the same time and was therefore Mr. Garcia's direct supervisor. Mr. Garcia is expected to testify that he had a series of discussions with Mr. Combs and/or Ms. Khorram, the defendant's then personal assistant, regarding video surveillance footage of the defendant's assault of Ms. Ventura at the Intercontinental Hotel in March 2016. During these discussions, the defendant offered to purchase the video of the incident, and Mr. Garcia later provided the video footage on a USB to the defendant in exchange for $100,000. Throughout, Mr. Garcia conferred with his direct supervisor, Bill Medrano, regarding his discussions with the defendant. For instance, when the defendant offered to purchase the video footage, Mr. Garcia relayed that information to Mr. Medrano; Mr. Medrano then told Mr. Garcia that he would be willing to sell the footage, a message that Mr. Garcia relayed to Mr. Combs at Mr. Medrano's direction. Similarly, Mr. Medrano directed Mr. Garcia to drop off a USB containing the video to Mr. Combs for purposes of the transaction. Mr. Medrano also directed Mr. Garcia to collect identification cards from a fellow security officer in order to provide them to Mr. Combs to secure the transaction.

The statements from Mr. Medrano to Mr. Garcia are clearly admissible. As an initial matter, several of Mr. Medrano's statements to Mr. Garcia are non-hearsay since, as noted above, they convey directives and are therefore offered as evidence of commands rather than for the truth of the matter asserted. *See United States v. Bellomo*, 176 F.3d 580, 586 (2d Cir. 1999) ("Statements

offered as evidence of commands or threats or rules directed to the witness, rather than for the truth of the matter asserted therein, are not hearsay."). Further, to the extent Mr. Medrano's communications with Mr. Garcia are not directives, they are being introduced not for their truth but rather to establish their effect on the listener, here, Mr. Garcia. *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("[A] statement offered to show its effect on the listener is not hearsay."). Indeed, as he will testify, Mr. Garcia took direct actions because of his communications with Mr. Medrano, and these communications therefore had a direct impact on the listener. Accordingly, Mr. Garcia's testimony regarding the statements of Mr. Medrano should be admitted as non-hearsay.

### IV. Summary Chart Exhibits

The defense has alerted the Government that it has a hearsay objection to GX C-332-B and GX C-332-E (excerpted communications between Kristina Khorram and David Shirley) and GX C-334-B (excerpted communications between Kristina Khorram and Elie Maroun). These communications fall squarely within Federal Rule of Evidence 801(d)(2)(D), which provides that a statement is not hearsay if it is offered against an opposing party and was made by the party's employee on a matter within the scope of the employment relationship. Khorram worked for the defendant in many capacities, most recently as his chief of staff, Tr. 1591, while Shirley and Maroun were the defendant's personal assistants. Tr. 2228, 3230 (Shirley), 3229 (Maroun). Each of the excerpted chats discusses setting up and sweeping hotel rooms, or bringing items to a hotel room for the defendant, responsibilities that all witnesses who worked as the defendant's personal assistant have testified was a core job duty. *See* Tr. 1758 (David James); 2235-39 (George Kaplan); 3292-96 (Mia). Moreover, these exhibits are relevant to show, among other things, one of the purposes of the Combs Enterprise—to satisfy the defendant's demands, including those involving his sexual gratification—and as building blocks for the Government's proof of the Mann Act and sex trafficking racketeering predicates and substantive offenses. The Court should admit these excerpts.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By:   /s
   Maurene Comey / Meredith Foster /
   Emily A. Johnson / Christy Slavik /
   Madison Reddick Smyser / Mitzi Steiner
   Assistant United States Attorneys
   (212) 637-2324/-2310/-2409/-1113/-2381/-2284

cc:   Counsel of record (by ECF)