

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 4, 2025

**BY EMAIL**

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

   Re: *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

  The Government respectfully writes in opposition to the defendant's objections to several exhibits that the Government plans to offer during the testimony of the witness using the pseudonym "Jane." After continued productive conferrals, the defendant maintains two categories of objections to a subset of Government Exhibits. First, the defense objects to certain text message exchanges on rule of completeness grounds. Second, the defense objects to one text message exchange, one screenshot of a news headline, and several diary-like entries in Jane's notes app on hearsay grounds. For the reasons set forth below, these objections should be overruled.

  A. **Rule of Completeness**

  The defense objects to several Government Exhibits that consist of text messages exchanged between Jane and the defendant during their relationship. Although the Government agreed to modify some of its text-message exhibits to address the defense's concerns, the remaining exhibits do not require any additional context to prevent them from being misleading or otherwise inaccurate. Although the parties have continued to confer, currently the Government understands that the defense objects to the following such exhibits on these grounds: GX A-104-13 through A-104-15, A-104-18, A-104-23, A-104-30, A-104-31, A-104-60, A-104-63 through A-104-73, A-104-76, A-104-78, A-301-K through A-301-M, A-301-R through A-301-V, A-442-19, A-442-31, and A-442-33.

  The "rule of completeness" found in Federal Rule of Evidence 106 states: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part — or any other writing or recorded statement — that in fairness ought to be considered at the same time." Fed. R. Evid. 106. "'The completeness doctrine does not, however, require the admission of portions of a statement that are neither explanatory of nor relevant to the admitted passages.'" *United States v. Johnson*, 507 F.3d 793, 796 (2d Cir. 2007 (quoting *United States v. Jackson*, 180 F.3d 55, 73 (2d Cir. 1999)). This rule is strictly applied. The Second Circuit has held, for example, that a defendant could not introduce a

portion of his confession relating "to the *execution* of a robbery," where the portion introduced by the Government concerned only "plans to *execute* the robbery." *Johnson*, 507 F.3d at 796 (emphasis in original). The burden rests with the defendant to demonstrate that the portions of the statement she seeks to offer are necessary to clarify or explain the portions the Government intends to offer. *United States v. Glover*, 101 F.3d 1183, 1190 (7th Cir. 1996) ("[T]he proponent of the additional evidence sought to be admitted must demonstrate its relevance to the issues in the case, and must show that it clarifies or explains the portion offered by the opponent."). "Under this rule, the omitted portion of a statement must be placed in evidence if necessary to explain the admitted portion, to place the admitted portion in context, to avoid misleading the jury, or to ensure fair and impartial understanding of the admitted portion." *United States v. Castro*, 813 F.2d 571, 575–76 (2d Cir. 1987). That is, the Rule serves to correct the misleading use of a single statement or document, so as to imply a meaning that does not exist when viewed in its immediate context.

Here, the Government has marked as exhibits certain of Jane's text exchanges with the defendant that reflect their relevant communications with each other and include any necessary context. Although the defendant may want to show the jury additional text messages between Jane and the defendant that may be favorable to the defense, the Government is not required to include such evidence in its own exhibits or during its own presentation of its case simply because the defendant would prefer it. None of the messages contained in the contested exhibits is misleading or taken out of context, and the defendant's objections should accordingly be overruled.

**B.   December 2023 Text Exchange between Jane and Kristina Khorram**

During Jane's testimony, the Government plans to admit GX C-251, which is a text message exchange dated December 28, 2023 between Jane and Kristina Khorram (the defendant's Chief of Staff at the time). The Government expects Jane will testify that she sent the messages in GX C-251 to Ms. Khorram immediately after the defendant threatened Jane with releasing recordings of her having sex with male escorts. The probative value of this exchange is apparent on its face. As an initial matter, Jane's detailed description of her conversation with the defendant, as well as her expressions of genuine fear and pain in response to those threats, are highly probative evidence of the coercion she experienced at the defendant's hands. These messages thus directly relate to the core of a disputed element of Count Four. In addition, Ms. Khorram's receipt of and reaction to these messages are extraordinarily probative evidence that she already knew about the defendant's sexual exploitation of Jane (given her muted reaction to the texts) and at the very least was on notice of that sexual coercion (which continued well into 2024) after receiving these messages. The exhibit thus tends to prove that Ms. Khorram—who the Government alleges was a co-conspirator within the racketeering conspiracy charged in Count One—agreed to and did facilitate the defendant's sex trafficking activities.

The exhibit is also admissible as non-hearsay on numerous bases.

*First*, portions of the chat are admissible under Rule 803(3) as statements of Jane's then-existing state of mind. Several sentences in these messages detail Jane's emotional state in response to the defendant's threats. Among other things, Jane writes, "I need time to move on from him," "I'm traumatized," "[i]t's all so extremely hurtful, very hurtful," "I am currently recovering," "I'm beyond hurt by him," "I'm just really stressed w him saying he would expose

my sex tapes," "I just sincerely want him to give me my space and quiet time," "I'm drained," and describes herself as feeling that the defendant "exploit[ed]" her. These types of statements—as well as the surrounding sentences explaining what Jane finds hurtful and what makes her feel exploited—are plainly admissible under Rule 803(3).

*Second*, Jane's messages to Ms. Khorram in this exhibit are admissible as excited utterances, which Rule 803(2) defines as statements "relating to a startling event . . . , made while the declarant was under the stress of excitement that it caused." Fed. R. Evid. 803(2). Jane's messages relate to an undeniably startling event, specifically, the defendant threatening to expose explicit videos of Jane immediately prior to this text exchange. It is plain from the content of the messages that Jane wrote them while still under the stress of the event, which she describes as having "just" happened, and Jane will testify that she sent these messages immediately after the defendant threatened her. Throughout the messages, Jane describes how upset and "stressed" she is. Jane's messages are therefore admissible as excited utterances under Rule 803(2). *See United States v. Hadden*, No. 23-6822-CR, 2024 WL 4456203, at *3 (2d Cir. Oct. 10, 2024) (victim's "text messages to a friend from a hospital bathroom, reporting Hadden's abuse moments earlier, "all while she was still in a state of shock from Hadden's conduct" "fall comfortably within the meaning of 'excited utterances'"); *see also United States v. Watson*, No. 23-CR-82 (EK), 2024 WL 4455773, at *2 (E.D.N.Y. May 31, 2024) ("An excited utterance need not be contemporaneous with the startling event to be admissible" and "courts have properly admitted statements made as many as twelve hours after the 'startling event' in question").

*Third*, certain sentences in this text message exchange, specifically the first sentence of the initial text message from Jane, are admissible as a present sense impression. Rule 803(1) permits admission of out-of-court statements "describing or explaining an event or condition made while or immediately after the declarant perceived it." Fed. R. Evid. 803(1). Here, Jane describes an event that "just" happened to her—*i.e.*, she was "just" threatened by the defendant—and the Second Circuit has regularly upheld the admission of a statement as a present sense impression where the witness relates her personal observations soon after observing the event. *See, e.g., United States v. Jones*, 299 F.3d 103, 107, 112 (2d Cir. 2002) (upholding admission of statements describing person witness saw masturbating in public as made "nearly contemporaneous" with perceiving the event); *accord, e.g., United States v. Ibanez*, 328 F. App'x 673, 675 (2d Cir. 2009) (upholding admission where "maybe 5 minutes" lapsed between event and statement); *United States v. Steele*, 216 F. Supp. 3d 317, 321–22 (S.D.N.Y. 2016) ("A statement made during a 911 call within minutes of the caller's observation" is admissible).

*Fourth*, the statements are admissible for a non-hearsay purpose, specifically they are key evidence of Ms. Khorram's knowledge of the defendant's sex trafficking of Jane. "A statement is not hearsay where . . . it is offered, not for its truth, but to show that a listener was put on notice of illegal acts." *United States v. Moseley*, 980 F.3d 9, 27 (2d Cir. 2020); *see United States v. Watson*, No. 23-CR-82 (EK), 2024 WL 4455773, at *2 (E.D.N.Y. May 31, 2024) ("Evidence introduced to prove the listener's 'knowledge,' or 'to show that a listener was put on notice,' is not hearsay."). In these messages, Jane tells Ms. Khorram truly shocking information: that the defendant has sexually exploited her while she is "heavily drugged," recorded that exploitation, and threatened to release those recordings. Given the detail that Jane provides documenting her own experiences of coercion to engage in commercial sex acts, this exhibit demonstrates that, at least as of

December 2023, Ms. Khorram was put on notice of the fact that Jane was being coerced into sex acts by the defendant. In addition, Ms. Khorram's muted reaction to these stunning messages suggest that she was already aware of the defendant's criminal conduct when she received them. Thus, even assuming that these messages are not independently admissible under the various bases listed above, the messages are admissible in their entirety as evidence of Ms. Khorram's knowledge.

*Finally*, the probative value of the message outweighs any possible unfair prejudice. As discussed, these messages are highly probative of the coercion used by the defendant to cause Jane to participate and commercial sex acts and they assist in establishing Ms. Khorram's knowledge with respect to the defendant's sex trafficking of Jane, relevant to Count One of the Indictment. That Ms. Khorram at the very least was put on notice of Jane's feelings of coercion regarding her participation in Freak Offs is particularly probative because, even after the date of these messages, the Government anticipates that the evidence will show that Ms. Khorram continued to facilitate Freak Offs between the defendant and Jane. GX C-251 therefore also helps to rebut the anticipated defense that Ms. Khorram facilitated Freak Offs between the defendant and Jane without any understanding that Jane felt coerced into participating in them.

The messages are also not unfairly prejudicial. The prejudice that Rule 403 is concerned with involves 'some adverse effect . . . beyond tending to prove the fact or issue that justified its admission into evidence.'" *United States v. Gelzer*, 50 F.3d 1133, 1139 (2d Cir. 1995) (quoting *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980)). Put differently, all evidence of guilt is prejudicial in that it has the effect of disadvantaging the defendant, but that is not the same as being "unfairly" prejudicial. *Costantino v. Herzog*, 203 F.3d 164, 174 (2d Cir. 2000) ("Because virtually all evidence is prejudicial to one party or another, to justify exclusion under Rule 403 the prejudice must be unfair." (emphasis in original)).

### C. Screenshot of News Headline

GX E-171 is a screenshot of a headline that Jane took when Casandra Ventura filed her lawsuit in November 2023. The Government expects Jane will testify that she saw this headline online and was so impacted by it that she screenshotted it to keep a copy on her phone. Jane will further testify that the words "███████████████████████████████████" in the headline deeply impacted her because they captured her own experience, which she had been trying to articulate in writing and verbally to the defendant for months. That reaction provides essential context to Jane's subsequent communications with the defendant, including text messages and phone calls that the defendant surreptitiously recorded, after she saw the headline. Accordingly, the Government is not offering this exhibit for its truth, but rather for its significant impact on Jane and to explain her subsequent communications.

This exhibit will not be unduly prejudicial because Ms. Ventura already testified both that she felt forced to have sex with male prostitutes and that she filed a lawsuit against the defendant based on that very same conduct. The headline will therefore tell the jury nothing that they have not already heard in great detail from Ms. Ventura herself.

D. **Jane's Notes App Entries**

The Government expects Jane will testify that because the defendant often interrupted, gaslit, and belittled her when she tried to express her feelings—including that she did not want to have sex with other men—she used her Notes App as a diary of sorts to collect her thoughts and prepare possible text messages to send to the defendant. GX E-178, E-179, E-182, and E-331-A through E-331-P are all entries that Jane wrote in her Notes App during the period charged in Count Four of the Indictment. During Jane's testimony, the Government will offer portions of these notes that relate to Jane's feelings at the time of writing to prove her state of mind. The Government will also offer these notes as prior consistent statements to rebut attacks on her credibility made during opening statements.

The majority of these exhibits contain Jane's contemporaneous statements describing her own state of mind, including her emotional, mental, and physical reactions to her experiences with the defendant. Those statements are plainly admissible to prove her state of mind under Rule 803(3), and are extraordinarily probative of Jane's experience of being forced and coerced by the defendant into having sex with male escorts. For example, GX E-178, E-179, and E-182 describe her contemporaneous reaction to reading Ms. Ventura's lawsuit and reflecting on her own similar experiences in Freak Offs, which includes saying "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮." All of these contemporaneously made statements, and the context surrounding them to explain what she has these feelings about, go directly to Jane's state of mind in November 2023.

The remaining notes are replete with similar statements describing how Jane felt at the time she wrote them, all of which (together with the surrounding context to make sense of her statements) are admissible to prove her state of mind. The Government expects that Jane will testify that she wrote these notes to collect her thoughts and prepare herself to express her feelings to the defendant. Indeed, she in fact sent some of the language from some of these notes to the defendant in text messages, and she will explain that all of these notes were part of her attempts to communicate her then-existing feelings to the defendant. *See, e.g.*, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮



These notes are also admissible as Jane's prior consistent statements because the defense has already attacked her credibility at this trial regarding Jane's willingness to engage in Freak Offs with the defendant. During opening statements, the defense specifically attacked Jane's credibility as to her anticipated testimony that she felt coerced to participate in Freak Offs with the defendant. The defense repeatedly claimed that, instead of any coercion, the evidence would actually show that Jane participated in Freak Offs with the defendant willingly and of her own

volition because she loved the defendant and wanted to spend time with him and not as a result of any form of coercion. Tr. 144 ("But the evidence is going to show you that [Jane] is a capable, strong woman who willingly engaged in their sex life so they could spend time together. That is simply not sex trafficking."); 144 ("I expect the evidence will show you that even after this phone call, [Jane] continued [to engage in Freak Offs]. She flew out to see him many more times, and continued willingly engaging in these nights."), 146 ("These videotapes depict what we've been telling you about, Sean Combs, one of his girlfriends, and a man. These videos, we believe, are powerful evidence that the sexual conduct in this case was consensual and not based on coercion."). These notes, in which Jane indicates that she does not want to continue participating in Freak Offs and/or describes multiple instances when she felt forced, coerced, or tricked into participating in Freak Offs, directly rebut that claim and are therefore admissible as prior consistent statements under Rule 801(d)(2)(1). *See United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) ("The question is not whether the defense introduces a specific statement, but rather whether it has made a specific attack on a witness's credibility."); *United States v. O'Connor*, 650 F.3d 839, 863 (2d Cir. 2011) ("Although Renee's testimony about the note was admitted before S.O. was called to testify, it was clear that S.O. was to be—and was—the principal witness at trial and could be cross-examined by the defense about the statement in her note.").

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ___/s_____
Maurene Comey / Meredith Foster /
Emily A. Johnson / Christy Slavik /
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284

cc:   Counsel of record (by ECF)