

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

**VIA ECF**                                                                 June 24, 2025

The Honorable Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

     Re:    *United States v. Combs*, S3 24 Cr. 542 (AS)

Dear Judge Subramanian:

     The Government respectfully writes regarding its requested edits to the Court's proposed jury instructions.

     The Government understands the Court's desire for streamlined instructions. With that in mind, the Government has suggested ways to streamline those instructions. Specifically, the Government has removed instructions from the charge relating to (i) attempted kidnapping under both California and New York law, (ii) attempted arson under California law, and (iii) aiding and abetting sex trafficking. The Government is no longer planning to proceed on these theories of liability so instructions are no longer necessary. The Government has also attempted to simplify the language relating to Count One – a proposal, as explained in the Government's comment bubbles, that the Government hopes not only serves the purposes of streamlining the instructions but also will avoid any confusion as to the operative agreement for Count One.

    I.    **Sex Trafficking and Forced Labor Instructions**

     While the Government has taken seriously the Court's desire for brevity, the Government still strongly believes that certain, limited additional instructions on sex trafficking and forced labor—instructions which are regularly given in sex trafficking and forced labor trials in this Circuit—are necessary for the jury to adequately understand the law on these charges. Each of these instructions reflect established case law and are directly relevant to key issues in the case. Moreover, without such instructions, the Government has serious concerns that the jury may misunderstand the applicable law for both charges, which are extremely complex legal concepts about which jurors may have preconceived, mistaken notions.[1]

---

[1] The defense repeatedly cites *United States v. Dove*, 916 F.2d 41, 46 (2d Cir. 1990) for the proposition that the Government's additional instructions on sex trafficking are "unbalanced" and should be rejected. But, *Dove* says nothing about instructions on well-established propositions of law, which is the only type of instructions that the Government is asking to add here. Instead, the instructions in *Dove* are of an entirely different nature: one of the instructions in *Dove* involved a hypothetical given to the jury about a criminal defendant, which assumed the defendant's guilt,

The Government has listed the precedent for each of these instructions in its comments to the forced labor and sex trafficking sections of the Requests to Charge. To avoid repeating that law and precedent, here, the Government limits the below largely to providing the Government's reasons why, based on the particular facts and issues in this trial, these additional instructions are necessary.

## Sex Trafficking and Forced Labor

<u>Requested Instruction 1 – Earlier Consent Not Determinative</u>

Due to the particular facts of this case, the Government believes that it is imperative that the Court inform the jury that prior consensual sex activity is not determinative of whether a victim was sex trafficked. As this Court is well aware, the facts of this case involve instances of trafficking of Jane and Ms. Ventura that follow instances of consensual sexual activity—a topic that is likely to be discussed extensively by both parties during closing arguments. And, it is Second Circuit law that earlier periods of consensual activity do not preclude a finding of trafficking as to later activity involving a victim. *See United States v. Raniere*, 55 F.4th 354, 366 (2d Cir. 2022) (recognizing that sex trafficking encompasses acts that compel a person "to perform or to *continue* performing commercial sexual activity" (quoting 18 U.S.C. § 1591(e)(5)) (emphasis added)); *United States v. Marcus*, 628 F.3d 36, 45 (2d Cir. 2010) ("The fact that Jodi's enslavement arose from her initial participation in consensual BDSM activities does not require a contrary conclusion.").

The same is true for forced labor. The Government's forced labor theory focuses on four victims: Cassie and Jane, with regard to their participation in Freak Offs or hotel nights; and Mia and Capricorn Clark, with regard to their employment for the defendant. Similarly to sex trafficking, Cassie and Jane's prior consensual sexual activities do not preclude a finding that later non-consensual sexual acts are forced labor. *United States v. Zhong*, No. 19-4110 (2d Cir. Feb. 23, 2022) ("[A] victim's initial willingness to perform certain labor does not preclude the possibility that the victim's continued labor may become forced."); *Marcus*, 628 F.3d at 45. Nor

---

and an instruction in which the Court indicated that the jury need not attach any real significance to witness's inability to identify the defendant in court.

In addition, the Government strongly objects to the defendant's apparent claim that this Court should not instruct the jury on well-established legal principles as to thorny questions of law because they are "unbalanced" and may help the jury reach a conviction. The Government, just as the defendant, is entitled to legally accurate instructions about what its burden is and is not. And, there is no real dispute over the fact that these proposed additional instructions are routinely given in this District, are legally accurate, and would help inform the jury as to the law on key issues in the case. While the defense may want the jury to be confused on certain of these issues, with the hope that the confusion will result in mistaken assumptions in their favor, there is no authority for omitting jury instructions on that basis.

does the fact that Mia and Capricorn willingly took jobs with the defendant preclude a finding that both at some point were forced to work.

To avoid any confusion on these points and to ensure that the jury applies the correct law to the facts of this case, the Government respectfully requests that the Court include such an instruction.

Requested Instruction 2 – Payment Not Determinative:

The Government respectfully requests that the Court instruct the jury that sex trafficking/labor and payment to the victim for that conduct are not mutually exclusive.

For sex trafficking, this instruction is crucial because of the fact pattern underlying Jane's trafficking by the defendant. As Jane testified, around April 2023, the defendant and Jane entered into a multiyear "love contract" under which the defendant agreed to pay Jane's rent in the amount of $10,000 each month. (Tr. 4613-14). While that contract was in effect, and, in part, as a result of terms of that contract, the Government alleges that Jane was trafficked. Because jurors may be under the mistaken impression that someone cannot be coerced if they received compensation in return, the Government requests that the jury be instructed as to the law that payment alone does not preclude a finding of guilt as to sex trafficking. *See United States v. Rivera*, 799 F.3d 180, 186 (2d Cir. 2015). (affirming convictions despite victims' statements that the defendant paid them and they "earned more money [with the defendants] than they would at their next-best employment option.").

Because the forced labor victims also received money or gifts from the defendant, it is important to instruct the jury that payment does not preclude a finding of forced labor in order to prevent confusion. As noted above, the defendant paid Jane's $10,000 per month rent and similarly paid for Cassie's rent and other expenses. In addition, as employees, Mia and Capricorn were paid salaries by the defendant's company. The jury may not intuitively understand that this payment does not preclude a guilty finding on forced labor.

Requested Instruction 3 – Cumulative Conduct:

The Government's proposed additional charge language instructing the defendant that they may consider a defendant's cumulative conduct is particularly necessary in this case for the jury to understand what it can consider in assessing whether Ms. Ventura was coerced. Throughout trial, the Government has introduced evidence not only of threats and harms directed at Ms. Ventura over a multi-year period by the defendant but also the defendant's threats and abuse of others of which Ms. Ventura was aware. Under the law, the jury may consider all of this conduct in assessing whether a victim was coerced. *See United States v. Purcell*, 967 F.3d 159, 193 (2d Cir. 2020) (viewing defendant's cumulative conduct in holding that Government had met its burden of proving coercion); *United States v. Wilkins*, 538 F. Supp. 3d 49, 72 (D.D.C. 2021) ("When evaluating if a defendant exerted coercive force over a complainant, juries are thus directed to evaluate the totality of a defendant's conduct toward a trafficking victim, including any threats or specific instances of past violence that may have created a "culture of fear" such that the victim's conduct was rendered involuntary." (collecting cases)). However, without such an

instruction, jurors may mistakenly believe that they are confined to considering a narrower category of evidence in deciding whether the elements of sex trafficking are met.

The cumulative conduct in forced labor instruction is also important for Mia and Capricorn. Both worked for the defendant over long periods of time, and during their employment, the defendant was violent and threatened them. The cumulative effect of the violence and threats can all be considered by the jury in assessing whether either was forced to engage in labor or services for the defendant. Without an instruction of this nature, jurors may feel they are constrained to consider only whether a particular act of violence or threat resulted in forced labor.

Requested Instruction 4 – Physical Restraint:

Based on the cross examination of Jane and Mia, the Government respectfully requests that the Court briefly instruct the jury that physical restraint is not required to establish sex trafficking and forced labor.

As this Court is aware, one of the key instances of trafficking of Jane that the Government intends to discuss at length in its closing and which the Government anticipates that the defense will also address in closing involves the defendant's assault of and subsequent Freak Off involving Jane in June 2024. During cross examination about this incident, defense counsel extensively questioned Jane about times that she could have escaped on this date. (Tr. 5939-441 (asking Jane "[d]oes the back gate have a capability for you to leave the house," asking whether she has other family members in "Los Angeles")). Moreover, during today's Rule 29 motion, defense counsel again argued that Jane could not have been trafficked on this date because she could have left. Because of the defense's lengthy cross-examination on this point and expected arguments at closing, and to avoid confusion, the Government requests that a very brief instruction be added on this point that makes clear the legal import of this evidence.

Similarly, during the cross of Mia and in the Rule 29 argument today, the defense repeatedly argued that Mia could have left her job at any time and is therefore not a forced labor victim. That is incorrect under the law, *Rivera*, 799 F.3d at 184 (affirming forced labor and sex trafficking convictions even though victims once left the defendant but later returned), and the instruction is needed to correct any misimpression in the jurors' minds that Mia had an affirmative duty to leave.

**Sex Trafficking**

Requested Instruction 5 – Defendant Need Not Receive Thing of Value:

The Government respectfully requests that the Court add a single sentence to its charge on sex trafficking to clarify that the defendant need not be the person who receives the thing of value from the sex act. The Government believes that this short instruction is necessary here due to the particular relationship between the parties and the potential that jurors will be influenced by preconceived misconceptions about trafficking that do not comport with the law as it will be explained to them. *See Noble v. Weinstein*, 335 F. Supp. 3d 504, 514 (S.D.N.Y. 2018) ("Congress

noted that "trafficking in persons is not limited to the sex industry."). A short instruction on this point is needed to clarify the proper scope of this statute.

<u>Requested Instruction 6 – Commercial Sex Act Need Not Occur</u>:

The Government respectfully requests that the Court add a very short instruction reflecting the black letter law proposition that a completed commercial sex act is not required for a sex trafficking conviction. Without such a charge, a jury may incorrectly think that a commercial sex act must occur for a sex trafficking conviction. The phrase "would be used to cause" from the statute is not readily understandable for non-lawyers and may be misunderstood by the jurors as requiring that a commercial sex act result. *Second*, this law is relevant to the facts of this case. For example, as your Honor is aware, one of the specific instances of alleged sex trafficking which the Government has focused on during its case is the incident at the Intercontinental Hotel. The Government has presented evidence that the defendant kicked and then dragged Ms. Ventura in the direction of a hotel room where an escort was standing by and a Freak Off had been in progress. A juror could reasonably find that, even though a commercial sex act, did not occur immediately after the defendant attempted to drag Ms. Ventura back to the room, the elements of this count were otherwise met at that time.

<u>Requested Instruction 7 – Reckless Disregard</u>:

The Government respectfully requests a more detailed reckless disregard instruction. The Government anticipates that one of the key disputes as to Counts Two and Four will be whether the defendant had the requisite knowledge that Jane and Ms. Ventura felt forced into engaging in these commercial sex acts. While "knowledge," a term people use in their everyday lives, is likely to be readily understandable to the jury, the Government believes that additional explanation is needed to explain the term "reckless disregard" to the jury, a concept with which non-lawyers are unlikely to have ever encountered.

## II.     Conspiracy Instruction

The Government's proposal also requests certain additional language outlining the law on conspiracy. The current definition is only a few sentences long and the Government is concerned that it may leave open too many unanswered questions for jurors, which will result in a number of jury notes seeking clarification. It is imperative that the jury understands the law of conspiracy— a legal concept that is not intuitive—in order for them to correctly apply that law to the facts relevant to Count One as well as the narcotics conspiracy predicate. The Government has carefully gone through conspiracy instructions that are regularly given in this Circuit and has only proposed adding that language that is directly relevant to issues in this case. The Government is available at the conference to answer any questions the Court has about why such instructions are necessary for the jury's understanding in this case.

## III.    Effect on Interstate or Foreign Commerce

The Government respectfully requests that the Court add a short instruction in its discussion of the interstate commerce element of the racketeering conspiracy that narcotics activity

has an effect on interstate commerce as a matter of law. Indeed, the Second Circuit has found that narcotics activity satisfies the interstate commerce requirement for a racketeering enterprise. *See United States v. Miller*, 116 F.3d 641, 674 (2d Cir. 1997) ("Of special importance to the present case, we have held that because narcotics trafficking represents a type of activity that Congress reasonably found substantially affected interstate commerce, the actual effect that each drug conspiracy has on interstate commerce is constitutionally irrelevant. It follows that where, as here, the RICO enterprise's business is narcotics trafficking, that enterprise must be viewed as substantially affecting interstate commerce, even if individual predicate acts occur solely within a state."); *see also United States v. Vasquez*, 267 F.3d 79, 87–88 (2d Cir. 2001) (citing *Miller* in the VCAR context and noting "we have also held that where the racketeering enterprise's business is narcotics trafficking, that enterprise must be viewed as substantially affecting interstate commerce."); *United States v. Feliciano*, 223 F.3d 102, 119 (2d Cir. 2000) (noting in VCAR case that "the racketeering activity that satisfies the jurisdictional element in this case-narcotics trafficking-is clearly economic in nature and has been found by Congress to have a substantial effect on interstate commerce.").

Further, in *Taylor v. United States*, 579 U.S. 301 (2016), the Supreme Court found that the interstate commerce element of Hobbs Act robbery is satisfied if the Government establishes that the defendant robbed or attempted to rob a drug dealer of drugs or drug proceeds, since "as a matter of law, the market for illegal drugs is commerce over which the United States has jurisdiction." *Id.* at 309 (internal citations omitted). And while the Second Circuit has not had the opportunity to apply *Taylor* to the RICO statute, it has held that *Taylor* applies to violent crimes in aid of racketeering or VICAR charges, which contains an identical interstate commerce requirement. *See United States v. Aquart*, 912 F.3d 1, 17–18 (2d Cir. 2018) (applying *Taylor* and concluding that "the requisite interstate commerce was here satisfied by evidence that the enterprise trafficked in crack cocaine."). Further, at least two other circuits have applied *Taylor* in holding that narcotics activity satisfies the interstate commerce requirement under the RICO statute. *See United States v. Millan-Machuca*, 991 F.3d 7, 21 n.4 (1st Cir. 2021) ("Millán-Machuca also challenges another element required for both RICO and VICAR offenses: a nexus between the enterprise and interstate commerce. The market for illegal drugs constitutes commerce over which the United States had jurisdiction. *Taylor v. United States*, 136 S. Ct. 2074, 2081 (2016)."); *United States v. McClaren*, 13 F.4th 386, 402 (5th Cir. 2021) ("The government provided evidence that YMM engaged in daily drug trafficking over a period of several years. Drug-trafficking is a type of economic activity that has been recognized to substantially affect interstate commerce in the aggregate. *See Taylor v. United States*, 579 U.S. 301 (2016).").

For that reason, courts in this district have also consistently instructed the jury that narcotics activity satisfies the interstate commerce element under RICO. *See, e.g.*, *United States v. Julio Marquez-Alejandro and Luis Blondet*, 16 Cr. 387 (JMF), Dkt. No. 697 at 31 ("In addition, Congress has determined that all narcotics activity, even purely local narcotics activity, has an effect on interstate commerce. Thus, if you find that, in the course of the racketeering activities, members of the enterprise trafficked in narcotics, this element is satisfied."); *United States v. Torres*, 16 Cr. 809 (VM), Tr. 2114 ("Interstate commerce includes the movement of goods, services, money, and individuals between states. Congress has determined that all narcotics activities, even purely local narcotics activity, has a substantial effect on interstate commerce. Thus, if you find that, in the course of the racketeering activities, members of the enterprise

trafficked in narcotics, you may find this element satisfied. It is not necessary for you to find that a particular defendant knew the enterprise was engaged in interstate commerce."); *United States v. Jowneky Nunez Jr.*, 22 Cr. 293 (JPO), Tr. 3068; *United States v. Beltran*, 21 Cr 17 (KPF), Tr. 1088; *United States v. Mack*, 18 Cr. 834 (PAE), Tr. 1731-32; *United States v. Gayle*, 16 Cr. 361 (CS), Tr. 1554; *United States v. Allen*, 15 Cr. 95 (AJN), Tr. 780; *United States v. Amarizan*, 15 Cr. 445 (PAE), Tr. 2393; *United States v. Rosario*, 96 Cr. 126 (JFK), Tr. 2273; *United States v. Muyet*, S3 95 Cr. 941 (PKL), Tr. 8732; *United States v. Ronald*, 95 Cr. 942 (DAB), Tr. 3509-3510.

### IV.   Venue

The Government respectfully requests that the Court modify the instruction currently included in the discussion of venue that ministerial functions and preparatory acts occurring in the district are insufficient to establish venue. The Circuit has held that venue may be satisfied for sex trafficking where a defendant contacts a victim who is located in the District for purposes of enticing them to engage in sex trafficking. *See United States v. Walsh*, 827 F. App'x 30, 33 (2d Cir. 2020) (finding venue satisfied where "[a] minor testified that Benjamin first contacted her using Facebook Messenger in the fall of 2015, when she was living in a residential treatment center located in the Southern District of New York" for purposes of enticing the minor to engage in prostitution.). Since the conduct in *Walsh* may erroneously be construed by a juror as merely "preparatory," the Government requests that the Court modify this portion of the venue instruction to reflect the language in *United States v. Beech-Nut Nutrition Corp.*, 871 F.2d 1181, 1190 (2d Cir. 1989) by clarifying that acts that are preparatory to the offense, *and not part of the offense*, are insufficient to establish venue. *See id.* ("Whether the crime be continuing or noncontinuing, venue is not proper in a district in which the only acts performed by the defendant were preparatory to the offense *and not part of the offense*.") (emphasis added). However, the inclusion of the term "ministerial functions" may further confuse the jury and, in any event, does not appear to be relevant to the conduct in the case. Nor is the Government aware of Circuit precedent for that portion of the instruction. Accordingly, the Government requests that the reference to ministerial functions be omitted.

### V.   Unanimity

The Government objects to the unanimity instructions for the sex trafficking and Mann Act offenses. The Government has been unable to find a single first sex trafficking and Mann Act case where an unanimity instruction was given, and are concerned that the language as drafted will introduce error into the charge. Accordingly, the Government proposes the following language, which is designed to reduce the risk of error and confusion. The intent of these edits, among other things, is to properly characterize what constitutes the relevant "instance" and to make clear that unanimity is only needed for elements, not means. *See United States v. Corley*, 679 F. App'x 1, 5 (2d Cir. 2017) (affirming an "instruction to the jury that, to convict, it did not need to conclude unanimously as to how Corley violated 18 U.S.C. § 1951(a)," specifically, whether he "either (1) harbored, or (2) participated in a venture that harbored, minor victims," because harboring and participating in ventures to harbor are "alternative means of committing the offense."); *see also United States v. Cooper*, 711 F. Supp. 3d 39, 40–41 (D. Mass. 2024) (holding that the "ten different acts in which a person may engage to commit the offense of sex trafficking of a minor"—in particular, "recruits, entices, harbors, transports, provides, obtains, advertises, maintains,

patronizes, or solicits by any means"—are means and not elements); *United States v. Mickey*, 897 F.3d 1173, 1181–82 (9th Cir. 2018) ("force, fraud, or coercion" are alternative means of violating Section 1951(a), and so do not need to be found unanimously); *United States v. Paris*, No. 06 Cr. 64 (CFD) 2007 WL 3124724, at *12 (D. Conn. Oct. 24, 2007) (collecting cases holding that "fraud, force, or coercion" are means of accomplishing sex trafficking, not elements).

- **Counts Two and Four Proposed Instruction.** The Government has argued that the defendant committed sex trafficking with respect to Casandra Ventura, for Count Two, or Jane, for Count Four, over a years-long period. To find the defendant guilty of these counts, you must be unanimous that the Government proved beyond a reasonable doubt all the elements of the charge with respect to at least one specific instance of sex trafficking within that period. As to that specific instance of sex trafficking, you must agree that all the elements were met beyond a reasonable doubt, but you need not agree as to the way in which the elements are satisfied or all the details of the instance.
- **Counts Three and Five Proposed Instruction.** The Government has argued that the defendant violated federal laws regarding transportation to engage in prostitution, with respect to Casandra Ventura among others, for Count Three, and with respect to Jane among others, for Count Five, over a years-long period. To find the defendant guilty on these counts, you must be unanimous that the government proved beyond a reasonable doubt all the elements of the charge with respect to at least one specific instance of transportation to engage in prostitution within that period. As to that specific instance of transportation to engage in prostitution, you must agree that all elements were met beyond a reasonable doubt, but you need not agree as to the way in which the elements were satisfied or all the details of the instance.

To the extent that the Court has questions about certain of these proposed edits, the Government is available to answer these questions at tomorrow's conference.

Respectfully submitted,

JAY CLAYTON
United States Attorney

By: ___/s_____
Maurene Comey / Meredith Foster /
Emily A. Johnson / Christy Slavik /
Madison Reddick Smyser / Mitzi Steiner
Assistant United States Attorneys
(212) 637-2324/-2310/-2409/-1113/-2381/-2284