

Shapiro Arato Bach LLP

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

July 2, 2025

**VIA EMAIL**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

    Mr. Combs moves for release on appropriate conditions pursuant to 18 U.S.C. § 3143(a)(1) pending his sentencing proceeding. Given the jury's clear verdict acquitting Mr. Combs of the RICO conspiracy and sex trafficking counts, continued detention of Mr. Combs is inappropriate. As these proceedings have demonstrated, and as we told the Court from the outset of this case, Mr. Combs came to New York to surrender in order to defend against the government's charges because he was "committed to showing his innocence." Dkt.13 at 1. Since his arrest and detention on September 17, 2024, Mr. Combs has obeyed the Court, respected these proceedings, and demonstrated model behavior at the MDC. And today, the jury unambiguously rejected the government's allegations that Mr. Combs ran a years-long criminal enterprise or engaged in sex trafficking—the core of the government's case. Mr. Combs stands convicted of two Mann Act counts, and his sentencing exposure is substantially lower than when the government initially sought detention. The Court should release Mr. Combs on the proposed conditions.

    **A. Applicable Law**

    Under 18 U.S.C. § 3143(a)(l), a defendant who has been found guilty of an offense is entitled to release pending sentencing if the Court finds by "clear and convincing evidence" that he "is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c)." *See generally United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004); *United States v. Londono-Villa*, 898 F.2d 328 (2d Cir. 1990).

    Aside from the burden of proof resting on the defendant rather than the government, the operative standards are the same as those outlined in Section 3142(b) or (c) that the Court considered at the outset of the proceedings. *See* 18 U.S.C. § 3143(a) (defendant is released "in accordance with section 3142(b) or (c)"). Thus, when evaluating whether the defense has met its burden, the court must consider if a "condition, or combination of conditions ... will reasonably

Hon. Arun Subramanian
July 2, 2025

assure the appearance of the person as required and the safety of any other person and the community ...." 18 U.S.C. § 3142(c)(l)(B).[1]

As for flight risk, it is insufficient to rely only on "evidence of the commission of a serious crime and the fact of a potentially long sentence to support a finding of risk of flight." *United States v. Friedman*, 837 F.2d 48, 50 (2d Cir. 1988). Rather, the court must sensitively consider several factors, including: the length of prison time the defendant faces and his individual circumstances; whether familial and community ties make flight unlikely; his actual ability to flee and evade the law, evidenced by such things as whether he has a passport, familiarity with other countries or locations, and/or the financial ability to do so; and the incentive to remain provided by the anticipated harm that will befall any sureties. *See Londono-Villa*, 898 F.2d at 329. Moreover, a defendant's past history of compliance with release conditions and court attendance are highly relevant. *Cf. United States v. LaFontaine*, 210 F.3d 125, 135 n.6 (2d Cir. 2000) (defendant's disregard of prior orders supported finding that he was a flight risk); *United States v. Scali*, 738 F. App'x 32, 33 (2d Cir. 2018) (same).

Regarding the dangerousness prong, there are two components. First, the question is whether the defendant poses a safety risk to any particular individuals, i.e., "any other person." 18 U.S.C. § 3143(a)(l). Second, as to safety of "the community," § 3143(a)(l), the question is whether the defendant is likely to criminally recidivate, i.e., commit future crimes against the community as a whole. As Judge Chin wrote in *United States v. Madoff*, 586 F. Supp. 2d 240, 252, 253 (S.D.N.Y. 2009), "[t]he question appears to become one of propensity to commit further crimes."

Mr. Combs presents no risk of flight or danger, and the release conditions proposed herein are more than sufficient to assure Mr. Combs's appearance as required, and the safety of any person.

**B. Mr. Combs Presents No Risk Of Flight Or Danger**

During the initial bail proceedings, the government argued Mr. Combs was a flight risk because he was "charged with serious offenses carrying significant, in some cases mandatory terms of imprisonment." 9/17/24 Tr.20. The circumstances are now the opposite. The base offense level for a violation of the Mann Act is 14. *See* USSG 2G1.1(a)(2). Because there are two counts of conviction relating to two separate victims, Section 3D1.2 instructs that the counts are grouped separately. Because the offense level for each group is 14, an additional 2 levels are added, *see* USSG 3D1.4, resulting in a total offense level of 16. Mr. Combs is in criminal history category I. This results in an expected guidelines range of 21 to 27 months. Mr. Combs has already been incarcerated for 10 months. His sentencing exposure—which we fully respect and do not seek to minimize in any way—is in fact low, and so is any corresponding risk of flight.

---

[1] Because Mr. Combs's offenses are not enumerated under 18 U.S.C. § 3142(f)(l)(A)-(C), he is not subject to the heightened requirements of § 3143(a)(2).

Hon. Arun Subramanian
July 2, 2025

      Mr. Combs's actions prior to his arrest in 2024 further demonstrate that he is neither a flight risk nor a danger to the community. Mr. Combs knew he was under investigation and likely to be charged early in the year, but he was not arrested until September 2024. In the intervening months, he demonstrated that he is trustworthy and committed to respecting the legal process.

      When it became apparent to counsel that Mr. Combs would be formally charged, Mr. Combs did something extraordinary: He left his home in Miami and travelled *to* New York, the very location of the prosecutors and agents investigating him. Through counsel, Mr. Combs promptly told the Government that he had voluntarily come to New York, offered to tell them specifically where he was, and offered to turn himself in at the appropriate time. The government rejected that offer and elected to arrest him, but Mr. Combs's own conduct was the opposite of flight. He affirmatively and proactively sought to cooperate with the legal process.

      Even before his offer of self-surrender, Mr. Combs demonstrated a pattern of trustworthiness and cooperation. Mr. Combs's residences were searched in March 2024, and even before that, Mr. Combs and his counsel were aware that the United States Attorney was investigating him for serious crimes. Throughout this time, Mr. Combs acted forthrightly and remained committed to the process.

      First, shortly after the searches, on April 1, 2024, counsel took possession of Mr. Combs's U.S. passport. On the same day his counsel advised the prosecutors that Mr. Combs had surrendered his passport, that defense counsel would not return it to him, and that he would not leave the country. The passport remains in defense counsel's possession. Second, counsel advised the government that if Mr. Combs intended to travel domestically, counsel would so inform the AUSAs. All subsequent travel was done with the government's knowledge. Third, Mr. Combs voluntarily relocated to New York on September 5, 2024. Once Mr. Combs arrived in New York, defense counsel immediately informed the Government of Mr. Combs' whereabouts. Fourth, he paid off the mortgage at his residence at 2 West Star Island in Miami. This payment of about $18,000,000 was for one reason alone: so that he would have this $48,000,000 residence free and clear of any encumbrances so that it can be used to secure a bond.

      All this shows that Mr. Combs is not a flight risk. To the contrary, he has taken extraordinary measures demonstrating that what he always wanted was to *cooperate* with the legal process so he could establish his innocence in this Court. That is precisely what he did as to the most serious charges against him.

      Moreover, as for other factors the Court must consider, such as familial and community ties, the Court need only consider Mr. Combs's and his family's conduct over the last ten months (and prior) to assure itself the there is simply no risk Mr. Combs will seek to flee or recidivate. Throughout these proceedings, Mr. Combs's family has been seated by his side, demonstrating the same respect for these proceedings and support for Mr. Combs that they will pay going forward. They were here and are here to support him, and he is obviously committed to

Page 4

Hon. Arun Subramanian
July 2, 2025

reuniting with this family *to continue to support them*, not to flee or put them at further risk. As just a few examples of what Mr. Combs has missed, since he has been incarcerated, he has missed the biggest moments in his daughters' life. He missed his twins' high school graduation—they did not have any parent there with them, because their mother, Kim Porter, tragically passed away in 2018. He missed his twins' prom. He has a minor daughter (2.5 years old) who has been without him for 9 months. He needs and wants to be with—and remain with—his family.

At today's hearing, the government suggested that Mr. Combs could still be a "danger" in the sense that he still had the means and ability to commit prostitution crimes. With all due respect, that suggestion is unsupported. The government had, for an extended period of time, a pen register on his phone. Mr. Combs never called any potential escorts or prostitutes, nor did he make any effort to arrange meetings with escorts or prostitutes, nor was he with Jane in New York. In any event, reasonable conditions would ensure that Mr. Combs would not have the ability to arrange meetings with escorts.

Cases overwhelmingly support release under the circumstances. *See United States v. Dillon*, 21-cr-423-JPC (S.D.N.Y.) (defendant convicted of travel act violation for running prostitution business permitted to remain on bail pending sentencing); *United States v. Jacob Daskal*, 21-cr-110-NGG (E.D.N.Y.) (defendant convicted of transportation of a minor permitted to remain on bail pending sentencing); *United States v. Lin*, 23-cr-469-KMK (S.D.N.Y.) (defendant pled guilty to travel act violation predicated on promoting and facilitating prostitution business permitted to remain on bail pending sentencing and allowed to self-surrender); *United States v. Brener*, 08-cr-533 (S.D.N.Y.) (defendant who ran international prostitution ring permitted to remain on bail pending sentencing and only remanded after sentence was imposed).

And the case as it stands is simply not in the same category of other cases where detention for a Mann Act defendant was deemed appropriate, such as *United States v. Rivera Luna*, where the defendant "ha[d] connections to a smuggling network that smuggled the numerous alleged victims." No. 3:20-CR-0045, 2021 WL 2169512, at *5 (D.V.I. May 26, 2021). Other cases further support release. *See United States v. Fox*, 2022 WL 2564600, at *3 (2d Cir. July 8, 2022) (affirming pretrial release despite sex trafficking charges because the government "failed to explain why the stringent release conditions imposed by the district court would be insufficient to prevent [defendant] from evading surveillance in a manner that would permit him to engage in the kind of non-consensual, drug-induced, violent sex that forms the basis of the allegations against him undetected"); *United States v. Jeffries*, 24-cr-423, Dkt. 9 (E.D.N.Y.) (government did not request pretrial detention in 18 U.S.C. § 2422(a) and §1591 case even though conduct was "meticulously planned to take advantage of men for [defendant's] own sexual pleasure, which included forcible sex without consent" and he had "substantial wealth"); *see also United States v. DeBeir*, 16 F. Supp. 2d 592, 595 (D. Md. 1998) (ordering pretrial release for 18 U.S.C. § 2423(b) defendant).

Hon. Arun Subramanian
July 2, 2025

Page 5

### C. The Proposed Release Conditions

The defense proposes the following bail package:

a. A $1,000,000 bond;

b. Co-signed by Sean Combs, his mother, his sister, and the mother of his oldest daughter;

c. Mr. Combs's travel will be restricted to the Southern District of Florida, Central District of California and the Southern District of New York (to attend Court and meet with his counsel) as well as the Eastern District of New York or the District of New Jersey (only to the extent that his travel to and from New York involves an airport in those Districts);

d. Mr. Combs's passport surrendered to Pretrial Services;

e. Drug testing as ordered by Pretrial Services.

f. All other standard conditions of pretrial supervision.

* * * *

For the foregoing reasons the Court should release Mr. Combs on the proposed conditions.

Respectfully submitted,

/s/Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4880
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Hon. Arun Subramanian
July 2, 2025

        Anna Estevao
        HARRIS TRZASKOMA LLP
        156 West 56th St., Ste. 2004
        New York, NY 10019
        (212) 970-6465
        aestevao@harristrz.com

        Brian Steel
        THE STEEL LAW FIRM, P.C.
        1800 Peachtree Street, Ste. 300
        Atlanta, GA 30309
        (404) 605-0023

        Xavier R. Donaldson
        136 Madison Ave, 6th Floor
        New York, New York 10016
        646-772-3334
        Xdonaldson@aol.com

        Nicole Westmoreland, Esq.
        WESTMORELAND LAW, LLC
        132 Cone Street, Suite A
        Atlanta, GA 30303
        Tel: (404) 446-2620
        nw@westmorelandlawgroup.com