

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

July 2, 2025

**BY ECF**
The Honorable Arun Subramanian
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *United States v. Sean Combs,* 24 Cr. 542 (AS)

Dear Judge Subramanian:

      The Government respectfully submits this letter following the jury trial of the defendant, Sean Combs. Following a seven-week jury trial, the defendant was found guilty of two counts of interstate transportation for the purpose of prostitution in violation of 18 U.S.C. § 2421(a). The defendant has moved for bail pending sentencing under the Bail Reform Act. However, because detention is mandatory under the Bail Reform Act, 18 U.S.C. § 3143(a)(2), he is not entitled to release and his detention must be continued.[1]

**I.    Background**

      Over the course of seven weeks, the jury heard evidence of the defendant's violence, interstate transportation of numerous individuals for prostitution, drug use and distribution, and attempts to escape law enforcement detection. This conduct spanned two decades. At trial, the defendant did not walk away from these facts—indeed, the defendant embraced the fact that he was a habitual drug user who regularly engaged in domestic abuse. Rather, the defendant argued that despite his repeated violence against girlfriends, he did not engage in sex trafficking; and despite his prolific drug use, he did not engage in racketeering activity. The jury subsequently acquitted the defendant on counts related to racketeering conspiracy and sex trafficking.

      The defendant was convicted of two counts of violating the Mann Act, by transporting girlfriends and male commercial sex workers interstate for the purpose of engaging in acts of prostitution. Specifically, the defendant caused these individuals to travel interstate and internationally for the purpose of engaging in "Freak Offs" or "Hotel Nights," elaborate, multi-day sex performances involving significant drug use that the defendant directed, masturbated during, and often filmed. The evidence presented over the course of seven weeks showed that the defendant did this repeatedly, including after the defendant undisputably knew that he was under federal investigation. (*See, e.g.*, Tr. 1953; GX 1402, GX 1406).

---

[1] Notwithstanding the Government's initial statement at the time of the verdict, the applicable legal standard is set forth in 18 U.S.C. §§ 3143(a)(2), 3142(f)(1)(A).

Additionally, the facts adduced at trial show, among other things, that the defendant serially abused a former girlfriend, Casandra Ventura and that Ms. Ventura sustained injuries from many of these assaults. One such assault, that took place in March 2016, was captured on surveillance video. (*See* GX 10C-115). This video, a version of which was published by CNN in May 2024, showed the defendant throwing Ms. Ventura to the ground, kicking her repeatedly, and attempting to drag her down the hallway. This was far from the only assault the defendant perpetrated on Ms. Ventura: trial testimony from multiple witnesses recounted numerous other instances of abuse, in which the defendant slapped, hit, kicked, and dragged Ms. Ventura by the hair. (*See, e.g.*, Tr. 276, 1599, 2433-34, 2984). Despite the defendant's claim in a public social media post that he was a "changed man" following the leak of the surveillance video, the defendant continued to engage in violent conduct. In June 2024, the defendant choked, kicked, and punched another girlfriend, Jane, and then directed her to take drugs and to perform in a Freak Off. (Tr. 5193-5216). This incident occurred months after the defendant's residences were searched by federal agents, when the defendant unquestionably understood that he was under federal investigation for sex trafficking by force, fraud, and coercion. (Tr. 5193-5216). The facts at trial also showed that the defendant regularly bought and consumed drugs, including drugs that he provided to Ms. Ventura and Jane during Freak Offs or Hotel Nights. (*See, e.g.*, Tr. 484, 4688).

In addition to the June 2024 violent incident involving Jane, the defendant also engaged in other criminal conduct while he was aware that he was under federal investigation. During the March 2024 searches of the defendant's residences, law enforcement recovered narcotics and three separate firearms with defaced serial numbers.[2] (Tr. 1959, 6077-78; GX 1306). Further, evidence at trial established that the defendant engaged in transportation for purposes of prostitution with Jane as recently as August 2024—a mere month before his arrest—where Jane had sex with an escort in front of the defendant at the defendant's 2 Star Island residence. (Tr. 5245-46). Indeed, the defendant was planning to fly Jane to New York for that same purpose in September 2024— mere days before his arrest. (Tr. 5246-47). In September 2024, at the time of his arrest in Manhattan, law enforcement recovered $9000 cash and drugs—including MDMA and ketamine— from the defendant's hotel room. (Tr. 1390; GX 1305).

## II.   Guidelines Calculation

The Guidelines calculation in this case is complicated and the Government expects that it will litigated by the parties. For the purposes of this detention hearing, the Government sets forth the below preliminary calculation—subject to revision—which the Government believes is the minimum Guidelines calculation applicable to this case.

<u>Counts Three and Five</u>

1. The Guideline applicable to Count Three is U.S.S.G. § 2G1.1. Pursuant to U.S.S.G. § 2G1.1, the base offense level is 14.

---

[2] It is a violation of federal law to receive firearms that have obliterated, removed, or altered serial numbers. *See* 18 U.S.C. § 922(k).

2. The Guideline applicable to Count Five is U.S.S.G. § 2G1.1.  Pursuant to U.S.S.G. § 2G1.1, the base offense level is 14.

Grouping Analysis

3. Pursuant to U.S.S.G. § 2G1.1(d), because the offense involved more than one victim, Chapter Three, Part D is applied as if the promoting of a commercial sex act or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction.  Because there are more than six victims and each victim as if they had been contained separate count of convictions, there are more than five Groups.  Each Group has an offense level of 14.

Even setting aside Ms. Ventura and Jane, the evidence at trial showed that the defendant transported seven escorts—Jules Theodore, Clayton Howard, Julian Sapp, Kabrale Williams, Paul Arthur, Michael Ejiawoko, a/k/a "Reggie," and Rico Bozant—for the purposes of promoting commercial sex acts.  (*See* GX 1402 and 1406).  Accordingly, under Section U.S.S.G. § 2G1.1(d), there are more than six victims.  *See* U.S.S.G. § 2G1.1(d), app. note 1 ("victim" means "a person transported, persuaded, induced, enticed, or coerced to engage in, or travel for the purpose of engaging in, a commercial sex act or prohibited sexual conduct, whether or not the person consented to the commercial sex act or prohibited sexual conduct").

4. In calculating the combined offense level pursuant to U.S.S.G. § 3D1.4, because the five Groups are equally serious, the offense level is 19.

Chapter Three Enhancements

5. Pursuant to U.S.S.G. § 3B1.1, because the defendant was a manager or supervisor and the criminal activity was otherwise extensive, three levels are added.

The evidence at trial showed that the defendant was a manager or supervisor of one or more other participants, namely, Ms. Ventura and Jane.  *See* U.S.S.G. § 3B1.1 app. note 2.  Further, the criminal activity was "otherwise extensive."  When considering whether criminal activity was "otherwise extensive," application note 3 instructs the Court to consider "all persons involved during the course of the entire offense."  U.S.S.G. § 3B1.1 app. note 3.  As an example of criminal activity that could be otherwise extensive, the application describes "a fraud that involved only three participants but used the unknowing services of many outsiders[.]"  Here, the evidence at trial demonstrated that the defendant used the services of many of his employees, including his chief of staff Kristina Khorram, his travel advisor, his security staff, and his assistants, in order to carry out the offenses of conviction.  Even if all of those employees were "unknowing" participants, their years-long assistance in facilitating the criminal activity satisfies the criteria for this enhancement.

6. Pursuant to U.S.S.G. § 3C1.1, because the defendant willfully obstructed or impeded, or attempted to obstruct or impede, the administration of justice with respect to the investigation and prosecution of Counts Three and Five, and the obstructive conduct related to those counts and relevant conduct, two levels are added.

The defendant attempted to obstruct justice with regard to Counts Three and Five in multiple respects, including his attempts to pay off security guards following his assault of Ms. Ventura at the Intercontinental Hotel in Los Angeles, California, and in his calls to Jane following the settlement of Ms. Ventura's lawsuit.

With regard to the Intercontinental Hotel assault, U.S.S.G. § 3C1.1 application note 1 provides that "[o]bstructive conduct that occurred prior to the start of the investigation of the instant offense of conviction may be covered by this guideline if the conduct was purposefully calculated, and likely, to thwart the investigation or prosecution of the offense of conviction." The evidence at trial showed that in the minutes following his assault of Ms. Ventura, the defendant offered Israel Florez a stack of cash and attempted to shut Mr. Florez out of the hotel room where Jules Theodore, an escort whom the defendant had previously transported for the purpose of engaging in prostitution, was, hiding his offense. In addition, as the testimony of Eddy Garcia revealed, in the following days, the defendant took further steps to pay off security staff to secure a video of his crimes, preventing further law enforcement investigation.

With regard to the defendant's recorded calls to Jane in November 2024, the defendant attempted to feed Jane a false narrative regarding her participation in hotel nights to silence Jane and prevent the law enforcement investigation into the conduct, which encompasses the conduct underlying Counts Three and Five, that gave rise to this case. *See* U.S.S.G. § 3C1.1 app. note 1.

7. Accordingly, the total offense level for Counts Three and Five is 24.

Criminal History Category

Based upon this Office's current understanding (including through representations by the defense), the defendant has zero criminal history points. In accordance with the above, the defendant's Criminal History Category is I.[3]

Sentencing Range

Accordingly, based only on the preliminary calculations set forth above, the defendant's Guidelines range is at least 51 to 63 months' imprisonment.

The Government notes, however, that the Guidelines applicable at sentencing may be higher than this preliminary calculation. The Government has not had adequate time to carefully consider all potentially applicable Guidelines provisions. For example, as the Court is aware, evidence presented at trial in support of the defendant's convictions on Counts Three and Five overlaps substantially with evidence related to the sex trafficking counts. Accordingly, much of this conduct is not included in the Guidelines definition of "acquitted conduct" and may be relevant

---

[3] The defendant does not qualify for an adjustment for certain zero-point offenders under U.S.S.G. § 4C1.1 because the defendant used violence in connection with the offense, U.S.S.G. § 4C1.1(a)(3), the instant offense of conviction is a sex offense, U.S.S.G. § 4C1.1(a)(5), and the defendant should receive an adjustment under U.S.S.G. § 3B1.1 as outlined above, U.S.S.G. § 4C1.1(a)(10).

to the Guidelines calculation. *See* U.S.S.G. § 1B1.3(c), app. note 10. For instance, the Government expects to seek the application of the four-point enhancement pursuant to U.S.S.G. § 2G1.1(b)(1)(B)(i) for offenses involving fraud or coercion. *See* U.S.S.G. § 2G1.1 app. note 2 ("For purposes of subsection (b)(1), 'coercion' includes any form of conduct that negates the voluntariness of the victim.").[4] The Government requires additional time to consider any other potential enhancements or cross-references that may be applicable.

### III. Applicable Law

The Bail Reform Act governs whether a recently convicted defendant is eligible for release pending sentencing. *United States v. Lea*, 360 F.3d 401, 403 (2d Cir. 2004). Under the Bail Reform Act, detention is mandatory for defendants convicted of certain specified "crimes of violence." 18 U.S.C. §§ 3143(a)(2), 3142(f)(1)(A); *see United States v. Perez*, No. 23-7090, 2023 WL 7276651, at *1 (2d Cir. Nov. 3, 2023) ("A person convicted of a crime of violence is generally to be detained pending sentencing."). "By the explicit terms of the Bail Reform Act, a violation of the Mann Act, 18 U.S.C. § 2421, is considered a crime of violence." *United States v. Sulewski*, No. CRIM. 3:06CR64(CFD), 2006 WL 1549987, at *1 (D. Conn. May 31, 2006). Specifically, under 18 U.S.C. § 3156(a)(4)(C), a "crime of violence" includes any felony under chapter 117 and a violation of the Mann Act, 18 U.S.C. §§ 2421(a), falls under Chapter 117.

Specifically, where a defendant has been convicted of a crime of violence and is awaiting sentencing, as the defendant is here, Section 3143(a)(2) provides that the court "*shall order*" that the defendant "be detained unless":

(A) (i) the judicial officer finds there is a substantial likelihood that a motion for acquittal or new trial will be granted; or (ii) an attorney for the Government has recommended that no sentence of imprisonment be imposed on the person; <u>and</u>

(B) the judicial officer finds by clear and convincing evidence that the person is not likely to flee or pose a danger to any other person or the community.

18 U.S.C. § 3143(a)(2) (emphasis added). The defendant must fulfill both prongs of the standard set out in subsection (B)—*i.e.*, the defendant must demonstrate "by clear and convincing evidence that he is: (1) not likely to flee; and (2) not a danger to the safety of any other person or the community." *United States v. Scali*, No. 7:16-CR-466-(NSR), 2018 WL 3410015, at *2 (S.D.N.Y. July 12, 2018), *aff'd*, 738 F. App'x 32 (2d Cir. 2018). Clear and convincing evidence is that which "produce[s] in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable [the factfinder] to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *Garcia v. Griffin*, No. 16CV2584ALCRWL, 2021 WL 1577679, at *2 (S.D.N.Y. Apr. 22, 2021); *see United States v. McGill*, No. 24-MJ-609-MJP, 2024 WL 4647613, at *4 (W.D.N.Y. Nov. 1, 2024). Absent government recommendation that no sentence of imprisonment be imposed, these criteria are nearly impossible to meet.

---

[4] This enhancement does not involve all of the elements of sex trafficking under 18 U.S.C. § 1591 and employs a separate definition of "coercion."

The Bail Reform Act permits a limited safety valve from mandatory detention. Under 18 U.S.C. § 3145(c), a defendant subject to detention pursuant to Section 3143(a)(2) "may be ordered released, under appropriate conditions," if two requirements are met. *See Lea*, 360 F.3d at 403. First, the district court must find "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released." 18 U.S.C. § 3143(a)(1); *see id.* § 3145(c). Second, it must be "clearly shown that there are exceptional reasons why such person's detention would not be appropriate." *Id.* § 3145(c). "Exceptional circumstances exist where there is 'a unique combination of circumstances giving rise to situations that are out of the ordinary.'" *Lea*, 360 F.3d at 403; *United States v. Lippold,* 175 F.Supp.2d 537, 540 (S.D.N.Y. 2001) (collecting cases and noting that "circumstances that are 'purely personal' do not typically rise to the level of 'exceptional' warranting release").

### IV.     Analysis

The defendant must be detained pursuant to the Bail Reform Act. As detailed above, the offenses of conviction constitute crimes of violence and mandate detention following the defendant's conviction. *See* 18 U.S.C. §§ 3142(f)(1)(A), 3143(a)(2). Here, the defendant has been convicted of *two* such crimes. Because of the near impossibility of meeting the "stringent" criteria set out in Section 3143(a)(2)(A)-(B), the only conceivable basis for release here is the existence of "exceptional circumstances." *See Lea*, 360 F.3d at 403. However, as the Second Circuit has recognized, that exception is very narrow exception. Indeed, the Circuit has reversed a district court's decision to release a defendant on bail pending sentencing on this basis. *See id.* (reversing the district court's decision to release defendant on bail pending sentencing finding that even "[a]ssuming, arguendo, that the court reasonably concluded that Lea posed no risk of flight or danger to anyone, and thus satisfied the requirements of § 3143(a)(1), it plainly erred in finding that Lea's case presented 'exceptional circumstances,'" since "[e]xceptional circumstances exist where there is a unique combination of circumstances giving rise to situations that are out of the ordinary" and "[t]here is nothing 'exceptional' about going to school, being employed, or being a first-time offender, either separately or in combination.") (internal citations omitted)). The defendant utterly fails to show such exceptional circumstances here.

As detention is mandatory following a conviction of a Mann Act offense, the Government has been unable to locate a case in which a defendant was released from custody following such a conviction. Indeed, the Government has only identified several cases where the defendant was detained *pre-trial* and remained detained through sentencing. *See United States v. Hernandez-Velazquez*, No. 19-CR-306 (WFK), 2024 WL 4879809, at *1 (E.D.N.Y. Nov. 21, 2024) (defendant who was not a legal US resident was detained following arrest and continued through sentencing where she plead guilty to a single Mann Act count, in violation of 18 U.S.C. § 2421(a)); *United States v. Jean Claude Roy*, No. 13 Cr. 249 (PWG) (D. Md.) (defendant detained pre-trial over defense objection, who had been charged with sex trafficking, Section 924(c) counts, Mann Act counts, was acquitted at trial of sex trafficking, attempted sex trafficking and, both Section 924(c) counts, but convicted of both Mann Act counts, conspiracy to commit sex trafficking, and witness tampering, although defense counsel did not ask for him to be released). Here, there is yet a heightened burden that the defendant must carry now that he has been convicted of two felony Mann Act offense because of his mandatory detention.

Even if detention was not mandatory here, which it is, the defendant cannot meet his burden to show by clear and convincing evidence that he is not likely to flee or pose a danger to any other person or the community.[5]

*First*, given the significant potential penalties, the defendant continues to be a flight risk. As described in Section II above, at a minimum, the defendant faces a Guidelines range of 51 to 63 months' imprisonment and the Guidelines range found at sentencing may be higher. The possibility of a substantial sentence such as this is a significant factor in assessing the risk of flight. *See United States v. Scali*, 738 F. App'x 32, 33 (2d Cir. 2018) (finding the district court did not err in finding that the defendant had "failed to meet his heavy burden to rebut, by clear and convincing evidence, the presumption in favor of detention pending sentencing," since the defendant's "Guidelines range of 87-108 months' imprisonment was significant enough to provide an incentive to flee."); *United States v. Fishbein*, No. 21 Cr. 296 (AS), 2024 WL 3876305, at *1 (S.D.N.Y. Aug. 20, 2024) ("the [defendant] has now been sentenced to a significant term of imprisonment, a fact that courts in this Circuit have frequently concluded may weigh in favor of finding that a defendant is more likely to flee than before learning of their sentencing fate.") (internal citations and alterations omitted). Further, while the defendant has offered to have multiple sureties from his family, evidence a trial established that the defendant repeatedly sought to conceal his criminal conduct from those close to him. *See United States v. Londono-Villa*, 898 F.2d 328, 330 (2d Cir. 1990) (reversing district court's order of release where the district court relied "on the demeanor of the defendant, his family and his witnesses," since it "fail[ed] to see how such subjective assessments can, on their own, satisfy the heightened burden of proof placed on the defendant to establish that he is not likely to flee by clear and convincing evidence, particularly given the not unreasonable presumption that the defendant concealed his criminal activities from his family in the past.").

*Second*, the defendant cannot meet his burden to demonstrate by clear and convincing evidence that he is not a danger to the community. The overwhelming evidence established at trial—which the defendant did not dispute—shows that the defendant has engaged in a yearslong pattern of abuse and violence, including as recently as in June 2024, approximately three months before his arrest in this case. Despite the knowledge that he was under *federal investigation*, the defendant nevertheless brutally assaulted Jane, leaving injuries that were visible for days after the assault. Additionally, when the defendant traveled to New York City, where, according to defense counsel, the defendant was waiting to be arrested in this case, he was in possession of drugs and the materials necessary for a Freak Off. The defendant's conduct after he understood that he was under federal investigation underscores that he continues to be a danger to others and is either unable or unwilling to follow the law.[6]

---

[5] The Government respectfully submits that, given the jury verdicts on Counts Three and Five, the likelihood that a motion for acquittal will be granted is quite low; additionally, as discussed above, the Government will not recommend that no sentence of imprisonment be imposed. *See* 18 U.S.C. § 3143(a)(2)(A).

[6] At least one trial witness, who was a victim of the defendant's violence, vehemently opposes the defendant's release pending sentencing due to the "serious and immediate threat to victims, witnesses, and the broader community." (*See* July 2, 2025 Ltr. from Deonte Nash, attached at Ex.

**V.    Conclusion**

      For the reasons set forth above, the defendant's continued detention is required under the Bail Reform Act.  Accordingly, the defendant's application for bail pending sentencing should be denied.

                        Respectfully submitted,

                        JAY CLAYTON
                        United States Attorney

                  By:    /s
                        Maurene Comey / Meredith Foster /
                        Emily A. Johnson / Christy Slavik /
                        Madison Reddick Smyser / Mitzi Steiner
                        Assistant United States Attorneys
                        (212) 637-2324/-2310/-2409/-1113/-2381/-2284

cc:    Counsel of Record (by ECF)

---

A).  We further understand that counsel for other witnesses and victims may want to be heard on this issue.