UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA, | 24-cr-542 (AS) |
| v. | |
| SEAN COMBS, | |
| Defendant. | |

**DEFENDANT SEAN COMBS'S MEMORANDUM OF LAW
IN OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE
TO PRECLUDE DR. ELIE AOUN'S EXPERT TESTIMONY**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

ARGUMENT .......................................................................................................................... 2

   I.   The Court Should Not Preclude Dr. Aoun's Opinions Based On Delayed Notice ............ 2

   II.   IDRA Does Not Bar The Testimony ...................................................................... 6

   III.   The Evidence Is Admissible ............................................................................. 10

       A.   Rule 704(b) Does Not Preclude The Opinions ......................................... 10

       B.   Rule 703 Does Not Preclude The Opinions ............................................. 12

       C.   Rule 702 Is Satisfied ............................................................................ 13

       D.   Rule 403 Does Not Bar The Evidence ..................................................... 15

   IV.   A Court-Ordered Examination Of Mr. Combs Is Not Warranted .................................. 15

CONCLUSION ..................................................................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                                   **Page(s)**

*Bermudez v. City of New York*,
  2019 WL 136633 (E.D.N.Y. Jan. 8, 2019) ............................................................ 14

*Deutsch v. Novartis Pharms. Corp.*,
  768 F. Supp. 2d 420 (E.D.N.Y. 2011) .................................................................. 14

*Diaz v. United States*,
  602 U.S. 526 (2024) .......................................................................... 1, 10, 11

*Gussack Realty Co. v. Xerox Corp.*,
  224 F.3d 85 (2d Cir. 2000) ................................................................................ 13

*Parks v. Blanchette*,
  144 F. Supp. 3d 282 (D. Conn. 2015) ................................................................. 13

*People v. Cortez*,
  960 P.2d 537 (Cal. 1998) .................................................................................... 7

*People v. Denson*,
  42 N.E.3d 676 (N.Y. 2015) .................................................................................. 7

*People v. Fontenot*,
  447 P.3d 252 (Cal. 2019) ................................................................................... 7

*People v. Ford*,
  193 Cal. Rptr. 684 (Cal. Ct. App. 1983) .............................................................. 7

People v. Reyes,
  95 N.E.3d 562 (N.Y. 2018) .................................................................................. 7

*People v. Royal*,
  326 Cal. Rptr. 3d 540 (Cal. Ct. App. 2024) ........................................................ 7

*People v. Saunders*,
  648 N.E.2d 1331 (N.Y. 1995) .............................................................................. 7

*Ronson v. Comm'r of Corr. of State of N.Y.*,
  604 F.2d 176 (2d Cir. 1979) ................................................................................ 5

*Schlesinger v. United States*,
  898 F. Supp. 2d 489 (E.D.N.Y. 2012) ................................................................ 13

*United States v. Cameron*,
  907 F.2d 1051 (11th Cir. 1990) ........................................................................... 4

*United States v. Cervone,*
   907 F.2d 332 (2d Cir. 1990)................................................................................... 4

*United States v. Crowley,*
   236 F.3d 104 (2d Cir. 2000)................................................................................... 6

*United States v. Davis,*
   93 F.3d 1286 (6th Cir. 1996) ............................................................................... 16

*United States v. DiDomenico,*
   985 F.2d 1159 (2d Cir. 1993)............................................................................... 12

*United States v. Duggan,*
   743 F.2d 59 (2d Cir. 1984).................................................................................... 4

*United States v. Dupre,*
   339 F. Supp. 2d 534 (S.D.N.Y. 2004)............................................................. 6, 10

*United States v. Dupre,*
   462 F.3d 131 (2d Cir. 2006)................................................................................... 7

*United States v. Kim,*
   303 F. Supp. 2d 150 (D. Conn. 2004) .................................................................. 4

*United States v. Martinez,*
   2013 WL 11318858 (E.D. Wash. Nov. 20, 2013) .................................................. 3

*United States v. Odeh,*
   815 F.3d 968 (6th Cir. 2016) ................................................................................ 6

*United States v. Ray,*
   2022 WL 101911 (S.D.N.Y. Jan. 11, 2022) ....................................................... 12

*United States v. Ray,*
   583 F. Supp. 3d 518 (S.D.N.Y. 2022)................................................................... 9

*United States v. Rivera-Donate,*
   682 F.3d 120 (1st Cir. 2012)................................................................................. 7

*United States v. Robinson,*
   2024 WL 1513500 (D. Colo. Apr. 8, 2024)........................................................... 7

*United States v. Sabhnani,*
   539 F. Supp. 2d 617 (E.D.N.Y. 2008) .................................................................. 7

*United States v. Scotto,*
   641 F.2d 47 (2d Cir. 1980).................................................................................... 7

*United States v. Sewell*,
    252 F.3d 647 (2d Cir. 2001) ................................................................ 6

*United States v. Torniero*,
    735 F.2d 725 (2d Cir. 1984) .............................................................. 15

*United States v. Vega-Penarete*,
    137 F.R.D. 233 (E.D.N.C. 1991) ................................................... 3, 5

*United States v. Veliz*,
    800 F.3d 63 (2d Cir. 2015) ................................................................ 7

*United States v. Williams*,
    2015 WL 9480012 (D. Nev. Dec. 29, 2015) .................................... 3

*Yin Wang v Yum! Brands, Inc.*,
    2008 WL 428669 (E.D.N.Y. Feb. 14, 2008) ................................... 13

**Rules**

Fed. R. Crim. P. 12.2 .................................................................... passim

Fed. R. Evid. 403 ....................................................................... 2, 15

Fed. R. Evid. 702 ..................................................................... 13, 14

Fed. R. Evid. 703 ..................................................................... 12, 13

Fed. R. Evid. 704 ................................................................ 1, 11, 12

Fed. R. Evid. 803 ..................................................................... 12, 13

**Statutes**

Cal. Penal Code § 21 ....................................................................... 7

Cal. Penal Code § 137 ..................................................................... 8

18 U.S.C. § 1512 ............................................................................. 7

18 U.S.C. § 1591 ............................................................................. 8

18 U.S.C. § 2421 ............................................................................. 7

**Other Authorities**

1A Wright & Miller, *Fed. Prac. & Proc. Crim.* § 208 (5th ed.) .................... 5

2 LaFave & Scott, *Subst. Crim. L.* § 9.5(a) (3d ed.) ............................. 6

## INTRODUCTION

Unfortunately, Sean Combs has long struggled with addictions to alcohol, recreational drugs, and various prescription medications. As multiple witnesses have stated and are expected to testify, and as the government's exhibits corroborate, these substances had profound effects on Mr. Combs's personality and behavior. Thus, approximately six weeks before opening statements, on a date agreed to by the parties, the defense disclosed its intent to offer expert testimony by Dr. Elie G. Aoun. Dr. Aoun, a highly qualified psychiatrist, will testify regarding the effects these substances can have on a person's perceptions and behavior. This evidence is critical to Mr. Combs's defense, to counter the government's evidence and arguments as to his intent to commit the charged crimes. The government's motion to preclude Dr. Aoun's testimony should be denied.

*First*, the government's claim of delayed notice does not warrant the drastic remedy of exclusion. Even assuming Dr. Aoun's testimony is covered by Federal Rule of Criminal Procedure 12.2(b), he provided the notice as soon as practicable, and the government has not suffered any prejudice. The defense obtained many of Mr. Combs's medical records just a few weeks before he disclosed the proffered testimony, and six weeks before opening statements— providing the government with ample time to retain its own expert and disclose any rebuttal opinion. *Second*, the testimony is not barred by the Insanity Defense Reform Act, which allows evidence that negates intent, an essential element of all the charged crimes. *Third*, the testimony is admissible under the Federal Rules of Evidence. The proffered opinions do not go to ultimate issues and thus are not barred by Rule 704(b) under *Diaz v. United States*, 602 U.S. 526 (2024)—a recent Supreme Court decision squarely on point conspicuously unaddressed in the government's motion. And Rule 703 expressly permits opinions based on underlying data that is not itself admissible. Dr. Aoun's opinions are based on medical records that are themselves

admissible as business records and under other well-established hearsay exceptions, and this type of testimony is routinely admitted even if, as here, based solely upon a review of the records. Nor is there any basis to exclude the testimony under Rule 403.

## ARGUMENT

### I.    The Court Should Not Preclude Dr. Aoun's Opinions Based On Delayed Notice

Even if the government is correct that Dr. Aoun's noticed opinions constitute "mental condition" evidence implicating Rule 12.2(b)'s notice requirement, the defense could not have provided the notice any earlier, and the government is in no way prejudiced by the timing of the notice.  Rule 12.2(b) provides that "[t]he court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial-preparation time, or make other appropriate orders."  Exclusion of the evidence is discretionary, not mandatory.  *See* Rule 12.2(d)(1) ("The court *may* exclude" the evidence) (emphasis added).  Exclusion is not an appropriate remedy here and would unfairly deprive Mr. Combs of important defense evidence.

The defense had good cause for first noticing Dr. Aoun's opinions on March 31, 2025. As counsel explained at the March 14, 2025 conference, the defense had then "recently came into possession of a great deal of medical records" and thought it "prudent to have … an expert … explain the records and what they mean … to [defense counsel]."  3/14/25 Tr.26.  Although the defense had received a portion of Mr. Combs's medical records in October 2024, it was not until March 13, 2025 and March 20, 2025 that the defense received voluminous additional productions totaling roughly one thousand pages.  The defense continued to receive medical records even after the March 31 disclosure.  And the import of all these records was not immediately clear.  Rather, it was only after the government produced initial 3500 materials on March 21 that the defense realized the critical nature of the evidence. ████████████

████████████████████████████████████████████████████████████████████████



Until reviewing the medical records and the 3500, the "defense could not determine whether to seek admission of the evidence," and the notice was filed "within a reasonable period of time after defense counsel received the necessary evaluations" from Dr. Aoun. *United States v. Williams*, 2015 WL 9480012, at *2 (D. Nev. Dec. 29, 2015). In such circumstances, courts find good cause to permit late notice. *See id.*; *United States v. Vega-Penarete*, 137 F.R.D. 233, 234-35 (E.D.N.C. 1991) (excusing late notice because, among other reasons, expert was unable to see defendant until seven weeks after deadline); *United States v. Martinez*, 2013 WL 11318858, at *2 (E.D. Wash. Nov. 20, 2013) (denying government request to exclude evidence

as untimely noticed under Rule 12.2).  Indeed, the Eleventh Circuit has held it was an abuse of discretion to find notice provided five weeks before trial untimely.  *United States v. Cameron*, 907 F.2d 1051, 1059 (11th Cir. 1990).

Precluding the noticed evidence is not appropriate here, because the defense could not have noticed the expert any earlier.  Even if the notice was technically late, it was provided a mere 42 days after the deadline for the defense's pretrial motions, in ample time for the government to move to exclude the expert under *Daubert*.  The notice was provided six weeks before opening statements and nearly three months prior to the start of the defense case (the same amount of time the defense has to prepare for the government's experts).  Indeed, the disclosure was made after the government *agreed* to further extend the defense's expert disclosure deadline knowing that this disclosure would relate to Mr. Combs's pharmacological history.  That short delay is not comparable to the delays courts have found justified the severe remedy of exclusion. For example, it is far shorter than "the six month delay" in *United States v. Cervone*, 907 F.2d 332, 346 (2d Cir. 1990), and nothing like the notice provided in *United States v. Kim* "three days after jury selection, on the eve of trial," 303 F. Supp. 2d 150, 159 (D. Conn. 2004).  Nor is the notice here "designed primarily to obtain an adjournment."  Mot.10 (citing *United States v. Duggan*, 743 F.2d 59 (2d Cir. 1984)).

Most significantly, the short delay caused the government no prejudice.  The government has known about Mr. Combs's struggles with drug addiction—and the defense's focus on this issue—since the inception of this prosecution.  As early as the bail proceedings, the defense raised Mr. Combs's drug problems.  During those proceedings, counsel argued that the government's interpretation of the evidence was flawed in that it failed to consider that "Mr. Combs … ha[d] a problem with drug addiction and he ha[d] a problem with anger," which

necessitated "rehab … for a period of time."  9/18/24 Tr.48.  The government has since heard the same from dozens of witnesses throughout its ongoing investigation.  ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████  Where "[t]he government has had early and sufficient notice" of the relevant evidence, as it has had here, any late notice is appropriately excused.  *Vega-Penarete*, 137 F.R.D. at 234-35 (observing that "[e]vidence of this defense surfaced as early as the detention hearing").[1]

Indeed, "the purpose of 12.2(b)"—"to avoid trial delays by giving the government adequate pretrial time to prepare its response to the defense case"—is not frustrated here.  1A Wright & Miller, *Fed. Prac. & Proc. Crim.* § 208 (5th ed.).  With notice provided on March 31, openings scheduled for May 12, and the anticipated length of the government's direct case, the government has had and will still have plenty of time to prepare any rebuttal evidence necessary to confront Dr. Aoun's opinions, which the jury will not hear until the later stages of the trial. And even if the government was somehow prejudiced by the March 31 notice, "any prejudice … d[oes] not justify the total exclusion" of the noticed evidence.  *Ronson v. Comm'r of Corr. of State of N.Y.*, 604 F.2d 176, 179 (2d Cir. 1979) (affirming grant of writ of habeas corpus and finding Sixth Amendment violation in state court's exclusion of defense of insanity).[2]

Given the "good cause" for the March 31 notice and the lack of any resulting prejudice, the Court should reject the government's argument that it should preclude the testimony on procedural grounds.

---

[1] Rule 12.2(b) does not even prescribe the contents of any required notice, requiring notice only of the "intention" to introduce expert evidence relating to a mental condition.  The contents of any required notice are governed by Rule 16, and the government does not challenge the sufficiency of the notice under that rule.

[2] The government argues that there might not be "sufficient time" to seek an examination of the defendant.  But for the reasons discussed *infra*, any such request is inappropriate and should be denied.

## II.    IDRA Does Not Bar The Testimony

It is hornbook law that evidence of voluntary intoxication is admissible to negate intent. The Insanity Defense Reform Act did not alter that law.  As the government admits, the IDRA does not bar evidence that is relevant to negate the *mens rea* elements of the charged offenses. *See, e.g.*, *United States v. Dupre*, 339 F. Supp. 2d 534, 537 (S.D.N.Y. 2004) (IDRA "does not foreclose the use of mental disease evidence to negate *mens rea*"), *aff'd*, 462 F.3d 131 (2d Cir. 2006).  Thus, the statute does not "prevent defendants from using indicators of mental disease" or other mental conditions "as *evidence* to address the question of whether the Government has met its burden of proving intent." *Id.* at 538.  Dr. Aoun's opinions will do just that by negating the government's *mens rea* arguments and evidence in support of those arguments.

As LaFave's treatise observes, "[i]ntoxication is a defense to crime if it negatives a required element of the crime."  2 LaFave & Scott, *Subst. Crim. L.* § 9.5(a) (3d ed.).  Thus, a crime that requires intent, knowledge, or willfulness "may be negatived by intoxication which negatives the required" *mens rea*. *Id.*  The crime need not be a specific intent crime.  "[I]f intoxication does in fact negative an intention which is a required element of the crime (whether it be called specific intent or general intent), the crime has not been committed." *Id.*; *see also United States v. Odeh*, 815 F.3d 968, 976-79 (6th Cir. 2016) (vacating and remanding because district court erroneously excluded PTSD-related evidence and holding that crime need not require specific intent for such evidence to be relevant); *but see United States v. Sewell*, 252 F.3d 647, 650-51 (2d Cir. 2001).  Indeed, the Second Circuit has affirmed the grant of a new trial based on the failure to instruct the jury on voluntary intoxication as to crimes such as attempted sexual abuse and attempted aggravated sexual abuse.  *See United States v. Crowley*, 236 F.3d 104, 111 (2d Cir. 2000).

The government contends that there must be a "direct link" between the noticed evidence and the charges.  Mot.4, 11, 12.  While some district courts have adopted that language to raise the bar for the admission of mental condition evidence, the Second Circuit has never endorsed it.  Rather, it has held that evidence is admissible "for the purpose of rebutting the prosecution's proof" of *mens rea* and "for the purpose of negating the intent element of a crime."  *United States v. Dupre*, 462 F.3d 131, 137, 138 n.8 (2d Cir. 2006).

In any case, here there is a "direct link" between the noticed evidence and the charges.  The government repeatedly alleges activity and offenses that require intent, knowledge, and willfulness.  It alleges multiple substantive crimes and a pattern of racketeering activity comprised of other crimes, including crimes with *mens rea* requirements of intent (both general and specific), knowledge, and/or willfulness.[3]  And it repeatedly relies on Combs's purportedly intentionally violent conduct as evidence of the charged offenses.  It alleges Combs "assaulted women by, among other things, striking, punching, dragging, throwing objects at, and kicking them."  S3¶4.  It alleges he "control[led]" victims through this "physical violence."  S3¶12(e).

The noticed evidence will directly rebut the government's claims.  It will contextualize for the jury the weakness of the government's arguments concerning particular events and

---

[3] The Second Circuit has held that the required *mens rea* in a RICO conspiracy is the *mens rea* required by the object predicate racketeering acts.  *See United States v. Scotto*, 641 F.2d 47, 55-56 (2d Cir. 1980).  Most of the predicate acts alleged here require intent—either specific or general.  *See People v. Fontenot*, 447 P.3d 252, 260 (Cal. 2019) (kidnapping is a general intent crime); *People v. Denson*, 42 N.E.3d 676, 684 (N.Y. 2015) (kidnapping requires intent); *People v. Royal*, 326 Cal. Rptr. 3d 540, 545 (Cal. Ct. App. 2024) ("Arson is a general intent crime."); *People v. Ford*, 193 Cal. Rptr. 684, 686 (Cal. Ct. App. 1983) ("The various forms of [California] bribery require specific intent."); *United States v. Veliz*, 800 F.3d 63, 73 (2d Cir. 2015) (18 U.S.C. § 1512(b)(3) "requires a specific intent to interfere with the communication of information"); *United States v. Sabhnani*, 539 F. Supp. 2d 617, 629 (E.D.N.Y. 2008) ("[F]orced labor . . . [is a] specific intent crime[].")); *United States v. Rivera-Donate*, 682 F.3d 120, 133 (1st Cir. 2012) (possession with intent to distribute requires "the specific intent to distribute"); *United States v. Robinson*, 2024 WL 1513500, at *5 (D. Colo. Apr. 8, 2024) (18 U.S.C. § 2421 "has a mens rea of specific intent").  Moreover, attempt and conspiracy under California and New York law require specific intent.  *See* Cal. Penal Code § 21a (attempt); *People v. Cortez*, 960 P.2d 537, 542 (Cal. 1998) ("[C]onspiracy is a specific intent crime."); *People v. Saunders*, 648 N.E.2d 1331, 1333 (N.Y. 1995) ("An attempt is … an act done with the specific intent to commit some other crime."); *People v. Reyes*, 95 N.E.3d 562, 562 (N.Y. 2018) (listing as element of conspiracy offense "the specific intent that a crime be performed").

undermine the government's allegations that Combs acted with the requisite *mens rea*. As one example, the government's case will highlight the significance of the March 2016 incident at the Intercontinental Hotel, which the government has repeatedly portrayed as the centerpiece of its case. The government argues that this incident is clear evidence of intentional violence used in connection with sex trafficking as well as obstruction in the form of bribery with respect to the hotel security guards. *See, e.g.*, 9/18/24 Tr.10 (describing incident as "one example of violence being used in connection with a freak off," and further evidence of "when the cover-ups started" as "the defendant tried to bribe a hotel security officer with a handful of cash").

To appropriately weigh this and other evidence, the jury is entitled to hear evidence about how drugs might have affected Mr. Combs's actions and state of mind at the time. If the violence depicted in the video was not intentional, but the likely result of intoxication, drugs/hormones, or a blackout episode, then that would directly negate the government's contention that the violence is clear evidence that Combs "harbor[ed]" Casandra Ventura "knowing … that means of force" or "threats of force" would "be used to cause [her] to engage in a commercial sex act." 18 U.S.C. § 1591(a). It would also negate the contention that Combs participated in a "scheme, plan, or pattern intended to cause [Casandra Ventura] to believe that failure to perform an act would result in serious harm." 18 U.S.C. § 1591(e)(2) (defining "coercion"). And in addition to confronting the government's sex trafficking arguments, the opinions would further tend to negate any argument from the government that, immediately following this incident, Mr. Combs acted with the specific intent to bribe the hotel security guard in violation of California Penal Code 137(a) when offering him cash. Dr. Aoun's opinions thus directly confront the government's evidence and the elements it must prove and are not comparable to more general mental condition evidence such as the "belief and cognitive style"

evidence the court excluded in *United States v. Ray*, 583 F. Supp. 3d 518, 536 (S.D.N.Y. 2022) (cited at Mot.11).

In addition, the opinions will help the jury properly understand other evidence. The government's witnesses have described to the prosecutors instances in which Combs would experience blackout episodes and other episodes of mania or psychosis. Combs is permitted to elicit that evidence and then explain to the jury what it means. *See* Aoun Disclosure ¶11 (discussing blackouts), ¶14 (discussing mania and psychosis). He is further permitted to explain and argue how Dr. Aoun's opinions should inform the jurors' assessment of whether the government has proved the required *mens rea*, and whether certain episodes cited by the government are truly probative of the required *mens rea*. The government's argument that Dr. Aoun's opinions do not directly bear on the case because he is unable to render any specific diagnosis of Mr. Combs at the time of the actual events, *see* Mot.11-12, is a red herring. He is permitted to review the relevant contemporaneous medical records and opine on the effects of certain drugs contained in the records, including the drugs the evidence will show Mr. Combs consumed during the relevant events. Indeed, Dr. Aoun's opinions will be corroborated and supported by multiple types of evidence at trial, including the alleged victims' own communications with Combs directly bearing on his *mens rea* during the relevant events. ███

██ ███████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████████████████████████████████████

████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████

In sum, the noticed evidence is proper, and it is not "so general that it could not explain the effect [the] mental condition could have on" Combs's "ability to form [the] criminal intent" required to prove the alleged offenses. *Dupre*, 339 F. Supp. 2d at 541. To the contrary, it will be critical evidence bearing on Mr. Combs's lack of intent, knowledge, and willfulness—and the IDRA is no bar to admission.

## III. The Evidence Is Admissible

The government's various attempts to challenge the admissibility of Dr. Aoun's opinions misunderstand and misapply the Rules of Evidence and the controlling caselaw interpreting the rules.

### A. Rule 704(b) Does Not Preclude The Opinions

The government claims Rule 704(b) bars Dr. Aoun's testimony. But it misconstrues the rule—and does not even address the Supreme Court's recent decision in *Diaz v. United States*, 602 U.S. 526 (2024). *Diaz* held Rule 704(b) "[b]y its terms … covers a narrow set of opinions." *Id*. at 534. As the Court explained, the rule "proscribes only expert opinions in a criminal case that are about a particular person ('the defendant') and a particular ultimate issue (whether the defendant has 'a mental state or condition' that is 'an element of the crime charged or of a defense')." *Id*. This is not a close call under *Diaz*. Dr. Aoun's opinions do not purport to address either issue specifically. To the contrary, his opinions concern (i) the expected and unexpected effects of various drugs, and (ii) what a person "may" experience under certain circumstances, including during blackouts and other intoxication episodes, and (iii) what the "predictabl[e] result" of certain drug combinations might be. *See generally* Aoun Disclosure.

10

Expert testimony about the expected or predictable result of certain drug use and what a person "may" experience is admissible opinion evidence under Rule 704(b). This is because expert testimony that "most people" in a group have a particular mental state is not an opinion about "the defendant" himself and thus does not violate Rule 704(b). *Diaz*, 602 U.S. at 528. In other words, testimony that "a group of persons"—such as individuals consuming the types, quantities, and combinations of drugs Mr. Combs consumed—"*may or may not* have a particular mental state," is admissible. *Id.* at 536. Indeed, the government admits the opinions do not comment on Mr. Combs's mental state specifically. *See* Mot.14 ("Dr. Aoun's opinions relate to a theoretical individual, and not the defendant.")

As Justice Jackson explained in her concurrence, the Court's rule in *Diaz* applies to both prosecutors and defendants: Rule 704(b) is "party agnostic," meaning testimony analogous to the testimony offered in Diaz's case could be offered to negate mens rea, such as when a defendant's expert testifies that most persons in a class to which the jury may determine the defendant belongs lack the requisite mens rea. *See Diaz*, 602 U.S. at 538-40 (Jackson, J., concurring). Particularly on point here, Justice Jackson emphasized "the significance of mental-state evidence to both parties in a criminal trial," and highlighted that the Court's opinion "allows psychiatrists who testify as experts to…tell the jury that when people with schizophrenia as severe as a defendant's commit acts of violence, it is generally because they do not appreciate the wrongfulness of their conduct." *Id.* at 539-40 (cleaned up). And, "given the biases, stereotypes, and uneven knowledge that many people have about mental health conditions, such expert evidence could help jurors better understand a defendant's condition and thereby call into question a *mens rea* that might otherwise be too easily assumed." *Id*. at 540. The same is true here, and Rule 704(b) in no way precludes Dr. Aoun's testimony.

In sum, as *Diaz* teaches, all Rule 704(b) prevents is testimony from experts "expressly stating the final conclusion or inference as to a defendant's actual mental state at the time of a crime." *United States v. DiDomenico*, 985 F.2d 1159, 1164 (2d Cir. 1993). Dr. Aoun's opinions do not expressly state any such final conclusion, and Rule 704(b) thus does not preclude the opinions.

### B.  Rule 703 Does Not Preclude The Opinions

The government's application of Rule 703 is even further off base. It argues "[a]lthough '[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of,' even if otherwise inadmissible, this is only true where the 'probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.'" Mot.14 (quoting Fed. R. Evid. 703). That is not what the rule says. The rule is clear that an expert may base an opinion on facts he has been "made aware of" rather than personally observed, and that such facts "need not be admissible for the opinion to be admitted." Fed. R. Evid. 703. The final sentence of the rule—the part the government quotes—does not apply to the opinions themselves, but only to the "facts or data" underlying the opinions and whether "the proponent of the opinion may disclose [the facts or data] to the jury." Fed. R. Evid. 703; *see also United States v. Ray*, 2022 WL 101911, at *15 n.10 (S.D.N.Y. Jan. 11, 2022). The final sentence clarifies, in other words, that if an expert relies on inadmissible evidence in forming his opinion (which is allowed), that underlying evidence is not *itself* automatically admissible—but the opinion testimony still is. The government utterly misconstrues the rule.

Regardless, Dr. Aoun's opinions are based on *admissible* evidence, so the final sentence of Rule 703 doesn't apply here at all. The medical records on which he relies are admissible as statements made for the purpose of medical diagnosis, *see* Fed. R. Evid. 803(4), or as business records, *see* Fed. R. Evid. 803(6). *See also*, *e.g.*, *Ray*, 2022 WL 101911, at *15 n.10 ("[T]here is

12

a hearsay exception for statements made for medical diagnosis or treatment."); *Parks v. Blanchette*, 144 F. Supp. 3d 282, 292 & n.2 (D. Conn. 2015) (medical records "would be admissible" under 803(6) or 803(4)).  In sum, Rule 703 provides no basis for exclusion.

### C.  Rule 702 Is Satisfied

The government's argument that the opinions are not based on reliable methods or sufficient facts or data is not serious.[4]  It argues that Dr. Aoun's opinions are based on a review of records instead of an examination of Combs, but that is no basis to find the opinions unreliable.  To the contrary, Rule 703 states that "[a]n expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed."  Thus, "experts are permitted to rely on the reports of others, and there is no requirement that an expert conduct his own tests." *Schlesinger v. United States*, 898 F. Supp. 2d 489, 505 (E.D.N.Y. 2012).  And it is well settled that "an expert may rely on data that she did not personally collect." *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 94–95 (2d Cir. 2000).  Indeed, as the government has argued, "subject matter testimony by blind experts has repeatedly been admitted within this Circuit."  Dkt. 270 at 10.

These principles of admissibility apply with even greater force to medical opinions. Basing an opinion on a review of medical records in conjunction with an expert's education and experience is an acceptable and indeed routine practice under *Daubert* and Rule 702.  *See, e.g.*, *Yin Wang v Yum! Brands, Inc.*, 2008 WL 428669, at *3 (E.D.N.Y. Feb. 14, 2008) (Bianco, J.) (holding that "the fact that the underlying medical records were not certified and may not have been independently admissible ... [did] not preclude [expert] from giving his expert opinion based, in part, on review of such records"); *Deutsch v. Novartis Pharms. Corp.*, 768 F. Supp. 2d

---

[4] The government does not challenge Dr. Aoun's qualifications.

420, 483 (E.D.N.Y. 2011) ("[E]valuation of the patient's medical records, like performance of a physical examination, is a reliable method of concluding that a patient is ill even in the absence of a physical examination."). To the extent the government cites particular portions of medical records that might conflict with Dr. Aoun's opinions, *see* Mot.16-17, the government's criticism is one of "weight," the remedy for which is to either "cross-examine" the expert, *Bermudez v. City of New York*, 2019 WL 136633, at \*14 (E.D.N.Y. Jan. 8, 2019), or offer "rebuttal" opinions with competing interpretations of the records, *Novartis Pharms. Corp.*, 768 F. Supp. 2d at 484.

Rule 702 also does not require Dr. Aoun to establish with certainty the "amount of recreational drugs the defendant consumed," as the government contends. Mot.16. Nor is the government correct in arguing that there is "no evidence that the defendant was 'severely intoxicated' at any particular moment in time." *Id.* There are volumes of such evidence, and the government knows it.

In any case, Dr. Aoun can offer an opinion as to what a blackout episode is generally even in the absence of any medical record stating that Mr. Combs experienced such an episode, because the opinion sought to be offered is not a diagnosis of Mr. Combs specifically. *See* Aoun Disclosure ¶11 ("Blackout episodes are phenomena whereby an individual who is severely intoxicated with a substance (typically alcohol and/or benzodiazepines) will behave without conscious control, fail to form memories of their behaviors during the episode, yet, present as if they are sober."). The government's argument does nothing to undermine the reliability of that opinion, which is based not on the medical records themselves but upon Dr. Aoun's experience, education, and training. Again, the argument goes to weight and is a subject for cross examination; it is not a basis to preclude Dr. Aoun's opinions.

### D.  Rule 403 Does Not Bar The Evidence

Finally, the probative value of the evidence is not substantially outweighed by any danger of unfair prejudice or confusion.  The government argues the jury will not benefit from the testimony because the opinions are not specific enough and do not speak to the defendant's condition "at all times."  Mot.13.  That risk of confusion is particularly low, if present at all.  Again, the opinions will help the jury understand the import of the myriad evidence of drug use and intoxication that both sides will no doubt present.  And it will equip the jury with tools to understand whether the government's evidence and argument bearing on Mr. Combs's *mens rea* is at all persuasive.[5]  To the extent the government wants to argue that the opinions don't touch upon Mr. Combs's *mens rea* at all relevant times—which the jury will no doubt understand—the government is permitted to cross examine Dr. Aoun on the subject, if it truly finds the point persuasive.

Rule 403 rarely counsels in favor of excluding expert opinions, and such "testimony should not be excluded solely as a result of an unfounded belief that a jury will not be able to separate the wheat from the chaff."  *United States v. Torniero*, 735 F.2d 725, 734 (2d Cir. 1984).  The Court should reject the government's arguments to the contrary.

## IV.    A Court-Ordered Examination Of Mr. Combs Is Not Warranted

The government does not request a mental examination of Mr. Combs at this time, but to the extent the motion suggests such an examination would be appropriate, the government is mistaken.  Rule 12.2(c)(1)(B) states that the Court "may, upon the government's motion, order the defendant to be examined under procedures ordered by the court."  In contrast to notice of an

---

[5] As the Aoun Disclosure makes clear, the defense does not intend to illicit opinions about Combs's "multiple knee surgeries" or "chronic pain," which the government contends would "pretextually present hearsay testimony to elicit sympathy."  Mot.14.  That is simply not the purpose of the proffered opinions.  Nor will Dr. Aoun comment on the medical necessity of the treatments and prescriptions.  Mr. Combs withdraws that portion of the disclosure, thus mooting the government's objection to these opinions, *see* Mot.13 n.2.

insanity defense under Rule 12.2(a)—for which the court "must, upon the government's motion, order the defendant to be examined," the type of evidence noticed here does not require and should not result in any court-ordered mental examination.  "While the authority of a trial court to order a mental examination of a defendant who has registered an intent to raise the insanity defense seems clear, the authority under the rule to order an examination of a defendant who intends only to present expert testimony on his or her mental condition on the issue of guilt is not as clear."  Fed. R. Crim. P. 12.2, advisory committee notes to 2002 Amendments.

The question whether an examination is appropriate "requires a case by case analysis to determine whether a psychiatric or psychological examination of the defendant will be necessary for the government fairly to rebut the defendant's expert evidence."  *United States v. Davis*, 93 F.3d 1286, 1293 (6th Cir. 1996).  As the government repeatedly notes, Dr. Aoun did not conduct any mental or physical examination of the defendant.  He reviewed the underlying medical records just as a government expert can to rebut his opinions.  The government therefore needs no examination here.  *See id.* (distinguishing between "testimony [that] generally describe[s] the effects of a particular condition, relying on other evidence to establish the defendant suffered from that condition," and testimony that "particularly concern[s] the defendant, based on examination or observation").  Rather, the government "can prepare to meet [the] expert defense evidence in a variety of ways, including the retention of a government expert to … assist the government in cross-examination, and review of evidence relied upon by the defense expert."  *Id.* at 1294.

## CONCLUSION

For the foregoing reasons, the Court should deny the government's motion in full.

Date:  April 30, 2025                                    Respectfully Submitted,

                                                         /s/ Alexandra A.E. Shapiro
                                                         Alexandra A.E. Shapiro
                                                         Jason A. Driscoll
                                                         SHAPIRO ARATO BACH LLP
                                                         1140 Ave of the Americas, 17th Fl.
                                                         New York, NY 10036
                                                         (212) 257-4881
                                                         ashapiro@shapiroarato.com
                                                         jdriscoll@shapiroarato.com

                                                         Marc Agnifilo
                                                         Teny Geragos
                                                         AGNIFILO INTRATER
                                                         445 Park Ave., 7th Fl.
                                                         New York, NY 10022
                                                         646-205-4350
                                                         marc@agilawgroup.com
                                                         teny@agilawgroup.com

                                                         Anna Estevao
                                                         SHER TREMONTE LLP
                                                         90 Broad St., 23rd Fl.
                                                         New York, NY 10004
                                                         (212) 202-2600
                                                         aestevao@shertremonte.com

                                                         Brian Steel
                                                         THE STEEL LAW FIRM, P.C.
                                                         1800 Peachtree Street, Ste. 300
                                                         Atlanta, GA 30309
                                                         (404) 605-0023