UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
| --- | --- |
| UNITED STATES OF AMERICA,<br><br>    v.<br><br>SEAN COMBS,<br>               Defendant. | 24-cr-542 (AS) |

**DEFENDANT SEAN COMBS'S MEMORANDUM OF LAW IN OPPOSITION
TO THE GOVERNMENT'S MOTION IN LIMINE TO
PRECLUDE CONOR McCOURT'S EXPERT TESTIMONY**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES................................................................................................ ii

INTRODUCTION ............................................................................................................ 1

ARGUMENT.................................................................................................................... 1

    I.    The Government Was Not Prejudiced By Any Late Notice ............................................... 1

    II.   McCourt's Testimony Is Neither Confusing Nor Unfairly Prejudicial .............................. 3

    III.  McCourt's Testimony Is Admissible Under Rule 702 ....................................................... 5

CONCLUSION................................................................................................................... 7

# TABLE OF AUTHORITIES

**Cases**                                                                                    **Page(s)**

*Diaz v. United States*,
   602 U.S. 526 (2024)................................................................................................ 6

*Huddleston v. United States*,
   485 U.S. 681 (1988)................................................................................................ 4

*United States v. Felder*,
   993 F.3d 57 (2d Cir. 2001) ...................................................................................... 5

*United States v. Lee*,
   834 F.3d 145 (2d Cir. 2016) .................................................................................... 2

*United States v. Sovie*,
   122 F.3d 122 (2d Cir. 1997) .................................................................................... 5

*United States v. Ulbricht*,
   858 F.3d 71 (2d Cir. 2017) ................................................................................... 2, 3

**Rules**

Fed. R. Evid. 104 ........................................................................................................ 4

Fed. R. Evid. 403 ........................................................................................................ 3

Fed. R. Evid. 702 ........................................................................................................ 5

Fed. R. Evid. 704 ..................................................................................................... 6, 7

**Other Authorities**

1 Mueller & Kirkpatrick, *Federal Evidence* § 1.35 (4th ed. & 2023 update)................................ 4

1 Mueller & Kirkpatrick, *Federal Evidence* § 7.20 (4th ed. & 2023 update)................................ 6

**INTRODUCTION**

The government offers no legitimate basis to exclude the testimony of Conor McCourt, the defense's video expert. It has known about many of McCourt's opinions since as early as November 2024, and has already retained its own video expert to rebut the additional opinions disclosed nearly one month ago. And the government does not dispute McCourt's qualifications. Nor does the government even dispute McCourt's conclusions that the Intercontinental videos have been altered in some respects. The government's argument that the notice was late and that the testimony is "confusing" border on frivolous. McCourt's testimony should be admitted.

**ARGUMENT**

**I.    The Government Was Not Prejudiced By Any Late Notice**

The government's primary argument is that McCourt's testimony must be excluded on "procedural grounds" based on untimely notice. Dkt. 277 at 9. But the government obscures the context that led to the late notice—and the government was not in any way prejudiced.

This Court's deadline for expert disclosures was March 14. Dkt. 125. The defense did not notice McCourt as an expert at that time—but the government was well aware of the defense's position regarding the videos and its intent to call him as a witness. Thus, on March 17, the government emailed the defense to inquire as to its plans regarding McCourt. The defense responded by letter on March 18. The letter stated, inter alia: "you are already fully familiar with how Mr. McCourt analyzes video footage, including the tools and methodology he follows, based on the approximately twenty-minute presentation we provided to you and the Court in November 2024 in connection with our bail application." Dkt. 277, Ex.1 at 1. The defense indicated that it would likely call McCourt as a witness—but as a fact witness rather than an expert.

The defense and the government then conferred regarding McCourt's testimony. The government insisted that McCourt's opinions were based on technical expertise—and thus that he could only testify as an expert, not a fact witness. Thus, on April 3, the defense sent a letter noticing McCourt as a potential expert: "this letter provides disclosure that the defense may offer testimony by Conor McCourt that the government views as expert testimony." Dkt. 277, Ex.2. The defense also provided a nine-page affidavit from McCourt summarizing his proposed testimony. *Id.* Ex.3.

In sum, the government was well aware of the basic substance of McCourt's testimony before it received the notice, and in any event, at worst, the notice was provided long before trial was set to commence, and only about two weeks late.[1] And the lateness was a result of a dispute between the defense and the government about whether McCourt was a fact witness or an expert witness. *See United States v. Lee*, 834 F.3d 145, 159 (2d Cir. 2016) (in considering the remedy for an arguable Rule 16 violation, a court must consider "the reasons why disclosure was not made").

Regardless, even assuming a deadline was violated, there was no prejudice. A court has broad discretion in fashioning a remedy for a violation of Rule 16, but the extreme sanction of exclusion requires consideration of "the extent of the prejudice, if any, to the opposing party, [and] the feasibility of rectifying that prejudice by a continuance." *United States v. Ulbricht*, 858 F.3d 71, 115 (2d Cir. 2017) (quoting *Lee*, 834 F.3d at 159). The government relies on *Ulbricht*, but the supposed prejudice in this case is not remotely comparable. In *Ulbricht*, the defense did not provide notice of its proffered experts until "[l]ong after trial began" and only shortly before

---

[1] Compare this to the government's recent enterprise letter, for example, which was filed over two months after the Court's February 1 deadline.

the government rested its case-in-chief. *Id*. at 91. Because "the government was due to rest the following day," the defense disclosure gave the government "no time to prepare to respond to the experts." *Id*. at 115-16. Nor was a mid-trial continuance remotely feasible at that point.

Here, by contrast, the defense provided McCourt's expert notice six weeks before opening statements, and the government was aware that the defense planned to call him as a witness weeks before that. Moreover, as the government acknowledges, Dkt. 277 at 1-2 & n.1, it has been aware of the nature of McCourt's testimony and his conclusions since at least November 2024, when his opinions were presented as part of the bail proceedings, *see* Dkt. 81. It has had months to analyze his opinions and the bases for his conclusions.

Finally, even if the government had needed more time to "review the notice" and "have a rebuttal expert analyze the video footage," Dkt. 277 at 10, it has already retained a rebuttal expert who has analyzed the footage and McCourt's opinions and provided his own opinions. *See* Dkt. 270, Ex.2 Piazza Affidavit. Thus, there has been no resulting prejudice based on the timing of the notice. And regardless, given the overall context of this case and the government's prior knowledge of McCourt's testimony, there is simply no basis for exclusion.

## II.    McCourt's Testimony Is Neither Confusing Nor Unfairly Prejudicial

The government next argues, in conclusory fashion, that McCourt's testimony should be excluded under Rule 403. Dkt. 277 at 10-12. This argument makes little sense. The government first notes that the defense "could only call McCourt to testify about the videos if the Court admitted them into evidence." *Id*. at 11. That is obviously and trivially true, but the point is now moot, as this Court has indicated it will admit the videos. 4/25/25 Tr.6-7.

The government next appears to suggest that once the videos are admitted, the defense can no longer challenge their authenticity to the jury. That is false: The government

3

misapprehends the nature of authentication and questions of conditional relevance under Rule 104(b).  Authenticity is a question of conditional relevance.  "Authentication problems are generally allocated to the jury to resolve, for they raise issues of conditional relevancy that bring Rule 104(b) into play."  1 Mueller & Kirkpatrick, *Federal Evidence* § 1.35 (4th ed. & 2023 update).  In determining a question of conditional relevance, a trial court "simply examines all the evidence in the case and decides whether the jury could reasonably find the conditional fact … by a preponderance of the evidence."  *Huddleston v. United States*, 485 U.S. 681, 690 (1988).  In ruling on admissibility, the court does not itself determine whether the evidence is authentic— that is the jury's job.  Obviously, then, at trial, *both sides* can present evidence bearing on authenticity.  The government can present evidence that the videos fairly and accurately represent the evidence, but the defense can present evidence that the videos *do no*t fairly and accurately represent the events.  That is precisely the purpose of McCourt's testimony.

The government's argument that the probative value of McCourt's testimony is low is belied by its own argument that the videos themselves are "highly probative."  Dkt. 277 at 14. If the videos are highly probative, then testimony bearing on their authenticity is also highly probative.  And the government's argument that McCourt's testimony is unnecessary because the defense "can still cross-examine Victim-1 and Individual-3 about the events depicted on the videos," is belied by its own argument that McCourt's testimony is "highly technical."  Dkt. 277 at 11.  Victim-1 and Individual-3 may have personal knowledge of the events depicted in the videos, but they have no understanding of the technical aspects of the videos—and how those videos were altered.  Cross-examination of those fact witnesses is no substitute for McCourt's testimony about how the videos do or do not fairly and accurately represent the underlying events.

4

### III.    McCourt's Testimony Is Admissible Under Rule 702

The government's scattershot arguments under Rule 702 fare no better.

First, the government argues that opinions about possible video tampering cannot be based on "unsupported speculation." Dkt. 277 at 13. McCourt's opinions are not based on unsupported speculation. They are, rather, based on his analysis of the videos, their metadata, their time stamps, and his use of the AXON Investigate Pro software. The government cites *United States v. Sovie*, 122 F.3d 122 (2d Cir. 1997), apparently in support of its argument for exclusion, but in *Sovie*, "a defense expert was allowed to testify to the possible significance" of artifacts in the recording indicating possible tampering. *Id*. at 127. The Court noted that questions of authenticity are ultimately a matter for the jury to determine, and thus that evidence of tampering "went to the weight of the evidence." *Id*. That is precisely what the defense seeks here—an opportunity to show that the videos deserve less weight because they do not fairly and accurately represent the events.[2] The jury will ultimately decide how much weight to give McCourt's testimony and the videos themselves.

Second, the government argues that McCourt's testimony is not helpful under Rule 702(a) because they are not "outside the ken of the average person." Dkt. 277 at 14 (quoting *United States v. Felder*, 993 F.3d 57, 72 (2d Cir. 2001)). Once again, that argument is belied by the government's own argument that McCourt's testimony deals with "highly technical issues such as frame rate, visual distortions, aspect ratios, and the transcoding process." *Id*. at 11. Lay jurors do not know anything about how transcoding works, for example. McCourt's testimony

---

[2] To be clear, moreover, the gist of McCourt's testimony is not that this is necessarily a case of "intentional tampering." Dkt. 277 at 13. Rather, the gist of McCourt's testimony is that the videos have been altered and distorted in part through conversion and transcoding. Whether that distortion was "intentional" or not is largely immaterial.

5

will thus help them understand that the videos may be a less than fully accurate rendering of the underlying events.

Third, the government argues that McCourt should not be permitted to testify about "what other viewers may *perceive* when watching the videos." Dkt. 277 at 16. It is not clear what the government means by this. Again, the gist of McCourt's testimony is that the videos have several divergent technical issues, and as a result, they do not accurately depict the underlying events.

Fourth and finally, the government argues that McCourt's testimony contains legal conclusions or opinions on ultimate issues. Dkt. 277 at 16. That argument borders on bizarre. Even aside from the fact that it ignores the plain text of Rule 704(a), the government does not appear to understand what an "ultimate issue" is. An ultimate issue is an issue "that the jury must resolve to decide the case"—that is, "the exact question which the jury are required to decide." *Diaz v. United States*, 602 U.S. 526, 531 (2024) (quoting Wigmore). In a murder case, for example, the ultimate issue might be "who fired the gun that killed the victim." *Id*. at 532; *see also* 3 *Federal Evidence*, *supra*, § 7.20 (stating that opinions such as "defendant is guilty" or "plaintiff should win" could be inappropriate opinions on ultimate issues). Put simply, an ultimate issue is an issue that is dispositive of some element of the offense, and an expert may offer inappropriate testimony when he opines directly that some element of an offense is or is not established.

The authenticity of the videos is not an "ultimate issue." The jury could determine that the videos are authentic but still acquit, and conversely, it could determine that the videos are inauthentic but still convict. The videos themselves are not dispositive of any ultimate issue, nor is their authenticity. In short, McCourt's testimony will contain no legal definitions, nor will he

opine that Combs is innocent or guilty, so his testimony does not even implicate (much less violate) Rule 704.

## **CONCLUSION**

For the foregoing reasons, the Court should deny the government's motion to exclude McCourt's testimony.

Date:  April 30, 2025

Respectfully Submitted,

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Ave of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4881
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
646-205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
SHER TREMONTE LLP
90 Broad St., 23rd Fl.
New York, NY 10004
(212) 202-2600
aestevao@shertremonte.com

Brian Steel
THE STEEL LAW FIRM, P.C.
1800 Peachtree Street, Ste. 300
Atlanta, GA 30309
(404) 605-0023

7