

Shapiro Arato Bach LLP

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

June 12, 2025

**VIA ECF**
Hon. Arun Subramanian
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

  Re: *United States v. Combs*, 24-cr-542 (AS)

Dear Judge Subramanian:

  The government's motion to remove Juror No. 6, who has diligently and attentively sat for nearly five weeks of testimony, is legally and factually baseless and smacks of a discriminatory motive. There is no valid reason to remove this juror. The purported discrepancies between his voir dire responses ███████████████████ ███████████████████████████████████ They do not remotely approach the intentional dishonesty that would justify removal for cause under the controlling authorities. The Supreme Court and the Second Circuit have rejected arguments of juror misconduct based on misstatements far more significant than those alleged here. The government's "lack of candor" claim is an unfair attack on the juror and a pretext to try to remove one of only two black males from the jury, so that he can be replaced by the first alternate, who is white. There does not appear to be any other explanation for the government's inflammatory and completely unsubstantiated suggestion that the juror may have lied to get on the jury. Removing the juror at this stage would prejudice Mr. Combs and violate his constitutional rights to a fair jury trial and to equal protection of the law.

> **A.** **There Is No Basis To Find Any "Lack Of Candor" Or To Question The Juror's Residency Qualification**

  There is not a shred of evidence that Juror No. 6 was deliberately trying to mislead anyone during voir dire. Like the other jurors, he had only a few moments to answer multiple personal questions. Indeed, the Court mentioned the need to move things along when addressing the juror whose turn to speak came immediately before the microphone was handed to Juror No. 6. *See* Tr.271 ("Why don't we hand the microphone down so we can do things quickly.").[1] Thus, his answers, like those of the other qualified jurors, took up only a single paragraph of the transcript. Tr.272-73. There is no basis to conclude that any errors in his remarks were deliberate, as opposed to inadvertent. His imprecision likely resulted from the fact that he was trying to quickly provide the requested information. The government's inflammatory suggestion

---

[1] Unless otherwise noted, citations omit internal quotation marks, footnotes, and previous alterations in the original source.

Page 2

Hon. Arun Subramanian
June 12, 2025

in its letter (at 7) that he was lying to secure a seat on the jury is unsupported by any evidence. Indeed, if he was angling to get a seat on the jury, it is unlikely that he would have disclosed his familiarity with the case from media reports as he did.  Tr.147.

More specifically, there is no basis to conclude from his quick voir dire remarks that he was attempting to conceal his residence—or that he doesn't qualify under the JSSA. ████████



████████ And even if he were not a New York resident, Mr. Combs would waive any objection on that basis.[3] ████████ In fact, during the voir dire questioning, the juror disclosed that his fiancée "is an assistant practice manager for University of Reproductive Associates," Tr.272, an organization with multiple locations in New Jersey and none in New York City.[4]

████████ there is no evidence this was purposeful dishonesty. ████████ At worst, any misstatement on voir dire was a "mistaken, though honest, response to a question." *McDonough Power Equip., Inc. v. Greenwood*, 464 U.S. 548, 555 (1984).

The Supreme Court, the Second Circuit, and district courts in this Circuit have repeatedly declined to grant relief for a juror's alleged lack of candor based on misstatements about more substantive matters that were clearer and more suggestive of intentional deceit.  For example, in *McDonough*, a personal injury case, a juror did not reveal his son's "broken leg sustained as a result of an exploding tire" in response to a voir dire question about whether jurors or members of their immediate family had sustained a severe injury from an accident. *Id.* at 550, 555.  The Court held this would not have supplied a basis to excuse the juror for cause. *Id.* at 555-56.

The Second Circuit also has upheld convictions where the erroneous answers on voir dire affected issues far more substantive than those raised by the government here.  For example,

---

[2] ████████

[3] Notably, residency itself has no bearing on impartiality.  "It is manifest that a juror's ineligibility, premised on lack of residency, does not, in itself, impair the impartial performance of the juror's duties." *United States v. Gonzalez*, 949 F.3d 30, 36–37 (1st Cir. 2020) (district court did not abuse discretion in finding that juror "had not intentionally furnished false information about his residency," as "the record reflect[ed] genuine confusion, not outright dishonesty, concerning [the juror's] residency") (citing *United States v. Haywood*, 452 F.2d 1330, 1332 (D.C. Cir. 1971)).

[4] https://www.uranj.com.

Hon. Arun Subramanian
June 12, 2025

in *United States v. Langford*, the court recognized that the juror at issue "intentionally failed to give truthful information" at voir dire about her criminal history but nonetheless refused to order a new trial because she had done so solely to avoid embarrassment rather than "any desire to sit on the jury." 990 F.2d 65, 69-70 (2d Cir. 1993). Likewise, in *United States v. Escalara*, a juror who reportedly favored conviction had concealed during voir dire in a drug case that her brother was a drug addict. The Second Circuit nevertheless affirmed the trial court's decision to not even grant an evidentiary hearing because there was no evidence the juror "intentionally failed to disclose the brother's addiction, much less that the reason for the non-disclosure was to avoid excusal . . . or to conceal some bias that could have prejudiced the trial." 536 F. App'x 27, 35 (2d Cir. 2013); *see also United States v. Adeniyi*, 277 F. App'x 22, 24-25 (2d Cir. 2008) (no juror misconduct based on failure to disclose personal experience of fraud in wire fraud case because juror "did not fail to answer honestly a material question on *voir dire* . . . [and] nothing in the juror's disclosure, or in his responses to further questioning . . . provided the basis for a challenge for cause").

And in *United States v. Sattar*, the juror allegedly withheld that he had spent time in jail, as well as his belief that "if someone is in front of a judge on charges, it is because they had done something wrong," suggesting he had lied when stating he would accept the presumption of innocence, require the prosecution to bear the burden of proof, and otherwise serve as a fair and impartial juror. But there was no evidence that the juror made a deliberate misstatement about his jail time because "[a]ny omission would be more reasonably . . . construed as a mistake." 395 F. Supp. 2d 66, 73-74 (S.D.N.Y. 2005) (Koeltl, J.), *aff'd sub nom United States v. Stewart*, 590 F.3d 93 (2d Cir. 2009). Relief was also unwarranted based on the juror's alleged belief in a presumption of guilt because his comments were "not directed to any defendants or issues in this case, and thus [did] not specifically contradict the juror's statements made under oath." 395 F. Supp. 2d at 74. Likewise, in *United States v. Maxwell*, a sex trafficking case involving abuse of minors, Judge Nathan found after a post-trial hearing that although a juror had withheld that he was a victim of sexual abuse on a jury questionnaire, his answer was "incorrect" but "not deliberately inaccurate." 2022 WL 986298, at *8 (S.D.N.Y. Apr. 1, 2022). That decision was affirmed by the Second Circuit. *United States v. Maxwell*, 118 F.4th 256, 266-67 (2d Cir. 2024).

In all these cases, there was a far clearer basis for concluding that the juror had exhibited a lack of candor, but the court nonetheless refused to find juror misconduct. ██████████████
████████████████████████████████████████████████████████████████████
████████████████████████████████████. "Not all jurors . . . walk a perfectly straight line," "[f]ew voir dires are impeccable," and on this record it cannot be said that Juror 6 "smuggle[d] his way onto the jury through intentional deceit." *United States v. Nix*, 275 F. Supp. 3d 420, 424, 438 (W.D.N.Y. 2017), *aff'd United States v. McCoy*, 995 F.3d 32 (2d Cir. 2021). To dismiss Juror 6 here based on his "honest"—though imperfect—responses to the Court would be to "insist on something closer to perfection than our judicial system can be expected to give." *McDonough*, 464 U.S. at 555.

Hon. Arun Subramanian
June 12, 2025

The stark contrast between the facts here and those rare cases in which appellate courts have found juror misconduct based on dishonesty during voir dire further confirms why it would be wrong to dismiss Juror No. 6 here. For instance, in *United States v. Parse*, a juror extensively "lied about her educational, professional, and personal background" and did so to make herself more "'marketable' as a juror." 789 F.3d 83, 88, 91 (2d Cir. 2015). Among other things, she pretended her highest level of education was a bachelor's degree, when in fact she had obtained a J.D. and her law license had been suspended; pretended she lived in Westchester so she could collect "an additional $765 in travel expenses"; claimed her husband was retired and had owned several bus companies, when in fact he was "a career criminal" and this was a "fabrication…designed to conceal his criminal past"; and concealed her own prior convictions to boot. *Id.* at 88, 89-90. Thus, the district court concluded the juror was "a pathological liar and utterly untrustworthy" who had "intentionally provided numerous false and misleading answers and omitted material information." *Id.* at 92. In *United States v. Colombo*, the Court remanded for a hearing where a juror told an alternate juror that her brother-in-law was a lawyer for the government but that she concealed this during voir dire "because she wanted to sit on the case." 869 F.2d. 149, 150 (2d Cir. 1989). It is remarkable and disturbing that the government would cite these egregious cases to attack Juror No. 6's candor and level such a serious accusation at a citizen who is diligently performing his jury service.

### B.     The Government's Motion Should Also Be Denied Because It Is A Pretext For A Distriminatory Motive To Strike A Black Male Juror

During jury selection, the government exercised seven of its nine peremptory challenges on black people. Tr.773. The defense made a *Batson* challenge. Tr.774. The Court denied that motion, Tr.781, but any objective observer would find it disturbing that the U.S. government chose to use the overwhelming majority of its strikes on black jurors—and did so in the prosecution of one of the most successful black men in American history. Mr. Combs was very fortunate that a few black jurors were empaneled despite the government's challenges to so many black jurors, largely because the venire was unusually diverse for this District. For decades, black and hispanic people have been underrepresented on venires in this District. Indeed, the Second Circuit recently recognized that "disparities" between the percentage of blacks and hispanics in the SDNY's population versus the percentage in SDNY venires "are troubling, especially considering that underrepresentation of Black and Hispanic or Latino people in SDNY venires has only *increased* in the decades since *Biaggi*," a 1990 case involving a constitutional challenge to the SDNY's jury selection plan. *United States v. Slaughter*, 110 F.4th 569, 582 (2d Cir. 2024). Striking one of two black men from a jury tasked with deciding the fate of a black man accused of serious sex and racketeering crimes—for flimsy and trumped-up charges against the juror—would be egregiously unfair.

*        *        *

For the foregoing reasons, the Court should deny the government's motion to strike Juror No. 6.

Hon. Arun Subramanian
June 12, 2025

Respectfully submitted,

/s/ Alexandra A.E. Shapiro
Alexandra A.E. Shapiro
Jason A. Driscoll
SHAPIRO ARATO BACH LLP
1140 Avenue of the Americas, 17th Fl.
New York, NY 10036
(212) 257-4880
ashapiro@shapiroarato.com
jdriscoll@shapiroarato.com

Marc Agnifilo
Teny Geragos
AGNIFILO INTRATER
445 Park Ave., 7th Fl.
New York, NY 10022
(646) 205-4350
marc@agilawgroup.com
teny@agilawgroup.com

Anna Estevao
HARRIS TRZASKOMA LLP
156 West 56th St., Ste. 2004
New York, NY 10019
(212) 970-6465
aestevao@harristrz.com

Brian Steel
THE STEEL LAW FIRM, P.C.
1800 Peachtree Street, Ste. 300
Atlanta, GA 30309
(404) 605-0023

Xavier R. Donaldson
136 Madison Ave, 6th Fl. New York,
New York 10016
(646) 772-3334
xdonaldson@aol.com

Nicole Westmoreland
WESTMORELAND LAW, LLC
132 Cone Street, Suite A
Atlanta, GA 30303

Page 6

Hon. Arun Subramanian
June 12, 2025

(404) 446-2620
nw@westmorelandlawgroup.com