UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff*,<br><br>v.<br><br>SEAN COMBS,<br><br>*Defendant*,<br><br>CLAYTON HOWARD,<br><br>*Movant*, | Case No. 24-cr-542(AS)<br><br><br>MEMORANDUM OF LAW<br>IN SUPPORT OF MOTION<br>TO ENFORCE CRIME VICTIM<br>RIGHTS PURSUANT TO 18<br>U.S.C. § 3771 |

Movant Clayton Howard, proceeding pro se, respectfully submits this Memorandum of Law in support of his Motion to Enforce Crime Victim Rights pursuant to 18 U.S.C. § 3771.

TABLE OF CONTENTS

I. PRELIMINARY STATEMENT

II. STATEMENT OF FACTS

III. LEGAL STANDARD

IV. ARGUMENT

A. Clayton Howard Is a Crime Victim Entitled to Rights Under the CVRA

B. The Government Has Violated Multiple Rights Guaranteed Under 18 U.S.C. § 3771(a)

1. Right to Be Reasonably Heard at Sentencing (§ 3771(a)(4))

2. Right to Confer with Government Counsel (§ 3771(a)(5))

3. Right to Full and Timely Restitution (§ 3771(a)(6))

4. Right to Proceedings Free from Unreasonable Delay (§ 3771(a)(7))

5. Right to Be Treated with Fairness and Respect (§ 3771(a)(8))

C. This Court Has Authority to Compel Compliance with the CVRA

D. The Government's Silence Despite Repeated Requests Warrants Immediate Relief

E. Time-Sensitive Relief Is Required Due to the Backpage Remission Program Deadline
V. CONCLUSION

## I. PRELIMINARY STATEMENT

This motion arises from the United States Attorney's Office's complete failure to respond to Movant Clayton Howard's repeated requests to exercise his statutory rights as a crime victim under the Crime Victims' Rights Act (CVRA), 18 U.S.C. § 3771. Mr. Howard is a confirmed victim of sex trafficking in United States v. Sean Combs, Case No. 24-cr-542(AS), as explicitly identified in the government's own Sentencing Memorandum at Docket #516, page 41. Despite providing substantial cooperation to the prosecution and being specifically named as a victim of Count 3, Mr. Howard has been systematically denied his rights under federal law.

Over a period exceeding two months, Mr. Howard has sent three detailed written communications to the U.S. Attorney's Office, made personal visits to the federal building in Manhattan, and attempted phone contact with the Victim-Witness Unit. The government has maintained absolute silence in response to all of these good-faith efforts. This silence has prevented Mr. Howard from exercising fundamental rights guaranteed by Congress, including the right to be heard at sentencing, the right to confer with government counsel, the right to restitution information, and the right to be treated with fairness and respect.

The government's non-response is particularly harmful given the rapidly approaching February 2, 2026 deadline for the Backpage Remission Program, for which Mr. Howard clearly qualifies based on trial testimony that he was recruited through Backpage.com. Without the documentation and assistance he has repeatedly requested, Mr. Howard risks losing his opportunity to seek substantial compensation for his trafficking-related losses.

Mr. Howard files this motion as a last resort, having exhausted all administrative remedies. He respectfully requests this Court's intervention to enforce the rights that Congress has guaranteed to crime victims.

## II. STATEMENT OF FACTS

A. Movant's Victim Status

Clayton Howard is a victim of sex trafficking crimes prosecuted in *United States v. Sean Combs, Case No. 24-cr-542(AS)*. (Howard Decl. ¶ 2). He was trafficked interstate from New York City to Los Angeles and from New York City to Miami by defendants Sean Combs and Casandra Ventura between approximately 2012 and 2019. (Id. ¶ 3).

The United States Attorney's Office confirmed Mr. Howard's status as a victim of sex trafficking during the investigation and prosecution of this case. (Id. ¶ 4). Most significantly,

Mr. Howard is specifically identified as a victim in the government's Sentencing Memorandum, filed at Docket #516, page 41, where he is listed as a victim of Count 3 immediately following Casandra Ventura. (Id. ¶ 5).

During trial, defendant Casandra Ventura testified under oath that she located and recruited Mr. Howard for sex trafficking through advertisements containing his photographs that were posted to Backpage.com. (Id. ¶ 6). This testimony establishes the critical connection to the Backpage Remission Program discussed below.

B. Movant's Cooperation with the Prosecution

From December 2023 through completion of the trial, Mr. Howard served as a cooperating witness in this prosecution. (Id. ¶ 7). He provided substantial cooperation to the U.S. Attorney's Office and federal investigators, including:

    i.   Flight boarding passes documenting interstate travel
   ii.   Airline ticket receipts
  iii.   Hotel photographs and reservation confirmations
   iv.   Detailed dates, times, and locations of trafficking incidents
    v.   Written statements and testimony regarding defendants' conduct
   vi.   Documentary evidence used by prosecutors during trial (Id. ¶ 8).

Mr. Howard's cooperation was material to building the prosecution's case against the defendants. (Id. ¶ 9). He documented his experiences in a memoir titled "Cassie: Victim or Coconspirator - The Story of Dave," which details the abuse, intimidation, and harm he suffered. (Id. ¶ 10).

C. Government Communications and Initial Contact

The U.S. Attorney's Office was aware of Mr. Howard's claims and acknowledged his victim status in multiple email communications with attorneys they provided to him beginning in September 2024 and ending in February 2025. (Id. ¶¶ 12-13; Exhibit A). These attorneys contacted Mr. Howard to confirm his status as a victim witness and his importance in the pending prosecution of Mr. Combs. (Id. ¶ 12).

On May 2, 2025, Mr. Howard met with Assistant U.S. Attorney Maurine Comey and directly stated his position to be truthful regarding the conduct of both offenders, Mr. Combs and Ms. Ventura. (Id. ¶ 44). When Mr. Howard expressed his wish to confront his offenders and testify

truthfully about Ms. Ventura's complicity, AUSA Comey became annoyed and claimed he was too "traumatized" to testify, which Mr. Howard denied. (Id. ¶ 45).

Mr. Howard and his counsel were told they would be called the following Thursday, May 8, 2025, to begin witness preparation for trial. (Id. ¶ 46). However, Mr. Howard was never called again, though he was not released from the mandatory protection order which prevented witnesses from speaking out during the criminal trial. (Id. ¶ 47). Mr. Howard believes this was done intentionally to keep him silent regarding the truth of Ms. Ventura's involvement. (Id. ¶ 48).

D. Attempts to Exercise CVRA Rights

1. October 18, 2025 Letter

On October 18, 2025, Mr. Howard sent a comprehensive letter to the United States Attorney's Office Victim-Witness Coordinator requesting victim status verification, case materials, assistance with the Backpage Remission Program, and information about his rights under the Crime Victims' Rights Act. (Id. ¶ 14; Exhibit B).

Mr. Howard sent this letter via email and U.S. mail to the addresses he obtained for the prosecutors assigned to the case through the Civil Docket attorney information on PACER. (Id. ¶ 16). The prosecutors contacted included Emily Johnson, Mitzi Steiner, Madison Smyer, Meredith Foster, and Mary Slavik. (Id. ¶ 17).

In his October 18, 2025 letter, Mr. Howard specifically requested:

　i.　Written victim status verification
　ii.　All victim-related materials from the case file
　iii.　Assistance establishing eligibility for the Backpage Remission Program
　iv.　Trial transcripts and evidence regarding his trafficking and Backpage
　v.　Contact information for the assigned Victim-Witness Coordinator (Id. ¶ 18).

Mr. Howard received no response to his October 18, 2025 letter—not even an acknowledgment of receipt. (Id. ¶ 19).

2. November 19, 2025 Follow-Up Letter

On November 19, 2025, after waiting over a month without a response, Mr. Howard sent a follow-up letter to the U.S. Attorney's Office. (Id. ¶ 20; Exhibit B). This letter:

　i.　Referenced his prior unanswered correspondence
　ii.　Reiterated his requests with additional legal analysis

    iii.    Emphasized the urgency due to the upcoming Backpage remission deadline

    iv.    Requested the opportunity to submit a victim impact statement

    v.    Sought notice of proceedings and consultation with government counsel (Id. ¶ 22).

Mr. Howard sent the November 19, 2025 letter via both U.S. Mail and email to the Victim-Witness Unit and multiple prosecutors. (Id. ¶ 23). Again, he received no response of any kind. (Id. ¶ 24).

3. In-Person Visit to Federal Plaza

In September 2025, Mr. Howard traveled from his home in Middlesex County, New Jersey to 26 Federal Plaza in Manhattan to speak with the victim witness coordinator regarding assistance and verification. (Id. ¶ 25). Security in the reception area provided him with the number to the Victim Witness advocate. (Id. ¶ 26).

An advocate called Mr. Howard that same day as he was traveling home from New York to Middlesex, New Jersey. (Id. ¶ 27). His reception was poor, and he could not hear her name. (Id.). They discussed his request for assistance, and he was told he would be helped, but before they could continue, he lost the call. (Id. ¶ 28).

When Mr. Howard was in a location with stable connection, he called the number back. He could not make out the name on the voicemail but left his name and number seeking to be called back. (Id. ¶ 29). The advocate never called back. (Id. ¶ 30).

4. December 1, 2025 Final Demand Letter

On December 1, 2025, Mr. Howard sent a third letter—a final demand letter—to the U.S. Attorney's Office via certified mail, regular mail, and email. (Id. ¶ 31; Exhibit C). In this final demand letter, he:

    i.    Summarized the complete lack of response to his prior communications

    ii.    Listed each specific violation of the Crime Victims' Rights Act

    iii.    Provided a seven-day deadline for response

    iv.    Gave explicit notice that he would seek judicial enforcement if the government did not respond (Id. ¶ 33).

5. December 5, 2025 Response Denying Victim Status

On December 5, 2025, AUSA Emily Johnson finally responded to Mr. Howard's email, attempting to deny his victim status and claiming it was not correct. (Id. ¶ 34; Exhibit G).

On the same day, Mr. Howard responded to AUSA Johnson, notifying her of Docket #516, page 41, where he is named after Casandra Ventura as a victim of Count 3. (Id. ¶ 35; Exhibit G, page 2).

E. Total Efforts to Contact the U.S. Attorney's Office

In total, Mr. Howard has sent three detailed letters over a period of more than two months and has made one personal trip to the U.S. Attorney's Office in downtown Manhattan, along with one phone conversation with an advocate who promised to assist but never returned contact. (Id. ¶ 36).

F. Denial of Rights at Sentencing and Throughout Proceedings

Mr. Howard was never notified of the sentencing hearing in this case, despite being a named victim and cooperating witness. (Id. ¶ 61). He was denied the opportunity to testify, despite prosecutors being aware of the truth within his claims, in order to protect the credibility of Casandra Ventura. (Id. ¶ 62).

Mr. Howard was never given the opportunity to submit a victim impact statement, either in writing or orally at the sentencing hearing, of which he was never contacted. (Id. ¶ 68).

Mr. Howard has never been provided with any information about restitution procedures, including what types of losses he can seek restitution for, what documentation is required, applicable deadlines, or how to enforce any restitution order. (Id. ¶ 69).

G. Financial Harm and Losses

Mr. Howard has suffered substantial financial losses as a result of the defendants' criminal conduct and the prosecution, including:

   i. Lost income and business opportunities
  ii. Medical and mental health treatment expenses
 iii. Costs of security measures to protect himself
  iv. Out-of-pocket expenses (Id. ¶ 70).

Mr. Howard resides in Middlesex County, New Jersey. Prosecutors have never sought to reimburse him for his travel expenses, which accumulated as a direct result of attempting to assist the office in obtaining justice. (Id. ¶ 71).

None of the evidence Mr. Howard provided during the investigation—including flight records, photographs, and other materials—has been returned to him. (Id. ¶ 75).

H. The Backpage Remission Program and Approaching Deadline

On July 31, 2025, the Department of Justice announced the Backpage Remission Program, which will distribute over $200 million in forfeited assets to compensate victims whose sex trafficking was facilitated through advertisements on Backpage.com. (Id. ¶ 76).

The deadline to file a petition for compensation under the Backpage Remission Program is February 2, 2026. (Id. ¶ 77).

Based on Casandra Ventura's sworn trial testimony that she used Backpage.com to locate and recruit Mr. Howard for trafficking, he clearly meets the eligibility criteria for this program. (Id. ¶ 78).

To establish his eligibility and document his losses for the Backpage Remission petition, Mr. Howard needs:

  i. Trial transcripts documenting Ms. Ventura's testimony about finding him on Backpage.com
 ii. Exhibits and evidence from trial that show a Backpage connection
iii. Official confirmation from the U.S. Attorney's Office of his victim status
 iv. Documentation of his cooperation with the prosecution
  v. Any other materials that would support his petition (Id. ¶ 79).

Mr. Howard specifically requested assistance with the Backpage Remission Program in both his October 18 and November 19, 2025 letters, explaining the connection between Backpage.com and his trafficking. (Id. ¶ 80). The U.S. Attorney's Office has not provided any assistance with the Backpage Remission Program despite his clear requests and the established connection through trial testimony. (Id. ¶ 81).

If Mr. Howard misses the February 2, 2026 deadline due to the government's failure to provide necessary documentation, he will lose the opportunity to seek potentially substantial compensation for his trafficking-related losses. (Id. ¶ 82). This deadline is rapidly approaching, and each day of delay by the government reduces the time he has to prepare and file a complete petition. (Id. ¶ 83).

I. Impact of Violations

As a victim who cooperated extensively with the prosecution, providing critical evidence and testimony, Mr. Howard feels disrespected and devalued by the government's refusal even to acknowledge his communications. (Id. ¶ 85). The government used his cooperation when it

served their interest in prosecuting the defendants but now treats him as if he does not exist when he needs assistance exercising his statutory rights. (Id. ¶ 86).

Mr. Howard has been patient and persistent, sending three separate communications over more than two months and making phone contact with the Victim-Witness Unit. He even traveled from Central New Jersey to visit prosecutors, which led to his phone conversation with the Victim-Witness Unit. (Id. ¶ 88). Despite these good-faith efforts, the government has maintained absolute silence. (Id. ¶ 89).

Mr. Howard is not seeking anything beyond what federal law guarantees to crime victims. He simply wants recognition of his victim status, information about his rights and available relief, the materials and assistance needed to pursue compensation, and basic fairness and respect after his cooperation. (Id. ¶ 90).

Mr. Howard filed this motion as a last resort, only after exhausting all administrative avenues and receiving no response from the U.S. Attorney's Office. (Id. ¶ 91).

## III. LEGAL STANDARD

A. The Crime Victims' Rights Act

The Crime Victims' Rights Act, 18 U.S.C. § 3771, grants crime victims enforceable rights in federal criminal proceedings. Congress enacted the CVRA in 2004 "to ensure that victims are treated with fairness, dignity, and respect throughout the criminal justice process." *United States v. Rubin, 558 F. Supp. 2d 411, 417 (E.D.N.Y. 2008).*

The CVRA provides that "[a] crime victim has the following rights," 18 U.S.C. § 3771(a), including:

  i. The right to be reasonably protected from the accused (§ 3771(a)(1));
  ii. The right to reasonable, accurate, and timely notice of any public court proceeding involving the crime (§ 3771(a)(2));
  iii. The right not to be excluded from any such public court proceeding (§ 3771(a)(3));
  iv. The right to be reasonably heard at any public proceeding in the district court involving sentencing (§ 3771(a)(4));
  v. The right to confer with the attorney for the Government in the case (§ 3771(a)(5));
  vi. The right to full and timely restitution as provided in law (§ 3771(a)(6));
  vii. The right to proceedings free from unreasonable delay (§ 3771(a)(7));

> viii. The right to be treated with fairness and with respect for the victim's dignity and privacy (§ 3771(a)(8)).

B. Definition of "Crime Victim"

The CVRA defines "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense." 18 U.S.C. § 3771(e)(2)(A). This definition is to be construed liberally in favor of victims. *United States v. Heaton, 458 F. Supp. 2d 1271, 1274 (D. Utah 2006).*

C. Enforcement Mechanism

The CVRA provides a robust enforcement mechanism. Section 3771(d)(3) states:

"The district court shall take up and decide any motion asserting a victim's right forthwith. If the district court denies the relief sought, the movant may petition the court of appeals for a writ of mandamus."

This language demonstrates Congress's intent that victims' rights be enforced promptly and effectively. *In re Dean, 527 F.3d 391, 394 (5th Cir. 2008).*

The burden is on the government to show by clear and convincing evidence that the rights were not violated. 18 U.S.C. § 3771(d)(2)(B).

D. Standing and Jurisdiction

Crime victims have standing to assert their rights under the CVRA. 18 U.S.C. § 3771(d)(1) ("A person accused of the crime may not obtain any form of relief under this chapter."); § 3771(d)(3) ("The district court shall take up and decide any motion asserting a victim's right forthwith.").

District courts have jurisdiction to enforce CVRA rights even after sentencing. United States v. Rubin, 558 F. Supp. 2d at 418 ("The CVRA's enforcement mechanism applies both before and after sentencing.").

IV. ARGUMENT

A. Clayton Howard Is a Crime Victim Entitled to Rights Under the CVRA

Mr. Howard unquestionably qualifies as a "crime victim" under 18 U.S.C. § 3771(e)(2)(A). He was "directly and proximately harmed as a result of the commission of a Federal offense"—specifically, sex trafficking under 18 U.S.C. § 1591. The government's own Sentencing Memorandum explicitly identifies Mr. Howard as a victim of Count 3, listing him immediately after Casandra Ventura. (Howard Decl. ¶ 5; Docket #516, p. 41).

This express acknowledgment by the prosecution removes any question about Mr. Howard's victim status. The government cannot now deny that Mr. Howard is a crime victim entitled to CVRA protections. Indeed, AUSA Emily Johnson's December 5, 2025 email attempting to deny Mr. Howard's victim status directly contradicts the government's own court filings. (Howard Decl. ¶ 34).

Moreover, trial testimony established that Mr. Howard was recruited through Backpage.com and trafficked interstate from New York to Los Angeles and Miami. (Howard Decl. ¶¶ 3, 6). He provided substantial cooperation to the prosecution, including documentary evidence, written statements, and testimony that was material to the case. (Id. ¶¶ 7-9). The prosecution used his trauma and experiences to build their case against the defendant. (Id. ¶ 72).

Under these circumstances, there can be no dispute that Mr. Howard is a crime victim entitled to the full protections of the CVRA.

B. The Government Has Violated Multiple Rights Guaranteed Under 18 U.S.C. § 3771(a)

The government's complete failure to respond to Mr. Howard's repeated requests has resulted in violations of multiple rights guaranteed by the CVRA.

1. Right to Be Reasonably Heard at Sentencing (§ 3771(a)(4))

The CVRA guarantees crime victims "the right to be reasonably heard at any public proceeding in the district court involving sentencing." 18 U.S.C. § 3771(a)(4). This right is mandatory, not discretionary. *Kenna v. U.S. Dist. Court, 435 F.3d 1011, 1016 (9th Cir. 2006)* ("The right to be heard encompasses the right to make a statement at sentencing.").

Mr. Howard was never notified of the sentencing hearing in this case, despite being a named victim and cooperating witness. (Howard Decl. ¶ 61). He was never given the opportunity to submit a victim impact statement, either in writing or orally. (Id. ¶ 68). This complete denial of the right to be heard at sentencing is a clear violation of § 3771(a)(4).

The government's failure to notify Mr. Howard of the sentencing hearing prevented him from exercising this fundamental right. Courts have consistently held that victims must be given adequate notice and opportunity to be heard. See *United States v. Marcello, 370 F. Supp. 2d 745, 747-48 (N.D. Ill. 2005)* (finding CVRA violation where victim was not given opportunity to speak at sentencing).

2. Right to Confer with Government Counsel (§ 3771(a)(5))

The CVRA provides victims with "the right to confer with the attorney for the Government in the case." 18 U.S.C. § 3771(a)(5). This right ensures that victims can provide input and receive information about the prosecution.

Mr. Howard has made extensive efforts to confer with government counsel:

  i. He sent detailed letters on October 18, 2025, November 19, 2025, and December 1, 2025
  ii. He traveled to 26 Federal Plaza in Manhattan for an in-person visit
  iii. He attempted phone contact with the Victim-Witness Unit
  iv. He sent emails to multiple prosecutors, including Emily Johnson, Mitzi Steiner, Madison Smyer, Meredith Foster, and Mary Slavik (Howard Decl. ¶¶ 14-36).

Despite all of these good-faith efforts over a period exceeding two months, the government maintained complete silence until AUSA Johnson's December 5, 2025 email denying his victim status. (Id. ¶ 34). This refusal to confer with Mr. Howard violates § 3771(a)(5).

The right to confer is meaningless if the government can simply ignore a victim's repeated requests for communication. The CVRA requires active engagement, not passive avoidance.

3. Right to Full and Timely Restitution (§ 3771(a)(6))

Victims have "the right to full and timely restitution as provided in law." 18 U.S.C. § 3771(a)(6). This right includes the right to information about restitution procedures and assistance in pursuing restitution.

Mr. Howard has never been provided with any information about restitution procedures, including:

  i. What types of losses he can seek restitution for
  ii. What documentation is required
  iii. Applicable deadlines
  iv. How to enforce any restitution order (Howard Decl. ¶ 69).

Mr. Howard has suffered substantial financial losses, including lost income, medical expenses, security costs, and out-of-pocket expenses related to his cooperation with the prosecution. (Id. ¶¶ 70-71). Without information and assistance from the government, he cannot effectively pursue restitution for these losses.

Moreover, Mr. Howard is entitled to participate in the Backpage Remission Program based on trial testimony that he was recruited through Backpage.com. (Id. ¶¶ 76-78). The February 2,

2026 deadline is rapidly approaching, and each day of government delay reduces his ability to prepare and file a complete petition. (Id. ¶ 83). The government's refusal to provide necessary documentation jeopardizes his ability to seek this form of restitution.

4. Right to Proceedings Free from Unreasonable Delay (§ 3771(a)(7))

The CVRA guarantees victims "the right to proceedings free from unreasonable delay." 18 U.S.C. § 3771(a)(7). This right protects victims from prolonged uncertainty and ensures timely resolution of criminal matters.

Mr. Howard's requests for victim status verification, case materials, and assistance with the Backpage Remission Program have been pending for over two months without any substantive response. (Howard Decl. ¶¶ 14-36). This delay is unreasonable, particularly given:

   i.   The approaching February 2, 2026 deadline for the Backpage Remission Program
   ii.  Mr. Howard's documented status as a victim in the government's own sentencing memorandum
   iii. The straightforward nature of his requests for documentation and verification
   iv.  His extensive cooperation with the prosecution

The government's continued silence constitutes an unreasonable delay that violates § 3771(a)(7).

5. Right to Be Treated with Fairness and Respect (§ 3771(a)(8))

Perhaps most fundamentally, victims have "the right to be treated with fairness and with respect for the victim's dignity and privacy." 18 U.S.C. § 3771(a)(8).

The government's treatment of Mr. Howard violates this right in multiple ways:

First, the government used Mr. Howard's cooperation when it served their interest in prosecuting the defendants but now treats him as if he does not exist when he needs assistance exercising his statutory rights. (Howard Decl. ¶ 86).

Second, despite Mr. Howard's patient and persistent efforts—including three letters, a personal visit to Manhattan, and phone contact—the government has maintained absolute silence. (Id. ¶ 88). This complete non-response shows a lack of basic respect for Mr. Howard's dignity as a crime victim.

Third, AUSA Johnson's December 5, 2025 email attempting to deny Mr. Howard's victim status directly contradicts the government's own sentencing memorandum identifying him as a victim. (Id. ¶¶ 34-35). This inconsistency demonstrates a lack of fairness and respect.

Fourth, Mr. Howard was intentionally prevented from testifying and kept silent through the mandatory protection order to avoid exposing information that could harm the prosecution's narrative regarding Casandra Ventura's complicity. (Id. ¶¶ 47-50). This manipulation of Mr. Howard's participation shows a fundamental lack of respect for his rights and dignity as a victim.

As a victim who cooperated extensively with the prosecution, Mr. Howard deserves to be treated with fairness and respect. The government's conduct falls far short of this standard.

C. This Court Has Authority to Compel Compliance with the CVRA

District courts have clear authority to enforce CVRA rights. Section 3771(d)(3) provides: "The district court shall take up and decide any motion asserting a victim's right forthwith." This mandatory language requires the Court to address violations of victims' rights promptly.

Courts have broad remedial authority under the CVRA. In *Kenna v. U.S. Dist. Court, the Ninth Circuit* held that district courts can take appropriate measures to ensure victims' rights are protected, including ordering the government to provide notice, allow victim participation, and take other corrective actions. *435 F.3d at 1017-18*.

In this case, the appropriate remedy is to order the government to:

1. Provide written confirmation of Mr. Howard's victim status
2. Provide all requested case materials and documentation
3. Provide complete information about restitution procedures
4. Provide immediate assistance with the Backpage Remission Program application
5. Provide notice of all future proceedings
6. Confer with Mr. Howard regarding the disposition of this case

These remedies are necessary to vindicate Mr. Howard's rights and ensure compliance with the CVRA going forward.

D. The Government's Silence Despite Repeated Requests Warrants Immediate Relief

The government's complete non-response to Mr. Howard's repeated requests is particularly egregious and warrants immediate judicial intervention.

Over the course of more than two months, Mr. Howard has:

i. Sent three detailed written communications (October 18, November 19, and December 1, 2025)
ii. Made a personal trip to 26 Federal Plaza in Manhattan

  iii. Attempted phone contact with the Victim-Witness Unit

  iv. Emailed multiple prosecutors whose names he obtained through his own research (Howard Decl. ¶¶ 14-36).

Each communication clearly identified Mr. Howard as a victim, referenced his cooperation with the prosecution, and made specific requests for assistance with exercising his CVRA rights. The government's response? Absolute silence—until AUSA Johnson's December 5, 2025 email attempting to deny victim status in direct contradiction of the government's own sentencing memorandum.

This pattern of non-response demonstrates that administrative remedies have been exhausted. Mr. Howard has done everything a crime victim could reasonably be expected to do to exercise his rights. The government's refusal to engage necessitates judicial intervention.

Courts have recognized that victims should not have to resort to litigation to enforce their rights, but when the government refuses to acknowledge or respond to legitimate requests, judicial enforcement is the only remaining avenue. *See United States v. Rubin, 558 F. Supp. 2d at 418* (granting CVRA relief where government failed to adequately respond to victim's requests).

E. Time-Sensitive Relief Is Required Due to the Backpage Remission Program Deadline

This motion requires urgent attention because of the February 2, 2026 deadline for the Backpage Remission Program. (Howard Decl. ¶ 77).

The Backpage Remission Program will distribute over $200 million to victims whose trafficking was facilitated through Backpage.com. (Id. ¶ 76). Trial testimony in this case established that Casandra Ventura used Backpage.com to locate and recruit Mr. Howard for trafficking. (Id. ¶ 78). This connection makes Mr. Howard clearly eligible for the program.

To prepare and file a complete petition, Mr. Howard needs:

  i. Trial transcripts documenting testimony about Backpage.com

  ii. Exhibits and evidence from trial

  iii. Official confirmation of his victim status

  iv. Documentation of his cooperation (Id. ¶ 79).

Without the government's assistance in providing these materials, Mr. Howard risks missing the February 2, 2026 deadline and losing the opportunity to seek potentially substantial

compensation for his trafficking-related losses. (Id. ¶ 82). Each day of delay reduces the time available to prepare a complete petition. (Id. ¶ 83).

This time-sensitive consideration makes immediate relief essential. The Court should order the government to provide the requested materials forthwith to ensure Mr. Howard can exercise his right to full and timely restitution, including through the Backpage Remission Program.

## V. CONCLUSION

Clayton Howard is a confirmed crime victim who cooperated extensively with the prosecution in this case. Despite being specifically identified as a victim in the government's own sentencing memorandum, he has been systematically denied his rights under the Crime Victims' Rights Act.

The government's complete failure to respond to Mr. Howard's repeated requests over more than two months violates multiple provisions of 18 U.S.C. § 3771, including his rights to be heard at sentencing, to confer with government counsel, to full and timely restitution, to proceedings free from unreasonable delay, and to be treated with fairness and respect.

Mr. Howard has exhausted all administrative remedies and filed this motion as a last resort. He respectfully requests that this Court exercise its authority under the CVRA to compel the government's compliance with federal law and ensure that his rights as a crime victim are vindicated.

For the foregoing reasons, Movant Clayton Howard respectfully requests that this Court grant his Motion to Enforce Crime Victim Rights and order the relief set forth in the Notice of Motion.

Dated: December 7, 2025
Carteret, New Jersey

Respectfully submitted,

*Clayton Howard*
Clayton Howard, Pro Se
245 Mill Rd
4A
(929)781-7791
itsclaytonhoward@gmail.com

Movant
Victim #2 - Count 3