UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

                v.                      24 Cr. 542 (AS)

SEAN COMBS,
    a/k/a "Puff Daddy,"
    a/k/a "P. Diddy,"
    a/k/a "Diddy,"
    a/k/a "PD,"
    a/k/a "Love,"

                Defendant.              Trial
------------------------------x
                                        New York, N.Y.
                                        June 30, 2025
                                        9:00 a.m.
Before:

                    HON. ARUN SUBRAMANIAN,

                                        District Judge
                                        -and a Jury-

                        APPEARANCES


JAY CLAYTON
        Interim United States Attorney for the
        Southern District of New York
BY:    MADISON R. SMYSER
        EMILY A. JOHNSON
        MAURENE R. COMEY
        MEREDITH FOSTER
        MITZI STEINER
        MARY C. SLAVIK
        Assistant United States Attorneys

APPEARANCES CONTINUED


AGNIFILO INTRATER LLP
        Attorneys for Defendant
BY:  MARC A. AGNIFILO
        TENY R. GERAGOS
        -and-
HARRIS TRZASKOMA LLP
BY:  ANNA M. ESTEVAO
        -and-
SHAPIRO ARATO BACH LLP
BY:  ALEXANDRA A.E. SHAPIRO
        JASON A. DRISCOLL
        -and-
XAVIER R. DONALDSON
BRIAN STEEL
NICOLE WESTMORELAND


Also Present:  Lucy Gavin
                    Shannon Becker
                    Paralegal Specialists
                    Raymond McLeod, Evidence Specialist

(Trial continued)

THE COURT:  Unless there is anything for us to address we'll bring in the jury.

Anything from the government?

MS. COMEY:  No, your Honor.

THE COURT:  Anything from the defense?

MR. AGNIFILO:  No, your Honor.

MS. ESTAVAO:  May I just say the laptop has been reviewed and is ready to go.  There are a couple minor corrections being made to the defense exhibit list which I believe will be during the charge or will be completed during the charge and I believe electronic versions of those will also be added to the laptop.  So that's the only change that remains.  I don't know if the Court intended on giving paper copies of the exhibit lists to the jurors.

THE COURT:  I think it would be helpful to give them a paper copy so we're going to deliver the instructions.  We're going to send the jury back, and at that point if you can print out an exhibit sheet, you can hand it to the marshal as long as it's been agreed to by all the parties.

MS. ESTAVAO:  We may enlist the assistance of the Court's deputy if we're not able to print it.

THE COURT:  Now?  Or you're going to have it in the next hour or so?

MS. ESTAVAO:  We'll be able to provide the Court with

a copy.

THE COURT:  Okay, if not you can email it to the chambers inbox and we'll have it printed.

MS. ESTAVAO:  Very good.

(Jury present)

THE COURT:  Welcome back members of the jury.  I hope you had a great weekend.  We will now proceed with the jury instructions.  On your chair you should have found two documents:  One, the jury charge; and two, a verdict sheet.  Now I'm going to walk you through both of these documents.  So for the time being, I will ask you to give me your attention.

However, I wanted to make sure you had a written copy of the jury charge because for some of you, it might be easier for you to take in information while you're reading it so I'm going to start with the jury charge and then move to the verdict sheet.

If you'd like to read along with me as I'm going through the charge, that is great.  But I will be reading it to you, and you will have a copy of the jury charge when you're back in the jury room.

Let me ask the Court's law clerk if the court reporter has a copy of the charge.

We will begin.  I'll read the jury charge to you, and then we will proceed and I'll read through the verdict sheet as well, and we'll have some logistical instructions at the end.

As you can see, it's long, but I'm going to try to make it interesting as I'm reading it.

If you turn to the first page that reads Introductory Instructions, that's where I'll begin.

Introductory Instructions.

1. Function of Court and role of jury.

You have now heard all the evidence in this case as well as the final arguments of the parties.

My duty at this point is to instruct you as to the law.  It is your duty to accept these instructions of law and apply them to the facts as you determine them.

On these legal matters, you must take the law as I give it to you.  If an attorney has stated a legal principle different from any that I state to you in my instructions, it is my instructions that you must follow.

You should not single out any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.  And you should know that you're going to be able to take a copy of these instructions into the jury room.

Your final role is to pass upon and decide the fact issues that are in this case.  You, the members of the jury, are the sole and exclusive judges of the facts.  You pass upon the weight of the evidence; you determine the credibility of the witnesses; you resolve such conflicts as there may be in

the testimony; and you draw whatever reasonable inferences you decide to draw from the fact as you have determined them.  I will later discuss with you how to pass upon the credibility — or believability — of the witnesses.

In determining the facts, you must rely upon your own recollection of the evidence.  The evidence before you consists of the answers given by witnesses — the testimony they gave, as you recall it — and the exhibits that were received in evidence.  What the lawyers have said in opening statements, in closing arguments, in objections, or in questions, is not evidence.  Questions put to witnesses are not themselves evidence.  Only the answers are evidence.  But you may not consider any answer that I directed you to disregard.

You may also consider the stipulations of the parties as evidence.

Since you are the sole and exclusive judges of the facts, I do not mean to indicate any opinion as to the facts or what your verdict should be.  The rulings I have made during the trial are not any indication of my views of what your decision should be as to whether or not the guilt of the defendant has been proven beyond a reasonable doubt.  You are to perform the duty of finding the facts without bias or prejudice as to any party.

2. Government Treated Like Any Other Party.

The fact that the prosecution is brought in the name

of the United States of America entitles the government to no greater consideration than that accorded to any other party to a litigation.  By the same token, it is entitled to no less consideration.  All parties, whether government or individuals, stand as equals at the bar of justice.

3.  Burden of Proof; Presumption of Innocence; Reasonable Doubt.

Now, I will instruct you on the presumption of innocence and the government's burden of proof in this case. The defendant has pleaded not guilty.  By doing so, he denies the charges in the indictment.  Thus, the government has the burden of proving the charges against the defendant beyond a reasonable doubt.  The defendant is presumed innocent, and he does not have to prove his innocence.  This presumption of innocence was in the defendant's favor at the start of the trial, continued in his favor throughout the entire trial, is in his favor even as I instruct you now, and continues in his favor during the course of your deliberations in the jury room.

The government has the burden of proof in this case. The presumption of innocence is removed as to the defendant if, and only if, you, as members of the jury, are satisfied that the government has sustained its burden of proving the guilt of the defendant beyond a reasonable doubt.

The question that naturally arise is, "What is a reasonable doubt?"  A "reasonable doubt" is a doubt based on

your reason, your judgment, your experience, and your common sense.  It is a doubt that a reasonable person has after carefully weighing all the evidence.  It is a doubt founded in reason and arising out of the evidence in the case, or the lack of evidence.

Proof beyond a reasonable doubt does not mean proof beyond all possible doubt.  It is practically impossible for a person to be absolutely and completely convinced of any disputed fact that, by its very nature, cannot be proven with mathematical certainty.  The government's burden is to establish guilt beyond a reasonable doubt, not all possible doubt.

If, after a fair and impartial consideration of all of the evidence, you can candidly and honestly say that you have an abiding belief of the defendant's guilt, such a belief as a prudent person would not hesitate to act upon in important matters in the personal affairs of his or her own life, then you have no reasonable doubt, and under the circumstances, it is your duty to convict.  On the other hand, if after a fair and impartial consideration of all the evidence, you can candidly and honestly say that you are not satisfied with the guilt of the defendant, that you do not have an abiding belief of the defendant's guilt; in other words, if you have such a doubt as would reasonably cause a prudent person to hesitate in acting in matters of importance in his or her own affairs, then

you have a reasonable doubt.  In that circumstance, it is your doubt to acquit.

          4.    Direct and Circumstantial Evidence.

          There are two types evidence that you may properly use in deciding whether the defendant is guilty or not guilty of the crimes with which he is charged.

          One type of evidence is called "direct evidence." Direct evidence of a fact in issue is presented when a witness testifies to that fact based on what he or she personally saw, heard, or otherwise observed through the five senses.  Direct evidence may also be in the form of an exhibit if it directly proves a fact in issue.  The second type of evidence is "circumstantial evidence."  Circumstantial evidence is evidence that tends to prove a disputed fact indirectly by proof of other facts.

          There is a simple example of circumstantial evidence that I talked to you about at the beginning of this trial. Assume that when you came into the courthouse this morning, the sun was shining, and it was a nice day outside.  Also assume that the courtroom shades were drawn, and you could not look outside.  Assume further that as you were sitting here, someone walked in with an umbrella that was dripping wet, and then a few moments later, somebody else walked in with a raincoat that was also dripping wet.

          Now, because you could not look outside the courtroom,

and you could not see whether it was raining, you would have no direct evidence of that fact. But, on the combination of facts that I have asked you to assume, it would be reasonable and logical for you to conclude that it was raining.

That is all there is to circumstantial evidence. You infer on the basis of your reason, experience, and common sense from one established fact the existence or nonexistence of some other fact.

The matter of drawing inferences from facts in evidence is not a matter of guesswork or speculation. An inference is a logical, factual conclusion that you might reasonably draw from other facts that have been proven.

Many material facts, such as a person's state of mind, are not easily proven by direct evidence. Usually, such facts are established by circumstantial evidence and the reasonable inferences you draw. Circumstantial evidence may be given as much weight as direct evidence. The law makes no distinction between direct and circumstantial evidence. The law simply requires that before convicting a defendant, you must be satisfied of the defendant's guilt beyond a reasonable doubt based on all the evidence in the case.

5. Credibility of Witnesses.

I'm now going to briefly discuss evaluating the credibility of witnesses.

You have had the opportunity to observe the witnesses.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

It is now your job to decide how believable or credible each witness was in his or her testimony.  You are the sole judges of the credibility of each witness and of the importance of his or her testimony.  How do you judge the credibility of witnesses?  There is no magic formula.

You should carefully scrutinize all of the testimony of each witness, the circumstances under which each witness testified, the impression the witness made when testifying, the relationship of the witness to the controversy and the parties, the witness's bias or impartiality, the reasonableness of the witness's statement, the strength or weakness of the witness's recollection viewed in light of all other testimony and evidence, and any other matter in evidence that may help you decide the truth and the importance of each witness's testimony.

In other words, what you must try to do in deciding credibility is to size a witness up in light of his or her demeanor, the explanations given, and all of the other evidence in the case.  You should use your common sense, your good judgment, and your every day experiences in life to make credibility determinations.

In passing upon the credibility of a witness, you may also take into account any inconsistencies or contradictions as to material matters in his or her testimony.

If you find that any witness has willfully testified

falsely as to any material fact, you have the right to reject the testimony of that witness in its entirety. On the other hand, even if you find that a witness has testified falsely about one matter, you may reject as false that portion of his or her testimony and accept as true any other portion of the testimony which commends itself to your belief or which you may find corroborated by other evidence in the case. A witness may be inaccurate or contradictory and yet be truthful and entirely credible in other aspects of his or her testimony.

The ultimate question for you to decide in passing upon credibility is: Did the witness tell the truth before you? It is for you to say whether his or her testimony at trial is truthful in whole or in part.

In deciding whether to believe a witness, you should note any evidence of hostility or affection that the witness may have towards one of the parties. Likewise, you should consider evidence of any other interest or motive that the witness may have in cooperating with a particular party. You should also take into account any evidence of any benefit that a witness may receive from the outcome of the case.

It is your duty to consider whether the witness has permitted any such bias or interest to color his or her testimony. In short, if you find that a witness is biased, you should view is or her testimony with caution, weigh it with care, and subject it to close and searching scrutiny.

Of course, the mere fact that a witness is interested in the outcome of the case does not mean he or she has not told the truth. It is for you to decide from your observations and applying your common sense and experience and all the other considerations mentioned whether the possible interest of any witness has intentionally or otherwise colored or distorted his or her testimony. You are not required to disbelieve an interested witness; you may accept as much of his or her testimony as you deem reliable and reject as much as you deem unworthy of acceptance.

You have heard evidence during the trial that witnesses have discussed the facts of the case and their testimony with the lawyers before the witnesses appeared in court. Although you may consider this fact when you are evaluating a witness's credibility, I should tell you that there is nothing unusual or improper about a witness meeting with lawyers before testifying, and it would be unusual for a lawyer to call a witness without such consultation. Again, the weight you give to the fact or nature of the witness's preparation for his or her testimony and what inferences you draw from such preparation are matters completely within your discretion.

You do not have to accept the testimony of any witness who has not been contradicted or impeached if you find the witness not to be credible. You have to decide which witnesses

to believe and which facts are true.  To do this, you must look at all the evidence, drawing upon your own common sense and personal experience.  I have just discussed the criteria for evaluating credibility; keep in mind that the burden of proof is always on the government, and the defendant is not required to call any witnesses or offer any evidence since he is presumed to be innocence ENT.

II. The Indictment.

The defendant, Sean Combs, has been formally charged in an "indictment."  An indictment is not evidence.  As I instructed you at the outset of the case, an indictment is a charge or accusation.  It merely describes the charges made against a defendant.  An indictment is a formal method of bringing a case into court for trial and determination by a jury.  It creates no presumption that a crime was committed, and no inference of any kind may be drawn from an indictment. You may not consider an indictment as any evidence of the defendant's guilt.  The fact that the defendant is the subject of this indictment and is on trial here may not be used against him in any way whatsoever.

I will first summarize the offenses charged in the indictment and then explain in detail the elements of the offense.

III.  Summary of the Indictment

The indictment contains five counts against the

defendant.  I am briefly going to summarize each count, and then I will give you the lay in greater detail.

Count One charges that from at least in or about 2004 through in or about 2024, the defendant conspired, or agreed, with others to conduct and participate, directly and indirectly, in the conduct of the affairs of an enterprise through a pattern of racketeering activity in violation of Title 18, United States Code, Section 1962(d).

Count Two charges that from an at least in or about 2009 up to and including in or about 2018, the defendant committed sex trafficking of Casandra Ventura by force, threats of force, fraud, or coercion, or any combination of such means in violation of Title 18, United States Code, Section 1591 and 2.

Count Three charges that from at least in or about 2009 up to and including in or about 2018, the defendant did knowingly transport individuals, including, but not limited to, Ventura, in interstate or foreign commerce, with intent that such individuals engage in prostitution in violation of Title 18, United States Code sections 2421(a) and 2.

Count Four charges that from at least in or about 2021 up to and including in or about 2024, the defendant committed sex trafficking of Jane by force, threats of force, fraud, or coercion, or any combination of such means in violation of Title 18, United States Code, Sections 1591 and 2.

Count Five of the indictment charges that between in or about 2021 up to and including in or about 2024, the defendant did knowingly transport individuals, including, but not limited to, Jane in interstate or foreign commerce with intent that such individuals engage in prostitution in violation of Title 18, United States Code, Sections 2421(a) and 2 the.

IV.   Multiple Counts.

You must return a separate verdict of not guilty or guilty for each count charged.  Whether you find the defendant not guilty or guilty as to one offense should not affect your verdict as to any other offense.  You must analyze and evaluate the evidence separately as to each count.

V.   Attempt.

Before I instruct you on each of the counts, I will define three concepts:  An "attempt" to commit a crime, "aiding and abetting" the commission of a crime, and "willfully causing" a crime.  The definitions I provide here are for federal offenses only, and each time the government alleges an attempt, aiding and abetting, or willfully causing a crime under federal law, I will refer you back to these definitions. Where state law is at issue, I will separately give you the definitions to use.

Under federal law, in order to find a person guilty under an attempt theory, the government must prove beyond a

reasonable doubt that (1) the person intended to commit the crime charged; and (2) the person willfully took some action that was a substantial step in an effort to bring about or accomplish the crime.

Mere intention to commit a specific crime does not amount to an attempt.  In order to convict the person of an attempt, you must find beyond a reasonable doubt that he intended to commit the crime charged, and that he took some action which was a substantial step toward the commission of that crime.

In determining whether the person's actions amounted to a substantial step toward the commission of the crime, you must distinguish between mere preparation on the one hand and the actual doing of the criminal deed on the other.  Mere preparation, without more, is not an attempt.  The acts of a person who intends to commit a crime will constitute an attempt where the acts themselves indicate intent to willfully commit crime, and the acts are a substantial step in a course of conduct planned to culminate in the commission of the crime.

To be guilty of an attempted crime, there is no requirement that the person have actually committed the crime he was attempting to commit.

VI.  Aiding and Abetting

Next, I will defined for you the concept of "aiding and abetting" under federal law.

Whoever aids, abets, counsels, commands, induces, or procures the commission of an offense is punishable as a principal.  You should give these words their ordinary meaning. A person aids or abets a crime if he knowingly does some act for the purpose of aiding or encouraging the commission of that crime, with the intention of causing the crime charged to be committed.  To "counsel" means to give advice or recommend.  To "induce" means to lead or move by persuasion or influence as to some action or state of mind.  To "procure" means to bring about by unscrupulous or indirect means.  To "cause" means to bring something about or to affect something.

A person who aids and abets another to commit an offense is just as guilty of that offense as if he had committed it himself.  Therefore, if you find that the government has proven beyond a reasonable doubt that a person aided and abetted another individual's commission of an offense, then you may find the person guilty of that offense.

As you can see, the first requirement is that another individual has committed the crime charged.  Obviously, no one can be convicted of aiding and abetting the criminal acts of another if no crime was committed by the other individual.  But if you do find that a crime was committed, then you must evaluate whether the person you are considering — the alleged aider and abettor — actually aided and abetted the other individual's commission of the crime.

To aid and abet another to commit a crime, it is necessary that the person you are considering willfully and knowingly associated himself in some way with the crime, and that he willfully and knowingly sought by some act to help make the crime succeed. An act is done "knowingly" when it is done purposely and intentionally as opposed to mistakenly or inadvertently. An person acts "intentionally" when he acts deliberately and purposefully; that is, the act must have been the product of a conscious objective decision rather than the product of a mistake or accident. To act "willfully" means to act voluntarily with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or to disregard the law, although the defendant need not know the specific law that he is violating.

The mere presence of a person where a crime is being committed, even coupled with knowledge by that person that a crime is being committed, or the mere acquiescence by a person in the criminal conduct of others, even with guilty knowledge, is not sufficient to establish aiding and abetting. An aider and abettor must have some interest in the criminal venture and must take some action to assist or encourage the commission of the crime.

To determine whether a person aided and abetted the commission of the crime with which he is charged, ask yourself these questions:

Did he participate in the crime charged as something he wished to bring about?

Did he associate himself with the criminal venture knowingly and willfully?

Did he seek by his actions to make the criminal venture succeed?

If he did, then the person is an aider and abettor, and therefore guilty of the offense.  If the answer to any one of these questions is no, then the person is not an aider and abettor and is not guilty as an aider and abettor.

VII.  Willfully Causing a Crime.

A person may also be found guilty of a federal crime if he "willfully" causes an act to be done which, if directly performed by him or another, would be an offense against the United States.

What does the term "willfully caused" mean?  It means that the person himself need not have physically committed the crime or supervised or participated in the actual criminal conduct charged in the indictment if he willfully causes the doing of an act which, if done by him, directly would render him guilty of an offense against the United States.

The meaning of the term "willfully caused" can be found in the answers to the following questions:

First, did the person have the mental state required for the offense?

Second, did the person intentionally cause another individual, including an innocent intermediary, to engage in the conduct that makes up the offense?

If you are persuaded beyond a reasonable doubt that the answer to both of these questions is yes, then the person you are considering is guilty of the crime charged just as if he himself had committed it.

VIII.  Count One:  Racketeering Conspiracy

1. Elements of Racketeering Conspiracy

Count One charges the defendant with conspiracy to violate the Racketeer Influenced and Corrupt Organizations Act, otherwise known as the "RICO" statute.  In order to prove that the defendant conspired to violate the RICO statute, the government must prove beyond a reasonable doubt each of the following elements of the offense:

First, that in or about 2004 through in or about 2024, there was an agreement among two or more persons to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity;

Second, that the racketeering enterprise or its activities would have affected, or in fact affected, interstate or foreign commerce;

Third, that the defendant knowingly and willfully joined that agreement; and

Fourth, that the defendant knowingly and willfully

agreed that he or another member of the conspiracy would commit two racketeering acts, as I will define that term for you.

First Element — Agreement to Conduct or Participate in the Affairs of an Enterprise.

The first element the government must establish beyond a reasonable doubt is that there was a conspiracy among two or more persons to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity.

A "conspiracy" is an agreement among two or more persons to achieve an unlawful object.  To show a conspiratorial agreement, the government must prove that two or more persons explicitly or implicitly came to an understanding to achieve the specified unlawful object.

In order for the government to satisfy this element, you need not find that the alleged members of the conspiracy met together and entered into any express or formal agreement. Similarly, you need not find that the alleged conspirators stated, in words or writing, what the scheme was, its object or purpose, or every precise detail of the scheme or the means by which its object or purpose was to be accomplished.

What the government must prove is that there was a mutual understanding, either spoken or unspoken, between two or more people to cooperate with each other to accomplish the unlawful object.

You may, of course, find that the existence of an

agreement to achieve the unlawful object has been established by direct proof. However, since conspiracy is by its very nature characterized by secrecy, you may also infer its existence from the circumstances of this case and the conduct of the parties involved.

In the context of conspiracy cases, actions may speak louder than words. In this regard, you may, in determining whether an agreement existed here, consider the actions and statements of all of those you find to be participants as proof that a common design existed on the part of the persons charged to act together to accomplish the unlawful object.

In this case, the alleged unlawful object is to violate the RICO statute; in other words, to conduct or participate in the affairs of an enterprise through a pattern of racketeering activity.

An "enterprise" is a group of people or entities that have associated together for a common purpose of engaging in a course of conduct. This group, in addition to having a common purpose, must have an ongoing organization, either formal or informal, and structure, and it must have a core of personnel who function as a continuing unit. This group does not have to be a legally recognized organization such as a partnership or corporation.

This group may be organized for a legitimate and lawful purpose, or it may be organized for an unlawful purpose.

That purpose must be common to the group as a whole.  Mere similarity of conduct or the fact that individuals may have assembled together and discussed common aims and interest does not necessarily establish proof of the existence of an enterprise, though you may consider such factors.

There must be an overarching relationship amongst the enterprise members, and the enterprise must be formally or practically separate from the defendant himself.  An enterprise that includes individuals employed by a defendant can be distinct from the defendant himself.

The government has charged that the alleged enterprise in this case consisted of what is called the "Combs Enterprise," which includes:  (i) Sean Combs; (ii) entities within the Combs Business, including, but not limited to, Bad Boy Entertainment, Combs Enterprises, and Combs Global; (iii) individuals employed by and associated with the Combs Business; and (iv) others known and unknown.

If you find that this enterprise existed, you must also determine whether this enterprise continued in a substantially similar form during the period charged in the indictment, in this case from 2004 to 2024.  This does not mean that everyone involved has to be the same, but the core of the enterprise has to be the same throughout.

Second Element — Effect on Interstate and Foreign Commerce.

The second element the government must prove beyond a reasonable doubt is that the criminal enterprise itself, or the racketeering activities of those associated with it, would have had some effect on interstate or foreign commerce, or in fact had such an effect.  Interstate or foreign commerce simply means the movement of goods, services, money, and individuals between any two or more states, or between one state and the District of Columbia or between a state and a U.S. territory or possession, or between the United States and a foreign country. All narcotics activity, even purely local narcotics activity, has an effect on interstate commerce.

The government must prove that the alleged enterprise engaged in or would have engaged in interstate or foreign commerce or that its activities affected or would have affected interstate or foreign commerce in any way, no matter how minimal.  It is not necessary to prove that the acts of the defendant affected interstate or foreign commerce as long as the acts of the alleged enterprise had such effect.

Finally, the government is not required to prove that the defendant knew he was affecting interstate or foreign commerce.

Third Element — Membership in the Conspiracy.

The third element that the government must prove beyond a reasonable doubt is that the defendant knowingly and willfully became a member of the conspiracy charged in the

indictment.

In deciding whether the defendant was in fact a member of the conspiracy, you should consider whether the defendant knowingly and willfully joined the conspiracy.  The defendant must have participated in the conspiracy with knowledge of its unlawful purpose and with the specific intention of further its unlawful objective.  The defendant must be connected to the enterprise in some meaningful way, and the defendant must know of the existence of the enterprise and of the general nature of its activities.

An act is done "knowingly" when it is done purposely and intentionally as opposed to mistakenly or inadvertently.  A person acts intentionally when he acts deliberately and purposefully.  That is, the act must have been the product of a conscious, objective decision rather than the product of a mistake or accident.  To act "willfully" means to act voluntarily with an intent to do something the law forbids; that is to say, with a bad purpose either to disobey or to disregard the law, although the defendant need not know the specific law that he is violating.

The defendant's mere presence at the scene of an alleged crime does not, by itself, make him a member of the conspiracy.  Similarly, mere association with one or more members of the conspiracy does not automatically make the defendant a member.  A person may know or be friendly with a

criminal without being a criminal himself.  Mere similarity of conduct or the fact that they may have assembled together and discussed common aims and interests does not necessarily establish membership in the conspiracy.  What is necessary is that the defendant must have participated with knowledge of the objective of the conspiracy and with the intention of aiding in the accomplishment of that unlawful end.

Fourth Element — Agreement to Commit a Pattern of Racketeering Activity.

The fourth element that the government must prove beyond a reasonable doubt is that the defendant knowingly and willfully agreed to participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity.

The focus of this element is on the defendant's agreement to participate in the unlawful objective of the enterprise to engage in a pattern of racketeering activity. The government must prove that the defendant agreed to participate in the enterprise with the intent that he or another member or members of the conspiracy would commit two or more racketeering acts, which I will describe.  The government is not required to prove either that the defendant agreed to himself commit two racketeering acts or that he himself actually committed two such acts.

A "pattern of racketeering activity" requires at least two acts of racketeering that occurred within ten years of each

other.  To establish an agreement that the enterprise would engage in a pattern of racketeering activity, the government must prove three things beyond a reasonable doubt:

First, the government must prove that the defendant agreed that the defendant or a co-conspirator would commit two or more racketeering acts of the types that I will describe to you.  Two separate acts of the same type are sufficient to satisfy this requirement.  You must be unanimous as to which particular racketeering acts, if any, the defendant agreed would be committed.

Second, the government must prove that the racketeering acts have a "nexus" to the enterprise and the racketeering acts are "related" to one another.  For a Racketeering Act to have a nexus to the enterprise, it must have some meaningful connection to the enterprise.  To satisfy this part of the element, the government must establish that the defendant was enabled to commit the offense solely because of his position in the enterprise or his involvement in or control over the enterprise's affairs, or because the offense related to the activities of the enterprise.  To be "related," the racketeering acts must have the same or similar purposes, results, participants, victims, or methods of commission, or be otherwise interrelated by distinguishing characteristics and not be merely isloated events.

Third, the government must prove that the racketeering

acts pose a threat of continued racketeering activity. To satisfy this requirement, the government must prove beyond a reasonable doubt that (1) the acts are part of a long-term association that exists for criminal purposes, or (2) the acts are a regular way of conducting the affairs of the enterprise.

Pattern of Racketeering — Racketeering Acts — Generally.

I am now going to explain the specific racketEering acts that are alleged in the indictment. There are eight of them, and I am going to go through them one by one. The indictment alleges that the following racketeering acts were or were intended to be committed as part of the conspiracy.

a. acts involving kidnapping, chargeable under certain provisions of California and New York law;

b. acts involving arson, chargeable under certain provisions of California law;

c. acts involving bribery, chargeable under certain provisions of California law;

d. acts involving tampering with a witness, victim or an informant, chargeable under federal law;

e. acts involving forced labor, chargeable under federal law;

f. acts involving sex trafficking, chargeable under federal law.

g. acts involving transportation and inducement to

travel for purposes of prostitution and other illegal sexual activities, chargeable under federal law; and

h. offenses involving the possession with intent to distribute or distribution of narcotics and controlled substances, chargeable under federal law.

In a moment, I will instruct you on the substantive law of each of these offenses. Before I do, let me remind you that the government must prove beyond a reasonable doubt that the defendant agreed that either he or a co-conspirator would commit two of these offenses within ten years of each other as part of the charged racketeering conspiracy. As I have said, the government need not prove that the defendant himself commit the or agreed to personally commit any of these offenses, nor is the government required to prove that any acts of racketeering actually occurred. You will also note that for some of the charged categories of offenses, the government alleges a violation of more than one statute. You need not find that the object of the conspiracy involved violations of all the statutes pertaining to that offense; rather, you need only find as that it involved the violation of at least one of the specified statutes pertaining to that offense. However, you must be unanimous as to which one.

Alleged Racketeering Acts

I will now explain the law governing the eight types of racketeering acts that the government has alleged were

committed or intended to be committed as part of the racketeering conspiracy. When I say "conspirator," in the following instructions, I mean either the defendant or a co-conspirator.

Act 1 — Kidnapping

The first category of criminal violations is kidnapping, chargeable under California and New York law. I will instruct you separately on the elements of kidnapping under the laws of both California and New York, starting with California.

Kidnapping Under California Law.

California Penal Code, Section 207(a) makes it a crime to "forcibly, or by any other means of instilling fear, steal, or take, or hold, detain, or arrest any person in California and carry the person into another country, state, or county, or into another part of the same county."

To prove a violation of California Penal Code, Section 207(a), the following four elements must be met:

1. A conspirator took, held, or detained another person by using force or by instilling reasonable fear;

2. Using that force or fear, the conspirator moved the other person or made the other person move a substantial distance;

3. The other person did not consent to the movement; and

4.  The conspirator did not actually and reasonably believe that the other person consented to the movement.

With respect to the second element, "substantial distance" means more than a slight or trivial distance.  In deciding whether the distance was substantial, you must consider all the circumstances relating to the movement.

With respect to the third element, a conspirator is not guilty of kidnapping if the other person consented to go with the conspirator.  The other person consented if he or she (1) freely and voluntarily agreed to go with or be moved by the conspirator, (2) was aware of the movement, and (3) had sufficient maturity and understanding to choose to go with the conspirator.  Consent may be withdrawn if the person changes his or her mind and no longer freely and voluntarily agrees to go with or be moved by the conspirator.

With respect to the fourth element, a conspirator is not guilty of kidnapping if he reasonably and actually believed that the other person consented to the movement, even if the other person did not actually consent.

Aiding and Abetting Kidnapping Under California Law.

In addition to alleging a violation of the substantive offense of kidnapping under California Penal Code, Section 207(a), the government alleges aiding and abetting that offense.  I will now instruct you on "aiding and abetting kidnapping."  Because the kidnapping offense involved is

defined by California state law, you should apply the following California state law definition of aiding and abetting, not the federal definition that I have already provided to you.

Under California law, a person may be guilty of a crime if he "aids and abets" a perpetrator who directly committed the crime.

Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime.  If all of these requirements are proved, a person does not need to actually have been present when the crime was committed to aid and abet the crime's commission.

To prove that an alleged conspirator aided and abetted kidnapping under California law, the following four elements must be met:

1.  A perpetrator committed kidnapping;

2.  The conspirator knew that the perpetrator intended to commit kidnapping;

3.  Before or during the commission of the crime, the conspirator intended to aid and abet the perpetrator in committing kidnapping; and

4.  The conspirator did in fact aid and abet the perpetrator's commission of kidnapping.

Kidnapping Under New York Law.

I will now discuss kidnapping under New York law.  New York Penal Law, Section 135.20 makes it a crime for a person to "abduct another person."

"Abduct" means to restrain a person with intent to prevent that person's liberation either by secreting or holding him or her in a place where he or she is not likely to be found or by using or threatening to use deadly physical force.

(Continued on next page)

THE COURT: (Continuing) The terms "restrain," "intent, and "deadly physical force" used in that definition of "abduct" have a special meaning, which I will now instruct you on.

"Restrain" means to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his or her liberty by moving him or her from one place to another, or by confining him or her either in the place where the restriction commences or in a place to which he or she has been moved without consent and with knowledge that the restriction is unlawful. A person restricts another's movements intentionally when his or her conscious objective or purpose is to restrict that person's movements. A person restricts another's movements unlawfully when he or she is not authorized by law to do so.

Under New York law, with certain exceptions not applicable here, a person is not authorized by law to restrict another's movements. A person is moved or confined without consent when such is accomplished by physical force, intimidation, or deception.

"Intent" means conscious objective or purpose. Thus, a person acts with intent to prevent another's liberation either by secreting or holding him or her in a place where he or she is not likely to be found, or by using or threatening to use deadly physical force, when that person's conscious

objective or purpose is to do so.

"Deadly physical force" means physical force which, under the circumstances in which it is used, is readily capable of causing death or other serious physical injury.  "Serious physical injury" means impairment of a person's physical condition which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health, or protracted loss or impairment of the function of any bodily organ.

Accordingly, to prove a violation of New York Penal Law Section 135.20, the following five elements must be met:

(1) that a conspirator restricted another person's movements in such manner as to interfere substantially with the other person's liberty by moving the other person from one place to another, or by confining the other person either in the place where the restriction commenced or in a place to which the other person had been moved;

(2) that the conspirator did so without the consent of the other person;

(3) that the conspirator did so intentionally;

(4) that the restriction of the other person's movements was unlawful, and the conspirator knew that the restriction was unlawful; and

(5) that the conspirator restrained the other person with intent to prevent the other person's liberation either by

secreting or holding the other person in a place where the other person was not likely to be found, or by using or threatening to use deadly physical force.

Aiding and abetting kidnapping under New York law.

In addition to alleging a violation of the substantive offense of kidnapping under New York Penal Law Section 135.20, the government alleges aiding and abetting that offense. I will now instruct you on the aiding and abetting kidnapping under New York law. Again, because the kidnapping offense involved is defined by New York State law, you should apply the following New York State law definition of aiding and abetting, not the federal definition or the California State law definition that I have already provided to you.

Under New York law, aiding and abetting is a crime whereby one person is held criminally liable for the conduct of another. Specifically, when one person engages in conduct which constitutes an offense, another is criminally liable for such conduct when, acting with the state of mind required for the commission of that offense, he or she solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

Under that definition, mere presence at the scene of a crime, even with knowledge that a crime is taking place, or mere association with a perpetrator of a crime, does not by itself make a person criminally liable for that crime.

Accordingly, in order to be held criminally liable for aiding and abetting the conduct of another that constitutes kidnapping under New York law, the following two elements must be met:

The conspirator solicited, requested, commanded, importuned, or intentionally aided another person to engage in conduct that constitutes kidnapping under New York law; and

(2) the conspirator did so with the state of mind required for the commission of kidnapping, on which I have previously instructed you.

If it is proven that the conspirator is criminally liable for aiding and abetting, the extent or degree of the conspirator's participation in the crime does not matter.  A conspirator proven beyond a reasonable doubt to be criminally liable for the conduct of another in the commission of a crime is as guilty of the crime as if the conspirator personally had committed every act constituting the crime.

The government has the burden of proving that the conspirator acted with the state of mind required for the commission of the crime, and either personally, or by acting in concert with another person, committed each of the remaining elements of the crime.

That completes my instructions pertaining to the first alleged criminal violation, kidnapping.

Act No. 2 — Arson Under California Law.

The next category of criminal violation is arson, in

violation of California law, Penal Code Section 451.  That Section makes it a crime to willfully and maliciously set fire to or burn or cause to be burned or aid, counsel, or procure the burning of, any structure, forest land, or property.

To prove a violation of California Penal Code Section 451, the following two elements must be met:

(1) The conspirator set fire to or burned or counseled or helped or caused the burning of property; and

(2) the conspirator acted willfully and maliciously.

With respect to the first element, to set fire to or burn means to damage or destroy with fire either all or part of something, no matter how small the part.  Property means personal property or a land other than forest land.

With respect to the second element, someone commits an act willfully when he or she does it willingly or on purpose. And someone acts maliciously when he or she intentionally does a wrongful act under circumstances in which the direct, natural, and highly probable consequence would be the burning of the property.

Aiding and abetting arson under California law:

In addition to alleging a violation of the substantive offense of arson under California Penal Law Section 451, the government also alleges aiding and abetting the commission of that offense under California law.  I have already instructed you on aiding and abetting under California law.  You should

consult that instruction when considering whether the government has proven aiding and abetting arson under California law.

That completes my instructions pertaining to the second alleged criminal violation, arson.

Act 3 — Bribery of a Witness Under California Law.

The next category of criminal violation is bribery chargeable under California law. California Penal Code Section 137(a) makes it a crime to give or offer, or promise to give, to any witness, person about to be called as a witness, or person about to give material information pertaining to a crime to a law enforcement official, any bribe, upon any understanding or agreement that the testimony of such witness or information given by such person shall be thereby influenced.

To prove a violation of California Penal Code Section 137(a), the following two elements must be met:

(1) A conspirator gave or offered or promised a bribe to a witness or a person about to be called as a witness or a person about to give material information to a law enforcement official about a crime; and

(2) The conspirator acted with the corrupt intent to persuade the witness or person to agree that the bribe would unlawfully influence the testimony or information that the witness or person would give.

With respect to the first element, "bribe" means something of present or future value or advantage, or a promise to give such a thing, that is given or offered with the corrupt intent to unlawfully influence the testimony or information of the person to whom the bribe is given.  "Witness" means someone who knows about the existence or nonexistence of facts relating to a crime.  A person is about to be called as a witness if he or she knows or has been told that he or she will be called as a witness or if he or she knows material information relating to the issues in a case that has been or may be filed. Information is material if it is significant or important.

Offering a bribe does not require specific words or behavior, as long as the language used and the circumstances clearly show an intent to bribe.  The thing offered does not need to actually be given, exist at the time it is offered, or have a specific value.

With respect to the second element, a person acts with corrupt intent when he or she acts to wrongfully gain a financial or other advantage for himself, herself, or someone else.

Attempted and Aiding and Abetting Bribery Under California Law:

In addition to alleging a violation of the substantive offense of bribery under California Penal Law Section 137(a), the government also alleges attempt to commit or aid and abet

the commission of that offense under California law.  I've already instructed you on aiding and abetting under California law.  You should consult that instruction when considering whether the government has proven aiding and abetting bribery under California law.

To prove that an alleged conspirator attempted to commit bribery under California law, the following two elements must be met:

(1) The conspirator took a direct, but ineffective, step towards committing bribery; and

(2) The conspirator intended to commit bribery.

With respect to the first element, a direct step requires more than merely planning or preparing to commit bribery or obtaining or arranging for something needed to commit bribery.  A direct step is one that goes beyond planning or preparation and shows that a person is putting his or her plan into action.  A direct step indicates a definite and unambiguous intent to commit bribery.  It is a direct movement towards the commission of the crime after preparations are made.  It is an immediate step that puts the plan in motion so that the plan would have been completed if some circumstance outside the plan had not interrupted the attempt.

With respect to the second element, to decide whether the conspirator intended to commit bribery under California Penal Law Section 137(a), please refer to the instructions that

I have given you on the elements of the crime of bribery.

That completes my instructions pertaining to the third alleged criminal violation — bribery.

Act 4 — Witness Tampering.

The next category of criminal violations is witness tampering, in violation of Title 18, United States Code, Section 1512(b)(3).

To prove a violation of Section 1512(b)(3), the government must prove each of the following elements:

First, the conspirator knowingly used intimidation, threatened, or corruptly persuaded an individual or attempted to do so, or engaged in misleading conduct towards that individual;

And, second, the conspirator acted knowingly and with the intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense.

With respect to the first element, use the following definitions:

"Intimidation" includes frightening a person, inspiring or affecting him or her by fear, or deterring him or her by threats.  It does not matter whether or not the person alleged to be the object of the threat is actually frightened, or thinks he is in danger.  It is enough that the threat had a

reasonable tendency to make the person fearful.

A "threat" is simply the expression of an intention to do harm.  A threat may be communicated by words, as well as gestures.  In order to find that the conspirator used threats, as charged in the indictment, you need not find that he intended to carry out the threat.  The question is whether the threat has a reasonable tendency to intimidate.

To "corruptly persuade" means to act knowingly with an improper purpose and consciousness of wrongdoing to convince or induce another person to engage in certain conduct.

"Misleading conduct" means (a) knowingly making a false statement, or (b) intentionally omitting information from a statement, and thereby causing a statement to be misleading, or (c) intentionally concealing a material fact and thereby creating a false impression by such statement.

An act is done "knowingly" when it is done purposely and intentionally, as opposed to mistakenly or inadvertently.

Again, the second element the government must prove is that the conspirator acted knowingly and with the intent to hinder, delay, or prevent the communication to a law enforcement officer or judge of the United States of information relating to the commission or possible commission of a federal offense.

If you find that the conspirator acted with the intent to hinder or prevent communication by the witness, victim, or

informant to a specific law enforcement officer or group of officers, this element is satisfied if that officer or one of the group of officers was a federal law enforcement officer. A federal law enforcement officer is an officer or employee of the federal government who is authorized to act on behalf of the federal government in the prevention, detection, investigation, or prosecution of federal crimes, or a probation or pretrial services officer. Such law enforcement officers include, among others, agents of the Homeland Security Investigations and representatives of the United States Attorney's Office of the Southern District of New York. The government is not required to prove that the conspirator knew that the officer was a federal law enforcement officer.

On the other hand, if you find that the conspirator was not acting with the intent to prevent communication to a particular officer or group of officers, then this element is satisfied only if the government proves that there was a reasonable likelihood that had the witness, victim, or informant been able to communicate with law enforcement officers, at least one relevant communication would have been made to a federal law enforcement officer. A reasonable likelihood means that the likelihood of communication to a federal officer was more than remote, outlandish, or simply hypothetical.

Attempted Witness Tampering:

This is also charged as attempted witness tampering. I have already instructed you on what is required to find a person guilty under an attempt theory under federal law. You should apply that definition here.

The next category of criminal violation is forced labor, in violation of Title 18, United States Code, Section 1589(a).

Under Title 18, United States Code, Section 1589(a), the government must prove each of the following elements:

First, that the conspirator obtained or provided the labor or services of another individual;

Second, that the conspirator (1) used force or physical restraint, or a threat of force or physical restraint, against that individual or any other individual; (2) used a threat of serious harm to or seriously harmed that individual or any other individual; or (3) used a scheme, plan, or pattern intended to cause the individual to believe that, if the person did not perform such labor or services, that individual or another individual would suffer serious harm or physical restraint; and

Third, that the conspirator acted knowingly.

I will now define certain of the terms I just used.

To "obtain" means to gain or acquire. "Labor" means the expenditure of physical or mental effort, especially when fatiguing, difficult, or compulsory. "Services" means the

performance of work commanded or paid for by another.  The government does not have to prove that "labor or services" were paid for in the economic sense, although that would satisfy this element.

A "threat" is a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner.  For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm.  In addition, the defendant must have made the statement intending it to be a threat or with the knowledge that the statement would be viewed as a threat.

Some warnings by an employer to an employee can be legitimate.  Warnings of alleged but adverse consequences of an employee's actions, standing alone, are not sufficient to violate the forced labor statute.  It is for you to determine whether any conduct constituted legitimate warnings, on the one hand, or threats as I just defined that term to you.

In determining whether the defendant made a threat of serious harm that could reasonably be believed by an individual, you should consider the individual's particular station in life, physical and mental condition, age, education, training, experience, and intelligence.  A threat of serious

harm must be sufficient in kind or degree to completely overcome the will of an ordinary person having the same general station in life as that of the individual, causing a reasonable belief that there was no reasonable choice except to provide labor and services to the conspirator. In making that determination, you may consider the cumulative effect of the conduct of the conspirator on the alleged victim.

You should give the ordinary meaning to the words "scheme," "plan," and "pattern." The scheme, plan, or pattern does not have to involve actual threats of serious harm, but may involve any other means, including deception or psychological coercion used to cause the person to reasonably believe that she, her family, or any other person would suffer serious harm if she refused to continue providing labor or services.

The term "serious harm" includes both physical and nonphysical types of harm, including psychological, financial, or reputational harm. A threat of serious harm includes any threat that is sufficient under all of the surrounding circumstances to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing labor or services in order to avoid incurring that harm.

With respect to the second element, the government must prove a causal link between the labor and services

performed and the harm or restraint at issue.

It is not a defense to the crime of forced labor that the individual might have initially agreed voluntarily to render the service or perform the labor. If an individual willingly begins service or labor, but later wants to withdraw, her service becomes involuntary if the elements of forced labor are later met.

With respect to the third element, the government must prove that the conspirator acted knowingly. An act is done "knowingly" when it is done purposely and intentionally, as opposed to mistakenly or inadvertently. Specifically, the conspirator must knowingly provide or obtain the labor or services of an individual by any one of, or combination of, the means I identified above in discussing the second element of the offense.

Aiding and Abetting Forced Labor:

In addition to alleging a violation of the substantive offense of forced labor, the government also alleges aiding and abetting the commission of that offense. I have already instructed you on aiding and abetting liability under federal law, and you should apply that definition here.

That completes my instructions pertaining to the fifth alleged criminal violation, forced labor.

The next category of criminal violations is sex trafficking, in violation of Title 18, United States Code,

Section 1591.

Now I'm going to define the elements of Section 1591(a) when I explain Counts Two and Four. You should apply those same definitions here.

The government also alleges obstruction related to sex trafficked by force, fraud, or coercion, in violation of Title 18 of the United States Code, Section 1591(d), which states, in pertinent part: "Whoever obstructs, attempts to obstruct, or in any way interferes with or prevents the enforcement of this section shall be guilty of the crime."

To prove a conspirator is guilty of this crime, the government must prove the following two elements:

First, the conspirator obstructed, attempted to obstruct, or in any way interfered with or prevented the enforcement of Title 18, United States Code, Section 1591, which is the crime of sex trafficking by force, fraud, or coercion, that is charged in Counts Two and Four;

And, second, the conspirator acted knowingly.

With regard to the first element, the government must prove that the conspirator obstructed, attempted to obstruct, or in any way interfered with or prevented the enforcement of the sex trafficking statute. The government is not required to prove that the conspirator did each of those acts.

In addition, with respect to your consideration of whether the person obstructed, attempted to obstruct, or

interfered with or prevented the enforcement of the crime of sex trafficking, I instruct you to use the ordinary, everyday definitions of those terms. "Obstruct" means to be or come in the way of. "Interfere" means to come in between so as to be an impediment or to intrude in the affairs of others. "Prevents" means to keep from happening or to keep someone from doing something.

A conspirator attempts to commit obstruction if the conspirator (1) knowingly takes a substantial step towards obstructing the enforcement of the sex trafficking statute, (2) with the intent to obstruct the enforcement of the sex trafficking statute. A "substantial step" is something more than mere preparation.

This crime requires that the conspirator acted knowingly. An act is done knowingly when it is done purposely and intentionally, as opposed to mistakenly or inadvertently.

The government need not prove a violation of Section 1591(a) to prove a violation of Section 1591(d). In addition, to prove this count beyond a reasonable doubt, the government need not prove that the conspirator knew of the federal statute outlawing sex trafficking by force, fraud, or coercion, nor that the conspirator was aware of the federal nature of the investigation or prosecution.

Aiding and Abetting Obstruction:

In addition to alleging a violation of the substantive

offense under Section 1591(d), the indictment also alleges aiding and abetting the commission of that offense.  I have already instructed you on aiding and abetting liability under federal law, and you should apply that definition here.

That completes my instructions pertaining to the sixth alleged criminal violation, sex trafficking.

The next category of criminal violations is transportation to engage in prostitution, in violation of Title 18, United States Code, Sections 2421 and 2422(a).

With respect to Title 18, United States Code, Section 2421, I will define the elements of that offense when I explain Counts Three and Five.  You should apply those same definition here.

With respect to Title 18, United States Code, Section 2422(a), to prove a violation of this statute, the following elements of the offense must be met:

First, that a conspirator knowingly persuaded or induced or enticed or coerced a person to travel in interstate or foreign commerce;

Second, that said person traveled in interstate or foreign commerce;

Third, that conspirator acted with the intent that said person would engage in prostitution.

As to the first element, the government must prove that the conspirator knowingly persuaded or induced or enticed

or coerced an individual to travel in interstate or foreign commerce. An act is done knowingly when it is done purposely and intentionally, as opposed to mistakenly or inadvertently.

As to the second element, "interstate or foreign commerce" simply means the movement of goods, services, money, and individuals between any two or more states, or between one state and the District of Columbia, or between a state and a United States territory or possession, or between the United States and a foreign country. The terms "persuaded," "induced," "enticed," and "coerced" have their ordinary everyday meanings.

As to the third element, the government need not prove that prostitution was the conspirator's sole purpose in encouraging individuals to travel across state or international lines. A person may have several different purposes or motives for such conduct, and each may prompt, in varying degrees, the person's actions. The government must prove beyond a reasonable doubt that a significant or motivating purpose of encouraging individuals to travel across state or international lines was that these individuals would engage in prostitution. In other words, the conspirator's intent that the individual engage in that prostitution may not have been merely incidental to the transportation. The intent of the individuals who traveled or engaged in the illegal sexual activity is not the issue.

Aiding and Abetting and Willfully Causing a Violation of Sections 2421 and 2422(a):

In addition to alleging a violation of the substantive offenses of transportation to engage in prostitution and inducement, the indictment also alleges aiding and abetting the commission of these offenses, or willfully causing those offenses.  I have already instructed you on aiding and abetting liability under federal law, and you should apply that definition here.  I have also already instructed you on willfully causing a crime under federal law, and you should apply that definition here.

Act 8 — Possession with Intent to Distribute Controlled Substances:

The next category of criminal violation is possession with intent to distribute, or distribution of narcotics and controlled substances, including cocaine, oxycodone, alprazolam, 3, 4- — this long word that you see here — Methylenedioxymethemphetamine, gamma hydroxybutyric acid, ketamine, psilocyn, and methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(c), and (b)(1)(E).

The elements of distributing or possessing with intent to distribute a controlled substance are:

(1) The conspirator distributed a controlled substance, or possessed a controlled substance with intent to

distribute;

(2) The conspirator did so knowingly and intentionally; and

(3) The substance was, in fact, a controlled substance.

Now I want to explain several terms:

The word "distribution" means actual, constructive, or attempted transfer.  To distribute simply means to deliver, to pass over, or to hand over something to another person, or to cause it to be delivered, passed on, or handed over to another. Distribution does not require a sale.

Next, what does "possess with intent to distribute" mean?  I will begin with the concept of "possession."  The legal concept of possession may differ from the everyday usage of that term, so let me explain it in some detail.

Actual possession is what most of us think of as possession; that is, having physical custody or control of an object, as I possess this pen.  If you find that an individual had a controlled substance on his or her person, therefore, you may find that he or she had possession of it.  However, a person need not have actual, physical possession — that is, physical custody — of an object in order to be in legal possession of it.  If an individual has the ability to exercise substantial control over an object, even if he does not have the object in his physical custody, and that person has the

intent to exercise such control, then he is in possession of that object.  This is called "constructive possession."

Possession of drugs cannot be found solely on the ground that the person was near or close to the drugs.  Nor can it be found simply because the person was present at a scene where drugs were involved, or solely because the person associated with another individual who did control the drugs or the property where they were found.  However, these factors may be considered by you, in connection with all the other evidence, in making your decision whether a person possessed the drugs.

"Control" over an object may be demonstrated in many ways.  A person can possess a controlled substance because he or she has an agreement with a person who has physical custody of the controlled substance.  In addition, an individual may have possession of an item that is not found on his or her person, because that individual has a relationship to the location where the item is maintained.

More than one person can have control over the same item.  The law recognizes that possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is "sole."  If more than one person has possession of it, as I have defined possession for you, then possession is "joint."

Finally, possession and ownership are not the same.  A

person can possess an object and not be the owner of an object. That is what is meant by "possession."

"Possession with intent to distribute" simply means that a person possessed a controlled substance with a state of mind or purpose to transfer it to another person. Since no one can read another's mind, the determination as to a person's intent can be inferred from his or her behavior, and any other facts and circumstances you find relevant to the question.

If a person possessed drugs solely for his personal use, rather than for the purpose of distributing them to anyone else, then the person did not intend to distribute the drugs. A small quantity of drugs standing alone is insufficient to prove intent to distribute. But any amount of drugs, however small, can support a finding that a person possessed narcotics with intent to distribute as long as there is additional evidence of intent to distribute.

In this context, "knowledge" requires the government to prove that the person knew that he possessed narcotics, and that his possession was not due to carelessness, negligence, or mistake. If you find that the person did not know that he had narcotics in his possession, or that he did not know that what he possessed was, in fact, narcotics, then you must find that there was no violation of federal narcotics law. Although the government must prove that the person knew that he possessed narcotics, the government does not have to prove that the

person knew the exact nature of the drugs in his possession. It is enough that the government proves that the person knew that he possessed some kind of narcotic.

Finally, you are instructed, as a matter of law, that cocaine, oxycodone, alprazolam, 3, 4-Methylenedioxymethamphetamine, gamma hydroxybutyric acid, ketamine, psilocyn, and methamphetamine are each a controlled substance.

Conspiracy to Violate the Narcotics Laws:

Title 21, United States Code, Section 846, makes it a separate crime for an individual to conspire with others to violate the narcotics laws of the United States.  To be guilty of narcotics conspiracy, the government must prove:

(1) that there was an agreement or understanding to violate those provisions of the law that make it illegal to distribute controlled substances or to possess controlled substances with the intent to distribute them;

(2) that the person intentionally and knowingly became a member of the conspiracy charged; that is, that he knowingly associated himself with the conspiracy, and participated in the conspiracy to distribute or possess with the intent to distribute controlled substances.

I have already instructed you on the federal law of conspiracy.  You should apply those instructions here.

Let me note that the government need prove only that

the person conspired to distribute at least one of the specified controlled substances or that he conspired to possess at least one of the specified controlled substances with the intent to distribute it.  But if you find that only some of the controlled substances have been proven, you must be unanimous as to which ones you find have been proven.  That is, to find the person guilty of the crime of conspiracy, you need to find that the person agreed with at least one other person to distribute at least one of the specified controlled substances, or to possess with the intent to distribute that controlled substance, or to do both of those things.

An individual's agreement to buy controlled substances from a seller does not establish that the buyer joined with the seller in a conspiracy to distribute or possess with intent to distribute those controlled substances.  And the buyer's contact with drug traffickers, without more, is not sufficient to prove that the buyer participated in such a conspiracy.  In other words, the agreement to distribute from one conspirator to another cannot also be the agreement that forms the conspiracy.

The quantities of the drug involved in the charged conspiracy are not elements of the crime, so you need not be concerned with quantity in determining whether the government has sustained its burden.

All right.  RICO Statute of Limitations:

Now, Count One has a five-year statute of limitations. Therefore, you must determine whether the RICO conspiracy charged in Count One continued beyond September 12, 2019. A conspiracy ends when the objectives of a conspiracy have been achieved or when all members of the conspiracy have withdrawn from it. However, a conspiracy may be a continuing conspiracy, and if it is, it lasts until there is some affirmative showing that it has ended or that all its members have withdrawn. A conspiracy may be a continuing one if the agreement includes an understanding that the conspiracy will continue over time. Also, a conspiracy may have a continuing purpose or objective and, therefore, may be a continuing conspiracy. If a continuing conspiracy is shown to exist, the burden is on the defendant to prove that the conspiracy was terminated or that he took affirmative steps to withdraw. Termination of the conspiracy requires evidence from which the jury could have found that the goals of the conspiracy were accomplished in some final manner.

In sum, if you find that the government proved, beyond a reasonable doubt, each of the elements of racketeering conspiracy, then you should find the defendant guilty of Count One. On the other hand, if you find that the government has not proved, beyond a reasonable doubt, any one of those essential elements, then you must find the defendant not guilty of Count One.

Special Sentencing Factor:

The government has alleged a special sentencing factor with respect to Count One.  If you find the defendant not guilty of Count One, then you need not consider this factor. If you find him guilty of Count One, you must consider whether the government has proven this special sentencing factor.  To prove this special sentencing factor, the government must prove beyond a reasonable doubt that sex trafficking of Casandra Ventura or Jane was within the scope of the pattern of racketeering activity that the defendant agreed would be committed.  I will provide you with instructions on the law governing sex trafficking in connection with Counts Two and Four, and you should follow those instructions here.

And here we are Counts Two and Four:  Sex Trafficking.

I will now explain these counts, which charge sex trafficking by force, threats of force, fraud, or coercion, or any combination of such means, in violation of Title 18, United States Code, Section 1591(a)(1).

Count Two of the indictment charges that, from at least in or about 2009, up to and including in or about 2018, the defendant committed sex trafficking by force, threats of force, fraud, or coercion, or any combination of such means, with respect to Casandra Ventura.

Count Four of the indictment charges that, from at least in or about 2021, up to including in or about 2024, the

defendant committed sex trafficking by force, threats of force, fraud, or coercion, or any combination of such means, with respect to Jane.

You must consider and render a verdict on each count separately.

The Elements of Sex Trafficking by Force, Threats of Force, Fraud, or Coercion, or Any Combination of Such Means:

In order to prove the defendant guilty of sex trafficking by force, threats of force, fraud, or coercion, or any combination of such means, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person by any means;

Second, that the defendant knew or recklessly disregarded the fact that force, threats of force, fraud, or coercion, or any combination of such means, would be used to cause the alleged victim to engage in a commercial sex act;

Third, that the defendant's conduct was in or affecting interstate or foreign commerce.

The first element: The first element of the offense is that the government must prove beyond a reasonable doubt that the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained Casandra Ventura, for Count Two, or Jane, for Count Four, by any means.

With respect to your consideration of whether the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person, I instruct you to use the ordinary, everyday definitions of those terms. "Recruited" means to seek to enroll. "Entice" means to attract, induce, or lure. "Harbor" means to provide shelter, such as in a house or other place. "Transport" means to take or convey from one place to another. "Provide" means to furnish, supply, or make available. "Obtain" means to gain possession of or acquire. "Maintain" means to keep in an existing state or support.

An act is done knowingly when it is done purposely and intentionally, as opposed to mistakenly or inadvertently.

The second element of the offense is that the government must prove beyond a reasonable doubt that the defendant knew or knowingly regarded that force, threats of force, fraud, or coercion, or any combination of such means, would be used to cause the alleged victim to engage in a commercial sex act.

"Fraud," as I just used that term, means that the defendant knowingly made a misstatement or omission of a material fact. A material fact is one that would reasonably be expected to be of concern to a reasonable person in relying upon the representation or statement in making a decision.

There are two ways for the government to prove

coercion:

First, coercion may be demonstrated through any threat of serious harm or physical restraint against the person.

A threat is a serious statement expressing an intention to inflict harm, at once or in the future, as distinguished from idle or careless talk, exaggeration, or something said in a joking manner. For a statement to be a threat, the statement must have been made under such circumstances that a reasonable person who heard or read the statement would understand it as a serious expression of an intent to cause harm. In addition, the defendant must have made the statement intending it to be a threat, or with the knowledge that the statement would be viewed as a threat. The term "serious harm" includes both physical and nonphysical types of harm, including psychological, financial, or reputational harm, that is sufficient under all the surrounding circumstances to compel a reasonable person of the same background and in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid incurring that harm. In determining whether the defendant made a threat of serious harm that could reasonably be believed by the alleged victim, you should consider the alleged victim's particular station in life, physical and mental condition, age, education, training, experience, and intelligence. A threat of serious harm must be sufficient in

kind or degree to overcome the will of an ordinary person having the same general station in life as that of an alleged victim, causing a reasonable belief that there was no reasonable choice except to engage in a commercial sex act, as directed by the defendant.

"Coercion" can also be proved if the defendant engaged in a scheme, plan, or pattern intended to cause the alleged victim to believe that if he or she did not engage in a commercial sex act, he or she would suffer serious harm.

In determining whether this element has been met, you may consider the cumulative effect of the conduct of a defendant on the alleged victim or the conduct of the defendant on others of which the alleged victim is aware.

To satisfy the second element of this offense, the government must also prove that the defendant knew or was in reckless disregard of the fact that force, threats of force, fraud, coercion, or any combination of such means, would be used to cause a person to engage in a commercial sex act.

Whether or not the defendant had this intent is a question of fact to be determined by you on the basis of all the evidence. An act is done knowingly when it is done purposely and intentionally, as opposed to mistakenly or inadvertently. Even if the evidence does not establish actual knowledge, this element is satisfied if you find the government has proven, beyond a reasonable doubt, that the defendant acted

with reckless disregard that force, threats of force, fraud, coercion, or a combination of such means, would be used to cause an alleged victim to engage in a commercial sex act. The phrase "reckless disregard of the facts" means deliberate indifference to facts that, if considered and weighed in a reasonable manner, indicate the highest probability that force, threats of force, fraud, or coercion, or any combination of such means, would be used to cause the alleged victim to engage in a commercial sex act. In order to prove beyond a reasonable doubt that a defendant recklessly disregarded this fact, the government must prove that such person deliberately closed his or her eyes to what would otherwise have been obvious to him or her. A finding beyond a reasonable doubt of the intent of the defendant to avoid knowledge or an enlightenment would permit the jury to find that this element has been satisfied.

A commercial sex act is any sex act on account of which anything of value is given to or received by any person. A thing of value need not involve a monetary exchange and need not have any financial component. The defendant need not be the person who received the thing of value from the sex act. Also note that it is not required that the alleged victim actually performed a sex act as long as the government has proved that the defendant recruited, enticed, harbored, transported, provided, obtained, or maintained the alleged victim for purposes of engaging in a commercial sex act.

The third element that the government must prove beyond a reasonable doubt is that the defendant's conduct was in or affecting interstate or foreign commerce.

Interstate or foreign commerce simply means the movement of goods, services, money, and individuals between any two or more states, or between one state and the District of Columbia, or between a state and a United States territory or possession, or between the United States and a foreign country.

It is not necessary for the government to prove that the defendant specifically knew or intended that his conduct would affect interstate commerce; it is only necessary that the natural consequences of such conduct would affect interstate commerce in some way, even if minor.

Unanimity:

The government has argued that the defendant committed sex trafficking with respect to Casandra Ventura between 2009 and 2018, for Count Two, or Jane, between 2021 and 2024, for Count Four. For each count, to find the defendant guilty, you must be unanimous that the government proved beyond a reasonable doubt all of the elements of the charge with respect to at least one specific instance of alleged sex trafficking within that period.

Counts Three and Five:  Transport with Intent to Engage in Prostitution.

I will now explain Counts Three and Five. You must

consider and render a verdict on each count separately.

In order to prove the defendant guilty of transporting an individual for the purpose of prostitution, the government must prove each of the following elements beyond a reasonable doubt:

First, that the defendant knowingly transported an individual in interstate or foreign commerce; and

Second, that the defendant intended that the individual would engage in an act of prostitution.

The first element:

Interstate or foreign commerce simply means the movement of goods, services, money, and individuals between any two or more states, or between one state and the District of Columbia, or between a state and a United States territory or possession, or between the United States and a foreign country. The phrase "transport an individual in interstate or foreign commerce" means to move or carry or cause someone to be moved or carried from one state to another or one country to another.

The government must prove that the defendant knowingly transported the individual across state or foreign borders either personally or through an agent, or that the defendant knowingly arranged for the transportation of the individual across a state or a foreign border.  This means that the government must prove that the defendant knew both that he was transporting, or causing to be transported, the individual, and

that he was transporting, or causing to be transported, the individual in interstate or foreign commerce. An act is done knowingly when it is done purposely and intentionally, as opposed to mistakenly and inadvertently.

The government does not need to prove that the defendant personally transported the individual across a state or country line. It is sufficient to satisfy this element that the defendant was actively engaged in the making of travel arrangements, such as by purchasing, or causing the purchase of, the tickets or accommodations necessary for the individual to travel as planned.

The second element — intent that the person transported would engage in an act of prostitution.

Intent:

The second element that the government must prove beyond a reasonable doubt is that the defendant transported, or caused to be transported, an individual with the intent that the individual would engage in an act of prostitution.

It is not necessary for the government to prove that engaging in prostitution was the defendant's sole purpose in transporting a person across a state line or a foreign border. A person may have several different purposes or motives for transporting a person across state or international lines, and each may prompt, in varying degrees, the person's actions. However, the government must prove beyond a reasonable doubt

that a significant or motivating purpose of the transportation across a state or international line was that the person would engage in an act of prostitution.  In other words, the defendant's intent that the individual engage in prostitution may not have been merely incidental to the transportation.

"Engage in Prostitution":

Prostitution is the practice or an instance of engaging in sexual activity for money or its equivalent.  If the government establishes each of the elements of this crime beyond a reasonable doubt, then the defendant is guilty of this charge, whether or not the individual agreed or consented to cross state or international lines, and whether or not he or she agreed or consented to engage in prostitution.  The intent of the individuals who traveled or engaged in prostitution is not the issue.

Unanimity:

The government has argued that the defendant violated federal laws regarding transportation to engage in prostitution with respect to Casandra Ventura, among others, between 2009 and 2018, for Count Three, and with respect to Jane, among others, between 2021 and 2024, for Count Five.  For each count, to find the defendant guilty, you must be unanimous that the government proved beyond a reasonable doubt all of the elements of the charge with respect to at least one specified instance of transportation to engage in an act of prostitution within

that period.

In addition to alleging a violation of the substantive offense of transport with intent to engage in prostitution, the indictment alleges aiding and abetting the commission of that offense, or willfully causing that offense. I have already instructed you on aiding and abetting liability under federal law, and you should apply that definition here. I have also already instructed you on willfully causing a crime under federal law, and you should apply that definition here.

Next, venue:

With respect to each of the counts you are considering, the government, in addition to proving the essential elements of that charge, must also prove that at least one act in furtherance of each charge occurred in the Southern District of New York. This is called establishing venue.

The Southern District of New York includes Manhattan and the Bronx, as well as Westchester, Rockland, Putnam, Dutchess, Orange, and Sullivan Counties.

What does "in furtherance" mean? To satisfy the venue requirement, the government must prove that some act constituting an essential conduct element of the charged offense occurred in this district. The act itself need not be a criminal act. And the act need not have been taken by the defendant, so long as the act was part of the crime that you

find the defendant committed.  Acts that are preparatory to the offense, and not part of the offense, are insufficient.

Venue is proper in a district where (1) the defendant intentionally or knowingly causes such an act in furtherance of the charged offense to occur in the district of venue, or (2) it is foreseeable that such an act would occur in the district. Venue may lie in more than one location and is proper in any district in which an offense was begun, continued, or completed.

Unlike the elements of the offenses which must be proven beyond a reasonable doubt, the government is required to prove venue only by a preponderance of the evidence.  A preponderance of the evidence means that it is more probable than not that some act in furtherance of the crime you are considering occurred in this district.

Because venue must be proper for each count, if you find the government has failed to prove this venue requirement by a preponderance of the evidence with respect to any of the counts charged in the indictment, then you must acquit the defendant of that count.

I've now completed my substantive instructions, so I'll give you some additional instructions, which means we're in the home stretch here.

1.  Expert Witnesses:

Certain witnesses were offered as experts and

permitted to express their opinions about matters that are in issue.  A witness may be permitted to testify to an opinion on those matters about which he or she has special knowledge, skill, experience, and training.  Such testimony is presented to you on the theory that someone who is experienced and knowledgeable in the field can assist you in understanding the evidence or in reaching an independent decision on the facts.

In weighing this opinion testimony, you may consider the witness' qualifications, his or her opinions, the reasons for testifying, as well as all of the other considerations that ordinarily apply when you are deciding whether or not to believe a witness' testimony.

You may give the opinion testimony whatever weight, if any, you find it deserves in light of all the evidence in this case.  You should not, however, accept the testimony of an expert merely because I allowed the witness to testify as an expert.  Nor should you substitute it for your own reason, judgment, and common sense.  The determination of the facts in this case rests solely with you.

2.  Testimony of Law Enforcement Officers:

You have heard testimony of law enforcement and government officials.  The fact that a witness may be employed by the government does not mean that his or her testimony is necessarily deserving of more or less consideration or greater or lesser weight than that of an ordinary witness.

At the same time, it is quite legitimate for defense counsel to try to attack the credibility of a law enforcement witness or government employee witness on the grounds that his or her testimony may be colored by a personal or professional interest in the outcome of the case.

It is your decision, after reviewing all the evidence, whether to accept the testimony of the law enforcement witness or government employee witness, and to give that testimony whatever weight, if any, you find it deserves.

3.    Immunized Witnesses:

You have heard the testimony of witnesses who have testified under a grant of immunity from this Court, called formal immunity.  The testimony of such a witness may not be used against such witnesses in any criminal case except in a prosecution for perjury, giving a false statement, or otherwise failing to comply with the immunity order of this Court.  You are instructed that the government is entitled to call as a witness a person who has been granted immunity by order of this Court.  However, the testimony of a witness who has been granted immunity should be examined by you with greater care than the testimony of an ordinary witness.  You should examine the testimony of such a witness to determine whether or not it is colored in any way to further the witness' own interests. If you believe the testimony to be true, you may give it any weight you believe it deserves.

4.   Use of Evidence Obtained Pursuant to Searches and Seizures:

You have heard testimony about evidence seized in connection with certain searches or seizures conducted by law enforcement officers and, in particular, of electronic evidence obtained pursuant to court-approved search warrants.  I instruct you that all of the evidence in this case, including evidence obtained pursuant to searches, was lawfully obtained. Whether you approve or disapprove of the uses of searches to obtain evidence should not enter into your deliberations.

There is no legal requirement that law enforcement agents investigate crimes in a particular way or that the government prove its case through any particular means.  While you are to carefully consider the evidence presented, you need not speculate as to why law enforcement used the techniques they did, or why they did not use other techniques.  However, you may consider these facts in deciding whether the government has met its burden of proof, because, as I told you, you should look to all of the evidence or lack of evidence in deciding whether the defendant is guilty.

5.   Use of Charts and Summaries:

At certain times during the trial, the parties have used demonstrative aids to assist you in considering the evidence or testimony at trial.  These demonstrative aids are not evidence and will not be available to you in the jury room.

However, you may consider these aids if you find them useful in assessing the evidence or testimony.

Now, some of the exhibits that were admitted into evidence were in the form of charts and summaries. Those exhibits purport to summarize the underlying evidence that was used to prepare them. I admitted these charts and summaries into evidence in place of, or in addition to, the underlying documents that they represent, in order to save time and avoid unnecessary inconvenience. You are to give no greater consideration to these charts and summaries than you would give to the evidence upon which they are based. It is for you to decide whether they correctly present the information contained in the testimony and in the exhibits on which they were based.

Stipulations:

In this case, you have heard evidence in the form of stipulations of fact and testimony. A stipulation of fact is an agreement between the parties that a certain fact or set of facts are true, and you must regard such agreed-upon facts as true. It is for you to determine the effect or weight to give to those agreed-upon facts. A stipulation of testimony is an agreement among the parties that, if called, a witness would have given certain testimony. You must accept as true the fact that the witness would have given the testimony. However, again, it is for you to determine the effect or weight to give that testimony.

Redaction of Evidentiary Items:

Among the exhibits received in evidence, there are some documents that are redacted.  "Redacted" means that part of the document was taken out or covered over.  You are to concern yourself only with the part of the item that has been admitted into evidence.  You should not consider any possible reason why the other part of it has been deleted or covered up.

Pseudonyms:

As you know, certain witnesses have been permitted to testify and be referred to in open court by a pseudonym, solely to protect their privacy from disclosure to persons who are not parties to this case.  I instruct you again that this process should not bear in any way on your evaluation of the evidence or credibility of any witness in this case.  The fact that a witness testified using a pseudonym does not mean that their testimony is deserving of greater or lesser weight than that of any other witness.

Persons Not on Trial:

If you conclude that other persons may have been involved in criminal or other acts charged in the indictment, you may not draw any inference, favorable or unfavorable, toward either the government or the defendant from the fact that those persons are not named as defendants in the indictment, or are not present at this trial.  In addition, you may not speculate as to the reasons why other persons are not

defendants in this trial.  Those matters are wholly outside your concern and have no bearing on your function as jurors at this trial.

The Defendant's Right Not to Testify:

The defendant did not testify in this case.  Under our Constitution, a defendant has no obligation to testify or to present any evidence, because it is the government's burden to prove the defendant guilty beyond a reasonable doubt.  That burden remains with the government throughout the entire trial and never shifts to the defendant.  A defendant is never required to prove that he or she is innocent.

Therefore, you must not attach any significance to the fact that the defendant did not testify.  You may not draw any adverse inference against the defendant because he did not take the witness stand, and you may not consider it any way in your deliberations in the jury room.

Voluntary Intoxication:

Intoxication or drunkenness in itself is not a legal defense to a criminal charge.  However, intoxication or drunkenness may negate the existence of a person's intent to commit certain crimes.  Voluntary intoxication may negate the existence of a person's intent to commit the following criminal violations:

Racketeering conspiracy, in violation of Title 18, United States Code, Section 1962(d);

Attempt under California law;

Kidnapping under New York law, in violation of New York Penal Law 135.20;

Bribery under California law, in violation of California Penal Code Section 137(a);

Witness tampering, in violation of 18, United States Code, Section 1512;

Forced labor, in violation of Title 18, United States Code, Section 1589(a);

Transportation to engage in prostitution, in violation of Title 18, United States Code, Sections 2421 and 2422(a);

And possession with intent to distribute and distribution of controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1), (b)(1)(C), and (b)(1)(E).

On the evidence before you, if you find that a person was too intoxicated throughout the entire course of his or her alleged participation in an alleged criminal violation to form the requisite intent, you may conclude that the person did not have the required intent I described as to these criminal violations. On the other hand, even if you believe that a person was intoxicated, you still may conclude that he or she was capable of having the required intent.

Uncalled Witnesses:

You have heard the names of several people during the

course of the trial who did not appear here to testify, and one or more of the attorneys may have referred to their absence.  I instruct you that each party had an equal opportunity or a lack of opportunity to call any of these witnesses.  However, the government wears the burden of proof; the defendant does not.  Therefore, you should not draw any inferences or reach any conclusions as to what these persons would have testified to had they been called.  Their absence should not affect your judgment in any way.

Instructions During Deliberations:

Finally, I'll give you some instructions about your deliberation process.

1.  Note-taking by Jurors:

If any one of you took notes during the course of the trial, you should not show your notes to, or discuss your notes with, any other jurors during your deliberations.  Any notes you have taken are to be used solely to assist you.  The fact that a particular juror has taken notes entitles that juror's views to no greater weight than those of any other juror.  Finally, your notes are not to substitute for your recollection of the evidence in the case.  If, during your deliberations, you have any doubt as to any of the testimony, you may request that the official trial transcript that has been made of these proceedings be read back to you, or we'll have it, actually, given to you back in the jury room.

No Outside Communications, Outside Research, or Internet Research:

This one will be familiar to you.  You, as jurors, must decide this case based solely on the evidence presented here within the four walls of this courtroom.  As I told you at the beginning of this case, you must not conduct any independent research about this case, the matters in this case, and the parties involved in the case.  In other words, you should not consult dictionaries or reference materials, search the internet, look at websites, blogs, or social media outlets, or use any other electronic tools to obtain information about the case or to help you decide the case.  You must not visit any location mentioned in this case for the purpose of investigating it.  Please do not try to find out information from any source outside the confines of this courtroom.

You must not talk to anyone about this case or use these tools to communicate electronically with anyone about the case.  This includes your family and friends.  You may not communicate with anyone about the case on your cell phone, through email, instant messaging, text messaging, through any blog or website, or by way of any other social networking platforms, including Facebook, X, TikTok, Instagram, Threads, LinkedIn, Snapchat, or YouTube.

If you become aware that any other juror is violating this instruction, you should immediately bring it to my

attention through our courtroom deputy, but please do not make it known to any other jurors.

Improper Considerations:

Your verdict must be based solely upon the evidence developed at trial or the lack of evidence.  It would be improper for you to consider, in reaching your decision as to whether the government sustained its burden of proof, any personal feelings you may have about the defendant's race, religion, national origin, sex, or age.  As I have explained to you, all persons are entitled to the presumption of innocence, and the government has the burden of proof.

Under your oath as jurors, you are not to be swayed by bias or sympathy.  Similarly, you cannot allow a consideration of possible punishment that may be imposed upon a defendant, if convicted, to influence you in any way or in any sense to enter into your deliberations.  Your function is to weigh the evidence in the case and to determine whether or not the government has proved that the defendant is guilty beyond a reasonable doubt, solely upon the basis of such evidence.

The defendant and the government are both entitled to a trial free of prejudice, and our judicial system cannot work unless you reach your verdict through a fair and impartial consideration of the evidence.

I am also going to ask you, and advise you, to not decide the case based on implicit biases.  These hidden

thoughts can impact what we see and hear, how we remember what we see and hear, and how we make important decisions. Because you are making very important decisions in this case, I strongly encourage you to evaluate the evidence carefully and to resist jumping to any conclusions based on personal likes or dislikes, generalizations, gut feelings, prejudices, sympathies, stereotypes, or biases.

It would be equally improper for you to allow any feelings that you might have about the nature of the crimes charged to interfere with your decision-making process.

To repeat, your verdict must be based exclusively upon the evidence or the lack of evidence in the case.

Duty to Deliberate; Unanimous Verdict:

You will now retire to decide the case. Your function is to weigh the evidence in the case and to determine whether the government has proven the guilt of the defendant with respect to each count charged in the indictment.

It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous. Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either

party, and follow my instructions on the law.

When you are deliberating, all 12 jurors must be present in the jury room.  If a juror is absent, you must stop deliberations.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussion with fellow jurors.  No juror should surrender his or her conscientious beliefs for the purpose of returning a unanimous verdict.

Remember at all times that you are not partisans.  You are judges — judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.

If you are divided, do not report how the vote stands.  If you reach a verdict, do not report what it is until you are asked in open court.

Now, the first thing you should do when you retire to deliberate is to take a vote to select one of you to sit as your foreperson, and then send out a note indicating whom you have chosen.  The foreperson doesn't have any more power or authority than any other juror, and his or her vote or opinion doesn't count for any more than any other juror's vote or

opinion.  The foreperson is merely your spokesperson to the Court.  He or she will send out any notes, and when the jury has reached a verdict, he or she will notify the marshal that the jury has reached a verdict, and you will come into open court and give the verdict.

Right to See Exhibits and Have Testimony Read During Deliberations; Communications With the Court:

You are about to go into the jury room and begin your deliberations.  A list of exhibits and the exhibits that were received into evidence will be provided to you in the jury room.  If you want any of the testimony read back to you, you may request that, but to make things easier, we're going to provide you portions of the transcript that you need back in the jury room when it is requested.

The court reporter will have to look through the transcript and the parties will have to agree on what portions of testimony may be called for in response to your request, and if they disagree, I must resolve those disagreements.  If you have any questions regarding my instructions to you, you should also send out a note.

Your requests for testimony — in fact, any communications with the Court — should be made to me in writing, signed by your foreperson, and given to one of the marshals.  In any event, do not tell me or anyone else how the jury stands on any issue until a unanimous verdict is reached.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

So, once again, any testimony you need, any help with exhibits, anything of that nature, send out a note, and we'll attend to it.

Alternate Jurors:

At this time, the first 12 jurors will begin their deliberations in the case. The other jurors, who are alternates, will not deliberate at this time. Nevertheless, the alternate jurors are not quite excused. While the jurors conduct their deliberations, the alternates do not have to be here in court, but you should give the courtroom deputy phone numbers where you can be reached because it is possible that you could be reached to deliberate if a juror is unable to continue.

The courtroom deputy will call you when deliberations are completed so that you will know you are completely finished.

Between now and then — this is for the alternate jurors — you must continue to observe all the restrictions I have instructed you on throughout the trial. And just to be very clear, the alternate jurors here are Jurors 234, 247, 292, 321, and 330, so the jurors on the top row here.

Between now and when you are called notifying you that the deliberations are completed, you must continue to observe all the restrictions I have instructed you on throughout the trial; that is, you must not discuss the case with anyone,

including the other jurors, the other people involved in the trial, members of your family, friends, coworkers, or anyone else.  And until a verdict is reached, as I have already instructed you, you may not communicate with anyone about the case in any way.  If anyone approaches you about the case and tries to talk to you about it, please report that to me through our courtroom deputy.

Do not listen to or watch or read any news reports concerning this trial, if there were to be any; do not do any research on the internet or otherwise.  The reason for this, of course, is that should you be asked to participate in reaching a verdict in this case, the only information you will be allowed to consider is what you learned in this courtroom during the trial.

Now, please accept my heartfelt gratitude for your service.  You may be called in to duty, but if you're not, please understand that I know, and the parties know, how hard you have worked over the past two months, and even more, and you have our heartfelt thanks for your service.

Once you are notified that the deliberations are complete, my courtroom deputy will provide you with my personal contact information, and I'm happy for you to reach out to me, if you have any questions about your jury service, if you'd like a tour of the courthouse, if there's anything else that I can communicate with you, and it's the very least I can do for

your immense service in this case.  So, I do thank you.

I am sorry that you will likely miss the experience of deliberating with the jury, but the law provides for a jury of 12 persons on this case.  So what we're going to do at this time is that when the jurors all return back to the jury room, I'll ask our alternate jurors to say any goodbyes to the remaining jurors and gather any materials that you have.  You can leave your notebooks and those case documents, the jury instructions, with our courtroom deputy.  They will be separately preserved and secured so that if you are called to deliberate in the case, you will have those available to you.

Without discussing the case again, you may say your goodbyes to your fellow jurors.

So, that completes our instructions here.

Now, when you -- the second document that you have is a verdict sheet.  So, as to the jurors who will be deliberating, if you could turn to that second document, you'll see the verdict sheet has three pages.  I'm just going to read it so that we're all on the same page in terms of what the verdict sheet has on it.

The first page, Count One:  Racketeering Conspiracy.

How do you find the defendant?  Not guilty or guilty.

If, and only if, you find the defendant guilty of Count One, which types of racketeering acts do you unanimously find were involved in the offense?

Acts of kidnapping, not proven or proved?

Acts involving arson, not proved or proved?

Acts involving bribery, not proved or proved?

Acts involving witness tampering, not proved or proved?

Acts involving forced labor, not proved or proved?

Acts involving sex trafficking, not proved or proved?

Acts involving transportation for purposes of prostitution, not proved or proved?

Acts involving drug distribution, not proved or proved?

If, and only if, you find the defendant guilty of Count One, did the pattern of racketeering activity include sex trafficking of Casandra Ventura?  No or yes.

If, and only if, you find the defendant guilty of Count One, did the pattern of racketeering activity include sex trafficking of Jane?  No or yes.

Count Two, sex trafficking of Casandra Ventura, how do you find the defendant, not guilty or guilty?

Count Three, Mann Act transportation of Casandra Ventura, how do you find the defendant, not guilty or guilty?

Count Four, sex trafficking of Jane, how do you find the defendant, not guilty or guilty?

And Count Five, Mann Act transportation of Jane, how do you find the defendant, not guilty or guilty?

And there's a signature line here for the foreperson.

One final note on timing:

Now, for the jurors who will be deliberating, at this point onward, you are free to deliberate as you see fit. Each day, if you are all in agreement, you may stay until 5:00 p.m. to continue your deliberations, or even later if all jurors agree.

Please be mindful of other jurors' time constraints in making your determination of how long to deliberate each day. Meals will be provided. You can let the marshals and our deputy know if you have any questions in that regard.

And, members of the jury, I am sure that if you listen to the views of your fellow jurors and apply your own common sense, you will reach a fair verdict here.

Now, what we will do at this time is that we will swear in the marshal, and then we'll have the jurors retire to the jury room. Again, as I said, our alternate jurors should leave your notebooks and the jury instructions, which will be separately secured. And, again, with the Court's thanks, you may leave at that time. At that point, the jury will begin their deliberations.

So let me ask the deputy at this time to bring forward the marshal so that he may be sworn.

THE DEPUTY CLERK:  Yes, your Honor.

(Marshal sworn)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

THE COURT:  Very good.

So at this time, I'll have the jurors head back to the jury room.

All rise.

(At 11:30 a.m., the jury retired to deliberate)

(Jury not present)

THE COURT:  Please be seated.

I'll ask the courtroom deputy if you want to head back and just make sure that the alternate jurors are able to leave the room so that the remaining jurors may commence their deliberations.

THE DEPUTY CLERK:  Yes, your Honor.

THE COURT:  Do we have, at this time, the laptop and exhibit list to provide to the jurors?

MS. ESTEVAO:  Your Honor, we have one remaining issue. I apologize, I spoke too soon earlier.

With respect to the defense exhibit list, I believe there is a government objection to one particular issue, which I can speak to, or I can allow the government to start.

THE COURT:  Well, since the objection is coming from the government, let me know what it is.

MS. JOHNSON:  Your Honor, the objection is that the government's list was put together with respect to the communications at issue, emails and text messages.  We have the date of the communications and the participants.

We asked this morning for the defense to remove the subject line from the equivalent exhibits on their exhibit list, and they initially agreed, and then said that they did not agree.

In particular, the issue that we have is with the subject line for the set of exhibits that are BlackBerry Messenger exhibits, which, in our view, are akin to text messages. They are formatted sometimes to look more like emails, but they are like messages sent back and forth on BlackBerries. So, there's a lot of content that's included in the defense exhibit list as a result of pulling through that subject line, which appears to be just like the first message that was sent in the chain.

So, for example, here's some subject lines:

I'm so horny, I can't concentrate; the things I want to do for you and to you, I want to be nasty for you, I want to do what you want me to do, I want to make sure you cum more than you've ever came.

It's our view that including that substantive material on the list is unnecessary.

(Continued on next page)

THE COURT:  Take out the subject line.

MS. JOHNSON:  Yes.

THE COURT:  It would then become just the same as the government list.

MS. JOHNSON:  Yes.

THE COURT:  Ms. Estavao, unless you want the government to go back and put in additional substantive information on their exhibit list, why wouldn't the proper course here be to remove that?

MS. ESTAVAO:  We're not necessarily requesting that the government change their exhibit list.  However, it is common for exhibits to include subject lines and emails, and I would submit that Blackberry communications, because they have subject lines, are more akin to emails than text messages by virtue of the subject line.

A subject line is a title of a message and doesn't necessarily include content.  Just because certain of those subject lines include content that the government doesn't necessarily like doesn't mean that it's any less of a title as opposed to selective content.

THE COURT:  Ms. Johnson, your exhibit list doesn't have any titles or anything though, right?

MS. JOHNSON:  Our exhibit list has nothing --

THE COURT:  Exactly what does it have?

MS. JOHNSON:  It has an exhibit number, description of

the exhibit, which for any exhibit that are messages or emails, they date. So, for example, June 30, 2025, messages between and it has the participants, and that's it.

THE COURT: Okay.

MS. JOHNSON: And the goal of such a list is neutrality. I think pulling in these subject lines, particularly in the Blackberry messages, which is like entirely unclear if there were in fact subject lines and how this was sent or this is just how these were processed by a vendor. I do not think it is neutral.

THE COURT: Yes, I agree. So let's take out that information, and we should have two neutral lists that go to the jury that are not referencing content within the exhibits. I will ask the parties to meet and confer about that.

If from the defense's perspective, while they're working on that, they would prefer that the government exhibit list not be put on the laptop or provided to the jurors, that's fine. I think that is okay. But I'll trust the parties to work out that issue, and then provide the appropriate laptop and exhibit lists to the jury.

Otherwise, what I will ask the lawyers to do is to stay close. I'm going to stick around here because after the alternate jurors leave, there is likely to be a note in the next few minutes now once the jurors decide who their foreperson is going to be.

So I'll stick around here for a little bit at least. We'll just stay here as the long as the jurors wish to deliberate. At the end of the day, we'll bring the jurors into provide some instructions for them as they retire for the evening in terms of what is going to happen next.

From tomorrow on, I will tell the jury -- I will tell them this today; that they can go straight into the jury room and begin their deliberations. That will start at 9:00 a.m. So someone from each side should aim to be here by at least 8:45 in case we encounter any issues. Otherwise, it's fine if you're around hereby 9:00 or 9:30.

Now I think this is the right time to say that the case was really exceptionally tried by both sides in this case. And there was great lawyering both -- what I really appreciated was the collegiality and cooperation between the sides on the various, the myriad, many logistical issues that this case presented. I really appreciated that.

I also really appreciated that on both sides some of the younger lawyers were provided real opportunities to deal with important and substantive matters in this case and that did not go unnoticed. It is vital to the profession, and I appreciate both sides for having done that.

With that, are there any further issues to address from either side before we adjourn?

MS. COMEY: No, your Honor. I just wanted to confirm

that your Honor's instruction that we be nearby, allows us to go to another floor of the courthouse, or does your Honor require us to be in the courtroom?

THE COURT:  No.  You can go do what you need to do.

MS. COMEY:  Thank you, your Honor.

Should we give a contact number to your deputy?

THE COURT:  That's what I was going to say.  I was going to say if you haven't already, make sure the deputy has the cellphone information for who the contact person is.

MS. COMEY:  Understood, your Honor.  Thank you.

THE COURT:  Anything from the defense?

MR. AGNIFILO:  Nothing from us.  Thank you, Judge.

THE COURT:  All right.  Very good, then we'll -- do you want me to hold on that?

MR. AGNIFILO:  Mr. Combs has a request whether he can bring certain books into the back with him.  My understanding from the marshal service is they don't have an objection, I think that's right, if the Court allows that.

THE COURT:  That's fine.

MR. AGNIFILO:  Thank you, Judge.

THE COURT:  Very good.  We are adjourned.

(Recess pending verdict)

THE COURT:  So we have a note from the jury received at 11:40 a.m. today.  We will mark it as a Court Exhibit.

The note reads:  We have elected Juror No. 5 as our

foreperson, and it is signed by Juror No. 5.

We will make a that a Court Exhibit.  I will also put on the record that we have agreement on the laptop.  As to the laptop, my understanding is that both sides have reviewed what is on it, and it only contains the exhibits admitted into evidence; is that correct?

MS. JOHNSON:  I believe so, yes.

MS. GERAGOS:  That's correct, your Honor.

THE COURT:  We have two exhibit lists.  Both sides have reviewed both of those lits and have no objection to it being provided to the jury?

MS. JOHNSON:  That's correct.

MS. GERAGOS:  That's correct.

THE COURT:  We have those materials.  When the laptop is done, provide it to the courtroom deputy.  He will provide it to the marshals, so they will have those materials.  If the jury requires any AV assistance in terms of hooking it up to the screen, we will get them appropriate assistance.  I think we will probably have a good break in terms of the next note.

Ms. Comey, anything from the government?

MS. COMEY:  No.  Thank you, your Honor.

THE COURT:  Anything from the defense?

MS. GERAGOS:  No, your Honor.

THE COURT:  Very good.  We're adjourned for the moment.

(Recess pending verdict)

THE COURT:  We received a note from the jury.  The note reads that:  We have a Juror No. 25 who we are concerned cannot follow your Honor's instructions.  May I please speak with your Honor or may you please interview him.

Signed by the jury foreperson, Juror No. 5.

Having reviewed the note and some of the applicable authorities, in the Court's view, there's some further information needed concerning the nature of the issue.  And so what the Court would propose is to write back to the jury with the following note:  Without advising the Court of any juror's view of the case or the substance of the deliberations, please explain what the nature of the concern is that Juror No. 25 cannot follow your Honor's instructions.  Is it based on a lack of understanding of the Court's instructions, unwillingness to follow the instructions or something else?

That would be the Court's proposal, but I'll obviously hear from both sides as to anything they have in mind or that they would wish to address.

I would note that among the authorities that the Court reviewed was *United States v. Thomas*, 116 F.3d 606 (2d Cir. 1997), which provides some of the framework for addressing issues that come up during deliberations concerning juror issues of this nature.

Ms. Comey?

MS. COMEY:  Yes, your Honor.  Thank you.  If it's all right with your Honor, may we have a minute to digest your Honor's proposal?  We've also looked at *Thomas* and some of the related cases, and given how delicate this particular matter is, we'd like to be very careful before we give your Honor our position.

THE COURT:  Agreed.

MS. COMEY:  We'd like to take a moment at what your Honor has proposed, take a look at the cases one more time, and give you our position.

THE COURT:  Very good.

MR. AGNIFILO:  Yes, Judge.  We have a proposal of our own, which is similar, but I think different.

I received your note.  You have only recently started your deliberation.  Please resume.  If an issue arises, please have your foreperson send me a further note.

The reason why I think we prefer our proposal is -- it certainly invites -- I think it points out something important: They're just getting started.  We don't know what the nature of the issue is, and I'm hesitant to lay out possibilities as though that is either all the possibilities or that by laying out possibilities, we're asking them to, you know, kind of agree or disagree with certain things that the Court has said.

THE COURT:  Meaning that your proposal is; you just got started, so try to work through it.

MR. AGNIFILO:  Yes.

THE COURT:  If there's a further issue, let us know, at which point if we the wanted to go down the route that I suggested, we could do that at that time.

MR. AGNIFILO:  Exactly.  Because we can always ratchet it up.  We can't ratchet it back.  I think this is benign.  It acknowledges that there's a note.  I think it points out a very important principle that they're only just getting started, and if there is a further issue, please let us know by way of a note.

THE COURT:  Does the government have an immediate reaction to that.

MS. COMEY:  Yes, your Honor.  I think we might want to be a little more specific.  If that is the note that your Honor ends up sending in, giving instructions reminding the jury not to put anything in any future note about where the vote stands or any juror's view on the evidence or the merits of the case. I am very concerned about not crossing a line into getting any information about what's happening in the jury room.

THE COURT:  What I'll ask the parties to do -- Mr. Agnifilo, you had that note written on some kind of piece of paper or greeting card or something.

MR. AGNIFILO:  Exactly.

THE COURT:  Whatever it is, could you share it with Ms. Comey.  And if the parties can agree on an appropriate

response, I'm happy to provide that.

MS. COMEY:  Your Honor for the other cases, the other cases we're reviewing are *United States v. Baker*, 262 F.3d 124 and *United States v. Spruill*, 808 F.3d 585.

We're continuing to research, but we're trying to read as many cases as we can as we think about this issue.

THE COURT:  Very good.  We will break.  I'm going to stay here and read those cases, but you can do what you need to do.

MS. COMEY:  Thank you, your Honor.

(Pause)

Ms. Comey have you had a chance to --

MS. COMEY:  Yes, your Honor.  I provided our proposed revised language of a note back to the jury to defense counsel. I don't know their view on it.  I'm happy to read it for the record, your Honor.

Our proposal would be a slightly different version of the note.  It would be to say -- to write a note back saying: I received your note.  I remind every juror of their duty to deliberate and to their obligation to follow my instructions on the law.  With that instruction in mind, please resume your deliberations.  If any further issue on this topic arises, please have your foreperson send a further note.  Please ensure that any notes do not reference or reveal any juror's view of the evidence, the merits of the case, or the breakdown of the

vote.

THE COURT:  All right.  So what I will ask the parties to do.

MR. AGNIFILO:  I'm sorry, we're not -- the government removed, I think, the language that is the most important part our proposal.

THE COURT:  I'm not doing the note right now.  What I was going to say, it's 1:48.  So take the next ten minutes, meet and confer and see if you can come to an agreed-upon note to respond with, and I'll come back at 2:00, and we'll figure this out.

MR. AGNIFILO:  Sounds good, your Honor.

(Pause)

THE COURT:  Do we have an agreed upon response to the juror's note?

MR. AGNIFILO:  We, unfortunately, do not, your Honor. We do not.

THE COURT:  What do we have written down?  The parties' competing proposals?

MS. COMEY:  Yes, your Honor.  Ms. Slavik can send it to chambers via email.

THE COURT:  Do we have the defense's proposal?

MS COMEY:  It will be in Ms. Slavik's email, yes.

THE COURT:  Okay.

All right.  Having received both parties' proposals, I

would note that, in large part, they are the same.  There are minor variations between the two proposals.

The issue that I have with the defense's proposal is that it suggests in the second and third sentences that the issue raised is not an issue that is of any concern, and that the jury should return to their deliberations.

I would prefer — and I think it's appropriate — to have a neutral response, and so the government's proposal simply reminds jurors of their duties to deliberate and obligation to follow the Court's instructions.  That's the only difference.

In the other respects, the two proposals are the same so I will provide the government's proposal back, so we'll put that on a court letterhead and send that back to the jury, and we will see if there are any issues to address.

MR. AGNIFILO:  Your Honor, can I very briefly --

THE COURT:  Yes.

MR. AGNIFILO:  I think the reason for our proposal is there's no suggestion that the juror will not follow the instructions or is refusing to.  And the word "cannot" is tricky, and so we don't know what the nature of the issue is, which is why we did everything in our power not to assume that it's an issue of his willingness to deliberate or anything like that.  Because it might not be that at all.

And so while our proposal is somewhat more, I don't

know, inert, but doesn't make any factual assertion, that's really by design because we really don't know what the issue is because what the note is that the juror -- the foreperson expresses his concern that he cannot, not that he's concerned that he refuses to or will not.  And cannot is a term that I think throws open possibilities that might not be aligned with what the government is recommending.

Now, I don't want to suggest that the issue is not an issue.  What I do want to convey to the jury is, you know, they're just getting started, and, without giving them any kind of guidance as to what the issue might be, because we don't know, allow them to come back to us with the same sort of fresh slate that we started with, but with these additional warnings of what the note should not say.  So that's the reason for that -- and it really is a one-sentence difference, I agree with the Court.

THE COURT:  Right.  And the government's proposal does not reference any direction or instruction to any juror in particular.  It simply reminds every juror of their duty to deliberate and their obligation to follow my instructions on the law.  It does not reference the juror's note in any way in terms of the "cannot" language that you identified.

However, the defense proposal gives a signal to the jury that they have only recently started their deliberations, suggesting that there is some required duration to the jury's

deliberations. I don't believe that's appropriate. And, as I noted, it gives a -- it sends a message to the jury that a particular concern that was raised, at least at this juncture, is not an issue to be considered.

The government's proposal doesn't address that. It doesn't take a position one way or another. It simply reminds every juror of their duty to deliberate and obligation to follow the instructions on the law. And in other respects, the two proposals are the same.

So I hear you, Mr. Agnifilo, but I think the government's proposal is the appropriate one, so we'll provide that to the jury. And we'll see if there are any other issues that arise.

Are we able to print that out? Yes. Okay. Good. If there is anything else from the government --

MS. COMEY: No, your Honor.

THE COURT: Anything else from defense?

MR. AGNIFILO: No, your Honor.

THE COURT: All right. We'll print that out.

I'm going to ask the Court's law clerk to print out the letter. If you need -- there should be a signature on there. So provide it for the parties just to review briefly, and then we'll send it back to the jury.

Thank you very much. We're adjourned.

(Recess pending verdict)

THE COURT:  We have two letters from the jury that I believe the parties have seen.

The first one reads:  Referring to page 37 of the jury charge:  If a recipient wants, requests, or asks for controlled substances, and an individual hands over controlled substances to the requester, has the individual who hands over the controlled substances distributed?

That's the letter from 4:30 p.m.

The second letter which was sent five minutes later says:  We will end at 5:00 p.m. today and resume at 9:00 a.m. tomorrow.

So those are the two notes.  We will make those court exhibits.

Just, logistically, given the time, I think we can respond to the first letter at the beginning of the day tomorrow to afford the parties to determine what an appropriate response would be.

The Court's suggestion to the parties is that the response would be:  In response to the jury's question, the Court refers the jury to page 37, lines 1 through 3 of its jury charge, which reads -- and then to quote the relevant language from those three lines of the jury charge.

That would be the Court's proposal, but I'll hear from the parties if they have any different views.

Why don't we table -- if you have an immediate

reaction, you can give it to me, but other than that, I think at this time we can bring the jury out and dismiss them for the day.  I will give them some logistical instructions about starting their deliberations in the morning, not communicating with anyone about the case, continuing to keep an open mind, et cetera.  And then they can be dismissed and we can discuss anything that we have to discuss with regard to the first note.

Any issues with that approach?

MS. COMEY:  No, your Honor.  I do have a response to your proposal, but I think since we're going to give that response tomorrow morning, it can wait until after we've dismissed the jurors.

THE COURT:  Mr. Agnifilo?

MR. AGNIFILO:  That's fine with us.  We'll wait until tomorrow morning.

THE COURT:  Then I will tell the jurors we've received their other note, and we'll respond tomorrow morning.

With that, I'll ask the deputy to bring out our jury.

(Jury present)

THE COURT:  Per the jury's request, it is now 5:00 p.m., so we will excuse you for today.  We have received your other note, and we'll respond to you in the morning.

Thank you for all your hard work.  Let me give you some closing instructions.

First of all, tomorrow you should arrive before

9:00 a.m., same thing as we've been doing.  By 8:45 if you can, so that you can resume your deliberations.  You can continue through lunch, just as you did today.  You can obviously take a break if you'd like, it's up to you, during lunch, but bottom line is that you will be in the jury room to continue your deliberations throughout the course of tomorrow.

I am not going to bring you into the courtroom tomorrow morning.  You can resume your deliberations when you are all present, but let me stress that you all must be present.  That is to say, you should not resume discussing the case with one another until all 12 of you are there.  Unless all 12 of you are there, you cannot deliberate.  You need to deliberate as a whole.  So for that reason, you can talk about the weather, sports, but not about this case until all 12 of you are there.

Once all 12 of you are there, you may resume your deliberations.  For that reason, please be in the jury room, try to get there at the 8:45 time that you've been trying to get here throughout the trial so that you can resume no later than 9:00 a.m.

In the meantime, as I have instructed you time and again, do not discuss the case with each other, or with anyone else until you resume your deliberations when all 12 of you have arrived tomorrow.

Do not do any research about the case.  All of the

instructions that I've given you previously about not having discussions or conversations about the case and not researching or reading about the case, please follow those instructions. And you should continue to keep an open mind to ensure that you have an open mind when you resume your deliberations with one another.

Leave your notebooks, as well as the laptop, exhibit lists, jury instructions, all of those materials in the jury room.  My staff and the court security officer will secure it when you are not using the materials in deliberations.

With that, I wish you a very pleasant evening, and we will see you tomorrow.

If we get a note from you during the day we may see you earlier.  If not, I will bring you out at the end of the day tomorrow as I have today.

With that, have an excellent evening.  We'll see you tomorrow.

(Jury in the present)

THE COURT:  Please be seated.

Ms. Comey.

MS. COMEY:  Yes, your Honor.

So while I agree that the instruction that your Honor is pointing the jury to is the correct one, my concern is that because the jury's question points to that page, that they are confused about that specific instruction.

So I think a more helpful answer, and an accurate answer, would be to say yes at the beginning, and then point them back to those three lines because I think they've clearly read page 37.  There is clearly some confusion about whether it matters what the recipient thought or did, which clearly doesn't under the law, and so I think the clearest way to be accurate and helpful to the jury is to start by saying:  Yes is the answer to their question.

THE COURT:  All right.  Mr. Agnifilo, is there he -- you just heard the proposal, so...

MR. AGNIFILO:  Where I heard the proposal.  I would like a little more time to discuss it with the team.  My initial reaction is that's not going to be our answer.  The instruction is set among other instructions.  I don't want -- I think that the instruction on this subject has to be in context, but before I offer a counterproposal, I do want the chance to speak to everybody and we'll come up with a counterproposal as soon as possible and fairly soon.

THE COURT:  Let me ask you to speak with the government, see if you can come up with an agreed-upon response to the jury, and inform the Court of the parties' positions by no later than 6:00 p.m.  It's 5:10 now.  It shouldn't take you more than that time to inform the Court.  That way we can have a proposal ready when we begin tomorrow morning, and we can address any further issues that we need to at the beginning of

the day tomorrow.

MR. AGNIFILO:  Very good.

THE COURT:  Anything further from the government before we adjourn?

MS. COMEY:  No.  Thank you, your Honor.

THE COURT:  Defense?

MR. AGNIFILO:  No.

THE COURT:  Let's plan on if there's any dispute, we'll know by 6:00 p.m., and if so, we should plan to be here at 9:00 a.m., just to be sure we can get a response back.

(Trial continued July 1, 2025 at 9:00 a.m.)