P55sCOM1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
UNITED STATES OF AMERICA,

       v.                        24 Cr. 542 (AS)

SEAN COMBS,
   a/k/a "Puff Daddy,"
   a/k/a "P. Diddy,"
   a/k/a "Diddy,"
   a/k/a "PD,"
   a/k/a "Love,"

          Defendant.              Trial
-------------------------------x

                        New York, N.Y.
                        May 5, 2025
                        9:15 a.m.
Before:

              HON. ARUN SUBRAMANIAN,

                        District Judge
                        -and a Jury-

                APPEARANCES

JAY CLAYTON
    United States Attorney for the
    Southern District of New York
BY:  MADISON R. SMYSER
    EMILY A. JOHNSON
    MAURENE R. COMEY
    MEREDITH FOSTER
    MITZI STEINER
    MARY C. SLAVIK
    Assistant United States Attorneys

P55sCOM1

APPEARANCES
(Continued)


AGNIFILO INTRATER LLP
      Attorneys for Defendant
BY:   MARC A. AGNIFILO
      TENY R. GERAGOS
      -and-
SHER TREMONTE
BY:   ANNA M. ESTEVAO
      -and-
SHAPIRO ARATO BACH LLP
BY:   ALEXANDRA A.E. SHAPIRO
      JASON A. DRISCOLL
      -and-
XAVIER R. DONALDSON
BRIAN STEEL

ALSO PRESENT:
PAULETTE TAYLOR, USAO Jury Consultant
LINDA MORENO, Defense Jury Consultant

P55sCOM1

(Case called)

THE COURT:  This is the matter of 24 CR 542, United States v. Sean Combs.

Can the parties starting with the government please state their appearances

MS. COMEY:  Maureen Comey, Madison Smyser, Christy Slavik, Meredith Foster, and Mitzi Steiner for the government, joined at counsel table by Paulette Taylor, a contractor with our office.

MR. AGNIFILO:  Good morning, your Honor.

Marc Agnifilo, Teny Geragos, Brian Steel, Alexandria Shapiro, Jason Driscoll.

Middle table, Anna Estevao, Xavier Donaldson, and joined by the jury consultant, Linda Moreno.

One other thing.  We have one other lawyer joining, admitted to the court, tomorrow, Nicole Westmoreland.  She is listed in the list of people, but she's going to be sitting with us for the trial.  Just not today.  She's going to be admitted tomorrow.

THE COURT:  That's fine.

Thank you all for coming so early.  I should have anticipated there would be delays.  I figured I would come up here and we would, perhaps, take care of some logistical details while the jury is getting assembled.

First off, you saw the court's e-mails from yesterday

P55sCOM1

about jurors who I would be inclined not to ask individual questions to based on their questionnaire responses.

Have the parties had a chance to meet and confer and any objection to our not calling back those jurors?

MS. COMEY:  We have, your Honor, met and conferred.  I think there is some distance between the defense and government on this.  I think there is at least some subset of jurors that we agree we would like the court to keep.  I'm happy to provide the government's position in the first instance.

THE COURT:  No.  If someone wants them to be called back, we'll do it.

MS. COMEY:  OK.

THE COURT:  The reason, by the way, that I made this proposal is that I read through the people and places list, which is several pages long.  I felt I was reading an appendix from, like, the *Lord of the Rings*.

OK.  So each person that comes up here and has to read that.  That itself is going to take several minutes.  If there are jurors who have OKed on their questionnaires that they have, for instance, a concern that they would lose their job because of the time of trial, that is why I didn't think it made a lot of sense to have that person come here, sit here ten minutes, only to tell us that it will cause them an extreme hardship.

MS. COMEY:  I understand, your Honor.

Would your Honor consider a system where a member of the court staff have whatever juror is about to come in, review the binder, while the court is questioning a juror?

THE COURT:  That sounds great.

MS. COMEY:  That way we can speed up the process.  The juror would have already reviewed the binder and the judge could ask, do you recognize the names?  Tell me the numbers.

THE COURT:  Being that our courtroom deputy may have stepped out to actually hand the --

THE DEPUTY CLERK:  Your Honor, courtroom deputy is here.

THE COURT:  See, I can't see with all these screens here.

Your proposal is we call in one juror to answer individual questions.  The next juror, perhaps, would be in the anteroom back there be with the binder looking through the people and places list.

We would just confirm that they didn't know anything or they knew certain things.

MS. COMEY:  Exactly, your Honor.  That should speed up the process significantly.

THE COURT:  That sounds great.

Do you have said binder?

MS. COMEY:  We provided two to your deputy this morning, your Honor.

P55sCOM1

THE COURT:  That sounds like a great plan.

As to the jurors who the court proposed we would not call back for individual questions, what is the subset that the parties agree on?

MS. COMEY:  I'll defer to Ms. Geragos.

From the government's position, we think that all of those could potentially be qualified to sit on this jury.  And given the difficulty we may have finding jurors not struck for cause, we would ask the court to keep everyone that is on the list.

THE COURT:  We will talk to everybody.  That makes it easier.

MS. COMEY:  Thank you, your Honor.

THE COURT:  So, forget what I said over the weekend. We'll handle things that way.

Now, just with respect to jury selection, any further points that we need to address right now, Ms. Comey?

MS. COMEY:  Not from the government, your Honor.

Thank you.

THE COURT:  Mr. Agnifilo?

MR. AGNIFILO:  No.

THE COURT:  All right.  I think we'll get the high sign at some point that we can have folks come in.

Until then, let's try to tackle a few issues that have been raised which are still pending.

P55sCOM1

One, on the issue concerning consensual sexual encounters. This is the good acts evidence issue. The court is not intending to change its prior ruling. However, the government in its letter says, to the extent the defendant intends to inquire of any witness about any of the defendant's consensual sexual encounters, the court should require the defendant to inform the court and the government of its intention to do so in advance of that witness's testimony or cross-examination.

Mr. Agnifilo or Ms. Geragos, any issue with that?

MR. AGNIFILO: One second, Judge.

(Counsel confer)

One second, Judge.

Thank you, Judge. I would confer with my colleagues. I think our position is that there is nothing in the law that should require this from us. There is nothing in the rules of evidence that should require this from us.

I mean, I understand sometimes, as a courtesy, sometimes courts want to know, kind of, what is coming down the pike. I certainly don't want to not provide that to the court, but I just am not clear on what rule or case or thing that would require us to do that.

THE COURT: No. I think it's not any different than the normal case where a party objects and says that certain evidence would be inadmissible under Rule 402, Rule 403. And

P55sCOM1

so if there is a showing of relevance and the probative value to be made in a particular instance, the parties should approach before seeking to admit that evidence.  I don't think they are saying anything other than that.

MR. AGNIFILO:  If that would be helpful to the court, we're happy to do it.

And so, just so we're clear, what would the court like us to do?

THE COURT:  I think, just what's said here, is that if you're going to --

So, let's make a few things.  First of all, there may be witnesses that the defense plans to put on --

MR. AGNIFILO:  Yes.

THE COURT:  -- that would relate to consensual sexual encounters.

MR. AGNIFILO:  Correct.

THE COURT:  You'll have to necessarily inform the government in advance of the witnesses who you're calling, right.

MR. AGNIFILO:  I understand that.

THE COURT:  And so, at that juncture, we would have an opportunity to address the issue that the government raised, see if there is any issue that requires special treatment.  We can handle it that way, so that is already covered.

Then there are witnesses that the government may call

P55sCOM1

in which the defense may inquire with respect to consensual sexual encounters.  I don't think it's anything more than you saying we may inquire as to consensual sexual encounters. There may be no issue.

But, at that time, we would just address that.  And I might say, OK, please proceed, or if there is a specific issue that the government wants to raise or that comes up, then we can handle it in advance, as opposed to it just coming up and then we have to take a sidebar while the jury is in the box.

MR. AGNIFILO:  When would the court want us to do that in the process?

In other words, after the direct?

THE COURT:  You can do it after the direct, right before you go into cross.

MR. AGNIFILO:  All right.  I think after direct, that's workable from our end, and that's fine with us .

THE COURT:  All right.  Again, this is not going to be a new oral argument on this.  This may take 30 seconds.

MR. AGNIFILO:  Yes.

THE COURT:  So everyone has a heads-up, it's happening.  If there is a specific issue we haven't anticipated here at the outset because we haven't started trial, we can deal with it at that time, if there is one.

MR. AGNIFILO:  That's fine, Judge.

THE COURT:  All right.  So we'll handle that that way.

That takes care of this.

As to Dr. Aoun and Mr. McCourt, the court is considered the government's motions in limine and here is the court's ruling. And same drill as we've done it up to this point. I'm going to tell you how I intend to rule. If the parties have any issues or need to be heard on anything that I missed, then you can certainly let me know.

First, as to Dr. Aoun, initially the government says there was a failure to comply with Rule 12.2. I don't think there is any real argument that this -- the disclosure was untimely under Rule 12.2(b). I think the response is that the rule provides that the court may, for good cause, allow the defendant to file the notice late, grant the parties additional trial preparation time, or make other appropriate orders. And for the reasons stated in the defense's submission, they say that there is certainly good cause here.

The court agrees. And the court further does not find that there would be any prejudice to the government based on the late notice concerning Dr. Aoun. There is a footnote in the government's brief that indicates that the government would seek to examine Mr. Combs based on the disclosure. As the defense points out, there is no basis for the examination and there is no requirement of an examination, because no insanity defense is being raised. The court agrees with those concerns. So, the disclosure and the testimony is not excluded on the

P55sCOM1

basis of timeliness.  The court also agrees with the defense that the IDRA does not bar this evidence based on its citation to cases like *Dupree* and its reference to the material in the *Lafave* treatise.

Now, as to 704(b), again, the court agrees with the defense that Dr. Aoun's testimony would not be precluded by Rule 704(B).  The defense cites to *United States v. Diaz*, 602 U.S. 526, and notes that this, the evidence and the testimony of Dr. Aoun is even more removed from the direct question of the defendant's intent and the kind of evidence in *Diaz* that the court said would be permissible.

For instance, testimony that in the main, certain drug couriers or certain arsonists would have known or would have intended a certain thing, as long as it's not covering all of those people or the defendant specifically, the testimony would not be precluded under Rule 704(b).  And the defense offers a characterization of Dr. Aoun's testimony that would not implicate concerns or concerning 704(b).

Now, that being said, in navigating around Rule 704(b), the defense does characterize what Dr. Aoun's testimony would be in a way that might be inconsistent or arguably inconsistent with what the disclosure actually says.  Now, what the defense says is that Dr. Aoun is solely going to testify about the expected and unexpected effects of various drugs and what a person may experience under certain circumstances,

P55sCOM1

including certain blackouts and other intoxication episodes and what the predictable result of certain drug combinations might be.

And, now, Mr. Agnifilo, or whoever would like to address this on the defense's side, that is what Dr. Aoun is going to testify about, right?

I'm quoting from your brief at page ten.

MS. SHAPIRO:  Yes, your Honor.

THE COURT:  OK.  That being the case, the court also finds that there is no Rule 702, Rule 703, or Rule 403 issue. Dr. Aoun will be permitted to testify about those three things that I just identified.

Now, what is out of bounds is, one, any opinion concerning the effect of those drug or drug combinations on Combs himself.  This would be excluded under Rule 702 or Rule 403, as Dr. Aoun did not examine Mr. Combs.  And the defense says it is not offering this testimony for that specific purpose.  It would also potentially run afoul of Rule 704(b);

Two, any opinion or testimony as to what Mr. Combs actually took or used, because Dr. Aoun has no basis to know what, at any particular time, Mr. Combs took or used; and

Three, that any opinion concerning the circumstances or propriety of Mr. Combs being prescribed any medication, which is not within the three categories that the defense had identified, but is in his disclosure at paragraphs 13 or 14, so

P55sCOM1

that's the ruling on Dr. Aoun's testimony.

As to Mr. McCourt, as to timeliness, once again, there is no prejudice cited, so the court is not going to exclude the testimony on timeliness grounds as to Rule 702 and Rule 403. The motion is granted to the following extent and otherwise denied.  It's granted as to any testimony concerning the broadcast videos, which the government is not seeking to admit. It's granted to the extent Mr. McCourt indicates that all of the videos are transcoded, which Mr. McCourt admits is not true, or that it is impossible to know what an original video file depicted based on transcoding, which is not based on any expertise in his unduly prejudicial under Rule 403.

Third, any testimony concerning perceptions which are not out of the canon of the usual jury.  For instance, that Mr. Combs was made to appear more domineering or that the videos depict more urgent action.  Mr. McCourt should just stick to the facts of the analysis, what is the effect on a technological level of the transcoding or the other modifications he points to in his report.  He need not characterize the real world impact on the perception of Mr. Combs.  That is a point that the jury can gather from just viewing the different videos, as they will, during trial.

Mr. McCourt is also precluded from speculating on the weariness of the authenticity of the videos.  He should just, again, focus on the technical details of what his analysis

P55sCOM1

showed.

For that reason, the motions with respect to Dr. Aoun and Mr. McCourt are granted in part and denied in part.

Now, Ms. Comey, or anyone who wants to address this on the government's side, you may.

MS. COMEY:  One moment, if I may, your Honor.

THE COURT:  Sure.

MS. COMEY:  Thank you.

(Counsel confer)

MS. SLAVIK:  Your Honor, the government may have a bit of followup with respect to the records that Dr. Aoun is permitted to testify about.  But at this time, the government will examine those records and bring interesting to the court's attention before Dr. Aoun's testimony.

THE COURT:  That makes sense.

I may have skipped over this.  My understanding of what Dr. Aoun is going to do is not just to deliver the hearsay, potential hearsay, from these medical records, but rather, he's just saying, from the medical records, I'm gathering what drugs and drug combinations were prescribed to Mr. Combs.  That's all he's going to say, and then he's going to say, now let me tell you about those drugs and drug combinations.

That would be permissible under Rule 703, if Dr. Aoun is simply putting in material from the medical records that

P55sCOM1

they believe is favorable, without offering an actual expert opinion in a way to subvert the limitations on putting in hearsay that are reflected in Rule 703.  Then we will exclude it and I'll properly instruct the jury.

I don't understand from the defense's submission that that is what they are planning on doing.

MS. SLAVIK:  Your Honor, let us take this under advisement.

THE COURT:  OK.

MS. SLAVIK:  Thank you.

THE COURT:  Anything from the defense?

MS. SHAPIRO:  Just one quick followup, your Honor.

In addition to what you were just addressing with respect to the records, assuming that percipient witnesses actually testify, you know, for instance, on a particular date, I saw Mr. Combs take X drug, presumably Dr. Aoun could also opine about that, is that correct?

In other words --

THE COURT:  Is it a he or a she?

MS. SHAPIRO:  It's a he.

Because he'll either observe the testimony or we will provide the transcript to him.

THE COURT:  Yes.  That doesn't run into an issue, because if it's not excluded, the testimony is coming in separately.

P55sCOM1

MS. SHAPIRO:  Right.

THE COURT:  Then Dr. Aoun is saying, well, consistent with my report, I heard that he was taking X or Y on this particular date, and let me tell you about the effect of that drugs on the normal person.

MS. SHAPIRO:  OK.  Thank you.

THE COURT:  All right.  So, that takes care of those two motions.

One last point that was raised at the last hearing is the issue arising from cases like *Press Enterprise v. Superior Court*.  The court has reviewed those authorities, and unless I'm missing something, I think that, consistent with those authorities, it's sufficient for me to say here on the record that, given the nature of this case, there are absolutely going to be certain times where a juror may have legitimate privacy concerns addressing sensitive issues that go to, for instance, issues of assault, trauma, domestic violence.  And in those circumstances, it would be appropriate to allow the juror to address the issues at a sidebar where we would have two attorneys from each side, at most, and the court reporter.  And in those instances, the transcript of those portions would be provisionally sealed, subject to any objection that anyone would make.

I think it's sufficient for me to say that here without having to repeat it every time we go to a sidebar.

That's my understanding of how it was handled in the *Maxwell* case, and so I've now done it.

Ms. Comey, any issues with that approach?

MS. COMEY:  I think that approach makes good sense, your Honor.

THE COURT:  All right.  Mr. Agnifilo?

MR. AGNIFILO:  Yes.  I think your Honor is certainly within the purview of the cases in this area that we cited to the court last week, and we completely agree.

THE COURT:  OK.  All right.  Well, I'll be asking the courtroom deputy at this time.

Are we prepared to proceed with our jury?

THE DEPUTY CLERK:  Your Honor, I do not believe they are ready yet.  I will check it.

THE COURT:  OK.  All right.  Well, at ease.  We will wait around.

I know I said at ease.  While we're here, a logistical question.  The jurors are going to come in.  We're going to ask the question, whatever questions we're going to ask.  At a certain point, if I believe that there is a for-cause basis to excuse the juror, I'm going to ask the juror to just leave.

If we get through the questioning, then is it the parties' intent that the juror would leave the courtroom. While the juror is outside, if there is a motion to excuse the juror for cause, that would be made at that time?

P55sCOM1

Is that the parties' intent?

MS. COMEY:  Yes, your Honor.

THE COURT:  OK.  All right.  This is off the record.

(Discussion off the record)

Let's go back on the record briefly.

All right.  So, there is a tiny logistical issue that we need to work out, which is when we go to sidebar, if we go, if we seal that transcript, no one, including Mr. Combs, would be able to see that portion of the transcript because there is only one feed going out in terms of the transcript.

So, one, the court reporter has to essentially take it off of the feed and we have to have the sidebar, and then we have to go back, which is a logistical issue.

But two, and more importantly, Mr. Combs is not going to be able to see and hear that testimony.

So, does anyone have an objection to our just continuing, meaning the juror would be able to avoid talking about sensitive information in open court, but it would be on the transcript and it would not be sealed?

And I think that would be consistent with, you know, respecting the First Amendment issues raised in the cases that the parties have cited.  In a perfect world, maybe we would have a situation where the default was flipped, as I had indicated, meaning that the transcript would be initially sealed and someone would make an application to unseal it.

P55sCOM1

But my question is, is whether there is any objection to our just doing it this way?  We have separate transcript, no press there, but it's going to be on the transcript.  Albeit, since none of the jurors are going to be identified by their names, no one would be able to know who these people were exactly.

That's the question.

MR. AGNIFILO:  Can we confer with the government for a second?

(Counsel confer)

Judge, one more minute.  And thank you.

(Counsel confer)

Can I ask a clarifying question?

THE COURT:  Can you use a microphone, please?

MR. AGNIFILO:  Yes.

One clarifying question.  When we go to the side, what, if anything, is the court going to say to the potential juror about the circumstances of what is going to happen at the side?

In other words, in terms of the level of confidentiality, if anything?

The court may not have thought this through, and we're just thinking it through for the first time ourselves.  The reason I ask is because, if the potential juror believes that this would be entirely confidential, then I think that is --

P55sCOM1

that's a fact that we would consider, because that's a fact that relates to candor.

So, I wasn't sure what the court would tell the juror the ground rules would be when we go to a sidebar.

THE COURT:  Well, I'm not going to lie to the jurors.

MR. AGNIFILO:  No, of course.

THE COURT:  So, I think they would -- I would advise all the jurors when they come in as a group that, because I am going to tell them that they would have the opportunity to answer questions in private, and I think I would qualify that by saying it's in private, but it would be on the transcript, if we were to go that route.

MR. AGNIFILO:  Right.

THE COURT:  Remember, we don't need to necessarily go that route.  We can make the adjustments so that it would be fully confidential.  It would just take a little additional time.  And Mr. Combs, on his LiveNote, would not be able to see that portion of the testimony, although the attorneys would, of course, be privy to that.

MR. AGNIFILO:  Got it.

Understood.  All right.  One more second, Judge.

THE COURT:  Of course.

(Counsel confer)

MR. AGNIFILO:  So, I've conferred with Mr. Combs and my colleagues.  I think we are comfortable not getting the live

P55sCOM1

feed, and the juror would be secure in the knowledge that what is said at the side is that much more confidential.

THE COURT:  OK.  That's fine.

All right.  Let me ask the courtroom deputy.

Are we ready to bring in the venire or the portion of the venire?

THE DEPUTY CLERK:  Your Honor, may I talk to you briefly?

THE COURT:  Yes.

(Discussion off the record)

Do the parties have something they want to raise?

MR. AGNIFILO:  We are trying to see we have better color on the issue.  The issue relates to how late defense counsel is permitted to see Mr. Combs at the MDC.

Currently, we have to leave at 7:30, and we're talking with the government about different ways of maybe getting more time there.  I'm not sure if it makes sense to bring to your Honor's attention just yet.

Let's sort of see how we land.

THE COURT:  No problem.

MR. AGNIFILO:  The court has enough to do without getting involved in this.

THE COURT:  No, I'm here.

MR. AGNIFILO:  I know you are.  Thank you, Judge.

(Jury Selection followed)

P55sCOM2

THE COURT:  Please be seated.

Ms. Comey, anything on your end to raise before we adjourn?

MS. COMEY:  No.

Thank you, your Honor.

THE COURT:  Mr. Agnifilo?

MR. AGNIFILO:  Let me just check with my colleagues for one second, Judge.

(Counsel confer)

Can I just confer with the government for one second, Judge?

THE COURT:  You may.

(Counsel confer)

MS. GERAGOS:  I think the only thing, your Honor, is that yesterday evening the government told us that they may no longer be calling victim three, the alleged victim three.

We asked the government whether that's a decision that they have made or whether they are still considering it.  We are concerned that -- what we're asking your Honor to do is to ask them to make a decision by the end of this week, because either if they are not calling her, we will not open on her. If they are calling her, we have to address it in opening.

She has a sex trafficking predicate act under Count One, and that's really our concern.  So, I think our request now -- I understand they have not made a decision -- is if they

P55sCOM2

are going to make a decision by the end of this week as to whether or not they are going to call her.

THE COURT:  All right.  Ms. Comey.

MS. COMEY:  Your Honor, I would ask that that request be denied or at least deferred until defense counsel can present authority for the proposition that the government can be required to decide whether or not it's going to call a particular witness.

Victim three, as the court knows, her attorney has had some personal issues, so it's been difficult to get in touch with the attorney and it's been difficult to get in touch with her.  There is no particular count that requires her testimony in order for us to carry our burden.  It's not a question of giving the defense notice of whether or not we're proceeding on all counts.  She is referenced as one of many, many acts of racketeering, racketeering activity, that we may seek to prove at trial, but by no means is that necessary.

And as is always the case at trial, it's always possible that a party, the government or the defense, may, as trial progresses, decide not to call a witness.  We did, though, as a courtesy, want to give the defense notice that, given the difficulty of communicating with victim three and her counsel, that there was a possibility that we may not call her or we may try to call her and she may not show up, even though she's received a subpoena.  She does not live locally.  She may

not show up, even if we try to enforce the subpoena and want to call her.

So, we wanted to let the defense know about that possibility, that she may not end up testifying at this trial, as a courtesy.  But I am not aware of any legal authority requiring the government to commit to calling her or not calling any particular witness in advance of trial.

THE COURT:  Well, that may be true, but let me ask a few questions.

Are you planning to address victim number three or the allegations relating to her in opening statements?

MS. COMEY:  I don't expect we will be saying her name in opening statements, your Honor, no.

THE COURT:  OK.  Are you going to address the allegations that pertain to her?

MS. COMEY:  I don't expect there will be much about her, about those allegations in the opening.  There may be some general statement about how the evidence will show that the defendant abused multiple women or sexually exploited multiple women generally, but I don't think there would be specifics about her in the opening.

THE COURT:  Meaning that there would be no statement that would by necessity only pertaining to her.

MS. COMEY:  Exactly, your Honor.

THE COURT:  OK.  Did you have a sense at this point as

P55sCOM2

to where, in terms of the eight weeks of trial, like, what are we talking about in terms of when she would -- if she was going to be here to testify?

MS. COMEY:  I would think in the second half, your Honor.

THE COURT:  In the second half?

MS. COMEY:  Correct, your Honor.

THE COURT:  Of the government's case-in-chief?

MS. COMEY:  Correct, your Honor.

THE COURT:  And you're trying to get in touch with her?

MS. COMEY:  Yes, your Honor.

THE COURT:  Now, if you are able to get in touch with her and you're making diligent efforts to do so, then you may be in a position later this week to provide the defense what they are looking for.

MS. COMEY:  We may be.  And if we make a decision, and we are able to make the decision, we would promptly inform the defense.  It's just I don't know that we will be until trial has already begun.

THE COURT:  OK.  Ms. Geragos, if you have legal authorities, let me know.

At this point, however, make your best efforts to make contact with victim number three so that you can make a final decision and apprise the defense.  I think the difficulty that

P55sCOM2

this puts the defense in is, if you're going to open on generally these types of allegations, and then the defense is in a position where they need to address victim number three, and then it turns out that victim number three doesn't testify, that puts them in a little bit of a pickle.

You may be right, there is no legal authority that requires the government to do this.  But in the interest of just moving things alone in an efficient and fair manner, let's see if the government can get to the bottom of this.

If you can't, we get to Wednesday or Thursday, Ms. Geragos, we can pick it up.  And I'll hear you if there is an authority or something that I'm missing.

MS. GERAGOS:  All right.  I'll make a further record then, your Honor.

Thank you.

THE COURT:  All right.  Thank you.

MS. COMEY:  Thank you, your Honor.

THE COURT:  Mr. Agnifilo, anything else?

MR. AGNIFILO:  One thing my colleague is going to address.

THE COURT:  All right.  Mr. Steel.

MR. STEEL:  Good afternoon, your Honor.

Your Honor, if needed, would your court consider an order allowing us to enter your courthouse about 7:30 or 7:15, when Mr. Combs is brought here, so we can work with him?

P55sCOM2

I believe that we cannot get in until after that.

THE COURT:  That's fine.  I don't --

Hold on with that.  Subject to my consultation with the marshal service and making sure that there is no issue that I'm missing, I personally have no issue was that.

But I need to consult with them.

MR. STEEL:  Understood.

THE COURT:  We will do so.

Have you already talked to them?

MR. STEEL:  Not directly with these people, no.

THE COURT:  All right.

MR. STEEL:  The answer is no.

THE COURT:  OK.  Well, why don't you talk to them and see if there is any issues.  And then if there is not, you can make an application, and I personally have no issues with that.

I'm happy to afford you as much time as needed, and as consistent with the marshal service and what their requirements are to allow you to consult with your client

MR. STEEL:  Understood.

Thank you.

THE COURT:  All right.  Thank you.

Anything further?

MR. AGNIFILO:  Nothing from us.

Thank you, Judge.

THE COURT:  All right.  We are adjourned.  See you

P55sCOM2

tomorrow.

One thing.  I said 8:30 today, and I saw the looks.  I know it's really early.  I think, based on the amount of time it takes to get everyone in, if everyone is here by 9:00, it will work out.  I apologize for that today, but I had high hopes.

MS. COMEY:  Thank you, your Honor.

(Adjourned to May 6, 2025, at 9:00 a.m.)