P71Wcom1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x
UNITED STATES OF AMERICA,

              v.                  24 Cr. 542 (AS)

SEAN COMBS,
   a/k/a "Puff Daddy,"
   a/k/a "P. Diddy,"
   a/k/a "Diddy,"
   a/k/a "PD,"
   a/k/a "Love,"

            Defendant.          Trial
------------------------------x

                          New York, N.Y.
                          July 1, 2025
                          9:05 a.m.
Before:

              HON. ARUN SUBRAMANIAN,

                          District Judge
                          -and a Jury-

                   APPEARANCES

JAY CLAYTON
    Interim United States Attorney for the
    Southern District of New York
BY:  MADISON R. SMYSER
    EMILY A. JOHNSON
    MAURENE R. COMEY
    MEREDITH FOSTER
    MITZI STEINER
    MARY C. SLAVIK
    Assistant United States Attorneys

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P71Wcom1

APPEARANCES CONTINUED


AGNIFILO INTRATER LLP
       Attorneys for Defendant
BY:  MARC A. AGNIFILO
       TENY R. GERAGOS
       -and-
HARRIS TRZASKOMA LLP
BY:  ANNA M. ESTEVAO
       -and-
SHAPIRO ARATO BACH LLP
BY:  ALEXANDRA A.E. SHAPIRO
       JASON A. DRISCOLL
       -and-
XAVIER R. DONALDSON
BRIAN STEEL
NICOLE WESTMORELAND


Also Present:   Lucy Gavin
                Shannon Becker
                Paralegal Specialists

                Raymond McLeod, Evidence Specialist

P71Wcom1

(Trial resumed)

THE COURT:  In response to the jury's note from 4:30 p.m. yesterday, the Court will proceed with its original approach to refer the jury to page 37, lines 1 through 3, which answers the question directly asked by the jury. *United States v. Cummings*, 320 F.App'x 317, 319 (2d Cir. 2009), holding that the district court did not err, much less abuse his discretion in responding to the jury by rereading the relevant portions of the jury instructions.

The defense's proposal to simply refer to the entirety of the instructions on the drug distribution offense is nonresponsive to the very direct and precise question asked by the jury.  It would also introduce confusion and potentially mislead the jury by suggesting, without any guidance, that the answer lies elsewhere, but where no one knows, in the instructions.

As to the government's suggestion to simply answer the question yes, the Court does not believe that this would be appropriate, and this approach was not adopted by the court in *Cummings* when a similar situation arose.  As for the government's alternative suggestion based on *United States v. Wallace*, 532 F.3d 126 (2d Cir. 2008), the issue there was whether a sale was required for distribution, and the court held that it was not.  But *Wallace*'s holding is already reflected in the lines referenced in the Court's proposal.  To

P71Wcom1

the extent that the government seeks to leverage *Wallace*'s reference to sharing, that wasn't really the issue in *Wallace* and it is not responsive to the question asked by the jury anyway.  And as *Wallace* itself recognized, there are prior cases, like *United States v. Swiderski*, 548 F.2d 445 (2d Cir. 1977), that the court and parties would have to potentially address if a supplemental instruction based on *Wallace* was provided.

For the those reasons, the Court will respond as it initially indicated.  We have a copy of the letter that we will send back to the jury.  The Court's law clerk will provide that to each side for them to quickly review, and then we'll get the response back to the jury.

MR. AGNIFILO:  Your Honor, may I be heard?

I want to supplement.  We haven't had a chance to actually be heard.  I know your Honor sent us an email.

THE COURT:  You have had the chance to be heard. There was an email received by the Court last evening at 6:30 p.m.

MR. AGNIFILO:  But I'm afraid that the Court, and I say this most respectfully, is about to make something that amounts to a mistake, and let me tell the Court why.

First, I believe we're doing something that your Honor has told the jury not to do.  On page 1 of the Court's instructions, your Honor told them you should not single out

any instruction as alone stating the law, but you should consider my instructions as a whole when you retire to deliberate in the jury room.

I believe we're not following some part of the Court's instruction.

Second, if we look on page 36, that's where your Honor told the jury the elements of distribution, so I don't see how your Honor could answer a question about distribution where, on page 36, your Honor says, starting at line 17, the elements of distributing or possessing with intent to distribute are as follows, and then your Honor gives three elements.

So your Honor has given this jury three elements for distributing or possessing that your Honor's now indicated you're not going to read to the jury.

THE COURT: Because that's not the question that the jury asked. Have you looked at the question that the jury asked?

MR. AGNIFILO: I have studied the question that the jury asked.

THE COURT: Look, you see the copy of the note.

MR. AGNIFILO: I've memorized it.

THE COURT: The Court's law clerk provided you with a copy of the note.

MR. AGNIFILO: I will pull it up.

THE COURT: You don't need to pull it up, because we

P71Wcom1

have a paper copy for you to look at.

MR. AGNIFILO:  I have it.  I have it in front of me.

THE COURT:  OK.  And --

MR. AGNIFILO:  Oh, you want me to -- now I got it.

THE COURT:  You have what I've just indicated and you have my proposal.  Now, based on what you said, you want to make sure that the jury is not somehow confused, and I don't think there's any basis for confusion, to think that that's the only part of the instruction they should consider when looking at the distribution offense.  That's what you're saying.  All right?

Well, that could be easily resolved by simply adding in one sentence at the beginning that says that the jury should consider the charge as a whole, and for this offense it's reflected on these pages; in particular, the Court refers to these lines and it provides those lines.  That's a simple fix.

If you want to do something along those lines, I don't have an objection to doing that.  However, I have an obligation to directly answer the jury's question and, consistent with *Cummings*, to provide them with a direct answer to direct question that the jury asked, because I am not permitted and it would be improper for me to leave the jury at sea when they have asked a direct question.  So I'm willing to add in the sentence that makes clear that the jury should consider the charge as a whole, which is what you've referred to.

P71Wcom1

However, for the reasons that I've just explained, in detail, I do need to refer them to particular parts of the instructions, consistent with *Cummings*, consistent with what the Second Circuit has said, to make sure that they understand what they need to do here.

MR. AGNIFILO:  So I --

THE COURT:  Can you do that?

MR. AGNIFILO:  I don't think it goes far enough.

THE COURT:  It doesn't matter if you think it goes far enough.  Can you do what I'm asking, or do you not want to?

MR. AGNIFILO:  No, no, no.  I'm trying to work with your Honor.  I'm not trying to throw up roadblocks.

THE COURT:  Then answer my question.  Can you do what I'm asking, or no, you can't do what I'm asking?

MR. AGNIFILO:  Of course.  I can, of course, do what your Honor's asking, but I don't -- can I give your Honor an example?

THE COURT:  No.

Can you do what I'm asking, because I've just listened to you and I've heard what you said and you said you're concerned, and I don't think the concern has any basis, that somehow the jury's going to think that that's the only part of the instruction to consider in general terms.  The jury's not going to think that.  The jury asked a very, very specific question, a very precise question -- I've reread it again just

two minutes ago -- very specifically referring to this page in the instructions and referring to a question that the jury had. And so if I don't provide them any kind of guidance on how to answer that question, without even referring them to a particular part of the instructions, that would be potentially confusing. That would be potentially misleading, because it might suggest to them that they should look elsewhere for the relevant instruction without any guidance on how to find it.

However, I don't think it does any damage to remind them in the way that we've reminded them previously that, of course, they should always consider the instruction as a whole and not single out any particular part, but I do want to refer them to those lines. That's why I'm asking you. Do you want to put in an extra sentence along those lines? I'm happy to consider it.

MS. COMEY: Your Honor, may I be heard on that point?

THE COURT: Yes.

MS. COMEY: I don't know if Mr. Agnifilo's done.

Thank you, your Honor.

My concern with referring to the instruction as a whole is that this is a question about a single element. This is not a question about the charge as a whole. This is not a question about whether in the hypothetical in the note the individual would be guilty of violating 21 U.S.C. 841. It is a question about the element of distribution.

P71Wcom1

My concern about referring to the charge as a whole would be that it would be misleading and confusing for the same reasons your Honor just articulated.  They're asking about the element of distribution.  The charge as a whole includes charges for two other crimes separate from distribution.  It includes possession with intent to distribute and conspiracy, which are not responsive, and I am concerned that a general reference back to the whole charge would get us back to the level of confusion and being misleading that your Honor was concerned about in the first place.

So perhaps couching it and saying with respect to element of the distribution, you should refer to these lines, because that would make clear that the Court's response is cabined just to that element, but my concern about referring to the instruction as a whole is that would invite the same confusion and be misleading in the same way that your Honor was concerned the defense's proposal would be.

THE COURT:  I agree with Ms. Comey here.

We need to get an answer back to the jury.  So I'm happy to sit here.  If you have a proposal for me that's consistent and respects what Ms. Comey just said and what I've said, then I'm happy to consider it.  But I do think we need to isolate that element, for the reasons Ms. Comey said.  If you want to further say in general terms or you should always consider the charge as a whole, if you want to put in language

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P71Wcom1

on that to address your concern, I'm happy to take a look at that and Ms. Comey will take a look at it as well.

MR. AGNIFILO:  We will do that.

THE COURT:  All right.  Let's take a couple minutes. I'll sit right here.  I'll wait, and we can get a response back to the jury.

MR. AGNIFILO:  And we're not waiving our objection.

THE COURT:  Understood.

While we're waiting for the defense to put in their proposal, Ms. Comey, can I ask you to have someone on your team make sure, consistent with what I've previously ordered, to make sure, to the extent there are emails that have been filed that were not reflected on the docket, to just collect those and make sure they're reflected on the docket.

MS. COMEY:  Yes, your Honor.  We'll do that.

MS. GERAGOS:  Your Honor, we have applied for proposed redactions.  I think there's only one email on our side that has not been filed and a few letters.  We've sent those to the government.  They should be getting, reviewing those today and they should be on the docket while we work.

MS. COMEY:  Your Honor, I have the defense's proposal, which I'll hand up.  I'll note we object to it.

THE COURT:  All right.  I have the defense's proposal.

For the reasons I've previously stated and for the reasons stated by the government, I reject the defense's

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

proposal.  You've made your objection.  It's on the record.  But I believe that this proposed revision would confuse the jury as to the very specific question that was asked.  And so we'll provide the note with the response to the jury, and we'll proceed and see if we have any other, further questions.

MR. DRISCOLL:  Your Honor, could we just put one thing on the record?

Because we do believe that the rules about joint and constructive possession actually are relevant for the jury's question here, and I would just direct the Court to *United States v. Wallace* decision.  It states, since sole possession in such a case would rest with the defendant, his transfer would violate the prohibition on drug distribution, and there, the issue was whether the defendant had sole possession.  So I mean directing the jury just to this definition of distribution would mislead them.

THE COURT:  In what way?  This was the language that was agreed upon by the parties.  This language was not objected to by other side.  This was the unobjected-to language -- hold on.

This was the unobjected-to language pertaining to this issue that the parties agreed would be provided to the jury.  All we're doing is referring the jury to that part of the instruction.  Is there another part of this instruction, of the jury instructions provided, that I read here for three hours

P71Wcom1

yesterday, that pertains to the specific issue that the jury asked about?  If so, which lines?

MR. DRISCOLL:  Yes, your Honor.  There is a different portion of the instruction, because --

THE COURT:  Which lines?

MR. DRISCOLL:  One second, your Honor.

On page 38, lines 3 through 7.

MS. COMEY:  Your Honor, those lines relate only to possession with intent to distribute.  This is an attempt to mislead the jury.  Your Honor's proposed instruction is not erroneous in any way.  It is legally correct, and this is an attempt to mislead the jury, your Honor.

MR. DRISCOLL:  But your Honor, the rules for distribution --

THE COURT:  Hold on.

You said page 38.

MR. DRISCOLL:  Yes, lines 3 to 7.

THE COURT:  All right.  As the government notes, this has to do with the separate issue of possession, and it relates to possession with intent to distribute.

Again, the jury has given us very clear guidance as to the question that they have.  They've referred to the page number.  They've referred to the specific element that they had a question about, and we are referring to the agreed-upon language referring to that particular element.  Referencing

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P71Wcom1

this language or referencing the entirety of the drug distribution instruction would be misleading.

You've put it on the record, and you've made your objection.  We'll proceed as the Court had indicated.

Anything further from the government?

MS. COMEY:  No, your Honor.

THE COURT:  Anything from the defense?

MR. DRISCOLL:  Judge, could you just mark our handwritten proposal as a court exhibit?

THE COURT:  Yes.  We will make it a court exhibit.

Anything further, Mr. Agnifilo?

MR. AGNIFILO:  No.  Thank you, Judge.

THE COURT:  All right.  Very good.

We are adjourned.

(Recess pending verdict)

P71Wcom2

THE COURT:  Please be seated.

All right.  I know the parties are working on a proposed response, but just for the record, we received a note from the jury at 10:15 a.m. today that reads:

"We would like to review the following elements of testimony/transcript:

"1.  Casandra Ventura testimony regarding InterContinental Hotel incident;

"2.  Casandra Ventura testimony regarding Cannes and the events immediately following;

"3.  Casandra Ventura testimony, if any, regarding interactions, freak-offs with Daniel Phillip; and

"4.  Daniel Phillip testimony regarding Essex hotel incident with Casandra Ventura."

I'll start with the government.

Have the parties had a chance to confer as to the transcript or testimony to provide to the jury?

MS. COMEY:  Yes, your Honor.

We are mid-conferral.  We have reached agreement with respect to Mr. Phillip's proposed testimony, and we are printing out copies of redacted excerpts of his testimony as we speak.

I believe we have reached agreement as to one of the three sections of Ms. Ventura's, and then with respect to another one -- I believe it's the Cannes incident -- there are,

we've reached agreement with respect to everything except for two lines.  The government believes there are two lines that should be included.  The defense believes they should not be included.  And the InterContinental is quite sprawling, so we are working on finding all of the references to the InterContinental incident throughout all of Ms. Ventura's testimony.

So I think right now what would be helpful is to tee up for your Honor the one small dispute with respect to Cannes.

THE COURT:  Very good.

MS. COMEY:  And I'll defer to Ms. Johnson to tee that up for your Honor -- oh, I'm sorry.  Ms. Johnson may not be the right person.

THE COURT:  Before we address that, just a procedural question, does either side want me to bring the jury out to read them the note and then tell them what we are planning to send back or that we are planning to send materials back?

To date neither side has had an issue with responding to the jurors in written form.  However, if either side wants me to, I'm happy to bring the jury out to read the note into the record and then tell them what we are going to do.

So as to this note, let me just ask the government, do you have a desire to have the jury brought out for that purpose?

MS. COMEY:  No, your Honor.  We'd have no objection to

that if the defense would like it, but we don't see a need.

THE COURT:  Mr. Agnifilo.

MR. AGNIFILO:  I've conferred with Mr. Combs and the rest of my team.  We don't need to bring the jury out.

THE COURT:  All right.  And then is that also -- we've had two prior notes.  I just want to confirm that neither side would want me to bring the jury out to read them the notes and to read them the Court's responses.

Ms. Comey.

MS. COMEY:  Correct, your Honor.  Our position is the same.

MR. AGNIFILO:  Ours is the same, Judge.

THE COURT:  All right.

As to any future note, if either side wishes that I bring the jury out to read them the note and the response after we've discussed it here, I'm happy to do so.

With that, Ms. Comey, you were going to defer to a member of your team.

MS. JOHNSON:  Yes, Judge.

On point two, the jury requested testimony on the events at Cannes and, quote, the events immediately following. The parties are in agreement as to three of the four sections of transcript to provide the jury.  Our disagreement is just in the last section, which is in redirect.  I don't know if the Court has the capability of pulling up the transcript, but it's

page 1315, or I don't know if our paralegals could do that.

THE COURT:  I think I can, but if you have it.  1350?

MS. JOHNSON:  1315, one three one five.

THE COURT:  I have all the transcript excerpts except for that particular one.  I'm sure I could find it in one minute, but if you have it --

MS. JOHNSON:  I think we're working on it.

It's one three one five.  Sorry.

THE COURT:  What's the date of the testimony?

MS. JOHNSON:  It's on the screen now.  Can the Court see it?

THE COURT:  Go ahead.

MS. JOHNSON:  The dispute is over lines 21 and 22:

The jury note asks for Cannes and the events immediately following.  It's the government's position that the question, what happened when Sean was angry, and the answer on lines 21 and 22 is a follow-up to Ms. Ventura's response in the previous lines.  It relates to the freak-off that occurred immediately upon landing in New York, and the government thinks that should be included in the portion of transcript that goes to the jury.

THE COURT:  And this is the end of the discussion --

MS. JOHNSON:  Yes.

THE COURT:  I said Cannes, but apparently I'm wrong.

MS. JOHNSON:  It's our position that this is the end

P71Wcom2

of the discussion, and then line 23 moves to a new topic of discussion.

I'll let Ms. Geragos speak, but I understand the position of the defense is that this is a more general response that shouldn't be included, but it's our position that this is a follow-up to the discussion of the freak-off that happened and the events leading to that point.

THE COURT:  I'm looking at this, and I would likely cut the testimony off at line 20.  So if the dispute is about line 21 and 22, I would exclude that from what goes back to the jury.  But I'll hear from Ms. Geragos.

MS. GERAGOS:  I have nothing to add, your Honor.

THE COURT:  And any other disputes or issues to address in terms of what goes back to the jury?

MS. JOHNSON:  Not on this issue.  I imagine we would need to speak to the Court about the InterContinental, but we would like a few more minutes to work through the transcript.

THE COURT:  Please let the deputy know when we're at a point when we can resolve that, and I'll come back.

Thank you very much.

(Recess)

P71Wcom3

THE COURT:  Please be seated.

I understand that there's an issue to resolve.

MR. DONALDSON:  Yes.

THE COURT:  What is the issue?

MS. COMEY:  I understand that during the break, the defense came up with an issue regarding Daniel Phillip, so I'll let the defense raise that, their issue.

THE COURT:  Is there also an issue concerning time frame, or have the parties resolved that issue?

MS. JOHNSON:  We still have that issue as well.

THE COURT:  All right.

So let's address the Daniel Phillip issue first.

MR. DONALDSON:  Yes, Judge.

We have looked at question No. 4, which says Daniel Phillip testimony regarding Essex hotel incident with Casandra Ventura.  We are in agreement with everything except for pages -- page 283, line 11 through 16.  The government believes that question and answer should come in -- or the government believes that's responsive.  We believe that it is not.

THE COURT:  Can you give me that transcript page.

MR. DONALDSON:  Page 283, line 11 through line 16. That includes the question and answer.  We are suggesting that that does not -- or is not responsive, as it relates to post thought processes by Mr. Phillip related to the incident, not regarding the actual incident.  So that's our position.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P71Wcom3

The government's position, the question is asking what he thought about or why he didn't do something after the incident does respond to the question, which is asking to tell them about what happened during the incident.

MS. COMEY:  Your Honor, our position is the request is for Daniel Phillip testimony regarding Essex hotel incident with Casandra Ventura.  That question and answer are regarding the Essex hotel incident with Casandra Ventura.  I don't see the problem with providing this testimony, which is regarding that topic and which was admitted at trial.

THE COURT:  All right.  And we're not going to include lines 16 through 18.

MS. COMEY:  Correct, your Honor.  We've redacted those, which your Honor struck from the record.

THE COURT:  All right.  So the testimony at issue pertains to the incident that's being discussed in the preceding passages.

MS. COMEY:  Exactly, your Honor.

THE COURT:  All right.  So that testimony will be included.

Next.

MS. JOHNSON:  Point one that the jury requested is testimony of Casandra Ventura regarding the InterContinental Hotel incident.

It's the government's position that that incident is

what occurred at the hotel, the evening of March 4 into the day of March 5.  There is testimony in the record about events starting several days before and text messages starting several days before and text messages that go after the incident.  So we're looking for some guidance from the Court.  It's our position that it should be the incident at the hotel, that that's what they're looking for.

In addition, the defense also proposed including Ms. Ventura's testimony about her Instagram post from 2024, after the video was publicly released, which we think is not responsive to the jury's request.  And they also marked her testimony about her settlement with the InterContinental Hotel, which we also think is not responsive to the jury's request.

THE COURT:  All right.  Let me hear from Ms. Geragos.

MS. GERAGOS:  Thank you.

We have proposed parts of the testimony -- Ms. Johnson said several days before, but there's a government exhibit which your Honor recalls is the "I want a freak-off so bad" from Ms. Ventura.  On our cross for completeness reasons, we introduced 1088, I think the defense exhibit number was, and it's just the beginning of that conversation.  It's Ms. Ventura reaching out to Mr. Combs while he's sick, and we believe that it is essential to the entire InterContinental incident because it's hard to kind of parse the testimony as to when the planning of this alleged freak-off started without having the

testimony related to both of those exhibits, which is why we included testimony starting from the Defense Exhibit 1088 messages. And so we had proposed that testimony regarding those messages be included in the response to the jury note, question No. 1.

We also included -- we did not include any of the testimony regarding Ms. Ventura when, after she left the InterContinental, her testimony about going to her home, Mr. Combs going to her home, Ms. Khorram and D-Roc, etc., because we don't believe that that's directly responsive to question No. 1 regarding the hotel incident, because it is at that point that she leaves. But we did include then testimony regarding several messages from after the InterContinental incident when they're talking about the InterContinental incident, her and Mr. Combs.

So because the question is specific to testimony regarding InterContinental Hotel incident, we did include testimony from several days afterwards between she -- where she's talking about conversations between herself and Mr. Combs because it's regarding that incident. So that is the reason for our proposal that has some testimony regarding about a day and a half prior, because we believe that that's when the planning of that freak-off starts and is essential to the jurors' understanding of whether Mr. Combs coerced Ms. Ventura into commercial sex on that date, and then we did include some

P71Wcom3

testimony -- limited, it is limited -- but between, that Ms. Ventura testified to about her conversations with Mr. Combs several days after because we believe that that is also relevant to whether Mr. Combs coerced her on that date to engage in commercial sex.

And then there are the two disputes regarding the settlement, which has to do with the InterContinental incident, and the Instagram post, which also has to do with the InterContinental incident. So that's the reason for our proposals.

THE COURT: Focusing on the last two issues, can you just remind me, how does the post regard -- the request was for Ms. Ventura's testimony regarding InterContinental Hotel incident. So how does the 2024 post regard that incident in a more direct way than, for example, the aftermath of the incident itself, when Ms. Ventura went home and Mr. Combs went to her house, all that testimony?

MS. GERAGOS: I think because the exact question posed to Ms. Ventura was, you recall posting on Instagram after the video of the InterContinental Hotel was aired in May of 2024, so it's a direct response to the video of the incident at the time. We are including in our proposals her testimony regarding watching the video in court, and so we think it just completes that testimony. It's all of her testimony regarding reactions to the video.

THE COURT:  All right.  Then as to the settlement, the fact of the settlement doesn't have to do with the incident itself in the way that you've articulated, which is that you want to include what you believe fairly is Ms. Ventura's testimony regarding the incident.  And so you have the communications before the incident.  You have the communications after, and you say the 2024 post.  That post featured in the questioning and Ms. Ventura explained the relationship of the post to the incident through the video obviously.

MS. GERAGOS:  Yes.

THE COURT:  So the settlement is, you'd agree, a few steps removed, meaning it's just the fact of the settlement.

MS. GERAGOS:  We're withdrawing the settlement, your Honor.

THE COURT:  All right.

As to the other, I'll hear from Ms. Johnson.

MS. JOHNSON:  Your Honor, starting with her comments on Instagram in May of 2024, it's not at all clear to me from the testimony, it just says you recall posting on Instagram after the video was aired.  And it's discussing snippets of what she posted on Instagram after this video became public in May of 2024.  The focus, of course, is that she wrote, among other things, in her post that domestic violence is the issue. I don't think this has any relevance to what the jury's asking

about, and if the argument from counsel is that putting in wide swaths of testimony is important to assessing Ms. Ventura's coercion, the government would submit that the two lines excluded from the comments are critical in assessing coercion. And in addition, the lines that the defense excluded from what happened after the InterContinental incident is also critical.

THE COURT:  Ms. Geragos, what is the actual questions and answers that you want to put in regarding the 2024 post? Do you have a page number?

MS. GERAGOS:  Yes.  It is on transcript page 1294, line 12, to transcript page 1295, line 9.

THE COURT:  All right.  So can you show me the testimony as to the events preceding and the events postdating the incident that you would also want to put in.

MS. GERAGOS:  Sure.  I think I'll start at our first dispute, I think that makes sense, but that is the postdating.

We suggest, we all agree to start at transcript page 629, line 15.  The first dispute begins at transcript page 639, line 16.  And we believe that it should end there.

The government, I believe, thinks that it should go on for about ten pages, so perhaps we could start there.  I don't know if Ms. Becker could pull up the next page, or Mr. Gavin.

Thank you.

We proposed ending at line 16 on that first part of the page and where she says, I actually don't remember having

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

any conversations with him after, until there was, like, another freak-off, honestly.

And then it goes into, if your Honor recalls, the selfies that Ms. Ventura took of herself and what starts happening in the quote/unquote aftermath of the incident that the government believes should be included that we do not believe should be included. But I don't have the exact page number. Perhaps Ms. Johnson could put on the record --

MS. JOHNSON: We would go to 649, line 21. But again, if we are making the beginning more narrow, we can make the end more narrow.

MS. GERAGOS: So maybe we should start there. Let's start with our second dispute.

MS. JOHNSON: The second dispute is more significant, which starts at 1091.

MS. GERAGOS: Yes. 1091, line 11. And if we could put those two pages -- this is where we believe that it should start, which is 625, because that's the government's exhibit that is kind of the critical government exhibit here as to the beginning of the InterContinental freak-off. So the way that this part of the transcript reads is it goes through that part of the government exhibit and then we're going to go back into Defense Exhibit 1088, which is the one that Mr. Agnifilo quoted in his summation.

THE COURT: All right.

MS. JOHNSON:  The government would propose excluding the discussion of 1088, which relates to a completely different day.  It starts on March 3.  There's discussion in the record that it's on March 4, but if you look at the exhibit, it's in UTC time, so it's actually March 3.

MS. GERAGOS:  Which is reflected on line 24, but the conversation starts then.  Just because it's on a different time period, there's no break really in the conversation.  If we go, maybe, if your Honor's OK, if we could go forward two pages, to 1095 and 1096.

THE COURT:  Why wouldn't we just provide the jury -- so let me take a step back.  So the jury has three categories of testimony from Ms. Ventura that they're asking for, and there are some disputes about whether, where exactly to cut off the testimony in response to the jury's questions.  But why isn't at least one option to simply furnish the jury with the entirety of Ms. Ventura's testimony so that they can look at what they want to?

MS. JOHNSON:  That's also fine with us.

MS. GERAGOS:  One moment, your Honor?

Give me one moment, your Honor?

Your Honor, we prefer to answer the jurors' direct question and not provide them the entirety of the testimony, and I think it's for multiple reasons.

First, this is for four days of testimony.  It's

P71Wcom3

lengthy.  It's almost 800 pages.  There's no search function when you're just looking at a printed PDF, and so we're concerned that they would not be able to properly find every single part of the testimony regarding InterContinental testimony, and there's a lot in there that's just not relevant to their direct questions.  So we would just prefer to answer their direct question and provide testimony just regarding the InterContinental.

MS. COMEY:  On the logistics, if the Court would allow us to briefly take the laptop from the jury, we could load a searchable PDF onto the laptop.  So that would address the searchable issue.  We could give them a paper copy and load a searchable electronic copy onto the laptop.

THE COURT:  Understood.

So the defense can consider that.  I think that alleviates some of the logistical issues.

The jury's question did not go to any particular element, so I don't think it's appropriate to try to address whether particular testimony would go to the issue of coercion or any other element.  I think the question is, as framed by the jury, whether they're looking for the testimony going to, that is regarding the InterContinental incident.  And I understand from you, Ms. Geragos, that the messages before and after the event go to the incident because it is directly addressing the events that took place during that incident.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P71Wcom3

And so I would agree that those messages should be included in what is given to the jury.

As to the few lines regarding the 2024 post, I think that can be included as well.  I don't know that -- it's neither here nor there, but the questioning as it was phrased was directed to the post and its relationship to the InterContinental incident because it was discussing or in the wake of the video, so I think that's fine.

You've withdrawn your request as to the settlement questioning.  So then what is left?  Given that framework, what is left to address?

MS. JOHNSON:  I think that the government would propose including the messages, if we're including messages postdating the incident, which the defense has marked, some of which are several days later, then the government would want to include the messages that start after the video and continue throughout the day of March 5, all of which directly relate to what happened in that video, and her testimony about the pictures of the injuries that she had, which includes the pictures she took in the car and injuries she had at the premier.

THE COURT:  And Ms. Geragos, in fairness, for the reasons that you've articulated as to why the post-event messages regarding the incident would be relevant, then that same category would also be applicable to what the government

P71Wcom3

wants to put in.  If there are communications or testimony about communications that regard the incident or injuries that Ms. Ventura sustained during the incident, those would fall into the same category.  I'm not hearing from Ms. Johnson that she is pressing on testimony concerning the aftermath or what happened afterward.

Right, Ms. Johnson?  You previously were --

MS. JOHNSON:  No.  I still am.  The messages from March 5 --

THE COURT:  Put that to the side.  Put that to the side.

You're saying separately if Ms. Geragos is putting in messages regarding the incident, then you should be able to answer that with testimony regarding the incident in the same way.  Just separate -- we'll address the other issue next.

MS. JOHNSON:  Correct.

THE COURT:  Ms. Geragos, I don't know what the objection would be to that.  You agree, right?

MS. GERAGOS:  I think that with respect to -- no, I think I will maintain my objection.  I understand, your Honor, but I think I just have to maintain my objection with respect to the photos -- she testified she didn't remember taking them -- and the events right afterwards when they don't go to her and Mr. Combs's communications directly.  But I understand your Honor's position.  But that was our position, confining

it.  We are confining it to the conversations she has with Mr. Combs about the incident and her testimony about the incident.

THE COURT:  Let me ask the government -- this is for both parties.  I had previously requested that the parties redact the testimony so that it could be quickly furnished to the jury.

Has that been done as to Ms. Ventura's testimony?

MS. JOHNSON:  It has, your Honor.  It's just with respect to this particular incident, it's very difficult.  And I do agree with your Honor's suggestion that furnishing the jury with a copy the entire testimony is the far simpler path.

THE COURT:  I agree, because with every line that I draw, Ms. Geragos, in favor of your introduction of some portion of testimony, Ms. Johnson is going to have a response as to additional testimony that, in fairness, should be considered when you look at that.  And it's going to be impossible to get back to the jury.

The better solution and the fairer solution is by providing the jury with Ms. Ventura's testimony generally, the jury will then have the ability to look at the entirety of that record, which they would be entitled to do anyway, because it's admitted testimony.  We've redacted out anything that was not admitted.  And that way we don't have to engage in this line-drawing exercise, where we're going to be going back and

P71Wcom3

forth as to what testimony should be in and what testimony should be out.  It is neutral and fair, and it doesn't favor or prejudice either side.  It is true that the jury would have to look through the testimony, but I think that could be addressed by providing them an electronic copy or by the jury simply looking through the transcript for the relevant places that they want to.  And we can provide multiple copies of the transcript so that there are multiple copies in the jury room.

MS. GERAGOS:  We would prefer, your Honor, if that's the way your Honor's leaning to withdraw on the photo testimony and have the few days before and few days after rather than giving them 800 pages and having them see -- and she testified about many things other than InterContinental incident, to give them the entire testimony when they're asking for something specific.

We would really just prefer to have your Honor's original leaning, which is a few days before, March 3, testimony about that, up until the few days after, and we think that that addresses the defense's concern, which is rather than giving them 760 pages of testimony, because we agree on the redactions, to confine it to the InterContinental incident, which was their direct question.  So I'm withdrawing what I just told you was my objection and just asking it to be, that rather than engaging in the line-drawing exercise, we agree on the confines, a few days before and few days after, and giving

P71Wcom3

that to them.

THE COURT:  And that would include testimony within that time period that the government would want to put in.

MS. GERAGOS:  Yes.

THE COURT:  OK.  So I think then we have agreement, unless I'm missing something.

MS. JOHNSON:  I do want to press the Instagram again, your Honor.

I respectfully understand the Court's ruling, but I do not think this relates to the jury's question.  They asked about the incident at the hotel.  Her discussion and release of the public video I do not think is responsive to their question for her testimony.  And I don't think it's relevant.  I think it's confusing, and I don't think it should be provided.

THE COURT:  All right.  I understand.

I think it's fair to include that portion, which is a very few lines of testimony that can be included.  Otherwise, I want to make sure I understand.

So Ms. Geragos, maybe you can just -- I believe the parties have agreed to just to make sure that there's no misunderstanding so that we can get the right testimony back to the jury.  So on the Instagram post, that testimony that you identified on the record can be provided.

As to the settlement, you've withdrawn your request to provide that to the jury.

P71Wcom3

Otherwise, I believe we have agreement.

MS. GERAGOS:  I'll say it again, which is --

THE COURT:  Say it again.

MS. GERAGOS:  -- we agreed.  The testimony regarding a few, I'll say two days before, March 3, 2016, which is the testimony that we had proposed, begins on 1091, lines 11, to 1134, line 10, and then the testimony right after, so that would include what the government had proposed, which was, we agree on transcript 629, line 15, through 649, line 21, and it would include also the defense's proposal, which I don't think we've shown your Honor, but the testimony regarding messages between Ms. Ventura and Mr. Combs approximately three days after the incident regarding the incident.

THE COURT:  And you've shared that with the government.

MS. GERAGOS:  Yes, yes.

THE COURT:  All right.

Ms. Johnson, so understanding that you object to the Instagram post testimony, just put that to the side, the way that Ms. Geragos has articulated it, is there any objection to providing that testimony to the jury.

MS. JOHNSON:  I just want to -- I believe Ms. Geragos had also initially provided 1162 to 1170, and I want to just know what the position is on that.

MS. GERAGOS:  Yes.  This was 1162, line 15, to 1170,

line 6, would be -- is exactly the kind of testimony I was just talking about in terms of her testimony about the InterContinental incident.  It's testimony regarding a government exhibit and a defense exhibit from a few days afterwards, so we would propose that we include that as well.

MS. JOHNSON:  OK.  I think that falls within the scope of the Court's ruling.

MS. GERAGOS:  We think the only -- if we could just put it on the record, 1294, line 12, to 1295, line 9.

Sorry.  The Court ruled on it.  I think we have worked out our differences.

THE COURT:  All right.  Very good.

MS. GERAGOS:  With the Court's help.  Thank you.

THE COURT:  All right.  Very good.

If there are any further issues in terms of what is to be provided -- let's do it this way.  Now that we've had this discussion, the parties should collect that testimony.  If there are any further issues that either side would like to raise, then please raise it with the deputy and we'll come back down.  But let's try to get this testimony furnished to the jury by 1 p.m.  So it's 12:30 right now.  Let's try to get --

I see a smile.

MS. GERAGOS:  I'm sure Ms. Becker will be able to do it.

MS. JOHNSON:  I think that we could probably furnish

P71Wcom3

the jury with what we already have.  Is that correct?

MS. GERAGOS:  Yes.  Yes.

MS. JOHNSON:  Which is the testimony in response to questions two, three and four.

THE COURT:  All right.  Very good.

So let's make sure that, again, both sides have reviewed, everyone's on the same page, subject to the rulings that I've made, and then we'll proceed on that basis.

MS. GERAGOS:  OK.  Great.

THE COURT:  All right.  Very good.

(Recess)

THE COURT:  Please be seated.

All right.  We've received a note at 4:05 p.m. today.

The note reads:

"We have reached a verdict on Counts Two, Three, Four and Five.  We are unable to reach a verdict on Count One, as we have jurors with unpersuadable opinions on both sides."

We'll make this letter a court exhibit.  It was previously furnished to the parties so I'll inquire with the parties if they have any proposal as to a response or approach to address the juror question.

We'll start first with the government.

MS. COMEY:  Your Honor, we're putting together a proposed modified *Allen* charge that we'd ask your Honor to give to the jury to encourage them to continue deliberating as to Count One.  We think that the jury has not been deliberating for nearly enough time for them to give up at this juncture, and we think a modified *Allen*, not a full *Allen* charge, but a modified *Allen* charge would be appropriate.  And we're putting together language to propose for your Honor.

THE COURT:  All right.

Mr. Agnifilo.

MR. AGNIFILO:  Yes, your Honor.  Thank you.

It's our request that you, the Court, tell the jury to keep deliberating; we do not take a partial verdict.  The jury's only been deliberating for a day and change.  I don't

believe we are at the point of a modified *Allen* charge.  I think our proposal would be that the Court tell the jury that the Court's received the jury's note, noting that the jury has not yet reached a verdict on Count One, and that the Court advise the jury to continue deliberating, without any kind of modified *Allen* charge at this stage.

THE COURT:  All right.  And would the defense request that I bring the jury out to provide that instruction?

MR. AGNIFILO:  One second, your Honor?

Yes, we would ask that your Honor bring them out.

THE COURT:  All right.

Can you write down or send an email with the proposed instruction, and I'll ask the government to do the same on your proposal.

MS. COMEY:  Yes, your Honor.

THE COURT:  All right.  So I'll wait here and you can email the proposal to the chambers inbox, and we'll take it from there.

The only thing that I'll raise is that there are essentially three options here.

One would be the defense's proposal to essentially tell the jury in light of the fact that they've only been deliberating for a day or so, and change, that they should keep at it, which is the defense's proposal.

The second proposal would be some version of an *Allen*

P71Wcom4

charge.  You indicate a modified *Allen* charge; I take it that would be a softer version of the *Allen* charge.

MS. COMEY:  Exactly, your Honor.

THE COURT:  And the third option is at some point, there is case law indicating that the Court should advise the jury of its ability to return a partial verdict under Rule 31. I'm not sure that we're at that stage, and I don't see either side suggesting that we should give that instruction to the jury.  So those are the options.

I take it that the parties have staked out the first two and I'll take a look at the proposals, and then we'll decide how to proceed at that point.

All right.  I've received both sides' proposals.

Mr. Agnifilo, if I were to provide the defense's instruction to the jury, it's not much.  There's not much there.

MR. AGNIFILO:  There's not much there, because this is a jury that, by their note, has reached verdicts on four counts.  I don't know that the jury really needs help moving efficiently through the material.  It was a long trial.  There was a lot of evidence.  They've been deliberating, I don't know, maybe 12-1/2 hours, 13 hours, and in that time, the note indicates to us that they've reached verdicts on four counts. So I don't know that we're remotely at the point where this jury needs anything extra in order to deliberate efficiently.

P71Wcom4

This is a remarkably efficient jury.  They're moving through the materials.  They're making decisions, and they're unable, by virtue of their note, to reach a decision on one of the five counts.  And so I recognize, and your Honor's right, I'm not asking the Court to say much, and that's because I don't think that this jury needs much.  And I don't think that this is akin to other situations where, in shorter trials, juries have been deliberating for longer or as long and haven't reached any verdict.  I think the dispositive difference is this jury has already reached four verdicts, so I don't think that we need to do anything to move them along.  They've been moving along fine.

THE COURT:  How do you address the note which indicates that, as to Count One, we have jurors with unpersuadable opinions on both sides?  So if we were to respond to say keep deliberating without any sort of reminder as to what that means, then we would be nonresponsive to the jurors' question.

Part of the government's response, I wouldn't really call the government's proposal an *Allen* charge.  I think that what it principally does is to remind the jury of the instructions that I previously gave as to what the deliberation entails, meaning that most of what the government has proposed is just a repeating of the section of the instructions on the duty to deliberate.  And that's consistent with the defense's

proposal as well.

So what we could do is to use your proposal and after I ask them to keep deliberating, I could simply recite for the jury -- if you're looking at the jury charge, from page, on page 58 through 59, from 58, line 11, through 59, line 2, omitting 58, lines 17 and 18, which would not be applicable here. And that's more or less what's reflected in the government's proposal. And it would not be adding new material. It simply refers the jury to the section that I already gave them on the duty to deliberate.

MR. AGNIFILO: So the proposal is 58, line 11, to 59, line 2, and your Honor would not read lines 17 and 18.

THE COURT: Right. So 58, line 11 through 16, and 58, line 19, through 59:2.

MR. AGNIFILO: I think that makes a lot of sense, Judge.

THE COURT: All right.

Ms. Comey, do you have any objection to that?

MS. COMEY: I have no objection to it, your Honor.

The one additional sentence that, I think, might be helpful, given that the jurors have clearly been looking at the instructions and have been diligent, would be the sentence in the *Avenatti* case that we proposed, which says there's no reason to believe that if this case were to be tried again, that another jury would be any more intelligent, more impartial

or more competent to decide than you are.

It gives a little extra to inform them essentially that this case would have to be tried again if they could not reach a verdict and it might help them take a harder look at the instructions, which is, I think, what we need right now, is for them to take harder look at the instructions and continue deliberating.

So that one sentence, so that they have something new, would be my proposal. And again, it comes from the language that the circuit blessed in *Avenatti*.

MR. AGNIFILO: I think that goes way too far for a jury that reached verdicts on four counts. I note your Honor's proposal. It wasn't our choice, but when your Honor said it, it made sense to us. I don't think they need new language. I don't think they certainly need to be told what the proposed modified *Allen* charge was that the government recited.

This is a jury that has been efficient. They're productive. They've reached verdicts on four counts, and I think that they're very well aware of the gravity of the situation. And I don't think we're at -- I'm not saying we wouldn't be at that point Thursday or Monday, but we're not at that point yet. And so I like your Honor's proposal of what your Honor read combined with our proposal.

THE COURT: All right. And to be very clear, Ms. Comey's proposal and something even more definite may be

P71Wcom4

warranted depending on what happens, meaning this happens in stages. So what we say to the jury now is without exclusion to what we may say to the jury the next time they come back with a note.

MR. AGNIFILO: That's always the case, but we wait to see what the jury comes back to us with. Again, I'm putting a lot of stock in the fact that this jury, in a long trial, has reached verdicts on four counts.

THE COURT: All right. So I'm going to provide the instruction as proposed by the defense with the modification that I made without prejudice to something more in line with what the government has requested if there's any further notes that we receive from the jury.

While we're here and discussing these things, on the assumption that the jury is going to want to go home at this point or sometime soon, the issue is raised as to what happens on Thursday? Because the court is closed on Thursday, and so there are two options.

The one option would be for me to inform the jury that if their deliberations persist through the day tomorrow, then they would come back on Monday, July 7. I can also tell them that if they all agree, that we can bring them back on July 3. And I believe we can make accommodations for that. However, that does pose some unique logistical issues if, for instance, there is a verdict or other circumstances arise.

Which way do the parties want to go, or are you agnostic as to those two options?  Because I'd like to tell them that now so that they have that in mind.

MS. COMEY:  Your Honor, our preference would be to give them the option to deliberate on the 3rd, and if they all agree to deliberate on the 3rd and, if necessary, that they be permitted to do so.

MR. AGNIFILO:  One second, your Honor?

THE COURT:  Yes.

MR. AGNIFILO:  Your Honor, we've discussed it on our side.  Our preference would be that you, most respectfully, ask the jury at the end of the day tomorrow.  And here's why.

We're concerned that the jury will feel some desire to try and reach a verdict faster than may be otherwise so that the Thursday issue would be settled one way or the other.  And so our preference would be that your Honor does not tell them now.  And I understand that the Court wants to tell them now because there's a courtesy to that, and I appreciate that, and I recognize it.

But I think the downside from our standpoint is that the jurors, some of them might feel rushed or feel some sort of pressure to render a verdict, or not, more quickly than otherwise.  And so our preference would be let them deliberate, and it seems like they're making progress.  Let them deliberate tomorrow, and at the end of the day tomorrow, the Court can ask

P71Wcom4

them if they want to sit on Thursday.

Now, I'm also mindful, I'm not aware of the logistical things that the Court has to deal with on this front, but I'm just talking from our perspective in terms of what of we think is better to keep the jurors' minds free and have them focusing on the issues.

THE COURT:  All right.  But to confirm, we can at least confirm this, there's no objection to our proceeding on July 3.

MR. AGNIFILO:  None.

THE COURT:  OK.  Good.  So we can work out whether that is logistically feasible to come back on July 3, and we can come back in the meantime.

MR. AGNIFILO:  Very good.

THE COURT:  Your proposal, though, is to wait until later in the day tomorrow to see if we still don't have a verdict at that time raise the issue with the jury then.

MR. AGNIFILO:  That is our proposal.

THE COURT:  If the jury decides, they've talked amongst themselves and decide they do want to go forward, then the parties are in agreement that we can do that.

MR. AGNIFILO:  On July 3, absolutely.

THE COURT:  All right.  Then we can take care of the logistical issues.  If there's a logistical hiccup, if we can't do it on the 3rd, then we'll talk to the parties in advance.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P71Wcom4

Otherwise, we will bring the jury out to provide them with the instruction, and I'll tell them at the end that if they have completed their deliberations for the day, then they can go back, send us a note and then we'll bring them out for some closing instructions.

All right.  With that, let's bring back our jury.

(Jury present)

THE COURT:  Please be seated.

Welcome back, members of the jury.  Thank you for all your hard work.

I've received your note that you have reached verdicts on Counts Two through Five but not on Count One.

I ask at this time that you keep deliberating.  In doing so, I will remind you of the instructions I gave you yesterday.  It is your duty as jurors to consult with one another and to deliberate with a view to reaching an agreement. Each of you must decide the case for himself or herself, but you should do so only after a consideration of the case with your fellow jurors, and you should not hesitate to change an opinion when convinced that it is erroneous.  Discuss and weigh your respective opinions dispassionately, without regard to sympathy, without regard to prejudice or favor for either party, and follow my instructions on the law.

Again, your verdict must be unanimous, but you are not bound to surrender your honest convictions concerning the

effect or weight of the evidence for the mere purpose of returning a verdict or solely because of the opinion of other jurors.  Each of you must make your own decision about the proper outcome of this case based on your consideration of the evidence and your discussions with your fellow jurors.  No juror should surrender his or her conscientious beliefs for the purpose of returning a unanimous verdict.

Thank you.

At this time, I'll ask you to return to the jury room. If you are done for the day with your deliberations, you may send us another note and we'll bring you back here very briefly, and you'll be able to go home at that time.

Again, I thank the jury for all their hard work.

(Jury not present)

THE COURT:  Be seated.

Everyone can go back to doing whatever they were doing.  I'm only sitting here because we may get a note in the next few minutes.

All right.  We've received a note from the jury that they are completing their deliberations for the day and will resume tomorrow at 9 a.m.  So with that, we will bring out our jury.

(Jury present)

THE COURT:  Please be seated.

Very briefly, again, thank you, jury, for all your

hard work.  I'll give you just a reminder of the instructions I gave you yesterday, which is I won't be bringing you out in the morning tomorrow, so you'll go directly into the jury room.  Do not start your deliberations until all 12 of you are there.  If all 12 of you have are not there, then you can talk about the sports, weather, anything else, but not anything concerning this case.

Also, remember to keep an open mind as you continue your deliberations, and no communications with each other about the case in the meantime until you recommence your deliberations.  No communications with anybody else about anything concerning this case.  And please do not watch, read or look up anything concerning this case in the meantime.

With that, I wish you all a great evening.  And we'll be seeing each other tomorrow.  If there's a note earlier in the day, it will be sooner than later.  But I wish you a great evening, and we'll see you tomorrow.

(Jury not present).

THE COURT:  Please be seated.

Anything further to address before we adjourn today?

MS. COMEY:  No, your Honor.

MR. AGNIFILO:  No, your Honor.  Thank you.

THE COURT:  All right.

So we'll see everyone tomorrow.  Again, if there are any issues to address before the jury starts, let us know by

P71Wcom4

this evening so that we can all come back early before the jury starts.

Otherwise, have a great evening, everyone.

(Adjourned to July 2, 2025, at 8:30 a.m.)